CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**DECLARATION OF SUSAN BEATY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist* (DC Bar 1720816)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* *Pro Hac Vice Application Forthcoming*

# DECLARATION OF SUSAN BEATY

I, Susan Beaty, declare and state as follows:

1. My name is Susan Beaty, and I submit this declaration in support of Plaintiffs' motion for preliminary injunction regarding Defendants' policies of immigration enforcement against people with pending petitions for VAWA relief, U visas, and T visas.

2. I am a Senior Attorney at the California Collaborative for Immigrant Justice ("CCIJ"). Our principal place of business is located at 1999 Harrison St., Suite 1800, Oakland, CA 94612. I have been working in the immigrants' rights field for 15 years, as an immigration attorney for 7 years, and at CCIJ for 2 years.

3. CCIJ's uses coordination, advocacy, and legal services to fight for the liberation of immigrants in detention in California. We envision a world where no one is subject to incarceration or family separation.

4. CCIJ operates legal clinics at immigration detention centers and other carceral facilities across California. CCIJ also coordinates and provides technical assistance to rapid response networks across the Bay Area. Through our clinics and rapid response work, CCIJ provides immigration consultations, referrals, pro se support, and limited scope legal services to hundreds of detained and incarcerated immigrants each year. We also provide technical support and mentorship to immigration attorneys across the state.

5. CCIJ also works to support local and state policies that aim to protect and empower detained immigrants, such as AB3228 (The Accountability in Detention Act), AB 263 (The Health Oversight & Leadership in Detention Act), AB 2632 (the California Mandela Act on Solitary Confinement).

6. CCIJ collects and analyzes data related to ICE enforcement behaviors and detention center conditions, among others, for advocacy and educational purposes.

Data helps CCIJ tell a story of what is actually happening to immigrant communities.

7. CCIJ uses a range of other legal tools to advocate for and defend detained immigrants, including but not limited to high-impact litigation, complaints to state and federal oversight agencies, and advocacy letters to elected officials.

8. As part of our work, and to help advance our mission, CCIJ provides legal assistance to victims of crime and trafficking. We provide consultations, pro se support, and referrals to survivors of crime through our clinics and rapid response efforts. We also provide direct legal services to crime survivors, including representation in removal defense before the Immigration Courts, Board of Immigration Appeals, and federal circuit courts, as well as applications for victim-based immigration relief before U.S. Citizenship and Immigration Services (USCIS). We represent crime survivors in impact litigation, including litigation to challenge inhumane conditions of confinement and abuse within carceral facilities, and in complaints to state and federal oversight agencies. We also support crime survivors in advocating to state and federal elected officials and government agencies for systemic reforms.

9. CCIJ has expanded our support for victims of crime and trafficking through our work with survivors of prison staff sexual assault. CCIJ previously operated an immigration legal clinic at the former Federal Correctional Institute (FCI) in Dublin, California, a federal women's prison that hosted an immigration court site. Through our clinic we learned that dozens of incarcerated immigrant women were abused by various prison officials. We supported noncitizen survivors in bringing individual civil claims as well as a class action lawsuit in federal district court, which led to the largest aggregate financial settlement in the history of the federal prison system, the closure of the prison, and a consent decree to protect the rights of people formerly incarcerated at Dublin. We continue to represent a class of hundreds of individuals who were transferred from FCI Dublin to federal prisons across the country. We have also represented dozens of survivors of FCI Dublin staff abuse in immigration matters, including removal defense before the Immigration Courts and federal appellate courts, affirmative applications to USCIS

for victim-based relief, and requests for release from custody and prosecutorial discretion to Immigration and Customs Enforcement (ICE). We also continue to offer consultations, pro se support, and referrals to immigrant survivors of prison staff abuse at state and federal prisons across the U.S.

10. CCIJ currently represents nine individual clients with pending U-Visa applications. Four CCIJ clients have received bona fide determinations (BFDs) and deferred action. Five have regular check ins with ICE. Three are in active removal proceedings, including two who are currently detained by ICE.

