CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Immigration Center for Women and Children, et. al.,

Plaintiffs,

v.

Kristi Noem, et. al,

Defendants.

Case No.: 2:25-cv-09848-AB-AS

**DECLARATION OF ANGELICA SALAS IN SUPPORT OF PLAINTIFFS' MOTION FOR APA § 705 RELIEF AND PRELIMINARY INJUNCTION**

*Additional Counsel for Plaintiffs:*

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* Admitted pro hac vice

## DECLARATION OF ANGELICA SALAS

I, Angelica Salas, declare and state as follows:

1. My name is Angelica Salas, and I submit this declaration in support of Plaintiffs' Motion for APA § 705 Relief and Preliminary Injunction.

2. I am the Executive Director of the Coalition for Humane Immigrant Rights ("CHIRLA"). I have been working at CHIRLA for 30 years.

3. CHIRLA is a nonprofit and membership organization headquartered in Los Angeles, California, with eight offices throughout California. CHIRLA has approximately 52,142 active members across California. CHIRLA's membership includes U-Visa applicants.

4. CHIRLA was founded in 1986 to advance the human and civil rights of immigrants and refugees. CHIRLA's mission is to achieve a just society, fully inclusive of immigrants.

5. CHIRLA has a range of programs and initiatives geared towards supporting immigrant communities, including but not limited to: (1) Organizing & Leadership Development; (2) Policy & Advocacy; (3) Civic Engagement & Political Empowerment; (4) Legal Services; (5) Community Education & Outreach; and (6) Humanitarian Response and Migrant Assistance.

6. CHIRLA seeks to protect the constitutional and statutory rights of its immigrant members, including its U-Visa applicant members.

7. CHIRLA's community education team crafts presentations and materials and uses well-established networks to distribute them, helping immigrants understand (1) labor, civil, and human rights; (2) the policies and programs that affect them; and (3) civic action.

8. CHIRLA has been widely recognized as a community trusted organization in diverse communities throughout the state of California. This has been possible in great part to its robust and continued community education and outreach efforts in diverse communities across the state. Through its well-

attended community informative workshops, CHIRLA has been able to successfully engage, inform, and empower communities for nearly forty years. These workshops are delivered to communities across areas that include Los Angeles County, Orange County, San Bernardino and Riverside Counties, and Central Valley California regions. Our Immigration 101 workshops provide critical information to communities on a series of legal paths towards permanent residency and U.S. citizenship. These workshops have not only had a significant impact in many diverse communities, but it has established CHIRLA as a trusted community messenger organization.

9. In fact, CHIRLA provides community education concerning the U-Visa, T-Visa, and VAWA. These immigrant survivor-based visas are discussed in CHIRLA's "Path to Immigration 101" workshop. The "Path to Immigration 101" workshop is conducted primarily in-person, including at community events. In the last fiscal year, this workshop reached approximately 3,988 people, the majority of whom are undocumented. The purpose of the "Path to Immigration 101" workshop is to raise awareness within the community about the forms of immigration relief available, and to help folks understand who might be eligible for such relief. Further, the goal of this workshop is also to inform and encourage individuals to seek appropriate legal guidance.

10. Since February 2025, despite our reputation being built painstakingly over time, CHIRLA has observed a noticeable decline in attendance particularly among U-Visa and VAWA applicants to our Know Your Rights workshops. We attribute this squarely to ICE Policy Number 11005.4. This trend reflects heightened fear and palpable uncertainty in the communities we serve, with many community members now hesitant to attend these community workshops. Similarly, the noticeable decline in attendance undermines a broader community confidence in accessing vital information and resources for which they are eligible, often due to their immigration status, e.g. U-Visa applicants and VAWA self-petitioners.

11. CHIRLA is also recognized by the Board of Immigration Appeals and offers low-cost immigration legal services. Licensed attorneys supervise all legal staff, including accredited representatives and paralegals. CHIRLA's legal services include student assistance, removal defense, family-based

petitions, naturalization, and Deferred Action for Childhood Arrivals (DACA).

12. CHIRLA's Family Unity team offers legal representation to victims of crime applying for VAWA and U visas.

13. CHIRLA's Student Legal Services team also provides legal assistance to U visa petitioners and VAWA self-petitioners.

14. CHIRLA currently represents 269 clients with pending U visa applications with USCIS. Of CHIRLA's pending U-Visa clients, 110 have a bona fide determination from USCIS, approximately 37 have a waiting list determination, 137 have work permits, at least 11 have deferred action, 158 are waiting for a bona fide determination from USCIS, at least one has regular ICE check-ins, and 18 are in removal proceedings.