11. CCIJ currently represents three individual clients with pending T-Visa applications. All three have final orders of removal. One has a BFD and regularly checks in with ICE. One is in criminal custody and is the subject of an immigration detainer. One was deported after ICE denied her request for a stay of removal based on her pending T visa application.

12. As class counsel in multiple ongoing class action lawsuits related to conditions of confinement and abuse in detention centers and prisons, CCIJ also represents other survivors of crime with pending U and T visa applications in their capacity as class members.

13. CCIJ also regularly provides legal services to other survivors of crime through our legal clinics and rapid response coordination. Since February 2025 CCIJ has provided consultations, referrals, pro se support, and/or limited scope representation to over 80 victims of crime and/or trafficking.

14. The protections and benefits offered by U and T Visas are crucial in allowing CCIJ to provide legal services to our clients and to immigrant communities in California. CCIJ routinely advises clients and individuals we encounter at clinics and through rapid response of the potential protections provided by U and T visas. CCIJ has worked with survivors of crime who have decided to make a report to law enforcement officials and participate in law enforcement investigations after learning about U and T visa protections.

15. The communities that CCIJ serves have limited trust with law enforcement officials, often due to past traumatic experiences with police in their home countries and/or in the U.S., and due to an understandable fear that interactions with law enforcement officials will lead to immigration consequences. We have represented and provided services to many survivors of crime who were afraid to report crime because they feared being detained or deported as a result. We have also encountered victims who did in fact suffer immigration consequences after reporting a crime to law enforcement. Over the course of the last ten months, the fragile trust between immigrant communities and law enforcement officials has only further eroded.

16. Our work with immigrant survivors of federal prison staff sexual assault exemplifies these trends. At FCI Dublin, abusive officers explicitly targeted undocumented women and threatened to alert ICE if survivors reported their abuse. As a result, for many years immigrant survivors were afraid to report staff sexual assault to prison officials and outside law enforcement agencies. After receiving immigration consultations and representation, many survivors did eventually come forward. Between January 2021 and December 2024, at least 12 noncitizen survivors of FCI Dublin staff sexual assault applied for a U or T visa. With the protection of a pending visa application and then-existing policies mandating discretion towards applicants of victim-based relief, many immigrant survivors remained in the U.S. and participated in a federal criminal investigation of FCI Dublin officials. Several testified against officials in federal criminal trials, and several others provided victim impact statements at sentencing hearings. Due in large part to the bravery and cooperation of immigrant survivors, nine FCI Dublin officials have now been convicted of sexually abusing women in their custody.

17. However, over the course of the past eight months, numerous survivors of crime who were previously incarcerated at FCI Dublin have been detained and deported, including one survivor of FCI Dublin staff sexual assault with a pending T visa. Between August 2021 and August 2024, at least 34 survivors of crime and/or trafficking incarcerated at FCI Dublin were granted prosecutorial discretion and released into the community at the end of their criminal sentences, instead of being

detained and/or deported. Since February 2025, CCIJ is not aware of a single case where ICE granted any form of discretion, including release, to an immigrant survivor of abuse in federal prison. As a result of these shifts, immigrant survivors of staff abuse have been more hesitant to report the crimes against them.

18. ICE Policy 11005.4 dismantled vital protections for immigrant survivors of crime. ICE Policy 11005.4 rescinded agency policies and practices that survivors, practitioners, and law enforcement officials have relied upon for years. The policy ended the longstanding practice of discretion towards applicants and beneficiaries of victim-based immigration relief, including ICE's practice of routinely requesting expedited processing and bona fide determinations for U and T visas, and regularly issuing administrative stays of removal for crime victims. The Trump administration offered no explanation for ending these commonsense protections.

19. ICE Policy Number 11005.4, and the resulting policies of immigration agents arresting people with deferred action and refusing to request prima facie determinations when people with pending U or T visas request stays of removal, frustrate and impair our mission and our core business activity of providing legal representation as we have been forced to spend additional time and energy serving crime victims who are no longer protected from detention or deportation.