15. CHIRLA currently represents 7 clients who survived domestic violence from their spouses and have pending VAWA self-petitions. Of CHIRLA's pending VAWA clients, three have work permits, one has deferred action, and three have received prima facie determinations.

16. Since February 2025, several CHIRLA staff handling U-Visa and VAWA clientele have noticed an increased interest in assistance, but notably, after initial consultations, and entry into engagement contracts, an unusually high number have fallen out of these contracts or failed to follow up with our staff. Clients say this very directly, that they are now afraid of submitting their personal information to USCIS because of the new enforcement approach, exemplified by the new ICE Policy

17. One U-visa applicant client and their derivative child applicant were deported from the U.S. in late March or early April 2025 — before she received her bona fide determination. Other applicants who remain in the country are terrified of attending their biometrics appointments, assuming that these could be traps used to detain and deport them. This fear took root in the months following February 2025, as word spread among U Visa applicants that their protections had truly been stripped away – some of these individuals had initially believed this to be a false rumor. Our staff has dedicated additional resources to explaining these through the risks

associated with attending and not attending these appointments. This includes explaining that if they do not attend, the applications will be considered abandoned, further increasing the risk of deportation.

18. Contract openings with all clients, including U-visa clients, take a lot longer since February 2025 because it's more difficult for potential applicants to weigh the risks of applying. Knowing that USCIS can act as an enforcement agency deters people from deciding to pursue the U-visa, especially knowing the long wait time during which they'll be unprotected. One family in particular had a very hard time deciding whether they wanted to pursue the U-visa given the impact of ICE Policy Number 11005.4. In addition, between 5-10 clients have said that they are too afraid of submitting applications due to their own histories, which they fear would make them targets of ICE Policy Number 11005.4.

19. Two of our clients have been deported pursuant to ICE Policy Number 11005.4 and our relationships with them and their derivatives have been terminated as CHIRLA, due to the requirements of the grants that fund our work, cannot represent them unless they are in California.

20. Immigrant survivors of domestic violence have shared with CHIRLA that they did not want to report their abuser for fear of enforcement.

21. ICE Policy Number 11005.4 interferes with and frustrates our mission and our core business activities of providing legal representation and community education by instilling so much fear and stress in our clients that some no longer feel it is safe or worthwhile to seek CHIRLA's services. We have also noticed that clients who in the past would have been strong U Visa candidates are now declining to report crimes against them to the police due to a fear of authority figures that was not there before, now that they know they do not enjoy the protections that a U Visa application once provided.

22. To counteract the barriers imposed by ICE Policy Number 11005.4, and to ensure that we continue carrying out our mission and core business activities of community education and outreach, CHIRLA has been forced to divert its substantial time, money, and operational capacity to reestablish community trust and access to services and resources that are critical to its target

audiences. CHIRLA has developed new community outreach formats that demand significantly more time, operational cost and personnel capacity. For example, our Know Your Rights curriculum has had to be revised to account for the new threat environment for U-Visa and VAWA applicants at the same time as efforts to reach them in the first place and to organize these workshops in a way that makes these attendees comfortable enough to attend have had to be greatly strengthened.

23. For our legal services, it is the same story. Everything takes longer now due to the fear that going through the U Visa application process and engaging in any necessary follow up could lead to the applicant being arrested and deported. What used to be a 5-minute process of e.g. picking up documents, many clients now want to sit down and be reassured that it is not risky for them to go through this process, but we cannot offer them such assurances in light of ICE Policy Number 11005.4. Instead, we spend, in some cases, 30 minutes to an hour telling them what they can expect in terms of the increased risk environment around applying and having contact with government officials and offices and speaking to their fears. It is simply a lot harder for clients to make informed decisions about what to do with their cases, and the time to get them to a place where they can make decisions has increased many times over. In addition, we have to do more research on some clients' cases than we would have had to do prior to ICE Policy Number 11005.4 in order to assess if and how the risks faced by that particular client have changed in light of the Policy. Moreover, the increased risk facing U Visa applicants and VAWA self-petitioners makes it challenging to gain a client's basic trust when our staff have previously said one thing at a meeting, only to have it be contradicted due to policy changes and their implementation.