20. As a result of this policy change, CCIJ has been forced to expend significant resources to seek protections for vulnerable clients and to prevent their detention and/or deportation from the United States. Recent experiences with two similarly situated clients demonstrate this change. CCIJ client's Ms. A and Ms. B are both survivors of heinous sexual abuse and sex trafficking by federal prison guards. Both were issued administrative removal orders prior to their release from prison, and both applied for T visas based on experiences of sex and labor trafficking. After Ms. A was detained by ICE in late 2024, CCIJ staff submitted an administrative request to ICE for release and relief from deportation while her T visa remained pending. ICE released Ms. A into the community in mid-January 2025 and is now reunited with her family and receiving services for trafficking survivors while her T visa remains pending. After Ms. B was detained by ICE in the summer of 2025, CCIJ staff submitted a similar request to ICE, which ICE

denied without explanation. CCIJ staff then spent significant time and energy working to prevent Ms. B's deportation. Staff represented Ms. B in a request for a Reasonable Fear Interview (RFI) to ICE, the RFI before the Asylum Office, a review of the RFI by an Immigration Judge, a request for reconsideration to the Asylum Office, and then a Petition for Review (PFR) and request for Emergency Stay of Removal to the federal circuit court, all of which were denied. Staff submitted multiple additional requests to ICE for discretion, including an application for an administrative Stay of Removal. ICE denied the stay, again without explanation, before any bona fide determination was made on Ms. B's application. ICE deported Ms. B in August of 2025, permanently separating her from her family and potentially rendering her ineligible for a T visa. As a direct result of ICE Policy Number 11005.4, CCIJ staff spent nearly 50 additional hours on Ms. B's case and are now effectively unable to represent our client.

21. As another example, several CCIJ clients with pending U and T visas have been released to the community and regularly attend check ins with ICE. These check ins are routine and have historically required little to no staff support. Since February 2025, and as a direct result of ICE's new policy, CCIJ now ensures that an attorney accompanies our clients with pending victim-based benefits to ICE check ins, meaning staff have to spend hours (up to an entire day) waiting at the ICE office with our clients, or spend time and effort to recruit and a partner organization to attend on our behalf. For particularly vulnerable clients with final orders of removal, CCIJ has recently begun preparing entire court and administrative filings to have on hand at ICE check ins, including preparing federal habeas corpus petitions and motions for temporary restraining orders, and requests for administrative stays of removal. In the last month alone, CCIJ staff have spent over 20 hours preparing federal court filings ahead of ICE check ins for clients with pending U and T visa clients, in anticipation of potential detention. In short, ICE's new policies towards crime victims have forced CCIJ staff to spend untold additional hours providing services to our clients.

22. CCIJ staff has also been forced to divert significant time and energy supporting immigrant survivors of crime through clinics and rapid response, including researching existing potential avenues for relief and protection, revising written

materials and templates for pro se clients to reflect ICE's new policy and practices, and providing additional consultations and legal advice to vulnerable crime victims.

23. To counteract the barriers imposed by ICE Policy Number 11005.4 and the policies it enabled, and to ensure that we continue carrying out our mission of providing legal representation to help fight for the liberation of immigrant detainees, CCIJ has been forced to divert additional time, money, and resources to legal representation and services. We have added additional staff in the last several months, and we are seeking funding specifically to support staffing our clinics and rapid response networks because we cannot sustain the demands for our time based on our current resources.

24. If it were not for the resources necessary to effectively represent our clients and carry out our mission in response to ICE Policy Number 11005.4 and the policies it enabled, CCIJ would have spent its time, money and resources on other matters that would advance our mission, such as our other policy and advocacy efforts. If we were not forced to spend so much time on existing clients with pending U and T visa applications, we would have been able to serve additional clients. If we were not forced to expend significant energy researching and providing advice and support to vulnerable crime victims in light of recent policy changes, we would be able to provide more consultations to unrepresented individuals.

I declare under penalty of perjury and under the laws of California and the United States of America that the foregoing is true and correct. Executed on this 9th day of October, 2025.

Signed: ______________________________

Susan Beaty