24. If it were not for the resources necessary to represent our clients and educate survivors of crime and domestic violence and carry out our mission in response to ICE Policy Number 11005.4, CHIRLA would have spent its time, money, and resources on other matters, that would advance our mission, including by investing in our other programs and initiatives, and representing more immigrants who need our services.

25. CHIRLA also has several members with pending U visa petitions who have been impacted by ICE Policy Number 11005.4.

**CHIRLA MEMBER #1**

26. One member is the derivative child of a U-Visa principal petitioner, i.e. his mother. This member first came to the United States with his mother back in April 2019, when he was just eleven years old. This member has not left the United States since. Since age 11, he has attended school in the United States. This member is now 17 years old. After high school, he dreams of pursuing higher education for a better life. In the United States, he lives with his mother and his four siblings. His youngest sibling is 3 and was born in the United States. The second-youngest sibling is 9, the third-youngest sibling is 13, and his oldest sibling is 19 and has a developmental disability. Apart from attending high school, he helps take care of the household and his siblings.

27. Around July 2023, the member's mother survived an armed robbery/felonious assault. His mother gave a statement to responding officers and told them that she would be willing to testify in court if needed. Due in part to her cooperation, the suspect was arrested for the armed robbery, and nine other related robberies.

28. As a result of ICE Policy Number 11005.4, and after February 2025, this member and his family are very fearful of deportation; this fear has substantially increased since the beginning of the Trump administration.

29. Since February 2025, this member is very fearful that any contact with law enforcement could put them at risk of deportation.

30. Despite having received a BFD and employment authorization in August 2025 by USCIS, this member is fearful that their pending U-Visa application and deferred action will not protect them from immigration enforcement.

31. Since February 2025, this member has been scared to leave his home. This fear was particularly pronounced around June 2025. This fear of detention

caused him to miss a week of school at the beginning of his school year. Unless necessary, this member tries to avoid leaving his home.

32. This member has a master calendar hearing scheduled for November 19, 2025. He wants to attend his hearing, as required, but he is scared that he and his mother will be detained upon their court appearance.

**CHIRLA MEMBER #2**

33. Another CHIRLA member is a U-visa petitioner. She has a signed lease in Los Angeles, California. In April 2025, she got married to a U.S. citizen. She runs her own housekeeping business and has three United States Citizen children. Her 18-year-old child attends university in the United States. Her 14-year-old and 15-year-old children attend high school in the United States. This member attends their respective high school parent meetings.

34. As a result of ICE Policy Number 11005.4 and after February 2025, this member fears arrest, detention, and deportation. For her removal case, her private attorney received a motion to reopen her administratively closed case.

35. Since February 2025, this member has witnessed, from her balcony, an incident where ICE went to a King Taco directly below her apartment in Los Angeles, California. To maintain safety, she closed the door.

36. Since February 2025, this member has not gone out on the weekends as much, has encouraged her kids to go out without her, has changed her work schedule to go out early in the morning or very late at night, has stopped taking her kids to school (the children take a bus instead), and a client of hers buys her groceries every week.

**CHIRLA MEMBER #3**

37. This member is a U-visa applicant, and the indirect victim of sexual assault committed against her minor daughter. She was instrumental in supporting her daughter through the investigation and reporting of her crime. She is the single mother of two daughters, the youngest of whom is currently attending high school in the United States. She works as a street vendor and housekeeper. She is the sole provider of her family.

38. Since June 2025, the increase in immigration enforcement and raids have caused this member significant financial hardship. For instance, she has been unable to sell her tamales due to fear of ICE activity. Due to her fears with ICE, it's been impossible to set up her vending station and her housekeeping work has become unstable. Despite her fear of deportation, she has needed to take the risk to go outside to make a living. She's currently facing the possibility of eviction because she's two months behind on rent.

39. This member understands that now, under the Trump administration, her U-Visa application cannot protect her from detention or deportation, even though previously U-Visa applicants were supposed to be afforded this protection.

40. This member has received word of immigration enforcement actions occurring in her neighborhood.

41. Since June 2025, she lives in constant fear of deportation as a result of ICE Policy Number 11005.4 stripping her of key legal protections.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing statements are true and correct. Executed on this 14th day of November 2025, in Los Angeles, California.

Dated: November 14, 2025 Respectfully submitted,

_*/s/ Angelica Salas*_________________
Angelica Salas