CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br>v.<br><br>Kristi Noem, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**DECLARATION OF ERIKA CERVANTES IN SUPPORT OF PLAINTIFFS' MOTION FOR APA § 705 RELIEF AND INDIVIDUAL AND CLASSWIDE PRELIMINARY INJUNCTION** |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

## DECLARATION OF ERIKA CERVANTES

I, Erika Cervantes, hereby declare:

1. I have personal knowledge of the facts set forth below and, if called to testify, I could and would do so competently.
2. I am a Staff Attorney with the Center for Human Rights and Constitutional Law.
3. Attached as **Exhibit A** to this declaration is a true and correct copy of the October 24, 2005 Memorandum from Principal Legal Advisor William J. Howard to all OPLA Chief Counsel regarding "Prosecutorial Discretion", which is also available at https://assets.aila.org/files/ba37ab61-8afb-474f-b866-b77ef53e12c2/06050511.pdf?1697590115.
4. Attached as **Exhibit B** to this declaration is a true and correct copy of the February 1, 2007 Memorandum from Principal Legal Advisor William J. Howard to all OPLA Chief Counsel regarding the "VAWA 2005 Amendments to the Immigration and Nationality Act and 8 U.S.C. § 1367", which is also available at https://www.ice.gov/doclib/foia/policy/memoVAWA_2005_INA_Amendments_02.01.2007.pdf.
5. Attached as **Exhibit C** to this declaration is a true and correct copy of the September 24, 2009 Memorandum from Acting Director David J. Venturella to Field Office Directors regarding "Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants", which is also available at https://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf.
6. Attached as **Exhibit D** to this declaration is a true and correct copy of the September 25, 2009 Memorandum from Principal Legal Advisor Peter S. Vincent to OPLA Attorneys concerning "Guidance Regarding U

Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal", which is also available at https://www.ice.gov/doclib/foia/dro_policy_memos/vincent_memo.pdf.

7. Attached as **Exhibit E** to this declaration is a true and correct copy of the June 17, 2011 Memorandum from Director John Morton to all Field Office Directors, all Special Agents in Charge, and all Chief Counsel Regarding "Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs." This Memorandum is also known as ICE Policy Statement 10076.1, which is also available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf.

8. Attached as **Exhibit F** to this declaration is a true and correct copy of the August 2, 2019 ICE Directive 11005.2: Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners, which is also available at https://www.ice.gov/doclib/foia/policy/11005.2_StayRemovalReqRemProcUVisaPetitioners.pdf.

9. Attached as **Exhibit G** to this declaration is a true and correct copy of the December 2, 2021 ICE Directive 11005.3: Using a Victim-Centered Approach with Noncitizen Crime Victims, which is also available at https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf.

10. Attached as **Exhibit H** to this declaration is a true and correct copy of the January 30, 2025 Memorandum from Acting Director Caleb Vitello to all ICE Employees regarding "Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits." This Memorandum is also known as ICE Policy Number 11005.4, which is available at https://www.ice.gov/doclib/foia/policy/11005.4.pdf.

11. Attached as **Exhibit I** to this declaration is a true and correct copy of the Department of Homeland Security's U and T Visa Law Enforcement Resource Guide for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors, Judges, and Other Government Agencies, available at https://niwaplibrary.wcl.american.edu/wp-content/uploads/DHS-U-and-T-Visa-Law-Enforcement-Resource-Guide-11.30.15.pdf.
12. Attached as **Exhibit J** to this declaration is a true and correct copy of the Law Enforcement Immigration Task Force's ("LEITF") November 10, 2025 Press Release titled, "Deportations of U Visa Petitioners Undermine Law Enforcement Work."
13. Attached as **Exhibit K** to this declaration is a true and correct copy of the USCIS Policy Manual, Volume 3, Part B, Chapter 1, Victims of Trafficking: Purpose and Background.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing statements are true and correct. Executed on this 14th day of November, 2025, in Los Angeles, California.

Dated: November 14, 2025 Respectfully submitted,

_*/s/ Erika Cervantes*_________________
Erika Cervantes

# EXHIBIT A

*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

October 24, 2005

MEMORANDUM FOR: All OPLA Chief Counsel

FROM: William J. Howard
Principal Legal Advisor

SUBJECT: Prosecutorial Discretion

As you know, when Congress abolished the Immigration and Naturalization Service and divided its functions among U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (CIS), the Office of the Principal Legal Advisor (OPLA) was given exclusive authority to prosecute all removal proceedings. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 442(c), 116 Stat. 2135, 2194 (2002) ("the legal advisor * * * shall represent the bureau in all exclusion, deportation, and removal proceedings before the Executive Office for Immigration Review"). Complicating matters for OPLA is that our cases come to us from CBP, CIS, and ICE, since all three bureaus are authorized to issue Notices to Appear (NTAs).

OPLA is handling about 300,000 cases in the immigration courts, 42,000 appeals before the Board of Immigration Appeals (BIA or Board), and 12,000 motions to reopen each year. Our circumstances in litigating these cases differ in a major respect from our predecessor, the INS's Office of General Counsel. Gone are the days when INS district counsels, having chosen an attorney-client model that required client consultation before INS trial attorneys could exercise prosecutorial discretion, could simply walk down the hall to an INS district director, immigration agent, adjudicator, or border patrol officer to obtain the client's permission to proceed with that exercise. Now NTA-issuing clients or stakeholders might be in different agencies, in different buildings, and in different cities from our own.

Since the NTA-issuing authorities are no longer all under the same roof, adhering to INS OGC's attorney-client model would minimize our efficiency. This is particularly so since we are litigating our hundreds of thousands of cases per year with only 600 or so attorneys; that our case preparation time is extremely limited, averaging about 20 minutes a case; that our caseload will increase since Congress is now providing more resources for border and interior immigration enforcement; that many of the cases that come to us from NTA-issuers lack supporting evidence like conviction documents; that we must prioritize our cases to allow us to place greatest emphasis on our national security and criminal alien dockets; that we have growing collateral duties such as

assisting the Department of Justice with federal court litigation; that in many instances we lack sufficient staff to adequately brief Board appeals or oppositions to motions to reopen; and that the opportunities to exercise prosecutorial discretion arise at many different points in the removal process.

To elaborate on this last point, the universe of opportunities to exercise prosecutorial discretion is large. Those opportunities arise in the pre-filing stage, when, for example, we can advise clients who consult us whether or not to file NTAs or what charges and evidence to base them on. They arise in the course of litigating the NTA in immigration court, when we may want, among other things, to move to dismiss a case as legally insufficient, to amend the NTA, to decide not to oppose a grant of relief, to join in a motion to reopen, or to stipulate to the admission of evidence. They arise after the immigration judge has entered an order, when we must decide whether to appeal all or part of the decision. Or they may arise in the context of DRO's decision to detain aliens, when we must work closely with DRO in connection with defending that decision in the administrative or federal courts. In the 50-plus immigration courtrooms across the United States in which we litigate, OPLA's trial attorneys continually face these and other prosecutorial discretion questions. Litigating with maximum efficiency requires that we exercise careful yet quick judgment on questions involving prosecutorial discretion. This will require that OPLA's trial attorneys become very familiar with the principles in this memorandum and how to apply them.

Further giving rise to the need for this guidance is the extraordinary volume of immigration cases that is now reaching the United States Courts of Appeals. Since 2001, federal court immigration cases have tripled. That year, there were 5,435 federal court cases. Four years later, in fiscal year 2004, that number had risen to 14,699 federal court cases. Fiscal year 2005 federal court immigration cases will approximate 15,000. The lion's share of these cases consists of petitions for review in the United States Courts of Appeal. Those petitions are now overwhelming the Department of Justice's Office of Immigration Litigation, with the result that the Department of Justice has shifted responsibility to brief as many as 2,000 of these appellate cases to other Departmental components and to the U.S. Attorneys' Offices. This, as you know, has brought you into greater contact with Assistant U.S. Attorneys who are turning to you for assistance in remanding some of these cases. This memorandum is also intended to lessen the number of such remand requests, since it provides your office with guidance to assist you in eliminating cases that would later merit a remand.

Given the complexity of immigration law, a complexity that federal courts at all levels routinely acknowledge in published decisions, your expert assistance to the U.S. Attorneys is critical.[1] It is all the more important because the decision whether to

---

[1] As you know, if and when your resources permit it, I encourage you to speak with your respective United States Attorneys' Offices about having those Offices designate Special Assistant U.S. Attorneys from OPLA's ranks to handle both civil and criminal federal court immigration litigation. The U.S.

proceed with litigating a case in the federal courts must be gauged for reasonableness, lest, in losing the case, the courts award attorneys' fees against the government pursuant to the Equal Access to Justice Act, 28 U.S.C. 2412. In the overall scheme of litigating the removal of aliens at both the administrative and federal court level, litigation that often takes years to complete, it is important that we all apply sound principles of prosecutorial discretion, uniformly throughout our offices and in all of our cases, to ensure that the cases we litigate on behalf of the United States, whether at the administrative level or in the federal courts, are truly worth litigating.

* * * * * * * * * *

With this background in mind, I am directing that all OPLA attorneys apply the following principles of prosecutorial discretion:

**1) Prosecutorial Discretion Prior to or in Lieu of NTA Issuance:**

In the absence of authority to cancel NTAs, we should engage in client liaison with CBP, CIS (and ICE) via, or in conjunction with, CIS/CBP attorneys on the issuance of NTAs. We should attempt to discourage issuance of NTAs where there are other options available such as administrative removal, crewman removal, expedited removal or reinstatement, clear eligibility for an immigration benefit that can be obtained outside of immigration court, or where the desired result is other than a removal order.

It is not wise or efficient to place an alien into proceedings where the intent is to allow that person to remain unless, where compelling reasons exist, a stayed removal order might yield enhanced law enforcement cooperation. See Attachment A (Memorandum from Wesley Lee, ICE Acting Director, Office of Detention and Removal, Alien Witnesses and Informants Pending Removal (May 18, 2005)); see also Attachment B (Detention and Removal Officer's Field Manual, Subchapters 20.7 and 20.8, for further explanation on the criteria and procedures for stays of removal and deferred action).

Examples:

- **Immediate Relative of Service Person-** If an alien is an immediate relative of a military service member, a favorable exercise of discretion, including not issuing an NTA, should be a prime consideration. Military service includes current or former members of the Armed Forces, including: the United States Army, Air Force, Navy, Marine Corps, Coast Guard, or National Guard, as well as service in the Philippine Scouts. OPLA counsel should analyze possible eligibility for citizenship under

---

Attorneys' Offices will benefit greatly from OPLA SAUSAs, especially given the immigration law expertise that resides in each of your Offices, the immigration law's great complexity, and the extent to which the USAOs are now overburdened by federal immigration litigation.

sections 328 and 329. See Attachment C (Memorandum from Marcy M. Forman, Director, Office of Investigations, Issuance of Notices to Appeal, Administrative Orders of Removal, or Reinstatement of a Final Removal Order on Aliens with United States Military Service (June 21, 2004)).

- **Clearly Approvable I-130/I-485-** Where an alien is the potential beneficiary of a clearly approvable I-130/I-485 and there are no serious adverse factors that otherwise justify expulsion, allowing the alien the opportunity to legalize his or her status through a CIS-adjudicated adjustment application can be a cost-efficient option that conserves immigration court time and benefits someone who can be expected to become a lawful permanent resident of the United States. See Attachment D (Memorandum from William J. Howard, OPLA Principal Legal Advisor, Exercising Prosecutorial Discretion to Dismiss Adjustment Cases (October 6, 2005)).

- **Administrative Voluntary Departure-** We may be consulted in a case where administrative voluntary departure is being considered. Where an alien is eligible for voluntary departure and likely to depart, OPLA attorneys are encouraged to facilitate the grant of administrative voluntary departure or voluntary departure under safeguards. This may include continuing detention if that is the likely end result even should the case go to the Immigration Court.

- **NSEERS Failed to Register-** Where an alien subject to NSEERS registration failed to timely register but is otherwise in status and has no criminal record, he should not be placed in proceedings if he has a reasonable excuse for his failure. Reasonably excusable failure to register includes the alien's hospitalization, admission into a nursing home or extended care facility (where mobility is severely limited); or where the alien is simply unaware of the registration requirements. See Attachment E (Memorandum from Victor Cerda, OPLA Acting Principal Legal Advisor, Changes to the National Security Entry Exit Registration System (NSEERS)(January 8, 2004)).

- **Sympathetic Humanitarian Factors-** Deferred action should be considered when the situation involves sympathetic humanitarian circumstances that rise to such a level as to cry for an exercise of prosecutorial discretion. Examples of this include where the alien has a citizen child with a serious medical condition or disability or where the alien or a close family member is undergoing treatment for a potentially life threatening disease. DHS has the most prosecutorial discretion at this stage of the process.

2) **Prosecutorial Discretion after the Notice to Appear has issued, but before the Notice to Appear has been filed:**

We have an additional opportunity to appropriately resolve a case prior to expending court resources when an NTA has been issued but not yet filed with the immigration court. This would be an appropriate action in any of the situations

identified in #1. Other situations may also arise where the reasonable and rational decision is not to prosecute the case.

Example:

- **U or T visas**- Where a "U" or "T" visa application has been submitted, it may be appropriate not to file an NTA until a decision is made on such an application. In the event that the application is denied then proceedings would be appropriate.

**3) Prosecutorial Discretion after NTA Issuance and Filing:**

The filing of an NTA with the Immigration Court does not foreclose further prosecutorial discretion by OPLA Counsel to settle a matter. There may be ample justification to move the court to terminate the case and to thereafter cancel the NTA as improvidently issued or due to a change in circumstances such that continuation is no longer in the government interest.[2] We have regulatory authority to dismiss proceedings. Dismissal is by regulation without prejudice. See 8 CFR §§ 239.2(c), 1239.2(c). In addition, there are numerous opportunities that OPLA attorneys have to resolve a case in the immigration court. These routinely include not opposing relief, waiving appeal or making agreements that narrow issues, or stipulations to the admissibility of evidence. There are other situations where such action should also be considered for purposes of judicial economy, efficiency of process or to promote justice.

Examples:

---

[2] Unfortunately, DHS's regulations, at 8 C.F.R. 239.1, do not include OPLA's attorneys among the 38 categories of persons given authority there to issue NTAs and thus to cancel NTAs. That being said, when an OPLA attorney encounters an NTA that lacks merit or evidence, he or she should apprise the issuing entity of the deficiency and ask that the entity cure the deficiency as a condition of OPLA's going forward with the case. If the NTA has already been filed with the immigration court, the OPLA attorney should attempt to correct it by filing a form I-261, or, if that will not correct the problem, should move to dismiss proceedings without prejudice. We must be sensitive, particularly given our need to prioritize our national security and criminal alien cases, to whether prosecuting a particular case has little law enforcement value to the cost and time required. Although we lack the authority to sua sponte cancel NTAs, we can move to dismiss proceedings for the many reasons outlined in 8 CFR § 239.2(a) and 8 CFR § 1239.2(c). Moreover, since OPLA attorneys do not have independent authority to grant deferred action status, stays of removal, parole, etc., once we have concluded that an alien should not be subjected to removal, we must still engage the client entity to "defer" the action, issue the stay or initiate administrative removal.

- **Relief Otherwise Available**- We should consider moving to dismiss proceedings without prejudice where it appears in the discretion of the OPLA attorney that relief in the form of adjustment of status appears clearly approvable based on an approvable I-130 or I-140 and appropriate for adjudication by CIS. See October 6, 2005 Memorandum from Principal Legal Advisor Bill Howard, supra. Such action may also be appropriate in the special rule cancellation NACARA context. We should also consider remanding a case to permit an alien to pursue naturalization.[3] This allows the alien to pursue the matter with CIS, the DHS entity with the principal responsibility for adjudication of immigration benefits, rather than to take time from the overburdened immigration court dockets that could be expended on removal issues.

- **Appealing Humanitarian Factors**- Some cases involve sympathetic humanitarian circumstances that rise to such a level as to cry for an exercise of prosecutorial discretion. Examples of this, as noted above, include where the alien has a citizen child with a serious medical condition or disability or where the alien or a close family member is undergoing treatment for a potentially life threatening disease. OPLA attorneys should consider these matters to determine whether an alternative disposition is possible and appropriate. Proceedings can be reinstituted when the situation changes. Of course, if the situation is expected to be of relatively short duration, the Chief Counsel Office should balance the benefit to the Government to be obtained by terminating the proceedings as opposed to administratively closing proceedings or asking DRO to stay removal after entry of an order.

- **Law Enforcement Assets/CIs**- There are often situations where federal, State or local law enforcement entities desire to have an alien remain in the United States for a period of time to assist with investigation or to testify at trial. Moving to dismiss a case to permit a grant of deferred action may be an appropriate result in these circumstances. Some offices may prefer to administratively close these cases, which gives the alien the benefit of remaining and law enforcement the option of calendaring proceedings at any time. This may result in more control by law enforcement and enhanced cooperation by the alien. A third option is a stay.

4) **Post-Hearing Actions**:

Post-hearing actions often involve a great deal of discretion. This includes a decision to file an appeal, what issues to appeal, how to respond to an alien's appeal, whether to seek a stay of a decision or whether to join a motion to reopen. OPLA

[3] Once in proceedings, this typically will occur only where the alien has shown prima facie eligibility for naturalization and that his or her case involves exceptionally appealing or humanitarian factors. 8 CFR §1239.1(f). It is improper for an immigration judge to terminate proceedings absent an affirmative communication from DHS that the alien would be eligible for naturalization but for the pendency of the deportation proceeding. Matter of Cruz, 15 I&N Dec. 236 (BIA 1975); see Nolan v. Holmes, 334 F.3d 189 (2d Cir. 2003) (Second Circuit upholds BIA's reliance on Matter of Cruz when petitioner failed to establish prima facie eligibility.).

attorneys are also responsible for replying to motions to reopen and motions to reconsider. The interests of judicial economy and fairness should guide your actions in handling these matters.

Examples:

- **Remanding to an Immigration Judge or Withdrawing Appeals-** Where the appeal brief filed on behalf of the alien respondent is persuasive, it may be appropriate for an OPLA attorney to join in that position to the Board, to agree to remand the case back to the immigration court, or to withdraw a government appeal and allow the decision to become final.

- **Joining in Untimely Motions to Reopen-** Where a motion to reopen for adjustment of status or cancellation of removal is filed on behalf of an alien with substantial equities, no serious criminal or immigration violations, and who is legally eligible to be granted that relief except that the motion is beyond the 90-day limitation contained in 8 C.F.R. § 1003.23, strongly consider exercising prosecutorial discretion and join in this motion to reopen to permit the alien to pursue such relief to the immigration court.

- **Federal Court Remands to the BIA-** Cases filed in the federal courts present challenging situations. In a habeas case, be very careful to assess the reasonableness of the government's detention decision and to consult with our clients at DRO. Where there are potential litigation pitfalls or unusually sympathetic fact circumstances and where the BIA has the authority to fashion a remedy, you may want to consider remanding the case to the BIA. Attachments H and I provide broad guidance on these matters. Bring concerns to the attention of the Office of the United States Attorney or the Office of Immigration Litigation, depending upon which entity has responsibility over the litigation. See generally Attachment F (Memorandum from OPLA Appellate Counsel, U.S. Attorney Remand Recommendations (rev. May 10, 2005)); see also Attachment G (Memorandum from Thomas W. Hussey, Director, Office of Immigration Litigation, U.S. Department of Justice, Remand of Immigration Cases (Dec. 8, 2004)).

- **In absentia orders.** Reviewing courts have been very critical of in absentia orders that, for such things as appearing late for court, deprive aliens of a full hearing and the ability to pursue relief from removal. This is especially true where court is still in session and there does not seem to be any prejudice to either holding or rescheduling the hearing for later that day. These kinds of decisions, while they may be technically correct, undermine respect for the fairness of the removal process and cause courts to find reasons to set them aside. These decisions can create adverse precedent in the federal courts as well as EAJA liability. OPLA counsel should be mindful of this and, if possible, show a measured degree of flexibility, but

only if convinced that the alien or his or her counsel is not abusing the removal court process.

5) **Final Orders- Stays and Motions to Reopen/Reconsider:**

Attorney discretion doesn't cease after a final order. We may be consulted on whether a stay of removal should be granted. See Attachment B (Subchapter 20.7). In addition, circumstances may develop whether the proper and just course of action would be to move to reopen the proceeding for purposes of terminating the NTA.

Examples:

- **Ineffective Assistance**- An OPLA attorney is presented with a situation where an alien was deprived of an opportunity to pursue relief, due to incompetent counsel, where a grant of such relief could reasonably be anticipated. It would be appropriate, assuming compliance with Matter of Lozada, to join in or not oppose motions to reconsider to allow the relief applications to be filed.
- **Witnesses Needed, Recommend a Stay**- State law enforcement authorities need an alien as a witness in a major criminal case. The alien has a final order and will be removed from the United States before trial can take place. OPLA counsel may recommend that a stay of removal be granted and this alien be released on an order of supervision.

* * * * * * * * * * *

Prosecutorial discretion is a very significant tool that sometimes enables you to deal with the difficult, complex and contradictory provisions of the immigration laws and cases involving human suffering and hardship. It is clearly DHS policy that national security violators, human rights abusers, spies, traffickers both in narcotics and people, sexual predators and other criminals are removal priorities. It is wise to remember that cases that do not fall within these categories sometimes require that we balance the cost of an action versus the value of the result. Our reasoned determination in making prosecutorial discretion decisions can be a significant benefit to the efficiency and fairness of the removal process.

**Official Use Disclaimer:**

This memorandum is protected by the Attorney/Client and Attorney Work product privileges and is for Official Use Only. This memorandum is intended solely to provide legal advice to the Office of the Chief Counsels (OCC) and their staffs regarding the appropriate and lawful exercise of prosecutorial discretion, which will lead to the efficient management of resources. It is not intended to, does not, and may not be relied upon to create or confer any right(s) or benefit(s), substantive or procedural, enforceable at law by any individual or other party in

removal proceedings, in litigation with the United States, or in any other form or manner. Discretionary decisions of the OCC regarding the exercise of prosecutorial discretion under this memorandum are final and not subject to legal review or recourse. Finally this internal guidance does not have the force of law, or of a Department of Homeland Security Directive.

# EXHIBIT B

*Office of the Principal Legal Advisor*

U.S. Department of Homeland Security
425 I Street, NW, Room 6100
Washington, DC 20536

U.S. Immigration and Customs Enforcement

February 1, 2007

MEMORANDUM FOR All OPLA Chief Counsel

FROM: William J. Howard
Principal Legal Advisor

SUBJECT: VAWA 2005 Amendments to the Immigration and Nationality Act and 8 U.S.C. § 1367.

On January 5, 2006, President Bush signed into law the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat 2960 (2006) (VAWA 2005). This lengthy bill contained a variety of provisions affecting the work of the Department of Homeland Security (DHS), and particularly U.S. Immigration and Customs Enforcement (ICE). These new amendments and provisions of law affect a variety of cases, including cases not specifically involving domestic violence.

This memorandum provides information on the significant changes made primarily by title VIII of VAWA 2005 to the Immigration and Nationality Act (INA) and other related provisions of law, and identifies the corresponding practice considerations and decisions facing ICE attorneys. For example, special care should be taken to comply with confidentiality provisions.

Because the new amendments and provisions of law are both technical and numerous, background information such as legislative history has been placed in endnotes to this memorandum. Unless specifically noted, the changes discussed herein went into effect on January 5, 2006. A complete copy of VAWA 2005 is available in the Legislative Counsel folder on DocuShare at (b)(7)(E). Questions regarding this guidance should be directed in the first instance to your Chief Counsel or Deputy Chief Counsel, who may in turn refer questions to the Enforcement Law Division of the Office of the Principal Legal Advisor (OPLA) at (202) 514-(b)(6),(b)(7)(C)

*This memorandum is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any third party in any manner, civil or criminal. It does not place any limitations on otherwise lawful activities of the agency.*

## 1 INA § 101(a) – VAWA Self-Petitioner Definition Added

**1.1 TECHNICAL CHANGE:** VAWA 2005 defines a new category of aliens in the INA: the VAWA self-petitioner. VAWA 2005 § 811 adds a new INA § 101(a)(51), which reads as follows:

> (51) The term "VAWA self-petitioner" means an alien, or a child of the alien, who qualifies for relief under—
> (A) clause (iii), (iv), or (vii) of section [204(a)(1)(A)];
> (B) clause (ii) or (iii) of section [204(a)(1)(B)];
> (C) section [216(c)(4)(C)];
> (D) the first section of Pub. L. 89-732 (8 U.S.C. § 1255 note) [80 Stat. 1161 (1966)] (commonly known as the Cuban Adjustment Act) as a child or spouse who has been battered or subjected to extreme cruelty;
> (E) section 902(d)(1)(B) of the Haitian Refugee Immigration Fairness Act of 1998 [(HRIFA)] (8 U.S.C. § 1255 note)[, Pub. L. No. 105-277, § 901, 112 Stat. 2681, 2681-538 (1998)];
> (F) section 202(d)(1) of the Nicaraguan Adjustment and Central American Relief Act [(NACARA), Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997)]; or
> (G) section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [(IIRIRA),] (division C of Pub. L. 104-208) [110 Stat. 3009, 3009-546 (1996

**1.2 PRACTICE CONSIDERATIONS:** OPLA Assistant Chief Counsels (ACCs) should be aware of the various statutory provisions under which an alien may qualify for VAWA self-petitioner status. Specifically, ACCs should review the possible applicability of VAWA when working with cases involving:

1. Alien spouses (and their children) of United States citizens, or those whose marriage was not legitimate because of the citizen's bigamy, who have been battered or subject to extreme cruelty. (INA § 204(a)(1)(A)(iii));
2. Alien children of United States citizens who have been battered or subject to extreme cruelty by the citizen. (INA § 204(a)(1)(A)(iv));
3. Alien parents of United States citizens who have been battered or subject to extreme cruelty by the citizen. (INA § 204(a)(1)(A)(vii));[i]
4. Alien spouses (and their children) of Lawful Permanent Residents, or those whose marriage was not legitimate because of the LPR's bigamy, who have been battered or subject to extreme cruelty. (INA § 204(a)(1)(B)(ii));
5. Alien children of LPRs who have been battered or subject to extreme cruelty by the LPRs. (INA § 204(a)(1)(B)(iii));

6. Aliens who were given conditional permanent resident status under INA § 216 and who receive a hardship waiver removing the conditions of such status based upon battery or extreme cruelty by the United States citizen or LPR spouse who petitioned for the alien. (INA § 216(c)(4)(C));
7. Cuban spouses or children who have been battered or subjected to extreme cruelty;
8. Spouses, children, and unmarried sons and daughters of aliens whose status was adjusted to that of an alien lawfully admitted for permanent residence under HRIFA § 902(a), as well as spouses and children battered or subject to extreme cruelty by a HRIFA § 902(a) alien;[ii]
9. Spouses, children, and unmarried sons and daughters of aliens whose status was adjusted to that of an alien lawfully admitted for permanent residence under NACARA § 202(a), as well as spouses and children battered or subject to extreme cruelty by a NACARA § 202(a) alien; [iii] and
10. Aliens eligible for repapering, or all aliens eligible for pre-IIRIRA suspension of deportation under NACARA § 203.[iv]

## 2 INA § 101(f) – Good Moral Character Definition Changed

**2.1 TECHNICAL CHANGE:** VAWA 2005 § 822 alters a previously incorrectly cited section precluding an alien from establishing "good moral character" under INA § 101(f)[v] by changing the precluded section from INA § 212(a)(9)(A) – *i.e.*, aliens who were inadmissible because of a previous deportation or removal – to INA § 212(a)(10)(A) – practicing polygamists. INA § 101(f)(3) now renders aliens ineligible to establish good moral character if they are inadmissible under INA § 212(a)(10)(A) as practicing polygamists. *See* VAWA 2005 § 822(c)(1); INA § 212(a)(10)(A). Conversely, the technical correction now allows aliens who were inadmissible under INA § 212(a)(9)(A) – *i.e.*, aliens who were inadmissible because of a previous deportation or removal – to establish good moral character. This change is retroactive to 1990 as if included in § 603(a)(1) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 5082 (1990). *See* VAWA 2005 § 822(c)(2).

**2.2 PRACTICE CONSIDERATIONS:** As a result of this change, aliens who are inadmissible under INA § 212(a)(10)(A) are no longer eligible for relief from removal that involves a good moral character requirement, such as cancellation of removal, most VAWA relief, or voluntary departure at the conclusion of removal proceedings, unless they meet the criteria for a waiver under INA §§ 204(a)(1)(C) or 240A(b)(2)(C). INA §§ 204(a)(1)(C) and 240A(b)(2)(C) permit an alien to qualify for good moral character provided the act or conviction was connected to the alien's having been battered or subjected to extreme cruelty, although certain bars may continue to apply.

## 3 8 U.S.C. § 1367 – Confidentiality and Prohibited Sole Source Provisions Relating to VAWA Aliens

**3.1 TECHNICAL CHANGES:** VAWA 2005 makes several key changes to the confidentiality and prohibited sole source provisions relating to aliens who seek immigration benefits based upon domestic violence, trafficking, or certain other statutorily enumerated crimes.

**3.1.1** With the passage of § 384 of IIRIRA, Congress imposed strict confidentiality provisions on the Attorney General. This provision, codified at 8 U.S.C. § 1367(a)(2) but commonly referred to as the § 384 confidentiality provision, prohibits disclosure (other than to a "sworn officer or employee of [DHS])" of "any information" relating to an alien who is an applicant for relief under provisions of the INA relating to domestic violence – § 101(a)(51), trafficking under 101(a)(15)(T), or violent crime under 101(a)(15)(U) – from the time the application for relief is submitted until such time as "the application for relief is denied and all opportunities for appeal of the denial have been exhausted." 8 U.S.C. § 1367(a)(2). There are limited exceptions to this broad confidentiality provision set forth in 8 U.S.C. § 1367(b).

**3.1.2** VAWA 2005 amends § 1367 to clarify that it applies to DHS and the Department of State. *See* VAWA 2005 § 817.

**3.1.3** VAWA 2005 amends the provision that prohibits use of information from particular individuals as the sole basis for arresting or charging an alien with removability. 8 U.S.C. § 1367(a)(1) prohibits DHS from making an adverse determination of admissibility, deportability, or removability about an alien by using information furnished *solely* by a spouse or parent who has battered the alien (or the alien's child) or subjected the alien (or the alien's child) to extreme cruelty, or information *solely* from any of the abuser's family members who live with the abuser. *See* 8 USC § 1367(a)(1)(A), (B), (C), (D).

**3.1.4** For an alien eligible for classification under INA § 101(a)(15)(U), VAWA 2005 precludes the use of information provided *solely* by the perpetrator of the substantial physical or mental abuse and the criminal activity. *See* 8 U.S.C. § 1367(a)(1)(E).

**3.1.5** VAWA 2005 § 817 adds a new prohibited source of information to 8 U.S.C. § 1367(a)(1)(F). Under this new provision, DHS is

prohibited from using information provided *solely* by a trafficker or perpetrator against an alien who meets the new definition of VAWA self-petitioner, or who is otherwise applying for or has received status under the following: INA § 101(a)(15)(T) (relating to victims of a severe form of trafficking), INA § 244(a)(3) (as in effect prior to March 31, 1997) (relating to Suspension of Deportation), or § 107(b)(1)(E)(i)(II)(bb) of the Trafficking Victims Protection Act (TVPA) of 2000, Pub L. No. 106-386 Div. A, 114 Stat 1464, 1476 (2000) (relating to witnesses continuing to assist the United States in the prosecution of human traffickers). 8 U.S.C. § 1367(a)(1)(F).

**3.1.6** VAWA 2005 § 1367(a)(1) prohibits DHS' use of information furnished *solely* by a prohibited source, such as a spouse or parent who has battered the alien or subjected the alien to extreme cruelty, or a member of the spouse's or parent's family residing in the same household who consented to or acquiesced in such battery or cruelty, unless such information has been independently corroborated.

**3.2 PRACTICE CONSIDERATIONS:** Under INA § 1367(a)(1)(A)-(D), ICE employees are prohibited from making an adverse determination of inadmissibility or deportability furnished solely by a prohibited source, regardless of whether the alien has applied for VAWA benefits. The corresponding VAWA field guidance from OI and DRO reminds ICE Officers to independently verify information concerning inadmissibility or deportability by checking databases instead of relying solely on the information provided by a prohibited source, such as the abuser or a member of the abuser's family residing in the same household as the alien. When cases arise involving aliens known to be applicants for VAWA, T, or U relief, ACCs should take particular care to ensure that the confidentiality provisions are not violated. Once ACCs are made aware that an alien is the beneficiary of a pending or approved VAWA, T, or U petition, they should ensure that the court is aware of any pending VAWA, T, or U issues prior to the hearing, either orally or in writing on the record. If such notification is not possible, the court should be notified as soon as is reasonable after the alien's VAWA, T, or U status is verified. If a case arises in which the applicant's safety would be at risk by disclosing the application to the court or to opposing counsel, please consult your Deputy Chief Counsel for guidance.

**3.2.1** Independent corroboration of information concerning the inadmissibility or deportability of an abused spouse or child or a T or U status applicant should be made through objective and reliable sources such as NIIS, IBIS, and criminal records. Once corroborated, this information may be used in further action on the case, such as issuing a Notice To Appear or using the information in immigration court.

**3.2.2** Anyone who willfully violates the confidentiality provisions is subject to "appropriate disciplinary action" and a civil money penalty of not more than $5,000 for each willful violation. The Offices of Chief Counsel (OCCs) with a significant number of VAWA, T, or U cases may wish to designate specific attorneys to handle identified VAWA cases. (The Immigration and Naturalization Service (INS) memorandum entitled *Non-Disclosure and Other Prohibitions Relating to Battered Aliens: IIRIRA § 384* focuses on the confidentiality requirements and continues to govern ICE employee conduct. That memorandum is attached for your convenience).

**3.2.3** The confidentiality provisions at 8 U.S.C. § 1367 contain a law enforcement exception permitting disclosure of information to law enforcement officials when used for a legitimate law enforcement purpose. *See* 8 U.S.C. § 1367(b)(2).

**3.2.4** An adult VAWA, T, or U petitioner can execute a waiver regarding information regarding him/herself, but not as to a child beneficiary. *See* 8 U.S.C. § 1367(b)(4).

**3.2.5** A new waiver has been added, which, upon receipt of written consent from the alien, allows government entities adjudicating VAWA, T, or U applications to communicate with various victim assistance groups. *See* 8 U.S.C. § 1367(b)(7). The agencies receiving referrals are also bound by the confidentiality provisions. *Id.*

## 4 INA § 212(a)(9) – Exception to Unlawful Presence

**4.1 TECHNICAL CHANGE:** VAWA 2005 § 802 creates a new exception to the unlawful presence bar in INA § 212(a)(9)(B). The new provision, INA § 212(a)(9)(B)(iii)(V), provides that if the alien "demonstrates that the severe form of trafficking (as that term is defined in § 103 of the TVPA[vi]) was at least one central reason for the alien's unlawful presence in the United States," the alien shall not be inadmissible as a result of unlawful presence. Furthermore, unlawful presence may be waived if the self-petitioner can establish a connection between the alien's battering or subjection to extreme cruelty and the alien's removal, departure from the United States, or reentry or attempted reentry into the United States. *See* Pub. L. No. 109-271, 120 Stat. 750 (Aug. 12, 2006),.

## 5 INA § 239(e) – Certificate of Compliance

**5.1 TECHNICAL CHANGE:** VAWA 2005 § 825(c) creates a certification of compliance requirement for Notices to Appear, where enforcement action is initiated against an alien at specific, sensitive locations.

**5.1.1** This provision adds a new INA § 239(e), which reads as follows:

239(e) Certification of Compliance with Restrictions on Disclosure.—

(1) In General.--In cases where an enforcement action leading to a removal proceeding was taken against an alien at any of the locations specified in paragraph (2), the Notice to Appear shall include a statement that the provisions of section 384 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1367) have been complied with.

(2) Locations—The locations specified in this paragraph are as follows:

(A) At a domestic violence shelter, a rape crisis center, supervised visitation center, family justice center, a victim services center?, or victim services provider, or a community-based organization as defined in 42 U.S.C. § 13925(a)(3) (2006)[vii]

(B) At a courthouse (or in connection with the appearance of the alien at a courthouse) if the alien is appearing in connection with a protection order case, child custody case, or other civil or criminal case relating to domestic violence, sexual assault, trafficking, or stalking in which the alien has been battered or subject to extreme cruelty, or if the alien is described in subparagraph (T) or (U) of section 101(a)(15).

**5.1.2** Section 239(e) of the INA applies to all apprehensions occurring on or after February 5, 2006. *See* VAWA § 825(c)(2).

**5.1.3** Anyone who willfully uses, publishes, or permits information to be disclosed in violation of this section or who knowingly makes a false certification under section 239(e) of the Immigration and Nationality Act [8 U.S.C.A. § 1229(e)] shall be subject to appropriate disciplinary action and subject to a civil money penalty of not more than $5,000 for each such violation. (ICE's memorandum to Field Office Directors and Special Agents entitled *Interim Guidance*

*Relating to Officer Procedure Following Enactment of VAWA 2005* is attached for your convenience.)

**5.2 PRACTICE CONSIDERATIONS:** If ACCs identify a case where an alien was encountered or arrested at any of the locations identified in INA § 239(e)(2), please immediately notify the OPLA Director of Field Legal Operations for specific guidance on handling the matter. This is especially important in cases in which an ACC has reason to believe that the encounter or arrest may have been based on information provided by an alien's alleged abuser. ICE is currently taking the position that it generally will not place in removal proceedings aliens encountered at these sensitive locations unless fraud, criminal activity, or national security concerns are clearly present. ICE employees must comply with the § 239(e) certification requirement even if the subject alien has not applied for or does not intend to apply for VAWA benefits. The corresponding VAWA guidance to ICE officers and agents encourages the use of prosecutorial discretion if aliens are encountered at sensitive locations because these aliens are probably genuine VAWA self-petitioners or T or U status applicants. If aliens are encountered at a sensitive location, those officers authorized to issue Notices to Appear must certify that the non-disclosure requirements have also been met.

## 6 INA § 240 – Exceptional Circumstances and Motions to Reopen

**6.1 TECHNICAL CHANGES:** VAWA 2005 makes significant amendments to INA § 240. [viii]

**6.1.1** VAWA 2005 § 813 amends the exceptional circumstances language of INA § 240 by adding battery or extreme cruelty against the alien or any child or parent of the alien to the categories of exceptional circumstances constituting excusable failures to appear. The phrase "exceptional circumstances" set forth in INA § 240(e)(1) now "refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." INA § 240(e)(1) (2006). VAWA 2005 made clear that this change applies to all failures to appear, regardless of whether the failure to appear occurred before, on, or after the date of the enactment of VAWA 2005. *See* VAWA 2005 § 813(a)(2).

**6.1.2** VAWA 2005 § 825(a)(1) eliminates INA § 240(c)(7) the motion to reopen limitations for certain aliens seeking VAWA self-petitioner status. As amended, the one motion to reopen limit of INA § 240(c)(7)(A) "shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)." VAWA 2005

§ 825(a)(1); INA § 240(c)(7)(A) (2006). Likewise, VAWA 2005 § 825(a)(2)(B) changed INA § 240(c)(7)(C)(iv) to excuse VAWA self-petitioners from "any limitation under [INA §240] on the deadlines for filing" motions to reopen. VAWA 2005 § 825(a)(2)(B); INA § 240(c)(7)(C)(iv) (2006). Thus, an alien who has previously filed a motion to reopen is not precluded by time or numerical limitations from filing a second motion to reopen related to VAWA self-petitioner status. The alien still must comply with other motion to reopen requirements, such as establishing *prima facie* eligibility for relief in the reopened proceedings.

**6.1.3** VAWA 2005 § 825(a) also adds parents to the categories of aliens who can file motions to reopen without limitations. *See* VAWA 2005 § 813(a)(2)(A); INA § 240(c)(7)(C)(iv) (2006). It adds relief under INA § 244(a)(3) (as in effect on March 31, 1997)[ix] to the list of applications that can serve as the basis for a motion to reopen not subject to the limitations set out in INA § 240(c)(7). *See* VAWA 2005 § 813(a)(2)(B).

**6.1.4** VAWA 2005 further clarifies that aliens filing motions to reopen under INA § 240(c)(7)(C)(iv) must be physically present in the United States at the time the motion is filed in order to be excused from the limitations on motions to reopen. *See* VAWA 2005 § 825(a)(2)(F) (adding INA § 240(c)(7)(C)(iv)(I)).

**6.1.5** INA § 240(c)(7)(C)(iv) is amended to include the following language relating to stays of removal: "The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien (as defined in section 1641(c)(1)(B) of [Title 8]) pending the final disposition of the motion, including exhaustion of all appeals, if the motion establishes that the alien is a qualified alien." VAWA 2005 § 825(a)(2)(F); INA § 240(c)(7)(C)(iv).

**6.2 PRACTICE CONSIDERATIONS:** The new INA § 240(c)(7)(C)(iv) imposes an automatic stay from the date of the filing of a motion to reopen that demonstrates prima facie eligibility until such time as the Board of Immigration Appeals has disposed of all appeals from a denial of that motion to reopen. The automatic stay is triggered when the alien files the motion, regardless of whether the motion actually meets all the requirements for a motion to reopen or whether the alien requests a stay in the motion. If an ACC handles a VAWA case involving an alien subject to a final order of removal in which a motion to reopen is filed, the local Office of Detention and Removal Operations (DRO) should be contacted immediately and informed that a stay is in place and the alien cannot be removed. It is suggested that an e-mail be sent to local DRO personnel relaying the alien number, the fact that a stay of removal is in

place, and the effective date of the stay. It is anticipated that issues concerning this provision would likely arise in cases where the alien's removal is imminent but for the automatic stay; if the stay of removal creates any problems relating to detention, please contact the Enforcement Law Division via email.

## 7 Other Motion to Reopen Issues

**7.1 TECHNICAL CHANGE:** Section 1506(c)(2) of the Violence Against Women Act of 2000 (VAWA 2000), Pub. L. No. 106-386 Div. B, 114 Stat 1464. 1527 (2000), outlined exceptions to the motion to reopen time limitation for aliens in pre-IIRIRA deportation proceedings. Specifically, this provision had provided that there was no time limit on the filing of a motion to reopen if the basis for the motion was for the alien to apply for VAWA self-petitioning relief (under INA § 204) or VAWA suspension (under former INA § 244). VAWA 2005 § 814(a) and § 825(b) amends this provision to eliminate limitations for certain suspension of deportation applicants.[x] Additionally, VAWA 2005 § 825(b) inserts the requirement that aliens be physically present in the United States in order for the motion to reopen limitations exception to apply, and clarifies that these exceptions apply to aliens in either deportation or exclusion proceedings. *See* VAWA 2005 § 825(b)(2), (3); VAWA 2000 § 1506(c)(2)(B) (2006).

## 8 INA § 240A – Cancellation of Removal

**8.1 TECHNICAL CHANGE:** VAWA 2005 also amends the INA to clarify that § 237(a)(7) waiver, which waives criminal removability grounds for certain aliens whose conviction was a result of their status as a domestic violence victim, may be utilized by an immigration judge in determining eligibility for cancellation of removal for certain nonpermanent residents under INA § 240A(b)(1). *See* VAWA 2005 § 813(c)(1)(A). Specifically, the Attorney General may exercise the § 237(a)(7) waiver authority when considering the alien's eligibility for relief under prong (B) (relating to good moral character) or (C) (relating to the criminal removability grounds) of § 240A(b)(1). The § 237(a)(7) waiver also may be used in determining whether an alien is eligible for relief under INA § 240A(b)(2)(A)(iv), the special rule cancellation for battered spouses or children. *See* VAWA 2005 § 813(c)(1)(B). VAWA 2005 § 822 also made technical corrections clarifying references in the application of special physical presence pursuant to INA § 240A(b)(2)(B) and to the good moral character requirements for VAWA cancellation applicants pursuant to § INA 101(f)(3).[xi]

## 9 INA § 240B – Voluntary Departure

### 9.1 TECHNICAL CHANGES:

**9.1.1** VAWA 2005 § 812 amends INA § 240B(d) relating to the civil penalty for failure to depart. Under the new 240B(d)(2), the 10-year bar to relief eligibility for a failure to depart "shall not apply to relief under section 240A or 245 on the basis of a petition filed by a VAWA self-petitioner, or a petition filed under section 240A(b)(2), or under section 244(a)(3) (as in effect prior to March 31, 1997), if the extreme cruelty or battery was at least *one central reason* for the alien overstaying the grant of voluntary departure." INA § 240B(d)(2) (2006). The *one central reason* standard requires that the evidence establish that the self-petitioner would not have committed the act or crime but for the battering or extreme cruelty.

**9.1.2** Changes made by VAWA 2005 § 822 to the good moral character definition at INA §101(f)(3) now render aliens who are inadmissible under INA § 212(a)(10) ineligible for voluntary departure under INA §240B(b) (relating to voluntary departure requests made at the conclusion of removal proceedings) unless they meet the criteria for a waiver as set forth under INA §§ 204(a)(1)(C) or 240A(*b*)(2)(C).

**9.2 PRACTICE CONSIDERATIONS:** Motions to reopen filed by aliens who have VAWA self-petitioner status should not be opposed on the basis of an alien's ineligibility to adjust status resulting from a failure to voluntarily depart if the alien establishes a clear nexus between abuse and the alien's overstay of the voluntary departure grant. Where an analysis of whether abuse constituted a "central reason" for the alien's overstay involves a factual investigation, offices should exercise discretion both in light of the alien's past experiences as well as the confidentiality provisions set forth at 8 USC § 1367, discussed above in Section 3. *See supra* Section 3 ("Confidentiality Provisions Relating to VAWA Aliens").

## 10 Eligibility for Adjustment of Status Under the Cuban Adjustment Act (CAA), NACARA, and HRIFA

### 10.1 TECHNICAL CHANGES:

**10.1.1** VAWA 2005 § 823 amends the CAA to extend eligibility for LPR status to certain non-Cuban alien spouses whose marriage was terminated as a result of death or abuse.[xii] Under the new provision in the CAA, non-Cuban spouses who have resided with a Cuban who adjusted status under the CAA will continue to be treated as eligible for adjustment consistent with the CAA for two years after the death

of the Cuban, or, if later, until January 5, 2008 – two years from the enactment of VAWA 2005.[xiii] Additionally, non-Cuban spouses who have resided with a Cuban who adjusted status under the CAA and whose marriage has been terminated will continue to be treated as eligible for adjustment consistent with the CAA for two years after the termination of the marriage or, if later, until January 5, 2008, if "there is demonstrated a connection between the termination of the marriage and the battering or extreme cruelty by the Cuban alien." VAWA 2005 § 823; CAA (2006).

**10.1.2** VAWA 2005 § 815(a) amends NACARA § 202 by permitting spouses and children of principal aliens – that is, aliens who were eligible for adjustment under § 202(a) of NACARA – to self-petition for LPR status if the derivative alien was battered or subjected to extreme cruelty; the right to self-petition occurs regardless of whether the principal alien was actually adjusted.[xiv] *See* VAWA 2005 § 815(a); NACARA § 202(d)(1)(B)(ii) (2006). Aliens now eligible for adjustment under NACARA § 202(d)(1)(B)(ii) have until July 5, 2007 to file adjustment applications – 18 months from the January 5, 2006 enactment of VAWA 2005. *See* VAWA 2005 § 815(a); NACARA § 202(d)(1)(E) (2006). Because applications for adjustment of status under NACARA can be adjudicated by the Attorney General, it follows that applications under this new provision of NACARA can also be adjudicated in proceedings before immigration judges.

**10.1.3** Similarly, VAWA 2005 § 824 expands eligibility for adjustment for certain aliens under HRIFA. This provision amends HRIFA § 902(d)(1)(B)(ii) by permitting spouses and children of principal aliens – that is, aliens who were eligible for adjustment under § 902(a) of HRIFA – to self-petition for LPR status if the derivative alien was battered or subjected to extreme cruelty; again, the right to self-petition occurs regardless of whether the principal alien actually adjusted.[xv] *See* VAWA 2005 § 815(a)(2); HRIFA § 902(d)(1)(B)(ii) (2006). Aliens now eligible for adjustment under HRIFA § 902(d)(1)(B)(ii) also have until July 5, 2007 to file adjustment applications. *See* VAWA 2005 § 815(a); HRIFA § 902(d)(1)(E)(2006). Because applications for adjustment of status under HRIFA can be adjudicated by the Attorney General, it follows that applications under this new provision of HRIFA can also be adjudicated in proceedings before immigration judges.

### 10. 2 PRACTICE CONSIDERATIONS:

**10.2.1** The Child Status Protection Act, Pub. L. No. 107-208. 116 Stat. 927 (2002), amended various provisions of the INA, particularly §§ 201(f) and 203(h), to preserve child status for certain alien children beneficiaries who surpass the maximum age threshold during the processing of their applications. VAWA 2005 § 805(b) extends these "age out" protections to "self-petitioners" and "derivatives of self-petitioners." The phrase "self-petitioner" should be interpreted to apply to aliens who qualify for VAWA self-petitioner status, and therefore includes aliens who self-petition under the CAA, NACARA and HRIFA. Interestingly, by applying this "age out" protection to battered relatives of CAA, NACARA and HRIFA principal aliens, VAWA 2005 provides more access to relief for aliens alleging battery or extreme cruelty then those aliens who do not allege abuse. This appears to be a departure from the historical rationale for VAWA, which had been to equalize the situation for battered spouses and children.

**10.2.2** An OCC may agree to exercise appropriate prosecutorial discretion (*i.e.*, moving for termination without prejudice or non-opposing a motion to administrative close) with respect to an alien in removal proceedings who establishes *prima facie* eligibility for VAWA, T, or U self-petitioner status under the new VAWA adjustment provisions discussed herein, in order to permit such aliens to pursue I-360 status before USCIS. *Cf.* Memorandum from Principal Legal Advisor William J. Howard to Chief Counsel, *Prosecutorial Discretion* (Oct. 24, 2005); Memorandum from the INS Office of General Counsel to Regional Counsel and District Counsel, *Administrative Closure of EOIR Proceedings for Aliens Eligible to Adjust Status Under NACARA* (Dec. 31, 1997). In the event that the case is administratively closed and the alien's application for VAWA is later approved by USCIS, the court may remand the case in order for the alien's adjustment to be similarly adjudicated.

## 11 Miscellaneous Provisions

### 11.1 Bar to Petitioning for Abusers

**11.1.1** VAWA 2005 specifically precludes aliens who obtain VAWA self-petitioner status, or who had the status of a (T) or (U) nonimmigrant under INA § 101(a)(15), from filing a subsequent petition for lawful status for the individual who committed the battery, extreme cruelty,

or trafficking against the alien or the alien's child. *See* VAWA 2005 § 814(e); INA § 204(a)(1)(L).

**11.2 Changes Related to Children/Minors**

**11.2.1** Similar to the Child Status Protection Act provisions, the VAWA "age out" provision contained in INA § 204(a)(1)(D) permits aliens who surpassed the maximum age while their application to obtain relief as a battered child of a United States citizen (or child of an abused spouse) was pending, to continue to retain eligibility for relief. *See* VAWA 2005 § 805(a).

**11.2.2** VAWA 2005 § 805(a) amends INA § 204(a)(1)(D) to extend the "age out" protection to battered children of LPRs (and derivative children of battered spouses of LPRs) who reach 21 years of age while their VAWA self-petitions (or parent's self-petition) are pending, thereby allowing them to continue to remain eligible for self-petitioner status and adjustment of status following their 21st birthdays.

**11.2.3** VAWA 2005 § 805(c) amends INA § 204(a)(1)(D) to permit aliens who would have qualified for VAWA self-petitioner status as battered children of United States citizens on the day before their 21st birthday to self-petition for VAWA relief between the ages of 21 and 25. However, such aliens must demonstrate that the "abuse" was "at least *one central reason*" for the delay in filing the self-petition. *See* INA § 204(a)(1)(D)(v) (2006). (See section 9.1.1 for *one central reason* standard).

**11.2.4** The definition of child, contained at INA § 101(b)(1)(E)(i), historically required adopted children to have been adopted under the age of 16 and to have lived with their adopted parents for two years. VAWA 2005 § 805(d) eliminated the two-year cohabitation requirement for adopted children who have been battered or subject to extreme cruelty by the adopting parent or by a family member of the adopting parent residing in the same household. *See* INA § 101(b)(1)(E)(i) (2006).

**11.2.5** Juveniles seeking special immigrant juvenile status who allege battery, abuse, neglect or abandonment receive special consideration under the newly created INA § 287(h). This provision, added by VAWA 2005 § 826, provides that aliens seeking consent to special immigrant juvenile status pursuant to INA §101(a)(27)(J) cannot be compelled to contact the abuser (or a family of the alleged abuser) as

part of the consent process. Additionally, DHS cannot directly contact the abusive parent, although ICE attorneys can use objective and reliable information, such as phone records, to show that communication occurred between the alien and the alleged abuser.

**11.3 Addition of Self-Petitioning Parents**

**11.3.1** VAWA 2005 also adds self-petitioning alien parents of United States citizens (or former citizens who lost or renounced citizenship within the past two years) to the list of immediate relative aliens eligible to self-petition, if the alien can establish that he or she was battered or subjected to extreme cruelty by his or her United States citizen child, if the alien is a person of good moral character, and if the alien resided with their abusive U.S. citizen son or daughter. *See* VAWA 2005 § 816; INA § 204(a)(1)(A)(vii). As with other petitions, USCIS will be responsible for adjudicating the self-petition.

**11.4 Employment Authorization**

**11.4.1** VAWA 2005 § 814(b) amends the INA to make all approved VAWA self-petitioners eligible for employment authorization, and indicates that they may be issued an Employment Authorization Document (EAD). *See* INA § 204(a)(1)(K). This provision is problematic in that it could be read to allow for employment authorization of approved VAWA self-petitioners who are inadmissible or otherwise ineligible to adjust status (similar to adjudication of an I-130 petition, adjudication of self-petitions does not address whether a form I-485 filed by the alien could be approved), including aliens who may be in ICE custody for criminal or security-related grounds of removability. However, USCIS has taken the position that it will not grant deferred action or employment authorization to an approved self-petitioner who has no legal basis to remain in the United States (*e.g.*, if he or she is determined to be statutorily ineligible for adjustment or has been denied adjustment).

**11.4.2** VAWA 2005 also gives the Secretary of Homeland Security discretionary authority to grant employment authorization to spouses or children who have been battered or subject to extreme cruelty by nonimmigrant aliens admitted under subparagraphs (A), (E)(iii), (G) or (H) of INA § 101(a)(15), including spouses or children who are "following to join" such nonimmigrants. This is done through the addition of a new § 106 to the INA. *See* VAWA 2005 § 814(c); INA § 106(a) (2006). Significantly, however, the new INA § 106(b)

provides that the "grant of employment authorization pursuant to [the new INA § 106(a)] shall not confer upon the alien any other form of relief." Thus, aliens receiving employment authorization under this section will have to separately prove eligibility for any other form of VAWA relief, or other relief under the INA.

**11.5 T and U Nonimmigrant Status Issues**

**11.5.1** VAWA 2005 § 821 amends T and U nonimmigrant status provisions by setting forth a maximum initial period of 4 years for an alien to be in such status. That period can be extended based upon certification by the agency investigating the criminal activity that the alien's presence is needed to assist in the investigation or prosecution. *See* VAWA 2005 § 821. This provision also makes various conforming amendments to the INA relating to T and U status. *See id.* at (c).

**11.5.2** Section § 801 of VAWA 2005 clarifies that to qualify for T nonimmigrant status the alien must cooperate in either a federal, state, or local investigation. This section also adds to the categories of individuals who may follow to join the alien subsequent to the alien's classification under INA § 101(a)(15)(U), and eliminates the requirement of establishing extreme hardship for aliens following to join a U nonimmigrant status alien. INA § 212(d)(13) and (14) are amended to clarify that it is the Secretary of Homeland Security who has authority to adjudicate waivers of inadmissibility for T and U nonimmigrants.

**11.5.3** VAWA 2005 § 803 amends INA § 245(l) to clarify the roles of the Attorney General and Secretary of Homeland Security in adjudicating adjustment of status applications for T and U nonimmigrants. Additionally, VAWA 2005 § 804 amends TVPA § 107 to further clarify the roles of the Attorney General and Secretary of Homeland Security.

**11.6 International Marriage Broker Regulation Act of 2005**

**11.6.1** In subtitle D of VAWA 2005, § 831 *et seq.*, Congress passed the International Marriage Broker Regulation Act of 2005. *See* Pub. L. No. 109-162, § 831 *et seq.*, 119 Stat. 2960, 3066 (2006) (IMBRA). This provision placed limitations on the number of fiancée petitions under INA § 101(a)(15)(K) that could be filed by a given petitioner, as well as requiring that such petitions generally be filed two years apart.

**11.6.2** These provisions also require the Secretaries of Homeland Security and State to provide information to fiancée aliens regarding the petitioner's background and about domestic violence resources in the United States. These provisions require marriage brokers to conduct certain criminal records checks of their United States clients and provide certain information to aliens about these checks. It also prohibits marriage brokers from providing certain information about aliens under the age of 18, and limits use and disclosure of information.

**11.6.3** While the majority of the IMBRA provisions do not relate to the work of ICE, please take note of the civil penalties and criminal penalties that may be imposed on marriage brokers for failure to comply with IMBRA provisions. These are set out in VAWA 2005 § 833(d)(5)(A) and (B), respectively. Penalties that apply to any person who "knowingly discloses, uses, or causes to be used any information obtained by an international marriage broker as a result of the obligations imposed on it" under the IMBRA are discussed in VAWA 2005 § 833(d)(3)(C). ICE agents may seek advice on these provisions during the course of their investigations.

---

[i] This provision was added by VAWA 2005 § 816.

[ii] HRIFA § 902(d)(1)(B) includes all spouses, children, and unmarried sons and daughters of aliens whose status was adjusted to that of an alien lawfully admitted for permanent residence under HRIFA § 902(a), as well as spouses and children battered or subject to extreme cruelty by a HRIFA § 902(a) alien. However, legislative history indicates that Congress intended INA § 101(a)(51)(E) to reference only to those aliens in HRIFA § 902(d)(1)(B)(ii), which applies to spouses or children of aliens who adjusted or who were eligible for adjustment under HRIFA §902(a), where the spouse, child, or child of the spouse was battered or subjected to extreme cruelty by the HRIFA § 902(a) alien.

[iii] NACARA § 202(d)(1)(B) includes all spouses, children, and unmarried sons and daughters of aliens whose status was adjusted to that of an alien lawfully admitted for permanent residence under NACARA § 202(a), as well as spouses and children battered or subject to extreme cruelty by a NACARA § 202(a) alien. However, legislative history indicates that Congress intended INA § 101(a)(51)(F) to reference only to those aliens in NACARA § 202(d)(1)(B)(ii), which applies to spouses or children of aliens who adjusted or who were eligible for adjustment under NACARA § 202(a), where the spouse, child, or child of the spouse was battered or subjected to extreme cruelty by the NACARA § 202(a) alien.

[iv] This provision arguably extends relief to a large number of aliens, such as aliens eligible for repapering or all aliens eligible for pre-IIRIRA suspension of deportation under NACARA § 203. Legislative history indicates that Congress intended INA § 101(a)(51)(G) to reference only IIRIRA § 309(c)(5)(C)(i)(VII), which provides certain battered aliens with the ability to obtain "special rule" suspension of deportation.

---

[v] In section 301(b) of IIRIRA, Congress redesignated the ground of deportability relating to practicing polygamists from paragraph (9) to (10) of INA § 212(a). However, when this change was made, a corresponding change to the good moral character definition was not made; as a result, after IIRIRA INA §101(f)(3) precluded aliens from establishing good moral character who were inadmissible under INA § 212(a)(9)(A) – that is, aliens who were inadmissible because of a previous deportation or removal. VAWA 2005 § 822 made the technical correction to INA § 101(f)(3) that IIRIRA had omitted; it deletes the reference to INA §212(a)(9)(A) and inserts instead a reference to INA § 212(a)(10)(A). *See* VAWA 2005 § 822(c)(1); INA § 101(f)(3) (2006).

[vi] The TVPA defines "severe forms of trafficking in persons" as follows:

> (A) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or
> (B) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

TVPA § 103(8) (2000); 22 U.S.C. § 7102(8) (2000).

[vii] A community-based organization is one that:

> (A) focuses primarily on domestic violence, dating violence, sexual assault, or stalking;
> (B) has established a specialized culturally specific program that addresses domestic violence, dating violence, sexual assault, or stalking;
> (C) has a primary focus on underserved populations (and includes representatives of these populations) and domestic violence, dating violence, sexual assault, or stalking; or
> (D) obtains expertise, or shows demonstrated capacity to work effectively, on domestic violence, dating violence, sexual assault, and stalking through collaboration.

[viii] As amended, the relevant portions of INA § 240 read as follows:

> (b) Conduct of proceeding
>
> . . .
>
> (5) Consequences of failure to appear
>
> . . .
>
> (C) Rescission of order
> [An *in absentia*] order may be rescinded only--
> (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section), . . .
>
> The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge.
>
> . . .
>
> (c) Decision and burden of proof
>
> . . .
>
> (7) Motions to reopen

(A) In general
An alien may file one motion to reopen proceedings under this section. except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).

. . .

(C) Deadline

(i) In general
Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.

. . .

(iv) Special rule for battered spouses, children, and parents
Any limitation under this section on the deadlines for filing such motions shall not apply--

(I) if the basis for the motion is to apply for relief under clause (iii) or (iv) of [INA] section 204(a)(1)(A), clause (ii) or (iii) of [INA] section 204(a)(1)(B), [INA] section 240a(b). or [INA] section 244(a)(3) (as in effect on March 31, 1997);
(II) if the motion is accompanied by a cancellation of removal application to be filed with the [Secretary of Homeland Security] or by a copy of the self-petition that has been or will be filed with [USCIS] upon the granting of the motion to reopen;
(III) if the motion to reopen is filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child; and
(IV) if the alien is physically present in the United States at the time of filing the motion.

The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien (as defined in [8 U.S.C. § 1641(c)(1)(B))] pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

. . .

(e) Definitions
In this section and [INA § 240A]:

(1) Exceptional circumstances
The term "exceptional circumstances" refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

INA § 240 (2006).

[ix] INA § 244(a)(3) (1997) reads:

(a) Adjustment of status for permanent resident; contents
As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than alien described in subparagraph (B) or (D) of section 1251(a)(4) of this title [dealing with security and related grounds]) who applies to the general for suspension of deportation and--

. . .

> (3) is deportable under any law of the United States except section 1251(a)(1)(G) of this title [marriage fraud] and the provisions specified in paragraph (2) [criminal offenses under 1251(a)(2), failure to register or falsification of documents under 1251(a)(3), or security and related grounds under 1251(a)(4)]; has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application; has been battered or subjected to extreme cruelty in the United States by a spouse or parent who is a United States citizen or LPR (or is the parent of a child of a United States citizen or LPR and the child has been battered or subjected to extreme cruelty in the United States by such citizen or permanent resident parent); and proves that during all of such time in the United States the alien was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or the alien's parent or child.

[x] As a result of these amendments, VAWA 2000 § 1506(c)(2)(A) now reads:

(i) In general.--Notwithstanding any limitation imposed by law on motions to reopen or rescind deportation proceedings under the Immigration and Nationality Act (as in effect before the title III-A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note))--

(I) There is no time limit on the filing of a motion to reopen such proceedings, and the deadline specified in section 242B(c)(3) of the Immigration and Nationality Act (as so in effect) does not apply

(aa) if the basis of the motion is to apply for relief under clause (iii) or (iv) of section 204(a)(1)(A) of the Immigration and Nationality Act, clause (ii) or (iii) of section 204(a)(1)(B) of such Act, or section 244(a)(3) of such Act (as so in effect); and

(bb) if the motion is accompanied by a suspension of deportation application to be filed with the Secretary of Homeland Security or by a copy of the self-petition that will be filed with the Department of Homeland Security upon the granting of the motion to reopen; and

(II) any such limitation shall not apply so as to prevent the filing of one motion to reopen described in section 240(c)(7)(C)(iv) of the Immigration and Nationality Act.

(ii) Prima facie case.--The filing of a motion to reopen under this subparagraph shall only stay the removal of a qualified alien (as defined in section 431(c)(1)(B) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (8 U.S.C. 1641(c)(1)(B))[)] pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

VAWA 2000 § 1506(c)(2)(A) (2006).

[xi] As a result of the changes made by VAWA 2005, INA § 240A(b)(2)(B), which discusses physical presence requirements, reads as follows:

(B) Physical presence

Notwithstanding subsection (d)(2) of this section, for purposes of subparagraph (A)(ii) or for purposes of [8 U.S.C. § 1254(a)(3)] (as in effect before the title III-A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996), an alien shall not be considered to have failed to maintain continuous physical presence by reason of an absence if the alien demonstrates a connection between the absence and the battering or extreme cruelty perpetrated against the alien. No absence or portion of an absence connected to the battering or extreme cruelty shall count toward the 90-day or 180-day limits established in subsection (d)(2) of

> this section. If any absence or aggregate absences exceed 180 days, the absences or portions of the absences will not be considered to break the period of continuous presence. Any such period of time excluded from the 180- day limit shall be excluded in computing the time during which the alien has been physically present for purposes of the 3-year requirement set forth in this subparagraph, subparagraph (A)(ii), and section 1254(a)(3) of this title (as in effect before the title III-A effective date in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996).

INA § 240A(b)(2)(B) (2006). Additionally, INA § 240A(b)(2)(C) was amended by striking the phrase "(A)(i)(III)" and inserting in its place "(A)(iii)". *See* VAWA 2005 § 822(b).

[xii] Following the amendments, the Cuban Adjustment Act § 1 states the following:

> That, notwithstanding the provisions of section 245(c) of the [INA], the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States, except that such spouse or child who has been battered or subjected to extreme cruelty may adjust to permanent resident status under this Act without demonstrating that he or she is residing with the Cuban spouse or parent in the United States. In acting on applications under this section with respect to spouses or children who have been battered or subjected to extreme cruelty, the Attorney General shall apply the provisions of [INA] section 204(a)(1)(J). An alien who was the spouse of any Cuban alien described in this section and has resided with such spouse shall continue to be treated as such a spouse for 2 years after the date on which the Cuban alien dies (or, if later, 2 years after the date of enactment of [VAWA] 2005 [Jan. 5, 2005]), or for 2 years after the date of termination of the marriage (or, if later, 2 years after the date of enactment of [VAWA] 2005 [Jan. 5, 2005]) if there is demonstrated a connection between the termination of the marriage and the battering or extreme cruelty by the Cuban alien.

Cuban Adjustment Act § 1 (2006).

[xiii] It should be noted that the new definition of VAWA self-petitioner established under INA § 101(a)(51) does not include aliens who adjust under the Cuban Adjustment Act after the death of their spouse, because INA § 101(a)(51)(D) requires adjustment under the Cuban Adjustment Act "as a child or spouse who has been battered or subjected to extreme cruelty" in order to be classified as a VAWA self-petitioner. *See* Cuban Adjustment Act; INA § 101(a)(51)(D) (2006).

[xiv] As amended and as applicable to abused and battered aliens, NACARA § 202(d)(1) reads as follows:

> (1) In general.--The status of an alien shall be adjusted by the Attorney General to that of an alien lawfully admitted for permanent residence, if--
>
> (A) the alien is a national of Nicaragua or Cuba
>
> (B) The alien--

---

(i) is the spouse, child, or unmarried son or daughter of an alien whose status is adjusted to that of an alien lawfully admitted for permanent residence under subsection (a) [of NACARA § 202], except that in the case of such an unmarried son or daughter, the son or daughter shall be required to establish that the son or daughter has been physically present in the United States for a continuous period beginning not later than December 1, 1995, and ending not earlier than the date on which the application for adjustment under this subsection is filed; or

(ii) was, at the time at which an alien filed for adjustment under [NACARA § 202(a)], the spouse or child of an alien whose status is adjusted, or was eligible for adjustment, to that of an alien lawfully admitted for permanent residence under [NACARA § 202(a)], and the spouse, child, or child of the spouse has been battered or subjected to extreme cruelty by the alien that filed for adjustment under [NACARA § 202(a)];

(C) the alien applies for such adjustment and is physically present in the United States on the date the application is filed;

(D) the alien is otherwise admissible to the United States for permanent residence, except in determining such admissibility the grounds for inadmissibility specified in paragraphs (4), (5), (6)(A), (7)(A), and (9)(B) of section 212(a) of the [INA] shall not apply; and

(E) applies for such adjustment before April 1, 2000, or, in the case of an alien who qualifies under subparagraph (B)(ii), applies for such adjustment during the 18-month period beginning on the date of enactment of [VAWA 2002 - Jan. 5, 2006].

NACARA § 202(d)(1) (2006).

[xv] As amended and as applicable to abused and battered aliens, HRIFA § 902(d)(1) reads as follows:

(1) In general.--The status of an alien shall be adjusted by the Attorney General to that of an alien lawfully admitted for permanent residence, if--

(A) the alien is a national of Haiti;

(B) (i) the alien is the spouse, child, or unmarried son or daughter of an alien who is or was eligible for classification under subsection (a) [of HRIFA § 902], except that, in the case of such an unmarried son or daughter, the son or daughter shall be required to establish that the son or daughter has been physically present in the United States for a continuous period beginning not later than December 1, 1995, and ending not earlier than the date on which the application for such adjustment is filed;

(ii) at the time of filing of the application for adjustment under subsection (a) [of HRIFA], the alien is the spouse or child of an alien who is or was eligible for classification under subsection (a) [of HRIFA] and the spouse, child, or child of the spouse has been battered or subjected to extreme cruelty by the individual described in subsection (a) [of HRIFA]; and

(iii) in acting on applications under this section with respect to spouses or children who have been battered or subjected to extreme cruelty, the Attorney General shall apply the provisions of [INA] section 204(a)(1)(J).

(C) the alien applies for such adjustment and is physically present in the United States on the date the application is filed; and

(D) the alien is otherwise admissible to the United States for permanent residence, except that, in determining such admissibility, the grounds for inadmissibility specified in paragraphs (4), (5), (6)(A), (7)(A), and (9)(B) of [INA] section 212(a) . . . shall not apply.

HRIFA § 902(d)(1) (2006).

# EXHIBIT C

*Detention and Removal Operations*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536

U.S. Immigration and Customs Enforcement

SEP 24 2009

MEMORANDUM FOR: Field Office Directors

FROM: David J. Venturella
Acting Director

SUBJECT: Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants

Purpose

This memorandum provides guidance to U.S. Immigration and Customs Enforcement (ICE), Office of Detention and Removal Operations (DRO) Field Office Directors (FODs) about the factors to consider when adjudicating requests for a Stay of a Final Administrative Order of Removal filed by an alien with a pending petition for U Nonimmigrant Status (U-visa).

Background

U-visas are available to aliens who, among other requirements, have "suffered substantial physical or mental abuse" as a result of certain enumerated criminal acts pursuant to section 101(a)(15)(U) of the Immigration and Nationality Act (INA) who assist government officials in investigating or prosecuting such criminal activity. An alien seeking a U-visa must file, or have someone file on his or her behalf, a Petition for U Nonimmigrant Status, Form I-918, with U.S. Citizenship and Immigration Services (USCIS) Vermont Service Center (VSC).

The Secretary of the Department of Homeland Security and her delegates have discretion to grant a Stay of an Administrative Final Order of Removal under section 241(c)(2) of the INA to an alien with a pending petition for a U-visa if the alien establishes *prima facie* eligibility for the benefit. See INA § 237(d). The Stay of Removal may remain in effect until: (1) USCIS approves the petition for a U-visa; or (2) USCIS denies the U-visa petition after the alien has exhausted all administrative appeals. USCIS has jurisdiction to decide if an alien has established *prima facie* eligibility. See 8 C.F.R. § 214.14(c).

**Applications for Stay of Deportation or Removal**

When adjudicating Stay requests, FODs must comply with the applicable regulation at 8 C.F.R. § 241.6 and the guidance below when assessing whether to grant an alien's application for a Stay of Removal.

**Eligibility**

The FOD should favorably view an alien's request for a Stay of Removal if USCIS has determined that the alien has established *prima facie* eligibility for a U-visa. When deciding the stay request, the FOD should also consider favorably any humanitarian factors related to the alien or the alien's close relatives who rely on the alien for support (*Cf* 8 C.F.R. § 212.5). For aliens with pending U-visa petitions who are not subject to a final order of deportation or removal, but who are detained and/or in removal proceedings, the FOD should contact its local Office of Chief Counsel (OCC) for additional guidance.

A Stay of Removal on the basis of a pending application for a U-visa is not appropriate in the following situations: 1) USCIS has determined that the alien is not *prima facie* eligible for a U-visa; 2) USCIS has denied the alien's petition for a U-visa on the merits; or 3) serious adverse factors weigh against granting a Stay of Removal. Serious adverse factors include the following: (1) national security concerns; (2) evidence that the alien is a human rights violator; (3) evidence that the alien has engaged in significant immigration fraud; (4) evidence that the alien has a significant criminal history; and (5) any significant public safety concerns. In the absence of any of the above factors, the FOD should generally grant the alien a Stay of Removal when USCIS has found the alien to be *prima facie* eligible for a U-visa.

Procedure

If DRO assumes custody of an alien who claims to have a pending U-visa petition, but who has not filed for a Stay of Removal, DRO must provide the alien with an Application for Stay of Removal, Form I-246, along with a fee waiver policy. If the alien does not file for a Stay of Removal or present evidence of the pending U-visa petition and the FOD finds no evidence of a pending petition, DRO may continue to process the alien for removal. Regardless of whether or not a Stay is requested, the FOD should use his or her discretion in making any determination about whether to remove an alien who has a pending U-visa petition and has exhibited no adverse factors. If the alien provides evidence of a pending U-visa petition but declines to file a Stay request, or if the alien claims to have a pending U-visa petition, but there is no record of it, the FOD shall notify both the OCC and the Assistant Director for Field Operations prior to scheduling the alien's removal.

Upon receiving a Stay request from an alien with a pending U-visa petition, the local DRO office must contact its local OCC to request a *prima facie* determination from USCIS's VSC. DRO should allow USCIS a minimum of five business days to make a *prima facie* determination. During this time, the FOD should not deport or remove the alien, although DRO may continue to

secure the necessary documents to effect the alien's removal in the event USCIS finds that the alien is not *prima facie* eligible for a U-visa or denies the petition on the merits. The VSC will e-mail the respective DRO Field Office Stay mailbox and the local OCC point of contact with the results of the *prima facie* review or a copy of the decision notice.

If USCIS finds that the alien has established *prima facie* eligibility, the FOD, working in conjunction with the local OCC, will adjudicate the stay request. The FOD should view a Stay request favorably, unless serious adverse factors exist, as outlined above. If the FOD finds that serious adverse factors exist and is inclined to deny the Stay request despite the USCIS *prima facie* eligibility finding, the FOD must provide a summary of the case to DRO Headquarters for further review.

The Stay may remain in effect for up to 180 days. If at the end of 180 days, USCIS has not made a final decision about the merits of the U-visa petition, and no new adverse factors are apparent, the FOD should extend the stay as needed for USCIS to complete adjudication of the petition. For a petitioner whose Form I-918 has been approved, an order of exclusion, deportation, or removal issued by the Secretary will be deemed canceled by operation of the law. A petitioner whose Form I-918 has been approved, but who is subject to an order issued by an immigration judge or the Board of Immigration Appeals, may seek cancellation of the order through a filing of a motion to reopen and terminate. In cases where USCIS denies a petition, the Stay will be lifted automatically as of the date the denial becomes administratively final. See 8 C.F.R. § 214.14(c)(5)(i) and (f)(6). The FOD, or his or her designee, should continually work with USCIS to ensure the U-visa petition is adjudicated as quickly as possible.

Upon deciding whether to grant or deny an alien's Stay request, the FOD shall provide the alien or the attorney of record with written notice, place a copy of the notice in the alien's A-file, and enter the decision into the ENFORCE Alien Removal Module. .

Although DRO has the authority to detain an alien while USCIS adjudicates a U-visa petition, DRO should release the alien while the petition is pending unless serious adverse factors weigh against release or the alien is subject to mandatory detention under the INA. The issuance of an administrative Stay of Removal will not toll the period of detention under the standards of 8 C.F.R. § 241.4. *See* 8 C.F.R. § 214.14(c)(1)(ii) and (f)(ii). Therefore, for those cases where the alien is detained and the U-visa petition remains pending, DRO shall inform USCIS that the alien is detained and request that USCIS expedite the case.

*This document provides only internal Immigration and Customs Enforcement guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful enforcement or litigative prerogatives of DHS or ICE.*

# EXHIBIT D

*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
500 12[th] Street, SW
Washington, DC 20024

U.S. Immigration
and Customs
Enforcement

SEP 25 2009

MEMORANDUM FOR: OPLA Attorneys

FROM: Peter S. Vincent PSV
Principal Legal Advisor

SUBJECT: **Guidance Regarding U Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal**

**Purpose**

This memorandum provides field guidance to ensure compliance with the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) regarding aliens with pending U visa petitions who are either (1) subject to a final administrative order of deportation or removal and request a stay of removal or (2) in removal proceedings.

**Background**

The Office of Detention and Removal Operations (DRO) has issued field guidance for handling U visa applicants who are under a final order of removal. For aliens with final orders of removal, DRO is to contact its local Office of Chief Counsel (OCC) in order to request a *prima facie* determination from the U.S. Citizenship and Immigration Services (USCIS) Vermont Service Center (VSC). DRO is also to contact its local OCC in cases of detained aliens in removal proceedings with pending petitions.

**Final Order Aliens who Request a Stay of Deportation or Removal**

The Secretary of Homeland Security and her delegates have discretion to grant a stay of an administrative final order of removal under section 241(c)(2) of the Immigration and Nationality Act (INA) to an alien with a pending petition for a U visa if the alien establishes *prima facie* eligibility for the benefit. *See* INA § 237(d). A determination that a petition is *prima facie* eligible does not prevent a subsequent denial of the pending U nonimmigrant status petition. The stay of removal may remain in effect until (1) USCIS approves the petition for a U visa or (2) USCIS denies the U visa petition after the alien has exhausted all administrative appeals.

The FOD should favorably view an alien's request for a stay of removal if USCIS has determined that the alien has established *prima facie* eligibility for a U visa. When deciding the stay request, the FOD should also consider favorably any humanitarian factors related to the alien or the alien's close relatives who rely on the alien for support. *Cf.* 8 C.F.R. § 212.5.

A stay is not appropriate on the basis of the U visa in the following situations: (1) USCIS has determined that the alien is not *prima facie* eligible for a U visa; (2) USCIS has denied the alien's petition for a U visa on the merits; or (3) serious adverse factors weigh against a stay of removal. Serious adverse factors include the following: (1) national security concerns; (2) evidence that the alien is a human rights violator; (3) evidence that the alien has engaged in significant immigration fraud; (4) evidence that the alien has a significant criminal history; and (5) any significant public safety concerns.

Upon receiving a stay request from an alien with a pending U visa petition, the local DRO office must contact its local OCC to request a *prima facie* determination from USCIS's Vermont Service Center (VSC). DRO should allow USCIS a minimum of five (5) business days to make a *prima facie* determination. During this time, the FOD should not deport or remove the alien, although DRO may continue to secure the necessary documents to effect the alien's removal in the event USCIS finds that the alien is not *prima facie* eligible for a U visa or denies the petition on the merits. The VSC will e-mail the respective Field Office DRO stay mailbox and the local OCC point of contact with the results of the *prima facie* review or a copy of the decision notice.

If USCIS finds that the alien has established *prima facie* eligibility, the FOD, working in conjunction with the local OCC, will adjudicate the stay request. The FOD should view a stay request favorably, unless serious adverse factors exist, as outlined above. If the FOD finds that serious adverse factors exist and is inclined to deny the stay request despite the USCIS *prima facie* eligibility finding, the FOD must provide a summary of the case to DROHQ for further review.

**Aliens in Removal Proceedings**

If an alien in removal proceedings states that he or she has filed a U visa petition with USCIS, and provides proof of such filing, the OCC shall request a continuance to allow USCIS to make a *prima facie* determination. Once USCIS has determined that the alien has made a *prima facie* case, the OCC should consider administratively closing the case or seek to terminate proceedings pending final adjudication of the petition.

If USCIS grants the petition while the alien is still in proceedings and relief in the form of adjustment of status appears clearly approvable, the OCC, exercising it prosecutorial discretion, should favorably consider moving to terminate proceedings. If USCIS grants the petition after the alien receives a final order of removal, the OCC, exercising its prosecutorial discretion, should favorably consider a joint motion to reopen and terminate proceedings with either the immigration court or the Board of Immigration Appeals, whichever has jurisdiction.

*This document provides only internal Immigration and Custom's Enforcement guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful enforcement or litigative prerogatives of DHS or ICE.*

# EXHIBIT E

Policy Number: 10076.1
FEA Number: 306-112-002b

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

**U.S. Immigration and Customs Enforcement**

JUN 17 2011

MEMORANDUM FOR: All Field Office Directors
All Special Agents in Charge
All Chief Counsel

FROM: John Morton
Director

SUBJECT: Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs

Purpose:

This memorandum sets forth agency policy regarding the exercise of prosecutorial discretion in removal cases involving the victims and witnesses of crime, including domestic violence, and individuals involved in non-frivolous efforts related to the protection of their civil rights and liberties. In these cases, ICE officers, special agents, and attorneys should exercise all appropriate prosecutorial discretion to minimize any effect that immigration enforcement may have on the willingness and ability of victims, witnesses, and plaintiffs to call police and pursue justice. This memorandum builds on prior guidance on the handling of cases involving T and U visas and the exercise of prosecutorial discretion.[1]

Discussion:

Absent special circumstances or aggravating factors, it is against ICE policy to initiate removal proceedings against an individual known to be the immediate victim or witness to a crime. In practice, the vast majority of state and local law enforcement agencies do not generally arrest victims or witnesses of crime as part of an investigation. However, ICE regularly hears concerns that in some instances a state or local law enforcement officer may arrest and book multiple people at the scene of alleged domestic violence. In these cases, an arrested victim or witness of domestic violence may be booked and fingerprinted and, through the operation of the Secure

[1] For a thorough explanation of prosecutorial discretion, see the following: Memorandum from Peter S. Vincent, Principal Legal Advisor, Guidance Regarding U Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal (Sept. 25, 2009); Memorandum from William J. Howard, Principal Legal Advisor, VAWA 2005 Amendments to Immigration and Nationality Act and 8 U.S.C. § 1367 (Feb. 1, 2007); Memorandum from Julie L. Myers, Assistant Secretary of ICE, Prosecutorial and Custody Discretion (Nov. 7, 2007); Memorandum from William J. Howard, Principal Legal Advisor, Prosecutorial Discretion (Oct. 24, 2005); Memorandum from Doris Meissner, Commissioner, Immigration and Naturalization Service, Exercising Prosecutorial Discretion (Nov. 17, 2000).

Communities program or another ICE enforcement program, may come to the attention of ICE. Absent special circumstances, it is similarly against ICE policy to remove individuals in the midst of a legitimate effort to protect their civil rights or civil liberties.

To avoid deterring individuals from reporting crimes and from pursuing actions to protect their civil rights, ICE officers, special agents, and attorneys are reminded to exercise all appropriate discretion on a case-by-case basis when making detention and enforcement decisions in the cases of victims of crime, witnesses to crime, and individuals pursuing legitimate civil rights complaints. Particular attention should be paid to:

- victims of domestic violence, human trafficking, or other serious crimes;
- witnesses involved in pending criminal investigations or prosecutions;
- plaintiffs in non-frivolous lawsuits regarding civil rights or liberties violations; and
- individuals engaging in a protected activity related to civil or other rights (for example, union organizing or complaining to authorities about employment discrimination or housing conditions) who may be in a non-frivolous dispute with an employer, landlord, or contractor.

In deciding whether or not to exercise discretion, ICE officers, agents, and attorneys should consider all serious adverse factors. Those factors include national security concerns or evidence the alien has a serious criminal history, is involved in a serious crime, or poses a threat to public safety. Other adverse factors include evidence the alien is a human rights violator or has engaged in significant immigration fraud. In the absence of these or other serious adverse factors, exercising favorable discretion, such as release from detention and deferral or a stay of removal generally, will be appropriate. Discretion may also take different forms and extend to decisions to place or withdraw a detainer, to issue a Notice to Appear, to detain or release an alien, to grant a stay or deferral of removal, to seek termination of proceedings, or to join a motion to administratively close a case.

In addition to exercising prosecutorial discretion on a case-by-case basis in these scenarios, ICE officers, agents, and attorneys are reminded of the existing provisions of the Trafficking Victims Protection Act (TVPA),[2] its subsequent reauthorization,[3] and the Violence Against Women Act (VAWA).[4] These provide several protections for the victims of crime and include specific provisions for victims of domestic violence, victims of certain other crimes,[5] and victims of human trafficking.

Victims of domestic violence who are the child, parent, or current/former spouse of a U.S. citizen or permanent resident may be able to self-petition for permanent residency.[6] A U nonimmigrant visa provides legal status for the victims of substantial mental or physical abuse as

---

[2] Pub. L. No. 106-386, §§101-113, 114 Stat. 1464, 1466 (codified as amended in scattered sections of the U.S.C.).
[3] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 1464, 1491 (codified as amended in scattered sections of the U.S.C.).
[4] Pub. L. No. 106-386, §§1001-1603, 114 Stat. 1464, 1491 (codified as amended in scattered sections of the U.S.C.).
[5] For a list of the qualifying crimes, see INA §101(a)(15)(U)(iii).
[6] *See* INA §101(a)(51).

a result of domestic violence, sexual assault, trafficking, and other certain crimes.[7] A T nonimmigrant visa provides legal status to victims of severe forms of trafficking who assist law enforcement in the investigation and/or prosecution of human trafficking cases.[8] ICE has important existing guidance regarding the exercise of discretion in these cases that remains in effect. Please review it and apply as appropriate.[9]

Please also be advised that a flag now exists in the Central Index System (CIS) to identify those victims of domestic violence, trafficking, or other crimes who already have filed for, or have been granted, victim-based immigration relief. These cases are reflected with a Class of Admission Code "384." When officers or agents see this flag, they are encouraged to contact the local ICE Office of Chief Counsel, especially in light of the confidentiality provisions set forth at 8 U.S.C. § 1367.

No Private Right of Action

These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

---

[7] *See* INA §101(a)(15)(U).
[8] *See* INA §101(a)(15)(T).
[9] *See* Memorandum from John P. Torres, Director, Office of Detention and Removal Operations and Marcy M. Forman, Director, Office of Investigations, Interim Guidance Relating to Officers Procedure Following Enactment of VAWA 2005 (Jan. 22, 2007).

# EXHIBIT F

# U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 11005.2:** **Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners**

**Issue Date:** August 2, 2019
**Superseded:** 11005.1: *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-Visa) Applicants* (Sept. 24, 2009), and Memorandum from Peter S. Vincent, Principal Legal Advisor, *Guidance Regarding U Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal* (Sept. 25, 2009).
**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive sets forth U.S. Immigration and Customs Enforcement (ICE) policy regarding Stay of Removal requests and the exercise of prosecutorial discretion to join motions to terminate removal proceedings involving U nonimmigrant status (U visa) petitioners and their qualifying family members. Aliens subject to pending removal proceedings or a final order of removal may apply for a U visa with U.S. Citizenship and Immigration Services (USCIS),[1] and those aliens subject to a final order of removal who have a pending U visa petition may request a Stay of Removal from ICE Enforcement and Removal Operations (ERO), as may any other alien subject to a final order of removal.[2]

   The U visa enables certain removable aliens who are victims of crime to assist law enforcement without fear of removal. The U visa is intended to strengthen the ability of local, state, and federal law enforcement agencies, including ICE Homeland Security Investigations (HSI), to detect, investigate, and prosecute cases of human trafficking, domestic violence, sexual exploitation, female genital mutilation, and other specified criminal activity. Local, state, and federal law enforcement are authorized to complete certifications for victims applying for a U visa; within ICE, HSI Special Agents in Charge (SACs) and the Associate Director (AD) for the Office of Professional Responsibility (OPR) are delegated this certification authority.

2. **Policy.** It is ICE policy to comply with applicable law governing U visas and to encourage victims of crime to work with law enforcement. Where a U visa petitioner's law enforcement certification is signed by HSI or OPR, ICE will generally grant a Stay of Removal request filed by that alien or join a motion to terminate removal proceedings, accordingly. In cases involving pending U visa petitioners and their qualifying family members in which ICE does not sign the law enforcement certification, ICE ERO Field Office Directors (FODs) and Office of the Principal Legal Advisor (OPLA) attorneys will

[1] 8 C.F.R. § 214.14(c)(1)(i)-(ii).
[2] Immigration and Nationality Act (INA) §§ 237(d), 241(c)(2).

consider the totality of the circumstances, including any favorable or adverse factors, and any federal interest(s) implicated when determining whether to exercise discretion to grant or deny a Stay of Removal or join a motion to terminate removal proceedings.[3] Assistance provided by a U visa petitioner to law enforcement, prosecutors, judges, or other officials in the detection, investigation, prosecution, conviction, or sentencing of criminal activity will generally be considered a significant favorable factor, but is not necessarily dispositive.

ICE will no longer routinely request *prima facie* determinations nor expedited adjudications from USCIS. An alien with a pending U visa petition whose Stay of Removal request is denied may be processed for removal absent any legal impediment to removal.

Stays of Removal granted to U visa petitioners will generally be granted for an initial period of 180 days and may be extended for additional 180-day periods thereafter, in ICE's discretion. A Stay of Removal will not be granted after USCIS places the U visa petitioner on the waiting list, as such aliens are granted deferred action by USCIS, rendering a stay unnecessary.[4] A Stay of Removal will not be extended if USCIS denies the U visa and the petitioner exhausts all administrative appeals, in which case ERO may continue to process the alien for removal.

Furthermore, it is ICE policy to respect USCIS's grant of deferred action to a U visa petitioner. Accordingly, ICE will not remove a U visa petitioner or qualifying family member whom USCIS has placed on the waiting list and granted deferred action unless a new basis for removal has arisen since the date of the waiting list placement or USCIS terminates deferred action.

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Headquarters Responsible Official (HRO).** The Executive Associate Directors (EADs) for ERO and HSI, and the AD for OPR.

3.2. **Stay of Removal**. A determination in the unreviewable discretion of the Department of Homeland Security (DHS) to temporarily defer the execution of a final order of removal issued to an alien.[5]

3.3. **U Nonimmigrant Status or "U visa**." An immigration benefit available for alien victims of qualifying crimes who have suffered substantial physical or mental abuse as a result of having been a crime victim; have information about the criminal activity; and were helpful, are being helpful, or are likely to be helpful to law enforcement officials in investigating and prosecuting those crimes.[6]

---

[3] ICE officers and agents will make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with DHS and ICE policy.
[4] *See* 8 C.F.R. § 214.14(d)(2).
[5] INA §§ 237(d), 241(c)(2); 8 C.F.R. §§ 241.6(a), 1241.6(a).
[6] INA § 101(a)(15)(U); 8 C.F.R. § 214.14.

**3.4. U Nonimmigrant Status Certification, Form I-918, Supplement B, or "U visa certification."** USCIS Form I-918, Supplement B, *U Nonimmigrant Status Certification*, is completed by a federal, state or local law enforcement agency to certify that the petitioner, among other things, is or has been a direct or indirect victim of qualifying criminal activity; possesses information about the qualifying criminal activity; and has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim. Victims are required to submit Form I-918, Supplement B, as a part of their petition to USCIS.[7]

**3.5. Waiting List Determination.** A USCIS decision on a U visa petition that is the functional equivalent of a full adjudication on the merits of the petition, including complete fingerprint and background checks and adjudication of any accompanying waivers of inadmissibility. A petitioner is placed on the waiting list when, due solely to the statutory cap, a U-1 nonimmigrant visa is not currently available. When a U visa petitioner is placed on the waiting list, by regulation, USCIS grants deferred action or parole to the alien and any qualifying family members and may afford them employment authorization.[8]

**4. Responsibilities.**

**4.1. The HROs and the Principal Legal Advisor** are responsible for ensuring compliance with the provisions of this Directive and issuing any necessary guidance.

**4.2. HSI and OPR SACs** are responsible, as U visa certifying officials, for signing vetted U visa certifications for alien victims of crime who are helpful in HSI or OPR investigations, on a case-by-case basis and confirming upon request by ERO that HSI or OPR completed a certification for a particular victim.

**4.3. ERO FODs** are responsible for adjudicating Stay of Removal requests from U visa petitioners.

**4.4. OPLA Attorneys** are responsible for considering requests from U visa petitioners to join motions to terminate removal proceedings and reviewing for legal sufficiency, as appropriate, HSI or OPR's final approval or disapproval of an alien's request for a U visa certification.

**5. Procedures/Requirements.**

**5.1. Signing U Visa Certifications.** HSI and OPR will follow the procedures for vetting and signing U visa certifications, as appropriate, for alien crime victims who are helpful to HSI investigations as outlined in HSI HB18-06, *U Nonimmigrant Status (U Visa) Handbook* (Sept. 21, 2018), or as updated and OPR Investigative Guidebook, *Section 3.40.8 U Nonimmigrant Status* (Oct. 2012).

---

[7] 8 C.F.R. § 214.14(c)(2).
[8] 8 C.F.R. § 214.14(d).

**5.2. Stay of Removal Requests.**

**5.2.1 Initiating Stay of Removal Requests.** When ICE assumes civil immigration custody of an alien, ERO must determine whether the alien is an applicant or beneficiary of an application or petition for a benefit protected by 8 U.S.C. § 1367, including pending and approved U visas, by consulting the Central Index System database (or any successor information technology system established to assume the same functions).[9]

If the alien has or claims to have a pending U visa petition, the FOD, or designee, upon the alien's request, will provide him or her with Form I-246, *Application for Stay of Removal,* and enter the date of this action in EARM. If the alien does not file a Stay of Removal request within five business days, ERO may continue to process the alien for removal.

**5.2.2. Reviewing Stay of Removal Requests.** Upon receiving a Stay of Removal request from a pending U visa petitioner for whom HSI or OPR has completed the U visa certification, ERO will verify the U visa certification with the issuing HSI or OPR SAC office. If confirmed, ERO will generally grant the U visa petitioner's Stay of Removal request given the close coordination and information sharing within ICE.

In all other cases, upon receiving a Stay of Removal request from a U visa petitioner, the FOD will consider the totality of the circumstances, any favorable or adverse factors (including the extent and nature of any criminal history), and any federal interest(s) implicated. Assistance provided by a U visa petitioner to law enforcement, prosecutors, judges, or other officials in the detection, investigation, prosecution, conviction, or sentencing of criminal activity will generally be considered a significant favorable factor, but is not necessarily dispositive. Convictions for crimes related to a petitioner's victimization will generally not be considered an adverse factor. ICE will not consider the merits of the U visa petition. ICE will no longer routinely request *prima facie* determinations nor expedited adjudications from USCIS. The fact that a petitioner can continue to pursue a U visa adjudication from outside the United States is not alone a reason for ICE to deny a Stay of Removal request.

As with any other Stay of Removal request, a Stay of Removal is not appropriate when there exist national security concerns, evidence the U visa petitioner is a human rights violator, has engaged in immigration fraud and/or has significantly abused the visa or visa waiver programs, or has a criminal history that evidences that the alien poses a risk to public safety.

**5.2.3 Adjudicating Stay of Removal Requests.** After careful consideration, if the FOD, in his or her unreviewable discretion, determines that the totality of the circumstances merit a Stay of Removal, the FOD will grant the Stay of Removal for an initial 180-day period,

[9] DHS Instruction No. 002-02-001, *Implementation of Section 1367* (Nov. 7, 2013); DHS Directive No. 002-02, *Implementation of Section 1367 Information Provisions* (Nov. 1, 2013).



REL0000025037

and may then renew it for additional 180-day periods thereafter, so long as no new adverse factors arise.

**5.2.4. Memorializing a Discretionary Decision.** Upon deciding to grant or deny a U visa petitioner's Stay of Removal request, the FOD will provide the petitioner and the attorney of record, if applicable, with written notice of the decision; place a copy of the notice in the U visa petitioner's A-file; and enter the decision into the ENFORCE Alien Removal Module (EARM).

**5.2.5. Detention/Release.** As in all cases, if a U visa petitioner is not subject to mandatory detention, and particularly where the FOD has granted a Stay of Removal, FODs should consider whether continued detention is appropriate given the facts and circumstances of the case.

**5.2.6. Removal of U Visa Petitioners**. The removal of an alien whose Stay of Removal request is denied will continue consistent with current removal policies and procedures.

**5.2.7. Effect of USCIS U Visa Waiting List Determination, Approval or Denial on the Stay of Removal.** If USCIS places the U visa petitioner on the waiting list, ICE will not grant a further Stay of Removal as the petitioner will have been granted deferred action by USCIS, making the stay unnecessary. Given the grant of deferred action for these U visa petitioners, FODs should consider whether continued detention is necessary or appropriate given the facts or circumstances of the case. Upon approval of a U visa, orders of exclusion, deportation, or removal issued by DHS are deemed cancelled by operation of law as of the date of USCIS's approval of Form I-918.[10] Final orders of removal issued by an immigration judge are subject to reopening for cancellation in light of the U visa approval.[11] On the other hand, USCIS's denial of the U visa petition will result in the Stay of Removal being lifted automatically as of the date the denial becomes administratively final.[12]

**5.3 U Visa Petitioners in Removal Proceedings.**

**5.3.1 Petitioning While in Proceedings.** Aliens in pending removal, exclusion, or deportation proceedings may petition for a U visa. If an alien in removal proceedings states that he or she has filed a U visa petition with USCIS, provides proof of such filing, and requests that OPLA join a motion to terminate removal proceedings, OPLA will consider on a case-by-case basis whether or not to exercise its discretion to join a motion to terminate proceedings before the immigration judge or the Board of Immigration Appeals while the Form I-918 is being adjudicated.[13] Determinations of whether to join a motion to

---

[10] 8 C.F.R. § 214.14(c)(5)(i).
[11] Id.
[12] 8 C.F.R. § 214.14(c)(5)(ii).
[13] 8 C.F.R. § 214.14(c)(1)(i).

terminate in such cases will be made consistent with Section 5.2.2 and relevant OPLA guidance regarding the exercise of prosecutorial discretion.[14]

**5.3.2 Effect of USCIS U Visa Waiting List Determination, Approval, or Denial on Proceedings.** If USCIS places the U visa petitioner on the waiting list while he or she is still in pending removal proceedings, OPLA may move, or join a motion, to dismiss the removal proceedings without prejudice.

If, after a final order of exclusion, deportation, or removal has been issued by an immigration judge, USCIS places the U visa petitioner on the waiting list or approves the petition, OPLA may join a motion to reopen and dismiss proceedings, without prejudice.[15] Orders of exclusion, deportation, or removal issued by DHS are cancelled by operation of law as of the date of USCIS's approval of Form I-918.[16]

If USCIS denies the U visa petition and removal proceedings were previously dismissed, then DHS may file a new Form I-862, *Notice to Appear*, to initiate proceedings against the individual.[17]

**6. Recordkeeping.** Records in EARM and PLAnet will be retained permanently until the National Archives and Records Administration issue formal guidance.

**7. Authorities/References.**

**7.1.** *Victims of Trafficking and Violence Protection Act of 2000*, Pub. L. No. 106-386, 114 Stat. 1464.

**7.2.** *Violence Against Women and Department of Justice Reauthorization Act of 2005*, Pub. L. No. 109-162, Tit. VIII, 119 Stat. 3053-3077.

**7.3.** *William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008*, Pub. L. No. 110-457, 122 Stat. 5044.

**7.4.** *Immigration and Nationality Act of 1952*, as amended (INA), Pub. L. No. 82-414, 66 Stat. 163.

**7.5.** 8 U.S.C. § 1101(a)(15)(U); INA § 101, U nonimmigrant definition.

**7.6.** 8 U.S.C. § 1367, Penalties for disclosure of information.

**7.7.** 8 C.F.R. § 214.14, Alien victims of certain qualifying criminal activity.

---

[14] *See, e.g.*, Tracy Short, Principal Legal Advisor, *Guidance to OPLA Attorneys Regarding the Implementation of the President's Executive Orders and the Secretary's Directives on Immigration Enforcement* (Aug. 15, 2017).
[15] 8 C.F.R. § 214.14(c)(5)(i).
[16] *Id.*
[17] 8 C.F.R. § 214.14(c)(5)(ii).

**7.8.** 8 C.F.R. § 1241.6, Administrative stay of removal.

**7.9.** 8 C.F.R. § 241.6, Administrative stay of removal.

**7.10.** DHS Instruction Number 002-02-001, *Implementation of Section 1367* (Nov. 7, 2013).

**7.11.** DHS Directive 002-02, *Implementation of Section 1367 Information Provisions* (Nov. 1, 2013).

**7.12.** HSI Delegation Order 10006.1, *Authority to Issue U Nonimmigrant Status Certifications within Homeland Security Investigations* (Nov. 18, 2011).

**7.13.** HSI HB 18-06, *U Nonimmigrant Status (U Visa) Handbook* (Sep. 21, 2018).

**7.14.** Department of Homeland Security, *U and T Visa Law Enforcement Resource Guide for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors, Judges and Other Government Agencies* (Jan. 4, 2016).

**7.15.** Delegation Order 10001.2, *Authority to Issue U Nonimmigrant Status Certifications* (Oct. 4, 2012).

**7.16.** Tracy Short, Principal Legal Advisor, *Guidance to OPLA Attorneys Regarding the Implementation of the President's Executive Orders and the Secretary's Directives on Immigration Enforcement* (Aug. 15, 2017).

**7.17.** OPR Delegation Order 10001.2, *Authority to Issue U Nonimmigrant Status Certifications within the Office of Professional Responsibility* (Oct. 11, 2012).

**7.18** OPR Investigative Guidebook, *Section 3.40.8 U Nonimmigrant Status* (Oct. 2012).

**8.** **Attachments.** None.

**9.** **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

**Matthew T. Albence**
**Acting Director**
**U.S. Immigration and Customs Enforcement**

# EXHIBIT G

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 11005.3:** **Using a Victim-Centered Approach with Noncitizen Crime Victims**

**Issue Date:** *12/2/2021*
**Superseded:** 11005.2: *Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners* (Aug. 2, 2019)

1. **Purpose/Background.** This Directive sets forth U.S. Immigration and Customs Enforcement (ICE) policy regarding civil immigration enforcement actions involving noncitizen[1] crime victims, including applicants[2] for and beneficiaries of victim-based immigration benefits and Continued Presence.

   The duty to protect and assist noncitizen crime victims is enshrined in, among other laws, the Violence Against Women Act (VAWA)[3] and its reauthorizations and the Trafficking Victims Protection Act (TVPA)[4] and its reauthorizations. Congress created victim-based immigration benefits to encourage noncitizen victims to seek assistance and report crimes committed against them despite their undocumented status. When victims have access to humanitarian protections, regardless of their immigration status, and can feel safe in coming forward, it strengthens the ability of local, state, and federal law enforcement agencies, including ICE, to detect, investigate, and prosecute crimes.

   Coupled with available humanitarian protections, applying a victim-centered approach minimizes any chilling effect that civil immigration enforcement actions may have on the willingness and ability of noncitizen crime victims to contact law enforcement, participate in investigations and prosecutions, pursue justice, and seek benefits. A victim-centered approach encourages victim cooperation with law enforcement, engenders trust in ICE agents and officers, and bolsters faith in the entire criminal justice and civil immigration systems.

2. **Policy.** ICE will exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by noncitizen crime victims.[5]

---

[1] For purposes of this Directive, "noncitizen" means any person as defined in section 101(a)(3) of the Immigration and Nationality Act (INA).

[2] This Directive uses the terms applicant, petitioner, and self-petitioner interchangeably.

[3] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 17 (1994).

[4] Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000).

[5] *See* ICE Directive No. 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (June 17, 2011).

To that end, absent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits. In addition, when necessary and appropriate, ICE will coordinate with U.S. Citizenship and Immigration Services (USCIS) to seek expedited adjudication of victim-based immigration applications and petitions.

Additionally, ICE officers and agents may encounter noncitizen victims of crime who are not the beneficiary of victim-based immigration benefits and do not have pending applications for such benefits. Accordingly, in the course of their duties, ICE officers and agents must look for indicia or evidence that suggests a noncitizen is a victim of crime, such as being the beneficiary of an order of protection or being the recipient of an eligibility letter from the Office of Trafficking in Persons. The fact that someone is a victim of crime and, where applicable, may be eligible for victim-based immigration benefits for which they have not yet applied, is a positive discretionary factor that must be considered in deciding whether to take civil immigration enforcement action against the noncitizen or to exercise discretion, including but not limited to release from detention.

2.1. **Applicants for and beneficiaries of victim-based immigration benefits.** When a noncitizen has a pending or approved application or petition for a victim-based immigration benefit, absent exceptional circumstances, ICE will exercise discretion to defer decisions on civil immigration enforcement action against the applicant or petitioner (primary and derivative) until USCIS makes a:

a) Final determination for pending T visa applications and Special Immigrant Juvenile (SIJ) petitions;

b) Negative bona fide determination or waiting list determination for pending U visa petitions; or

c) Negative prima facie determination for pending VAWA petitions.

2.2. **Assisting law enforcement partners.** Absent exceptional circumstances, during the pendency of any known criminal investigation or prosecution, ICE will not take civil immigration enforcement action against victims and witnesses without approval from Headquarters Responsible Officials and may, where applicable and appropriate, issue deferred action or a stay of removal to victims and witnesses. Where available information indicates a noncitizen may be a noncitizen crime victim or witness, ICE should identify victim status as soon as practicable when victim status is unknown or unclear.

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Bona Fide Determination.** A USCIS determination that a U visa petition has been initially reviewed and:

a) Is complete and properly filed; and

b) Includes completed biometric and biographical background checks.

A U visa petitioner may receive employment authorization and a grant of deferred action from USCIS if USCIS finds the petition bona fide and the petitioner does not pose a risk to public safety or national security and merits a favorable exercise of discretion. Where a bona fide determination is made, USCIS considers the petitioner to have established prima facie evidence of eligibility for the benefit within the meaning of INA § 237(d)(1).

**3.2. Civil Immigration Enforcement Action.** A civil immigration enforcement or removal determination, decision, or action that includes, but is not limited to, a decision whether or not to:

a) Issue a detainer or assume custody of a noncitizen subject to a previous detainer;

b) Issue, reissue, serve, file, or cancel a Notice to Appear;

c) Focus resources on administrative violations or conduct;

d) Stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;

e) Detain or release from custody subject to conditions;

f) Grant deferred action or parole; and

g) When and under what circumstances to execute final orders of removal.

**3.3. Continued Presence.** Continued Presence is an ICE-approved immigration designation requested by law enforcement nationwide for human trafficking victims. Continued Presence allows trafficking victims to lawfully remain in the U.S. temporarily and work during the investigation into the human trafficking-related crimes committed against them and during any civil action under 18 U.S.C. § 1595 filed by the victims against their traffickers.

**3.4. Exceptional Circumstances** generally exist only in the following circumstances:

a) The noncitizen poses national security concerns; or

b) The noncitizen poses an articulable risk of death, violence, or physical harm to any person.

**3.5. Field Responsible Official (FRO).** The highest-ranking official in any ICE field location. This includes Special Agents in Charge (SACs), Field Office Directors (FODs), ICE Attachés, and any other officials who have been designated, in writing, by the Director.

**3.6. Headquarters Responsible Officials (HRO).** The Executive Associate Directors (EADs) of Enforcement and Removal Operations (ERO), Homeland Security Investigations (HSI), and Management and Administration (M&A); the Associate Director of the Office of Professional Responsibility (OPR); and the Assistant Directors, Officers, or equivalent positions who report directly to the Director, Deputy Director, or Chief of Staff.

**3.7. Prima Facie Determination.** A USCIS determination that a VAWA self-petition has been initially reviewed and:

a) Is complete and properly filed; and

b) Found to have addressed each of the eligibility requirements.

**3.8. Victim-based Immigration Benefits.** Immigration benefits adjudicated by USCIS for noncitizen crime victims and their qualifying family members, including T nonimmigrant status (T visa) for qualifying human trafficking victims, U nonimmigrant status (U Visa) for qualifying victims of crime, VAWA relief[6] for qualifying domestic violence victims, SIJ classification for qualifying children who have been abused, neglected, or abandoned by one or both parents.

**3.9. Victim-centered Approach.** An approach broadly adopted by federal law enforcement agencies whereby equal value is placed on the identification and stabilization of victims and on the deterrence, investigation, and prosecution of perpetrators. It should be applied to policymaking and civil immigration enforcement actions to the greatest extent possible, to the extent consistent with law. The goal of a victim-centered investigation and prosecution is to focus the investigation and prosecution around the victim while minimizing any undue stress, harm, and trauma to the victim.

**3.10. Waiting List Determination.** A USCIS decision on a U visa petition that is the functional equivalent of a full adjudication on the merits of the petition, including complete biometric and biographical background checks and adjudication of any accompanying waivers of inadmissibility. Once determined approvable by USCIS, a petitioner is placed on the waiting list when, due solely to the statutory cap, a U-1 nonimmigrant visa is not currently available. When a U visa petitioner is placed on the waiting list, by regulation, USCIS will grant deferred action or parole to the noncitizen and any qualifying family members and may afford them employment authorization..[7]

**4. Responsibilities.**

**4.1. HROs** are responsible for:

[6] VAWA relief includes the VAWA Self-Petition, waiver of the joint filing requirement for Petition to Remove Conditions on Residence; VAWA Cuban Adjustment Act; VAWA Haitian Refugee Immigration Fairness Act; VAWA Nicaraguan Adjustment and Central American Relief Act; VAWA Suspension of Deportation; and VAWA Cancellation of Removal.

[7] 8 C.F.R. § 214.14(d).

a) Ensuring compliance with the provisions of this Directive;

b) Reporting to the ICE Office of the Director (through the Office of the Deputy Director), on a regular basis, the civil immigration enforcement actions of their FROs involving applicants for and beneficiaries of victim-based immigration benefits;

c) Preparing and/or providing for training relevant to carrying out the provisions of this Directive;

d) Assigning a headquarters-level point of contact (POC) for field personnel regarding victim-based immigration benefits, coordinating with USCIS, noncitizens, and noncitizens' attorneys or representatives in cases in which noncitizens have applied for such benefits; and

e) Developing directorate- or program-level policies and procedures as needed to ensure compliance with this Directive, and consulting with and obtaining approval from the Office of the Director, through the ICE Office of Policy and Planning, prior to issuing any such guidance.

**4.2. FROs** are responsible for:

a) Ensuring that personnel in their areas of responsibility (AORs) comply with this policy and related policies, guidance, and standard operating procedures;

b) Ensuring personnel in their AORs complete all required training, including any annual refresher training;

c) Assigning a POC within their AOR regarding victim-based immigration benefits, coordinating with USCIS, noncitizens, and noncitizens' attorneys or representatives in cases in which noncitizens have applied for such benefits;

d) Coordinating, through their field-level POCs, with the headquarters-level POCs assigned by the HROs;

e) Reporting monthly on civil immigration enforcement actions involving applicants for and beneficiaries of victim-based immigration benefits in their AORs to their HROs; and

f) Ensuring appropriate mechanisms exist for coordination with other ICE Directorates and Program Offices.

**4.3. OPR SACs** are responsible for signing vetted U visa certifications for noncitizen victims of crime related to OPR investigations.

**4.4. HSI SACs** are responsible for:

a) Signing Continued Presence requests, vetted T visa declarations for noncitizen trafficking victims, and U visa certifications for noncitizen victims of qualifying criminal activity related to HSI investigations;

b) Adjudicating requests for deferred action from noncitizen victims and witnesses of crime, including applicants for and beneficiaries of victim-based immigration benefits;

c) Seeking guidance from the Office of the Principal Legal Advisor (OPLA) if planning to deny a deferred action request from a noncitizen victim of crime when ICE is aware they are a victim, and aware of their intent to pursue an immigration benefit, or is aware that they have a pending or approved application for a victim-based benefit;

d) Forwarding requests for Continued Presence to the Center for Countering Human Trafficking; and

e) Developing local procedures to carry out this directive which must include procedures to respond, in appropriate cases, to noncitizens detained in ICE custody.

**4.5. ERO FODs** are responsible for:

a) Adjudicating stay of removal or deferred action requests for noncitizen victims and witnesses of crime, including applicants for and beneficiaries of victim-based immigration benefits, as well as victims and witnesses of crimes that occurred in ICE custody and for which the investigation is ongoing;

b) Seeking guidance from OPLA if planning to issue a denial to a stay of removal request from a noncitizen victim of crime when ICE is aware they are a victim, and their intent to pursue an immigration benefit, or pending or approved application for a victim-based benefit; and

c) Developing local procedures to carry out this directive which must include methods to identify victims of crime as encountered and in detention and referring them to appropriate law enforcement authorities as needed.

**4.6. ICE Agents and Officers** are responsible for:

a) Identifying victims of crime as encountered and in custody through pro-actively inquiring with noncitizens, where available information indicates a noncitizen may be a noncitizen crime victim or witness, about any prior victimization, any pending petitions or applications, and, where appropriate, accessing USCIS systems for evidence of any pending or approved victim-based applications or petitions, notifying supervisors of their status, properly recording this information, and referring victims to appropriate law enforcement authorities, as appropriate;

b) Implementing a victim-centered approach to civil immigration enforcement, including taking proactive steps to assist victims;

c) Coordinating with AOR POCs for noncitizens pursuing victim-based immigration benefits;

d) Using all appropriate prosecutorial discretion related to victims generally and, absent exceptional circumstances, refraining from taking civil immigration enforcement action against applicants for and beneficiaries of victim-based immigration benefits; and

e) Supporting victims in criminal investigations through deferred action, Continued Presence, T visa declarations, or U visa certifications, as appropriate.

**5. Procedures/Requirements.**

**5.1. Identifying Applicants for and Beneficiaries of Victim-Based Immigration Benefits.** Except where exigent circumstances exist that make it impracticable to do so, before ICE takes civil immigration enforcement action against a noncitizen, ICE officers and agents must consult available records and databases, including the Central Index System database (or any successor information technology system), to determine whether the noncitizen is a beneficiary of victim-based immigration benefits, or has a pending application or petition for such benefit.[8] When exigent circumstances exist that made consultation impracticable prior to taking a civil immigration enforcement action, ICE officers and agents must consult available records and databases as soon as practicable following the civil immigration enforcement action. A noncitizen may become a victim of crime at any point in the immigration enforcement lifecycle. Accordingly, whenever reviewing cases in the course of their duties, ICE officers and agents must routinely check for information suggesting that a noncitizen has become a victim of crime that could allow the noncitizen to apply for an immigration benefit; in such cases, ICE officers and agents must take actions appropriate and consistent with this Directive.

**5.2 Returning A files to USCIS.** Where an application or petition for a victim-based immigration benefit is pending, ICE should create a temporary A-File and return the original A-File to USCIS as soon as practicable so that USCIS can adjudicate the benefit request.

**5.3 Adhering to 8 U.S.C. § 1367 Protections.** ICE officers and agents are prohibited from disclosing any information, with limited exceptions, regarding applicants for and beneficiaries of Continued Presence, T visas, U visas, and VAWA relief. Additionally, ICE personnel cannot rely upon information solely provided by a prohibited source to take a civil immigration enforcement action against an applicant or beneficiary, without first

[8] DHS Directive No. 002-02, *Implementation of Section 1367 Information Provisions* (Nov. 1, 2013), DHS Instruction No. 002-02-001, *Implementation of Section 1367* (Nov. 7, 2013).

corroborating the information from an independent source. In all cases, officers and agents should consult and confirm current policy prior to disclosing any information.

5.4 **Deferring to USCIS Adjudications.** ICE will review noncitizen crime victims' USCIS notices and/or the CLAIMS database (or any successor information technology system) to determine whether USCIS has made a bona fide determination, waitlist determination, approval, or final denial of a victim-based immigration benefit(s) (including the administrative appeals process). Recognizing that systems information may not be updated in real-time, where there is evidence that a noncitizen may be pursuing a victim-based immigration benefit that is not currently reflected in information technology systems available to ICE, officers or agents should work with their AOR POC to confirm whether any applications for such benefits exist. ICE generally will endeavor to act according to the status of the application as follows:

a) Pending applications. When encountering a noncitizen with a pending application or petition for a victim-based immigration benefit and the noncitizen is detained in ICE custody and their release is prohibited by law or exceptional circumstances exist, ICE will request that USCIS expedite the adjudicative action and will notify USCIS if the noncitizen is subsequently released.

Except where exceptional circumstances exist, or if USCIS has administratively closed a case for failure of the applicant to prosecute the application, a noncitizen with a pending victim-based application or petition who is subject to an administratively final removal order should generally be issued a stay of removal. In cases in which the noncitizen is in pending removal proceedings before the immigration court, ICE officers and agents should inform OPLA so that it may consider whether agreeing to a continuance of removal proceedings would be appropriate. These decisions should be reviewed where the noncitizen subsequently receives a criminal conviction that merits prioritization under current DHS or ICE civil immigration enforcement priorities or engages in acts that otherwise create exceptional circumstances.

Where USCIS has granted such a noncitizen deferred action or made a bona fide determination or prima facie determination on their application, ICE officers and agents should notify OPLA so that it may consider whether seeking dismissal of proceedings would be appropriate. Where the noncitizen is subject to a final order, ERO should review for a discretionary stay of removal.

b) Waitlisted and approved benefits. If USCIS issues an employment authorization document based upon an bona fide determination to a U visa petitioner, waitlists a U visa petitioner, issues a prima facie determination for a VAWA petitioner, or approves any victim-based immigration benefit, ICE should review the case for the exercise of prosecutorial discretion, however appropriate.

c) Denied benefits. If USCIS denies the benefit, ERO may continue to process the noncitizen for removal, consistent with current enforcement priorities.

d) Exceptions. ICE may request that USCIS conduct expedited adjudications for noncitizens who are detained in ICE custody and their release is prohibited by law or exceptional circumstances exist, to ensure that civil immigration enforcement action may continue as expeditiously as possible for those noncitizens determined to be a priority under civil immigration enforcement guidance.

**5.5 Respecting ICE Continued Presence Authorization.** Continued Presence is an ICE approved immigration designation requested by law enforcement nationwide for human trafficking victims. Absent exceptional circumstances, ICE agents and officers will not take civil immigration enforcement action against human trafficking victims with Continued Presence.

**5.6 Detention.** The fact that an individual is a victim of crime is a positive discretionary factor when weighing civil immigration enforcement decisions. Accordingly, ICE officers must consider any and all evidence that an individual has been a victim of crime—such as the receipt of victim-based immigration benefits or pending applications for such benefits, as well any other indicia or evidence that suggests the individual is a victim of crime (such as being the beneficiary of an order of protection or being the recipient of an eligibility letter from the Office of Trafficking in Persons)—in rendering custody decisions.

If USCIS approves a victim-based immigration benefit for a noncitizen detained in ICE custody, the noncitizen should be considered for release from detention so long as their release is not prohibited by law and no exceptional circumstances exist.

**5.7 Implementing a Victim-Centered Approach to Civil Immigration Enforcement.** ICE will adopt measures to proactively identify and assist victims, such as initiating motions in proceedings, providing information about victim-based immigration benefits, and referring identified victims to appropriate law enforcement authorities. HQ and AOR POCs responsible for victim-based immigration benefits shall be responsible for ensuring that such measures are identified, developed, and introduced, as well as working to ensure that case-specific actions are carried out.

**5.8 Approvals for Civil Immigration Enforcement Actions.** ICE should pursue civil immigration enforcement action against beneficiaries of victim-based immigration benefits only in exceptional circumstances (as defined in Section 3.3), or where it does not appear that the criminal activity directly stems from their victimization, and with approval from the applicable HRO.

a) In deciding whether to take civil immigration enforcement action against a noncitizen applicant for or beneficiary of victim-based immigration benefits, the agent or officer must consider, in consultation with the HRO through the chain of command, whether the civil immigration enforcement action is otherwise an appropriate use of ICE's limited resources and fits within applicable ICE and DHS enforcement priorities and the victim-centered approach to enforcement.

b) In requesting approval, the agent or officer must submit a written justification through the chain of command to the HRO explaining why the action is appropriate in the context of this Directive.

The approval to carry out a civil immigration enforcement action against a particular noncitizen victim applies to that noncitizen alone and will not authorize civil immigration enforcement action against other noncitizens encountered during an operation.

c) If exigent circumstances make it impracticable to obtain preapproval for a civil immigration enforcement action, the agent or officer may conduct the civil immigration enforcement action and then must request approval from the HRO within 48 hours following the action with an explanation of the exigent circumstances, through the chain of command, as described above.

**5.9 Identifying Noncitizen Crime Victims.**

a) If ERO identifies a noncitizen crime victim who has not reported the crime to law enforcement and desires to do so, ERO will provide appropriate contact information for local, state or federal law enforcement authorities. When detained, ERO will ensure that the noncitizen has access to a private area in which to speak to law enforcement in person or telephonically about the crime.

1) ERO will document victim identification and any actions taken in the A-File and EARM, and note whether the noncitizen applied for, or intends to apply for, victim-based immigration benefits;

2) ERO officers will report the contact to a supervisor, per the processes established by the FRO in their AOR, and any Field Office designated POC for human trafficking, as applicable; and

3) ERO will provide the victim with information regarding legal services and victim-based immigration benefits.

**5.10 Tracking and Reporting Civil Immigration Enforcement Decisions Against Applicants for and Beneficiaries of Victim-Based Immigration Benefits to the Office of the Director.**

a) All decisions to pursue civil immigration enforcement action against applicants for and beneficiaries of victim-based immigration benefits will be recorded in the appropriate case management systems.

b) Until systems are updated to provide automated reporting, the FROs will provide to HROs a monthly report of the number of civil immigration enforcement actions taken against applicants for and beneficiaries of U, T, VAWA, and SIJ benefits and accompanying narrative justification for the enforcement action taken.

c) The HROs will provide the monthly reports to the Office of the Director (through the Office of the Deputy Director).

**5.11 Human Trafficking Victims.** The fact that a human trafficking victim engages in criminal acts as a direct result of their victimization does not impact the fact that the noncitizen is a crime victim. ICE personnel will consider human trafficking victim status when making civil immigration enforcement actions regarding a victim who engaged in unlawful activity as a direct result of force, fraud, or coercion associated with being trafficked. Unlawful activity includes, but is not limited to, engaging in prostitution, entering the country without documentation, or working without documentation or false documents.[9] ICE personnel must consider the noncitizen's victim status in relation to their criminal actions when making decisions whether to take civil immigration enforcement action.[10]

**5.12 Domestic Violence Charges.** Some convictions for domestic violence may be result of self-defense by a victim of domestic violence against an abuser, and the context of any arrests should be carefully evaluated if such charges or convictions are a part of determining the existence of exceptional circumstances. Given the complexity of these situations, officers and agents are encouraged to consult with the charging law enforcement agency as well as the HQ POC before taking civil immigration enforcement action.

**6. Training.** ICE officers and agents must complete required training related to this Directive, including annual refresher training. Such training must include an overview of the victim-centered approach, including a description of victim-based immigration benefits, and an overview of what discretion might be appropriate in various circumstances.

**7. Recordkeeping.** All relevant documents produced or provided in accordance with this Directive must be maintained in EARM and PLAnet in accordance with an applicable National Archives and Records Administration (NARA) General Records Schedule (GRS) or a NARA-approved agency-specific records control schedule. If the records are not subject to a records schedule, they must be maintained indefinitely by the agency. In the event the records are subject to a litigation hold, they may not be disposed of under a records schedule until further notification.

**8. Authorities/References.**

**8.1.** *Victims of Trafficking and Violence Protection Act of 2000*, Pub. L. No. 106-386, 114 Stat. 1464.

**8.2.** *Violence Against Women and Department of Justice Reauthorization Act of 2005*, Pub. L. No. 109-162, Tit. VIII, 119 Stat. 3053-3077.

---

[9] White House, *National Action Plan to Combat Human Trafficking* (2020).

[10] 6 U.S.C. § 645(b)(2)(B).

**8.3.** *William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008*, Pub. L. No. 110-457, 122 Stat. 5044.

**8.4.** *Immigration and Nationality Act of 1952*, as amended, Pub. L. No. 82-414, 66 Stat. 163.

**8.5.** 8 U.S.C. § 1367, Penalties for disclosure of information.

**8.6.** 8 C.F.R. § 204.11, Special immigrant juvenile classification.

**8.7.** 8. C.F.R. § 204.2, Petitions for relatives, widows and widowers, and abused spouses and children.

**8.8.** 8 C.F.R. § 214.11, Alien victims of severe forms of trafficking in persons.

**8.9.** 8 C.F.R. § 214.14, Alien victims of certain qualifying criminal activity.

**8.10.** DHS Directive 002-02, *Implementation of Section 1367 Information Provisions* (Nov. 1, 2013).

**8.11.** DHS Instruction Number 002-02-001, *Implementation of Section 1367* (Nov. 7, 2013).

**8.12.** ICE Directive 11090.1, *Interim Guidance: Civil Immigration Enforcement and Removal Priorities*, (Feb. 18, 2021).

**8.13.** ICE Directive 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (June 17, 2011).

**8.14. Attachments.** None.

**9.** **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

**Tae D. Johnson**
**Acting Director**
**U.S. Immigration and Customs Enforcement**

# EXHIBIT H

Policy Number: 11005.4

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536

**U.S. Immigration and Customs Enforcement**

MEMORANDUM FOR: All ICE Employees

FROM: Caleb Vitello
Acting Director

SUBJECT: Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits

---

Purpose

This memorandum provides interim guidance governing U.S. Immigration and Customs Enforcement (ICE) civil immigration enforcement actions involving aliens who are known beneficiaries of victim-based immigration benefits or are known to have pending applications or petitions for such benefits. ICE Directive 11005.3: Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021) and ICE Policy Statement 10076.1: *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (Jun. 17, 2011) are now rescinded and superseded by this interim guidance.[1]

This interim guidance is effective immediately and remains in effect until superseded.[2]

Background

The Violence Against Women Act (VAWA)[3] and its reauthorizations and the Trafficking

---

[1] Current beneficiaries of victim-based immigration benefits may be subject to civil immigration enforcement, subject to applicable legal limitations, at the discretion of Field Office Directors (FODs) and Special Agents in Charge (SACs) in consultation with the Office of the Principal Legal Advisor (OPLA), where the totality of circumstances warrant enforcement and/or the termination of the victim-based immigration benefit.

[2] Nothing in this interim guidance should be construed to impact or cease the mission or work of the Congressionally appropriated DHS Center for Human Trafficking and its Victim Assistance Program.

[3] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994).

Victims Protection Act[4] and its reauthorizations, among other laws, permit qualifying aliens to apply or petition for certain victim-based immigration benefits. ICE Directive 11005.3: Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021) and ICE Policy Statement 10076.1: Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (Jun. 17, 2011) generally required ICE officers and agents, absent exceptional or exigent circumstances, to refrain from taking civil immigration enforcement actions against known beneficiaries of victim-based immigration benefits, or primary and derivative applicants or petitioners for such benefits. Further, when encountering an alien not known to be an approved beneficiary of victim-based immigration benefits or to have applied or petitioned for such benefits, ICE officers and agents were required to look for indicia or evidence suggesting an alien was a victim of crime (e.g., being the beneficiary of an order of protection) and consider such information as a positive discretionary factor in determining whether to take civil immigration enforcement action, including but not limited to release from detention. Finally, ICE officers and agents were required to coordinate with U.S. Citizenship and Immigration Services (USCIS) to seek expedited adjudication of victim-based immigration applications and petitions, when necessary and appropriate.

<u>Policy</u>

On January 20, 2025, President Donald J. Trump issued an Executive Order (EO) entitled "Protecting the American People Against Invasion," which states it is the policy of the United States to achieve the "total and efficient enforcement of [immigration] laws" against all inadmissible and removable aliens. Accordingly:

1) ICE officers and agents should coordinate and deconflict internally, and with local, state, and other federal law enforcement, as appropriate, when determining whether to take civil immigration enforcement actions to ensure criminal investigative and other enforcement actions will not be compromised;

2) When encountering an alien who is the beneficiary of a victim-based immigration benefit, ICE officers and agents should consult with the Office of the Principal Legal Advisor (OPLA) through their Field Office Directors or Special Agents in Charge prior to conducting a civil enforcement action against such known beneficiaries, or against primary and derivative applicants or petitioners for such benefits, to ensure any such action is consistent with applicable legal limitations;

3) When encountering an alien during a civil immigration enforcement action who is not known to be an approved beneficiary of victim-based immigration benefits or to have applied or petitioned for such benefits, ICE officers and agents are not required to affirmatively seek to identify indicia or evidence suggesting an alien is a victim of a crime or consider such

---

[4] Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000).

evidence as a positive discretionary factor in determining whether to take civil immigration enforcement action; and

4) ICE will no longer routinely request expedited adjudications from USCIS. ICE officers and agents may continue to do so subject to a case-by-case determination that it is in ICE's best interests.

<u>Implementation</u>

*Adherence to Laws*

In implementing this guidance, ICE personnel remain bound to adhere to all applicable statutory and policy requirements including the provisions of 8 U.S.C. § 1367 and Department of Homeland Security (DHS) Instruction No. 002-02-001, Rev. 00.1: Implementation of Section 1367 Information Provisions (May 28, 2019). Notably:

1) ICE officers and agents may not rely on information obtained *solely* from a "prohibited source" when making an adverse determination of admissibility or deportability. Such information must be independently corroborated with information from a non-prohibited source and documented within the relevant system of record. Prohibited sources for purposes of this guidance are:
   a. A spouse or parent who battered the alien or subjected the alien to extreme cruelty;
   b. A member of the spouse's or parent's family residing in the same household as the abusive spouse or parent;
   c. A spouse or parent who battered the alien's child or subjected the alien's child to extreme cruelty (unless the alien actively participated in the battery or extreme cruelty);
   d. A member of the spouse's or parent's family residing in the same household as the alien who has battered the alien's child or subjected the alien's child to extreme cruelty when the spouse or parent consented to or acquiesced in such battery or cruelty and the alien did not actively participate in such battery or cruelty);
   e. In the case of an alien who is applying for a U visa, the perpetrator of the substantial physical or mental abuse and the criminal activity; and
   f. In the case of an alien who is applying for a T visa, Continued Presence, or immigration relief as a VAWA self-petitioner, the trafficker or perpetrator.

2) With respect to information relating to a beneficiary of a pending or approved application for victim-based immigration benefits, ICE personnel are generally prohibited from permitting use by or disclosure to anyone other than a sworn officer or employee of DHS, the Department of State, or the Department of Justice for legitimate agency purposes. Penalties for violating this general prohibition include disciplinary action and civil

monetary penalties. ICE personnel should consult with OPLA in advance of disclosing information protected under 8 U.S.C. § 1367 to other parties.

No Private Right

This memorandum provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

# EXHIBIT I

# U and T Visa Law Enforcement Resource Guide

## for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors, Judges, and Other Government Agencies

Homeland Security

# U and T Visa Resource Guide

## Table of Contents


Introduction ........ 3
U Visa Basics ........ 4
Review and Tips for Form I-918B ........ 8
T Visa Basics ........ 9
Review and Tips for Form I-914B ........ 13
Best Practices for Certifying Agencies ........ 14
Answers to Frequently Asked Questions ........ 15
Other Law Enforcement Tools to Assist in Investigations and Prosecutions ........ 27
Other Forms of Relief for Victims ........ 28
DHS Contact Information ........ 29
Resources ........ 32

# Introduction

As a federal, state, local, tribal or territorial law enforcement officer, prosecutor, judge, or other government official, you play an important role in the application process for U nonimmigrant status (also known as a U visa) for victims of certain crimes and T nonimmigrant status (also known as a T visa) for victims of human trafficking. U and T visas not only help protect victims of crime, but are also key tools for you in your work. Lack of legal immigration status in the United States may be among the reasons for some victims choosing not to come forward to work with law enforcement. Perpetrators and human traffickers also use victims' lack of legal status as leverage to exploit and control them. By stabilizing their status in the United States, immigration relief can be critical to providing victims of crime a greater sense of security that also makes it easier for them to assist you with your law enforcement and prosecutorial efforts.

In order to qualify for the U and T visa, the victim must prove to U.S. Citizenship and Immigration Services (USCIS) that he or she cooperated with law enforcement.[1] USCIS is the federal component of the Department of Homeland Security (DHS) responsible for adjudicating (approving or denying) U and T visa applications. One of the primary ways that a victim may demonstrate cooperation is by submitting a signed statement from law enforcement as part of the application. In the U visa context, this statement is a required part of the petition and is known as USCIS Form I-918, Supplement B, U Nonimmigrant Status Certification (Form I-918B or certification). In the T visa context, this statement is known as USCIS Form I-914, Supplement B, Declaration of Law Enforcement Officer for Victim in Trafficking of Persons (Form I-914B or declaration). While not required in the T visa context, the signed declaration provides valuable evidence of the victim's cooperation.

Because these signed statements from law enforcement are such critical pieces of U and T visa applications, victims may approach you to request that you certify their cooperation. You may also encounter victims who are afraid or reluctant to cooperate in a criminal investigation because they lack a lawful immigration status, and who are not aware that they may qualify for a U or T visa.

DHS has created this Resource Guide to inform you and address concerns about the role of law enforcement agencies within these visa programs. This Guide includes information about U and T visa requirements; the I-918B certification and I-914B declaration processes; best practices; answers to important and frequently asked questions from judges, prosecutors, law enforcement agencies, and other officials; where to look for more resources; and contact information for DHS personnel on U and T visa issues.

[1] See 8 CFR 1.1, 1.2, 100.1. Exceptions to the cooperation requirement exist for U and T visa applicants who are under age 18 or who have suffered trauma.

# U Visa Basics

## Why was the U visa created? How does it help law enforcement?

The Victims of Trafficking and Violence Prevention Act (VTVPA) of 2000[2] was enacted to strengthen the ability of law enforcement agencies to investigate and prosecute serious crimes and trafficking in persons, while offering protections to victims of such crimes without the immediate risk of being removed from the country. Congress, in the VTVPA, created the U nonimmigrant status program out of recognition that victims without legal status may otherwise be reluctant to help in the investigation or prosecution of criminal activity. Immigrants, especially women and children, can be particularly vulnerable to criminal activity like human trafficking, domestic violence, sexual assault, stalking, and other crimes due to a variety of factors, including but not limited to: language barriers, separation from family and friends, lack of understanding of U.S. laws, fear of deportation, and cultural differences. Accordingly, under this law, Congress sought not only to prosecute perpetrators of crimes committed against immigrants, but to also strengthen relations between law enforcement and immigrant communities.

## What is the U visa? What are the benefits to the victim?

The U visa is an immigration benefit for victims of certain crimes who meet eligibility requirements.[3]

USCIS may find an individual eligible for a U visa if the victim:

- Is the direct or indirect victim of qualifying criminal activity[4];
- Has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity;
- Has information about the criminal activity;[5] and
- Was helpful, is being helpful, or is likely to be helpful to law enforcement, prosecutors, judges, or other officials in the detection, investigation, prosecution, conviction, or sentencing of the criminal activity.[6]

Additionally, the victim must be admissible to the United States based on a review of his or her criminal history, immigration violations, and other factors. If found inadmissible, an individual may apply for a waiver of inadmissibility for which he or she may be eligible.

The U visa allows eligible victims to temporarily remain and work in the United States, generally for four years. While in U nonimmigrant status, the victim has an ongoing duty to cooperate with law enforcement and cannot unreasonably refuse to assist with the investigation or prosecution of the

---

[2] Pub. L. No. 106-386, 114 Stat. 1464-1548 (2000).

[3] http://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-u-nonimmigrant-status. See also INA 101(a)(15)(U).

[4] The criminal activity occurred in the United States or violated U.S. laws.

[5] If under the age of 16 or unable to provide information due to a disability, a parent, guardian, or next friend may possess the information about the criminal activity on the individual's behalf.

[6] If under the age of 16 or unable to provide information due to a disability, a parent, guardian, or next friend may assist on behalf of the individual.

criminal activity. If certain conditions are met, an individual with a U visa may apply for adjustment to lawful permanent resident status (i.e., seek a green card in the United States) after three years.

Additionally, certain family members of a U visa recipient may also be eligible to live and work in the United States as "derivative" U visa recipients based on their relationship with the principal recipient. These include:

- Unmarried children under the age of 21;
- Spouse;
- Parents of U visa petitioners under age 21; and
- Unmarried siblings under 18 years old of U visa petitioners under age 21.

By law, there is a 10,000 annual cap on U visas for principal applicants. However, USCIS continues to adjudicate applications even after the annual cap has been reached. Cases that qualify for approval after the cap has been reached receive "conditional approval" and work authorization based on "deferred action" until U visas become available.

## How does USCIS review U visa petitions?

USCIS takes several steps to determine whether a victim is eligible for a U visa. USCIS reviews the entire application, which includes the petition (Form I-918), Form I-918B certification, the victim's affidavit, as well as supporting evidence such as police reports, medical records, photographs, court documents, and witness affidavits. If the applicant is inadmissible due to, for example, prior criminal history, immigration violations, or security concerns, USCIS also reviews any application received for a waiver of inadmissibility. However, some inadmissibilities cannot be waived. As a part of its review of the U visa certification (Form I-918B), USCIS may contact the certifying official to ask if the victim has continued to provide assistance reasonably requested or to request other information. USCIS may also contact the certifying agency if any issues or questions arise during the adjudication based on information provided in the certification.

For all U visa petitioners and their qualifying family members, USCIS conducts a thorough background investigation including a Federal Bureau of Investigation (FBI) fingerprint check and name check. USCIS also reviews the petitioner's immigration records to assess whether any inadmissibility issues exist, such as the petitioner's criminal history, immigration violations, or any security concerns. The results of these checks, as well as any evidence that certifying officials and immigration authorities possess, may be considered when determining eligibility for a U visa. Because qualifying "derivative" family members are subject to the same background checks, it is possible that a derivative's adverse criminal or immigration background could result in a denial of derivative status even when the principal's petition has been approved.

## What is a U visa certification?

In order to be eligible for a U visa, the victim must submit a U visa certification completed by a certifying agency or official. USCIS Form I-918, Supplement B (Form I-918B or certification) is the U visa certification that a federal, state, local, tribal, and territorial law enforcement agency, prosecutor, judge, or other government official can complete for a victim who is petitioning USCIS for a U visa. The law enforcement certification explains the role the victim had, has, or will have in being helpful to the investigation or prosecution of the case.

Form I-918B and its instructions are available on the USCIS website at www.uscis.gov with the Form I-918

for the U visa. The certification must be signed by the certifying official with an original signature within the six months (6 months minus one day) immediately preceding the U visa petitioner's submission of Form I-918.

## What kind of information does the U visa certification provide?

The certification, Form-I-918B, is a required piece of evidence to help demonstrate:

- That a qualifying criminal activity has occurred;
- That the victim has information about the criminal activity; and
- That the victim was helpful, is being helpful, or is likely to be helpful in the detection, investigation, prosecution, conviction, or sentencing of criminal activity.

Law enforcement may also report information about any known or observed harm sustained by the victim. While Form I-918B asks the law enforcement official to provide information about the injury to the victim, the certifying official is not required to assess whether the victim suffered substantial physical or mental abuse as a result of the criminal activity. This is a requirement that the U visa petitioner must establish to the satisfaction of USCIS.

**Without a completed and signed U visa certification, the victim will not qualify for a U visa, as it is a required part of the application, and there is no exception to this requirement. However, by signing a U visa certification, the certifying agency, official, or judge is not sponsoring or endorsing the victim for a U visa, and the completed certification does not guarantee that USCIS will approve the U visa petition. USCIS considers the U visa certification as only one part of the evidence in support of the U visa petition.** USCIS determines the victim's credibility and whether to approve the petition based on the totality of the evidence and circumstances of each case.

The decision whether to sign a certification is at the certifying agency's discretion. Each certifying agency should exercise its discretion on a case-by-case basis consistent with applicable U.S. laws and regulations, and the policies and procedures outlined in this guide as well as any internal policies of the certifying agency.

## Which agencies may sign a U visa certification?

Certifying agencies include all authorities responsible for the detection, investigation, prosecution, conviction or sentencing of the qualifying criminal activity, including but not limited to:

- Federal, State Local, Tribal, and Territorial law enforcement agencies;
- Federal, State, Local, Tribal, and Territorial prosecutor's offices;
- Federal, State, Local, Tribal, and Territorial Judges;
- Federal, State, and Local Child and Adult Protective Services;
- Equal Employment Opportunity Commission;
- Federal and State Departments of Labor; and
- Other Federal, State, Local, Tribal, or Territorial government agencies that have criminal, civil, or administrative investigative or prosecutorial authority.

## What does "Helpful" in the detection, investigation, prosecution, conviction, or sentencing mean?

"Helpful" means the victim has been, is being, or is likely to assist law enforcement, prosecutors, judges, or other government officials in the detection, investigation, prosecution, conviction, or sentencing of the qualifying criminal activity of which he or she is a victim. This includes providing assistance when reasonably requested. This also includes an ongoing responsibility on the part of the victim to be helpful. Those who unreasonably refuse to assist after reporting a crime will not be eligible for a U visa. The duty to remain helpful to law enforcement exists even after a U visa is granted, and those victims who unreasonably refuse to provide assistance after the U visa has been granted will not be eligible to obtain lawful permanent residence and may have the visa revoked by USCIS. Certifying agencies should contact and inform USCIS of the victim's unreasonable refusal to provide assistance in an investigation or prosecution: LawEnforcement_UTVAWA.VSC@uscis.dhs.gov.

Law enforcement, prosecutors, judges or government officials can certify a U visa based on past, present, or the likelihood of future helpfulness of a victim. A current investigation, the filing of charges, a prosecution or conviction is not required to sign the law enforcement certification. An instance may occur where the victim has reported criminal activity, but an arrest, prosecution, or conviction cannot take place due to evidentiary or other circumstances. Examples of this include, but are not limited to, when the perpetrator has fled or is otherwise no longer in the jurisdiction, the perpetrator cannot be identified, or the perpetrator has been deported by federal law enforcement officials. There is no statute of limitations on signing the certification – one can be signed for a crime that happened many years ago or recently. A certification may also be submitted for a victim in a closed case. However, the victim must submit a recently signed certification with his or her U visa petition (signed within six months of submission), even if the crime certified did not recently occur.

## What constitutes a qualifying crime?

The following table shows the criminal activities that qualify a victim for the U visa.[7]

| | | |
|---|---|---|
| • Abduction<br>• Abusive Sexual Contact<br>• Blackmail<br>• Domestic Violence<br>• Extortion<br>• False Imprisonment<br>• Felonious Assault<br>• Female Genital Mutilation<br>• Fraud in Foreign Labor Contracting | • Hostage<br>• Incest<br>• Involuntary Servitude<br>• Kidnapping<br>• Manslaughter<br>• Murder<br>• Obstruction of Justice<br>• Peonage<br>• Perjury<br>• Prostitution<br>• Rape | • Sexual Assault<br>• Sexual Exploitation<br>• Slave Trade<br>• Stalking<br>• Torture<br>• Trafficking<br>• Witness Tampering<br>• Unlawful Criminal Restraint<br>• Related Criminal Activities 8 |

[7] These are not specific crimes or citations to a criminal code; various federal, state, and local statutes could fall into these general categories of crime. One exception is "Fraud in Foreign Labor Contracting,"" which is the federal offense defined at 18 USC 1351.

[8] Includes attempt, conspiracy, or solicitation to commit any of the above and other related crimes, as well as any similar activity where the elements of the crime are substantially similar. "Substantially similar" typically refers to a crime detected, investigated or prosecuted by a qualified certifying official that contains the same key elements as a qualifying criminal activity. For example, a simple robbery would not typically be a qualifying criminal activity. However, if the statute cited for the detection, investigation,

# Review and Tips for Completing Form I-918B

The following are important notes and tips on filling out the Form I-918B:

- USCIS has the sole authority to grant or deny a U visa. The certification does not guarantee that the U visa petition will be approved by USCIS.
- A certifying official's decision to sign a certification is completely discretionary and under the authority of that agency or official. Neither DHS nor any other federal agency has the authority to require or demand that any agency or official sign the certification. There is also no legal obligation to complete and sign Form I-918B.
- The Form I-918B should be completed by the certifying agency or official (and not the victim, or the victim's advocate or attorney).
- By signing a certification, the certifying agency or official attests that the information is true and correct to the best of the certifying official's knowledge.
- The head of the agency has the authority to sign certifications or to delegate authority to other agency officials in a supervisory role to sign certifications. You should only sign the certification if your agency has given you this authority.
- If a certifying agency has a written delegation of authority, provide a copy to USCIS to keep on file by emailing it to LawEnforcement_UTVAWA.VSC@USCIS.dhs.gov.
- Federal, state, local, tribal, or territorial judges may sign U visa certifications. Delegation of authority is not applicable to or required of certifications by judges.
- Return the signed Form I-918B to the victim (or the victim's attorney, representative, etc.). The certifying official should not send the signed certification separately to USCIS. The victim is required to send the original signed certification form along with his or her complete U visa petition to USCIS.
- Be prompt in providing the signed certification to the victim or the victim's attorney or representative. USCIS must receive the U visa petition, which includes the Form I-918B, within six (6) months of the date the Form I-918B was signed.
- If the certifying official is providing additional documents (e.g., a copy of the police report or court order, or judicial findings, additional statements, photos, etc.) along with the certification or if more space is needed to fill out any of the information on the form, the official should provide that additional information as advised by the form instructions.
- When completing the Form I-918B, certifying officials are encouraged to check the boxes for all qualifying criminal activities detected based on the facts of the case at the time of certification. Certifying officials should not limit the boxes that are checked to the criminal activities that the agency has decided to investigate or prosecute and should check all qualifying criminal activities present in the case.
- As requested on the Form I-918B, the certifying official should document the helpfulness of the victim and whether that victim refused to be helpful at any time throughout the investigation or prosecution.
- The certification form **must contain an original signature** and should be signed in a color of ink other than black for verification purposes. Photocopies, faxes, or scans of the certification form cannot be accepted by USCIS as an official certification.

---

or prosecution is armed robbery, this may be a qualifying criminal activity. In most jurisdictions, armed robbery contains the elements of felonious assault as delineated in the federal criminal statutes, therefore armed robbery may be "substantially similar" to the qualifying crime of felonious assault.

# T Visa Basics

## Why was the T visa created? How does it help law enforcement?

The Victims of Trafficking and Violence Prevention Act (VTVPA) of 2000[9] was enacted to strengthen the ability of law enforcement agencies to investigate and prosecute serious crimes and trafficking in persons, while offering protections to victims of such crimes without the immediate risk of being removed from the country. Congress, in the VTVPA, created the T nonimmigrant status ("T visa") program out of recognition that human trafficking victims without legal status may otherwise be reluctant to help in the investigation or prosecution of this type of criminal activity. Human trafficking, also known as trafficking in persons, is a form of modern-day slavery, in which traffickers lure individuals with false promises of employment and a better life. Immigrants can be particularly vulnerable to human trafficking due to a variety of factors, including but not limited to: language barriers, separation from family and friends, lack of understanding of U.S. laws, fear of deportation, and cultural differences. Accordingly, under this law, Congress sought not only to prosecute perpetrators of crimes committed against immigrants, but also to strengthen relations between law enforcement and immigrant communities.

## What is the T visa? What are the benefits to the victim?

The T visa is an immigration benefit for victims of human trafficking who meet certain eligibility requirements.

USCIS may find an individual eligible for a T visa if the victim:

- Is or was a victim of a severe form of trafficking in persons (which may include sex or labor trafficking), as defined by federal law;[10]
- Is in the United States, American Samoa, the Commonwealth of the Northern Mariana Islands or at a U.S. port of entry due to trafficking;
- Has complied with any reasonable request from a law enforcement agency for assistance in the investigation or prosecution of human trafficking;[11] and
- Would suffer extreme hardship involving unusual and severe harm if removed from the United States.[12]

In addition, the victim must be admissible (based on a review of criminal history, immigration violations, and other factors) to the United States. If inadmissible, the individual may apply for a waiver of inadmissibility for which he or she may be eligible.

The T visa allows eligible victims to temporarily remain and work in the U.S., generally for four years. While in T nonimmigrant status, the victim has an ongoing duty to cooperate with law enforcement's

---

[9] Pub. L. No. 106-386, 114 Stat. 1464-1548 (2000).

[10] "Sex trafficking" is defined as "the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act." 22 U.S.C. § 7102(10).

[11] Special exceptions are made for trafficking victims who are under 18, or those who are unable to cooperate due to physical or psychological trauma.

[12] http://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-human-trafficking-t-nonimmigrant-status. See also INA 101(a)(15)(T).

reasonable requests for assistance in the investigation or prosecution of human trafficking. If certain conditions are met, an individual with T nonimmigrant status may apply for adjustment to lawful permanent resident status (i.e., apply for a green card in the United States) after three years in the United States or upon completion of the investigation or prosecution, whichever occurs earlier.

Additionally, certain family members of a T visa recipient may also be eligible to live and work in the United States as "derivative" T visa holders. These are:

- Unmarried children under the age of 21;
- Spouse;
- Parents of principal T visa recipients under age 21 at the time of application;
- Unmarried siblings under 18 years old of principal T visa applicants under age 21; and
- Adult or minor children of certain immediate family members of the T visa recipient

While in the United States, the victim has an ongoing duty to cooperate with law enforcement's reasonable requests for assistance in the investigation or prosecution of human trafficking.

Congress capped the number of available T visas for principal applicants at 5,000 per fiscal year. However, to date, the annual cap has never been reached and visas remain available to applicants who qualify.

## How does USCIS Review T visa applications?

USCIS takes several steps to determine whether a victim is eligible for a T visa. USCIS reviews the victim's entire application, which includes the Form I-914 as well as the Form I-914B or other evidence of the victim's cooperation, the victim's affidavit, and supporting evidence. Supporting evidence may include court documents, witness affidavits, medical reports, and any other credible evidence to show that the victim is eligible for a T visa. If the applicant is inadmissible, USCIS also considers all evidence relevant to any potential waivers of inadmissibility.

For all T visa applicants and their qualifying family members, USCIS conducts a thorough background investigation, including a Federal Bureau of Investigation (FBI) fingerprint check and name check. USCIS will also review the applicant's immigration records to assess whether any inadmissibility issues exist, such as criminal history, immigration violations, or security concerns. Any evidence that law enforcement and immigration authorities possess may be used in determining eligibility for a T visa. USCIS may contact the certifying law enforcement agency if there are any issues or questions that arise during the adjudication based on information provided in the law enforcement declaration. Because qualifying family members (derivatives) are subject to the same criminal background review, fingerprint checks, and immigration status checks as the principal victim applicant, it is possible that a derivative's adverse criminal or immigration background would result in a denial of derivative status even when the principal has been approved.

## What Is a T visa declaration?

The T visa declaration is supplementary evidence of a victim's assistance to law enforcement that a federal, state, local, tribal, and territorial law enforcement agency, prosecutor, judge, or other government official can complete for a T visa applicant. The declaration must be provided on Form I-914, Supplement B, and instructions are available on the USCIS website at www.uscis.gov. The T visa declaration is not a required document for a T visa application, but USCIS gives significant weight to the

declaration when reviewing the victim's application.

## What kind of information does the T visa declaration provide?

Form I-914B is not a required piece of evidence, but when provided, it is helpful evidence to demonstrate that:

- The victim is or was a victim of a severe form of trafficking in persons; and
- The victim has complied with any reasonable requests from law enforcement in an investigation or prosecution of human trafficking.[13]

The T visa declaration is not conclusive evidence that the applicant meets these eligibility requirements, as only USCIS can make this determination. In addition**, by signing a T visa declaration, the certifying agency, official or judge is not sponsoring or endorsing the victim for a T visa. USCIS considers the T visa declaration as one part of the evidence in the T visa application.** USCIS also conducts a full background check and, in considering each T visa application and the applicant's credibility, examines the totality of the evidence and the circumstances of each case.

Signing a declaration is at the certifying agency's discretion which should be exercised on a case-by-case basis consistent with U.S. laws and regulations, and the policies and procedures outlined in this Guide, as well as internal policies of the certifying agency.

If the T visa applicant does not include a law enforcement declaration, the applicant must present credible evidence that he or she meets the cooperation requirement. The applicant must include an original personal statement that indicates the reason the law enforcement declaration doesn't exist or is unavailable and whether similar records documenting any assistance provided by the applicant are available. The statement or evidence should demonstrate that good faith attempts were made to obtain the law enforcement declaration, including describing the efforts the applicant undertook. USCIS will assess the evidence presented to determine whether the applicant satisfies the cooperation requirement.

## Which agencies may sign a T visa declaration?

Certifying agencies include all authorities responsible for the detection, investigation, prosecution, conviction or sentencing of human trafficking, including but not limited to:

- Federal, State Local, Tribal, and Territorial law enforcement agencies;
- Federal, State, Local, Tribal, and Territorial prosecutors' offices;
- Federal, State, Local, Tribal, and Territorial Judges;
- Federal and State Departments of Labor; and
- Other Federal, State, Local, Tribal, or Territorial government agencies that have criminal, civil, or administrative investigative or prosecutorial authority related to human trafficking.

[13] Special exceptions are made for trafficking victims who are under 18, or those who are unable to cooperate due to physical or psychological trauma.

## Who is a victim of severe forms of trafficking in persons?

A victim of severe forms of trafficking in persons is an individual who is a victim of either:

- Sex Trafficking, which is defined as:
  - the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act,
  - or in which the person induced by any means to perform such act has not attained 18 years of age; [14] or
- Labor Trafficking, which is defined as:
  - the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.[15]

State, local, territorial, and tribal law enforcement officers can play a key role in recognizing potential victims of human trafficking. **If you have identified a potential victim of trafficking, you should contact U.S. Immigration and Customs Enforcement (ICE) Homeland Security Investigations, which investigates incidents of human trafficking, as soon as possible either through your local ICE office or through the national tipline at 1-866-347-2423 (1-866-DHS-2-ICE).** Specially trained federal agents may be dispatched to make sure the victim is safe and secure, as well as provide the victim with immediate services until longer term relief can be found.

## What does "reasonable request for assistance" mean?

Whether a particular law enforcement request to a victim for assistance in the investigation or prosecution of human trafficking is "reasonable" depends on the totality of the circumstances. USCIS is responsible for making this determination. In determining "reasonableness" of the request, USCIS will consider certain factors such as, general law enforcement and prosecutorial practices; the nature of the victimization; and the specific circumstances of the victim, including fear, severe traumatization, and the age and maturity of young victims.

There are certain times when a victim is not required to cooperate with requests for assistance: (1) if the victim is under the age of 18, or (2) if the victim has experienced physical or psychological trauma that prevents him or her from complying with a reasonable request.

If the T visa applicant does not include a law enforcement declaration, the applicant must present credible evidence that he or she meets the cooperation requirement. The applicant must include an original personal statement that indicates the reason the law enforcement declaration does not exist or is unavailable and whether similar records documenting any assistance provided by the applicant are available. The statement or evidence should demonstrate that good-faith attempts were made to obtain the law enforcement declaration, including describing the efforts the applicant undertook. USCIS will assess the evidence presented to determine whether the applicant satisfies the cooperation requirement.

[14] 22 U.S.C. § 7102(10).
[15] 22 U.S.C. § 7102(9).

# Review and Tips for Completing Form I-914B

The following are important notes and tips on filling out the Form I-914B:

- USCIS has the sole authority to grant or deny a T visa. The declaration does not guarantee that the T visa will be approved by USCIS.
- An agency's decision to sign a declaration is completely discretionary and under the authority of that agency or official. Neither DHS nor any other federal agency has the authority to require or demand that any law enforcement agency sign the declaration. There is also no legal obligation to complete and sign Form I-914B.
- The Form I-914B should be completed by the law enforcement agency or official (and not the victim or the victim's advocate or attorney).
- By signing a declaration, the law enforcement agency attests that the information is true and correct to the best of the official's knowledge.
- The head of the agency has the authority to sign declarations or to delegate authority to other agency officials in a supervisory role to sign declarations. You should only sign the declaration if your agency has given you this authority.
- If a certifying agency has a written delegation of authority, provide a copy to USCIS to keep on file by emailing it to LawEnforcement_UTVAWA.VSC@uscis.dhs.gov
- Federal, state, local, tribal, or territorial judges have direct authority to sign T visa declarations. Delegation of authority is not applicable to or required of declarations by judges.
- Return the signed Form I-914B to the victim (or the victim's attorney, representative, etc.). The law enforcement agency should not send the signed declaration separately to USCIS. The victim will send the original signed declaration form along with his or her complete T visa application to USCIS.
- If the law enforcement official is providing additional documents (e.g., a copy of the police report, additional statements, photos) along with the declaration or if more space is needed to fill out any of the information on the form, law enforcement should indicate on Form I-914B a note of "see attachment" or "see addendum." Each additional page should be provided on agency letterhead.
- The official must document on Form I-914B the cooperation of the victim and whether the victim refused to comply with requests at any time throughout the investigation or prosecution.
- The declaration form must contain an original signature. That signature must either be typed or printed legibly in a color other than black ink for verification purposes. Photocopies, faxes, or scans of the declaration form cannot be accepted by USCIS as an official declaration.
- The victim has an ongoing duty to cooperate with law enforcement even after they receive the T visa. If a victim stops cooperating, you can contact USCIS to withdraw or disavow your certification.

# Best Practices for Agencies Signing Certifications and Declarations

Across the United States, law enforcement agencies, officials, and judges have taken different procedural approaches to signing U visa certifications and T visa declarations. Some examples of how various agencies or officials educate their officials about U visa certifications and T visa declarations and how they designate a certifier or certifiers in their agencies include:

- Distributing department policy or a general order on the process and use of the U visa certification or T visa declaration;
- Distributing a letter or memorandum from the Chief or Sheriff to the agency's designee in charge of signing U visa certifications or T visa declarations designating a process and authority to certify;
- Designating the head of the Victim Witness Assistance Program as the certifier;
- Sending written notification, via email or other method, from the Chief or Sheriff to the entire department explaining the purpose of the U or T visa, the certification/declaration process, and who is/are designated as the certifier(s); and
- Assigning the Investigations Bureau Chief as the certifier to delegate an officer or supervisor to review requests made by both law enforcement officers and the community and make a recommendation on the certification to the Bureau Chief.

This Resource Guide can be distributed for informational and training purposes. Certifying agencies are not required to have an internal policy or procedure before they can sign U visa certifications or T visa declarations. DHS encourages certifying agencies to implement policies that accurately reflect and conform with the statute, regulations and DHS policies and with the information contained in this and other publications issued by USCIS and DHS on the U visa and T visa programs. If a policy exists, the certifying agency is encouraged to send a copy to the Vermont Service Center of USCIS to keep on file to LawEnforcement_UTVAWA.VSC@uscis.dhs.gov.

# Answers to Frequently Asked Questions for U Visa Certifications (Form I-918B) and T Visa Declarations (Form I-914B)

For several years, DHS has been providing training and holding external stakeholder events and outreach, as well as working with law enforcement, judges, and other officials on U visa certifications and T visa declarations. As a result, DHS has developed this list of answers to frequently asked questions grouped by topic. In addition, law enforcement agencies may request additional training and information by emailing USCIS at: T_U_VAWATraining@uscis.dhs.gov.

## Questions Regarding the Certification and Declaration Process

### Which law enforcement agencies are eligible to sign certifications or declarations?

A federal, state, local, tribal, or territorial law enforcement agency, prosecutor, judge, or other authority that has the responsibility for the detection, investigation, prosecution, conviction or sentencing of a qualifying crime or criminal activity or human trafficking is eligible to sign Form I-918B or Form I-914B. This includes agencies with investigative jurisdiction in their respective areas of expertise, including but not limited to: child and adult protective services, the Equal Employment Opportunity Commission (EEOC), and Federal and State Departments of Labor (DOL). Law enforcement agencies that can provide T visa declarations include components of the Department of Justice (United States Attorney's Offices, the Civil Rights and Criminal Divisions, the Federal Bureau of Investigation (FBI), and the U.S. Marshals Service), components of the Department of Homeland Security (U.S. Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP)), the Department of Labor, and the Diplomatic Security Service of the Department of State.

In cases where the information provided by the victim led to the detection of criminal activity, a certifying agency may sign a certification. In these cases it does not matter if another agency will be the one to determine whether to pursue a criminal investigation or prosecution. In cases where the police investigated the crime and prosecutors are now prosecuting the case, both police and prosecutors may sign a certification. The authority of the police to sign a certification does not end when the case is referred for prosecution.

### Who in the certifying agency can sign Form I-918B or Form I-914B?

Form I-918B: A certifying official(s) can sign Form I-918B. The U visa regulation defines a certifying official as a judge or "[t]he head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency." 8 C.F.R. § 214.14(a)(3). Although not required with each certification, it is helpful to include a letter showing the designation of the signing official(s). The letter would be signed by the agency head and would reflect that person with a particular rank or title within the agency is to be the signing official(s).
Form I-914B: A supervising official of a Federal, state or local law enforcement agency that has the responsibility and authority for the detection, investigation, or prosecution of severe forms of trafficking in persons or other related activity may sign Form I-914B.

**Which Officials Meet the Definition of a Judge For U Visa Certification Purposes?**

Any official with delegated authority from a federal, state, local, tribal or territorial court to decide cases including but not limited to: administrative law judges, commissioners, magistrates, aldermen, judicial referees, surrogates, masters, and chancellors.

**Is my agency required to create a policy for reviewing and signing Form I-918B and Form I-914B? Is there a template policy I may refer to in creating my agency's policy?**

No. A law enforcement agency is not required under federal regulations to create a policy to review and sign Form I-918B or Form I-914B; however, many agencies have found this to be helpful. There is no federal template for creating an agency policy; however, you may find helpful information among similarly-situated federal, state, and local law enforcement agencies.

**I am a designated official, but my agency and/or I have never signed a Form I-918B/I-914B. Should I notify USCIS that I will be signing the form or is there a training I should go through before signing the certification/declaration?**

You are not required to submit any information to USCIS in advance or attend a training in order to sign Form I-918, Supplement B or Form I-914, Supplement B. However, if you would like to notify USCIS that you are the designated official, you may contact the Vermont Service Center directly at LawEnforcement_UTVAWA.VSC@uscis.dhs.gov. You may pose questions to USCIS or provide notification that you are the head of your agency and/or the designated official. Also, USCIS provides webinar trainings for law enforcement officials. You may contact T_U_VAWATraining@uscis.dhs.gov to find out information on the next webinar for law enforcement officials.

**If I sign a certification or declaration, does the victim automatically get a U visa, T visa or lawful immigration status?**

No. There are many additional eligibility requirements that USCIS evaluates based on a victim's U visa petition or T visa application, depending on which visa the victim is seeking (see above sections.) Upon receiving a U visa petition, including Form I-918B, or T visa application, USCIS will conduct a full review of all evidence and a thorough background check of the victim before approving or denying the petition or application. The background check will include an FBI fingerprint check, name and date of birth (DOB) check, and a review of immigration inadmissibility issues, including security-based and criminal inadmissibility grounds.

A victim may be found inadmissible if the victim does not meet required criteria in the Immigration and Nationality Act to gain admission to or lawful immigration status in the United States. Victims may seek a waiver of inadmissibility, which USCIS has discretion to grant. Waivers are considered based on the totality of the evidence in the case and the results of the background check. USCIS may also contact the certifying official for further information if necessary.

Note that, independent of the T and U visa processes, law enforcement agencies may seek "Continued Presence" for trafficking victims. Continued Presence is a form of temporary immigration relief that may be granted by ICE's Homeland Security Investigations, Law Enforcement Parole Unit. Continued

Presence enables the victim to work legally and remain in the United States without accruing unlawful presence. State or local law enforcement officials who identify a victim of human trafficking who is a potential witness should coordinate with their federal law enforcement partners to submit a request for Continued Presence with their local ICE office for a particular individual. Even if the victim may ultimately apply for and be granted a T or U visa, Continued Presence may provide greater stability to the victim before the petition or application is submitted or while it is pending. Please see more information about Continued Presence in this guide under the Other Protections for Victims section.

**Am I legally required to sign this declaration or certification?**

No. A law enforcement agency is under no legal obligation to complete a declaration or certification. Signing is at the discretion of each law enforcement agency, in accordance with that agency's policy. However, it is important to note that:

- Without a certification, a U visa petition will be denied.
- The declaration is not required for a T visa, but it is an important piece of evidence submitted by the applicant.[16]

**Will my certifying agency be liable for any future conduct of someone who is granted a U or T visa? What if I signed a certification or declaration for someone who later commits a crime?**

No. A certifying agency/official cannot be held liable for the future actions of a victim for whom the agency signed a certification or declaration or to whom DHS granted a U or T visa. The U visa certification simply addresses whether the petitioner was a victim of a qualifying crime, possessed information relating to the crime, and was helpful in the detection, investigation, prosecution, conviction, or sentencing of that crime. The T visa declaration simply addresses whether the victim was a victim of human trafficking and has complied with all reasonable requests for assistance. The certification and declaration do not guarantee the future conduct of the victim or grant a U or T visa. USCIS is the only agency that can grant a U or T visa. If a victim is granted a U or T visa and is later arrested or commits immigration violations, federal immigration authorities will respond to those issues. If a certifying agency or official later discovers information regarding the victim, crime, or certification that the agency believes USCIS should be aware of, or if the agency or official wishes to withdraw the certification, the agency or official should contact USCIS by emailing the Vermont Service Center at LawEnforcement_UTVAWA.VSC@uscis.dhs.gov.

**Who decides which benefit to seek, a U or T visa?**

The victim or victim's advocate or attorney should make that decision and indicate the appropriate certification or declaration for law enforcement to sign. It is possible that an individual may qualify for both a U and a T visa.

16 http://www.uscis.gov/sites/default/files/USCIS/Resources/Humanitarian%20Based%20Benefits%20and%20Resources/TU_QAf_orLawEnforcement.pdf

### Helpfulness and Cooperation of the Victim:

**A victim is requesting Form I-918B or Form I-914B, but I am unsure whether he or she meets the helpfulness requirement or the compliance with reasonable requests requirement. May I sign this certification or declaration?**

Yes. Both the I-918B and the I-914B provide an opportunity for law enforcement to provide information to USCIS about the extent of the victim's assistance in the detection, investigation, prosecution, conviction, or sentencing of criminal activity. You may complete the form including all information you find relevant about the victim's assistance. USCIS will ultimately determine whether the victim meets these requirements.

- Form I-918B asks whether the victim possesses information concerning the criminal activity; was, is, or is likely to be helpful in the investigation and/or prosecution of the criminal activity; was asked to provide further assistance; and has unreasonably refused to provide assistance. You may select "yes" or "no" to these questions and further explain your answers.
- Form I-914B asks the certifying officer to provide information about the victim's cooperation and includes several options to select regarding the victim's cooperation with law enforcement.

**What constitutes "helpfulness" or "enough cooperation" for a U visa certification?**

USCIS regulation requires that the U petitioner has been, is being, or is likely to be helpful in the detection, investigation, prosecution, conviction, or sentencing of the criminal activity. This means that since the initiation of cooperation, the victim has not unreasonably refused to cooperate or failed to provide information and assistance reasonably requested by law enforcement or prosecution in connection with a criminal investigation or prosecution.

USCIS will not provide a U visa to those petitioners who, after initially cooperating with the certifying official, refuse to provide continuing assistance when reasonably requested. USCIS also will not approve the petitions of those who are culpable for the qualifying criminal activity.

**What constitutes "complying with any reasonable request" for a T visa declaration?**

USCIS regulations require that the victim of trafficking comply with reasonable requests from law enforcement officials for assistance in the investigation or prosecution of the acts of trafficking in persons. To determine whether the request from law enforcement is reasonable, USCIS takes into account the totality of the circumstances, such as general law enforcement and prosecutorial practices; the nature of the victimization; and the specific circumstances of the victim, including fear, severe traumatization, and the age and maturity of young victims.

### Law Enforcement Certification Authority and Timing:

**At what stage in the criminal case can I sign a certification?**

There is no required time when you may or may not sign a certification. It is possible to sign a certification at any stage in the case, including at the point of detection, during an investigation, when the prosecutor initiates a prosecution, before a trial, whether or not the victim is needed to testify, and

after the case is concluded.

You may sign a certification regardless of the outcome of the qualifying criminal case, including in the following instances:

- the prosecutor decided not to prosecute;
- the grand jury did not issue an indictment;
- the case was dismissed by the prosecutor or a judge;
- a case brought by the EEOC or DOL resulted in a judgment, settlement, or dismissal;
- a judge issued a protection order or custody ruling;
- a child abuse case was settled;
- the defendant entered a plea, whether or not the plea was to an offense that is a qualifying criminal activity; and
- the defendant was found not guilty.

**If an investigation or case is closed, may law enforcement still complete Form I-918B or Form I-914B? Is there a statute of limitations?**

Certifying officials may complete Form I-918B or Form I-914B for an investigation or prosecution that is closed. There is no statute of limitations regarding the time frame in which the criminal activity must have occurred. Federal legislation specifically provides that a victim may be eligible for a U visa based on having been helpful *in the past* to the detection, investigation, prosecution, conviction, or sentencing of criminal activity. A crime victim may be eligible to receive U visa certification when, for example, the case is closed because the perpetrator could not be identified; a warrant was issued for the perpetrator but no arrest could be made due to the perpetrator fleeing the jurisdiction or fleeing the United States, or has been deported; before or after the case has been referred to prosecutors, as well as before or after trial and whether or not the prosecution resulted in a conviction. A trafficking victim could be eligible to receive a T visa declaration when a case is closed for similar reasons. The petitioner must still meet all the eligibility requirements for a U or T visa to be approved.

**Does the victim have to testify to be eligible for certification or declaration?**

No. As mentioned above, there is no requirement that an arrest, prosecution, or conviction occur for someone to be eligible for a U or T visa. While there is no requirement for the victim to testify at a trial to be eligible for a U or T visa, if the victim is requested to testify, he or she cannot unreasonably refuse to cooperate with the certifying law enforcement agency. If the victim unreasonably refuses to testify, the agency or official should notify USCIS and may withdraw the previously signed Form I-918B or Form I-914B.

**What if the victim or witness has been detained or ordered removed for an immigration violation?**

Individuals currently in removal proceedings or with final orders of removal may still apply for a U or T visa. A petitioner for U nonimmigrant status or an applicant for T nonimmigrant status has administrative remedies and is not prejudiced by completion of removal proceedings. Specifically, a victim who is the subject of a final order of removal, deportation, or exclusion may still file a petition or application for U or T nonimmigrant status directly with USCIS. If a victim is granted U or T nonimmigrant status prior to, or after, removal, the regulations provide a procedure whereby the victim may remain in or return to the United States. To avoid deterring individuals from reporting crimes, ICE

officers, special agents, and attorneys are expected to exercise all appropriate discretion on a case-by-case basis when making detention and enforcement decisions in the cases of victims of crime, witnesses to crime, and individuals pursuing legitimate civil rights complaints. Particular attention is paid to victims of domestic violence, human trafficking, sexual assault, or other serious crimes, and witnesses involved in pending criminal investigations or prosecutions. It is common for perpetrators to report immigrant crime victims and witnesses to immigration enforcement officials to gain advantage in a civil or family law case and/or to avoid prosecution in a criminal case. Congress created the U visa as a tool to counter such efforts by perpetrators.[17]

If a judge, law enforcement official, prosecutor, or other certifying official is aware of a victim or witness against whom a detainer has been lodged, who has been detained, who has been placed in removal proceedings for an immigration violation, or who has been ordered removed, the official should promptly contact his or her local ICE Enforcement and Removal Operations (ERO) contact or the local Office of the Chief Counsel to make ICE aware of the situation. Specifically with regard to a lodged detainer, the law enforcement official may notify the ICE Law Enforcement Support Center at (802) 872-6020 if the individual may be the victim of a crime or if the officials want this individual to remain in the United States for prosecution or other law enforcement purposes, including acting as a witness. If a victim is scheduled to appear in court as a witness in a criminal or civil case, as a party in a protective order case or as a parent in a case involving the victim's children, judges and other certifying officials may contact the Law Enforcement Support Center to arrange for ICE officials to bring the victim to court or to facilitate participation in the court hearing electronically.[18]

**Can I complete a U visa certification for a victim who is no longer in the United States?**

Yes. While the criminal activity must have occurred in the United States, its territories, or possessions, or have violated U.S. law, victims do not need to be present in the U.S. in order to be eligible for a U visa and may apply from outside the United States.

**Can I complete a T visa declaration for a victim who is no longer in the United States?**

Yes. You may note, however, that one requirement of the T visa petition is that the victim be in the United States on account of the severe form of human trafficking. USCIS, not the law enforcement agency, determines whether the victim meets this physical presence requirement. Note that human trafficking victims who have left the United States may be eligible for a U visa because trafficking is a qualifying criminal activity. The decision whether to seek a T or U visa should be made by the victim, or the victim's advocate or attorney.[19]

**Can I still certify if the perpetrator is no longer in the jurisdiction or prosecution is unlikely for some reason?**

[17] VTVPA, Pub. L. No. 106-386, §§ 1502(a)(3), 1512(a)(2)(B), 114 Stat. 1464-1548 (2000).

[18] *See* U.S. Immigration and Customs Enforcement, 11064.1: Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities (Aug. 23, 2013)(hereinafter "ICE Parental Directive") available at: https://www.ice.gov/doclib/detention-reform/pdf/parental_interest_directive_signed.pdf and U.S. igration and Customs Enforcement, *FAQs on the Parental Interests Directive*, available at: https://www.ice.gov/about/offices/enforcement-removal-operations/parental-directive-faq.htm.

Yes. There is no statutory or regulatory requirement that an arrest, prosecution, or conviction occur for someone to apply for a U or T visa. Instances may occur where the perpetrator has fled the jurisdiction, left the United States, or been arrested for unrelated offenses by another agency in another jurisdiction. An arrest, prosecution, or conviction may not be possible in these situations. A U visa petitioner will still have to meet the helpfulness requirement by reasonably assisting the certifying law enforcement agency, and will also have to meet all other eligibility requirements in order to qualify for a U visa. A T visa applicant will still have to comply with all reasonable requests for assistance.

**Can a victim's petition still be approved if the defendant is acquitted or accepted a plea to a lesser charge, accepted a plea to an offense that is not qualifying criminal activity, or if the case was dismissed?**

Yes. As mentioned above, a conviction is not required for someone to be eligible for a U or T visa. Plea agreements and dismissals do not negatively impact the victim's eligibility. As long as the victim has been helpful in the detection, investigation, prosecution, conviction, or sentencing of the qualifying criminal activity and meets all other eligibility requirements, the victim may petition for a U visa. In the case of a T visa, as long as the individual has been subject to human trafficking and has complied with reasonable requests for assistance, plea agreements and dismissals do not negatively impact the victim's eligibility. If the victim unreasonably refuses to assist the investigation or prosecution and harms the criminal case, this will negatively impact the victim's ability to receive an approval. The certifying law enforcement agency should notify USCIS if the victim has unreasonably refused to cooperate in the investigation or prosecution of the crime.

**If a victim reports a crime that does not require investigation or cannot be investigated by my agency, because, for example, the victim cannot identify the perpetrator or the perpetrator is deported or fled the jurisdiction, may I certify that the person was helpful?**

Yes. The law enforcement agency may sign Form I-918B or I-914B if the victim was helpful in the detection of criminal activity. Each law enforcement agency may determine its own policy on reviewing and signing Form I-918B or Form I-914B. USCIS will review each petition or application on a case-by-case basis to determine whether the victim meets all eligibility requirements, including whether the person is a victim of a qualifying crime or a victim of a severe form of trafficking and whether the person was helpful or complied with reasonable requests for assistance.

**What if the victim stops cooperating after I sign his/her certification or declaration?**

At its discretion, a certifying agency may withdraw or disavow a Form I-918B or Form I-914B at any time if a victim stops cooperating. When this occurs, the victim's petition or application will be denied, and all derivative family member applications associated with the original application or petition will also be denied.

To withdraw or disavow a certification, the certifying agency must notify the USCIS Vermont Service Center in writing or via email. Written notification regarding withdrawal or disavowal should include:

- The agency's name and contact information (if not included in the letterhead);
- The name and date of birth of the individual certified;
- The name of the individual who signed the certification and the date it was signed;
- The reason the agency is withdrawing/disavowing the certification, including information

describing how the victim's refusal to cooperate in the case is unreasonable;
- The signature and title of the official who is withdrawing/disavowing the certification; and
- A copy of the certification the agency signed (if a copy was retained by the agency).

The letter should be either scanned and emailed to the Vermont Service Center at LawEnforcement_UTVAWA.vsc@uscis.dhs.gov, or mailed to:
USCIS-Vermont Service Center
ATTN: VAWA, T, and U Section
75 Lower Welden Street
St. Albans, VT 05479.

**U Visa Specific:**

**For a U visa, if one crime is initially detected or investigated but a different crime is eventually prosecuted, does that have an impact on the certification?**

A certification is valid regardless of whether the initial criminal activity detected or investigated is different from the crime that is eventually prosecuted. As long as the person is a victim of a qualifying criminal activity, that person may be eligible for a U visa. Examples include:
- An initial investigation of rape eventually leads to a charge and prosecution of sexual assault. Both rape and sexual assault are qualifying crimes.
- An initial investigation of embezzlement leads to a charge and prosecution of extortion. While embezzlement is not a qualifying crime, the investigation eventually led to a charge of extortion, which is a qualifying crime. If the person assisting in the investigation or prosecution is a victim of extortion, that person may qualify for a U visa.
- In the process of investigating drug trafficking allegations, police determine that the drug trafficker's wife is a victim of domestic violence. The victim reported the domestic abuse. The state brings a prosecution against the husband for drug offenses but not domestic violence crimes. The wife is cooperating in the drug prosecution. Law enforcement may complete a Form I-918B certification for reporting the domestic abuse case that is not being prosecuted.
- An initial investigation of Fraud in Foreign Labor Contracting leads to a charge and prosecution of obstruction of justice.

Form I-918B certifications may also be submitted for criminal activities similar to the list of qualifying criminal offenses. Examples include:
- An investigation or prosecution into a charge of video voyeurism may fall under the qualifying crime of sexual exploitation. This may be determined by state or local criminal law and the facts and evidence in that specific case. Please note that while video voyeurism is not specifically listed as a qualifying crime, it may be considered a type of sexual exploitation, which is a qualifying crime. The victim would need to show how these crimes are related and present this evidence to USCIS, along with the Form I-918B certification form signed by a certifying law enforcement agency.
- An investigation or prosecution of child abuse or elder abuse may fall under the qualifying criminal activity of domestic violence. This occurs under the state domestic violence protection order statute or criminal domestic violence statute when the abuse experienced by the child, disabled adult, or senior meets the statutory elements of domestic violence. When the perpetrator/victim relationship is covered by the state protection order statute or criminal

domestic violence laws, the child, dependent adult, or elder abuse is considered domestic violence under state law. When this occurs, child, elder and dependent adult abuse cases may be considered a form of domestic violence.

- An investigation or prosecution of dating violence may fall under the qualifying criminal activity of domestic violence or stalking. When a state's domestic violence statute includes dating violence, then dating violence may be considered a form of domestic violence, a qualifying criminal activity. Similarly, stalking can be a part of the pattern of abuse co-occurring with dating violence. When the facts and evidence in the specific case meet the definition of stalking under state criminal laws or under a state's stalking protection order statute, dating violence may be considered stalking which is a qualifying criminal activity.

A victim would need to show how these crimes are related and present this evidence to USCIS, along with the Form I-918B certification signed by a certifying agency or official.

**A victim has approached me to request certification of Form I-918B for a crime not listed on the form. How may I fill out Form I-918B in this circumstance?**

A law enforcement official may sign Form I-918B to indicate a person's helpfulness in the detection, investigation, prosecution, conviction, or sentencing of criminal activity. Each jurisdiction uses different terms for criminal activity. Also, each jurisdiction's crime definitions may include slightly different elements. Form I-918B requests the official to list statutory citations for the criminal activity. The official should provide those citations and may also provide information about the elements of the criminal activity and how it involves or is similar to the statutory list of criminal activity for the U visa.

**Who would qualify to file for a U visa as an indirect victim?**

Under certain circumstances, an indirect victim of a qualifying criminal activity may file as the principal applicant in a U visa petition. These circumstances include:

- In the case of murder, manslaughter, incompetent or incapacitated victims (which include children under 21 years of age):
    - Spouses; and
    - Children under 21 years of age at the time of filing.
- If the victim of the criminal activity is under 21 years of age at the time the qualifying criminal activity occurred:
    - Parents; and
    - Unmarried siblings under 18 years of age at the time of the qualifying criminal activity.

In the case of witness tampering, obstruction of justice or perjury, a victim can demonstrate that he or she has been directly or proximately harmed by one of these criminal activities if he or she can show that there are reasonable grounds to conclude that the perpetrator principally committed the offense as a means to avoid or frustrate efforts to investigate, arrest, prosecute, or otherwise bring him or her to justice for other criminal activity, or to further his or her abuse, exploitation of, or control over the immigrant through manipulation of the legal system.

**If the victim is a child, why would a non-citizen parent ask for a Form I-918B certification stating that the parent was the victim?**

In many cases where a child is the victim of criminal activity, the child may not be able to provide law

enforcement with adequate assistance. This may be due to the child's age or trauma suffered, among various other reasons. Parents of a child victim play a crucial role in detecting and reporting criminal activity, providing information and assisting certifying officials in the detection, investigation, prosecution, conviction, or sentencing of the crime committed against the child. Recognizing this, an alien parent can apply for a U visa seeking to be recognized as an "indirect victim" if the principal victim is a child under 21 years of age and is incompetent or incapacitated to provide assistance to certifying officials in the detection, investigation, prosecution, conviction, or sentencing of the criminal activity committed against the child or if the child is deceased due to murder or manslaughter. The immigration status of the child victim is not relevant to this determination; Form I-918B can be submitted for an alien parent whether or not the child is a U.S. citizen or a non-citizen. The parent(s), in order to qualify as an "indirect victim," must meet the remaining eligibility requirements for a U visa to receive an approval. Therefore, the "indirect victim" parent(s) must have information about the criminal activity, and must have been or be currently helpful, or must be willing to be helpful, to certifying officials in the detection, investigation, prosecution, conviction, or sentencing of the criminal activity and the criminal activity must have occurred in the United States or violated U.S. law. The parent(s) must also demonstrate that he, she, or they suffered substantial physical or mental abuse as a result of the criminal activity and will be subject to the standard background checks (FBI fingerprint and name/DOB check) and immigration records review as well.

**What constitutes "possesses information" for U visa petitioners?**

To be eligible for a U visa, the victim of the criminal activity must possess credible and reliable information establishing that the victim has knowledge of the details of the criminal activity or events leading up to the criminal activity, including specific facts about the crime/victimization leading the certifying agency or official to determine that the victim has assisted, is assisting, or is likely to provide assistance in the detection, investigation, prosecution, conviction, or sentencing of the criminal activity. If the victim was under 16 years of age or incompetent or incapacitated at the time the qualifying criminal activity occurred, a parent, guardian, or next friend may possess the information. A "next friend" is defined as a person who acts for the benefit of an alien who is under 16 or incompetent or incapacitated. The next friend is someone dedicated to the best interests of a victim who cannot appear on his or her own behalf because of inaccessibility, mental incompetence, or other disability. A next friend cannot be a party to a legal proceeding involving the victim and cannot be a court appointed guardian. A next friend also does not qualify for a U visa or any immigration benefit simply by acting as a next friend for the victim, but he or she may possess information about the criminal activity and may provide the required assistance. It is important to note that both "direct" and "indirect" victims can qualify to petition for U visas. Although they were not the direct victim of the criminal activity, indirect victims may possess information that is helpful to the detection, investigation, prosecution, investigation, conviction, or sentencing of criminal activity.

**Who determines if the "substantial physical or mental abuse" requirement has been met for the U Visa?**

USCIS will make the determination as to whether the victim has met the "substantial physical or mental abuse" standard on a case-by-case basis during its adjudication of the U visa petition. Certifying agencies and officials do not make this determination. Certifying agencies and officials may, however, provide any information they deem relevant regarding injuries or abuse on the Form I-918B. The Form I-918B asks the certifying official to provide information about any injuries the agency or official knows about, has

documented, or has made findings about. If the certifying agency or official has documentary evidence of injuries to the victim, the severity of the perpetrator's conduct, or the emotional impact on the victim's mental health as affected by the criminal activity, it is helpful to attach any relevant evidence of these facts, such as, photographs, police reports, findings, or court orders. While USCIS will consider any evidence of substantial physical or mental abuse provided by law enforcement, the U visa petitioner has the burden of proving the substantial physical or emotional abuse.

Factors that USCIS uses to make this determination are:

- the nature of the injury inflicted;
- the severity of the perpetrator's conduct;
- the severity of the harm suffered;
- the duration of the infliction of the harm; and
- the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim.

The existence of one or more of these factors does not automatically signify that the abuse suffered was substantial.

## USCIS Processing:

### What do I do with a completed certification or declaration?

Once the certifying official completes and signs the Form I-918B or Form I-914B, the original should be given to the victim or the victim's legal representative or advocate, so that it can be added to the original U visa petition or T visa application packet before submission to USCIS. Please also note that only a law enforcement official, prosecutor, judge, or other government official authorized to sign certifications/declarations may complete and sign the Form I-918B or Form I-914B. The victim or the victim's attorney or advocate may not sign the Form I-918B or Form I-914B.

### I already signed Form I-918B or Form I-914B, but the victim has returned asking for another newly signed form. Why is this happening?

This may occur for two reasons. An application or petition must be submitted within six months after Form I-918B certification has been signed by law enforcement. If the Form I-918B expired before the petitioner was able to file the petition with USCIS, the victim would require a new form in order to properly file the U visa petition.

Also, a victim who has an approved U or T visa may become eligible and apply for lawful permanent resident status (i.e. a green card). To be eligible for adjustment of status, U visa holders cannot unreasonably refuse to provide assistance to an official or law enforcement agency, and T visa holders must continue to cooperate with reasonable requests from law enforcement. As evidence, the victim may request the law enforcement official to provide a newly signed Form I-918B, or Form I-914B or a signed document from the official or law enforcement agency.

### Is there an "expiration date" on the Form I-918B or Form I-914B?

Form I-918B expires six months after the certifying official signs the form. USCIS must receive the

properly filed U visa petition including the Form I-918B within six months of the date on the Form I-918B. There is no expiration date for the Form I-914B.

**What are the safeguards for protecting the U and T visa program against fraud?**

USCIS recognizes that certifying agencies and officials may be in the best position to determine if a qualifying crime has taken place. If, in the normal course of duties, a certifying official or agency has determined that a qualifying criminal activity has taken place, the victim possessed information related to the criminal activity, and the victim has been helpful, law enforcement may sign the U visa certification. Whether a certifying agency or official signs the certification is under the authority of the agency or official. The certification also acts as a check against fraud and abuse, as the certification is required in order to be eligible for a U visa.

USCIS takes fraud and abuse of the U and T visa programs seriously. If USCIS suspects fraud in a U visa petition or T visa application, USCIS may request further evidence from the petitioner and may also reach out to the certifying official or agency for further information. USCIS also has a dedicated unit with the sole purpose of targeting and identifying fraudulent immigration applications. The Fraud Detection and National Security (FDNS) unit of USCIS conducts investigations of cases that appear fraudulent and works with other Federal, State, and local law enforcement agencies when fraud or abuse is discovered.

As an additional check against fraud, a U visa recipient cannot obtain a green card unless the victim proves that he or she cooperated, when requested, with law enforcement or prosecutors. In order to obtain a green card, if the U visa victim did not cooperate, he or she must prove to DHS' satisfaction that his or her refusal to cooperate was not unreasonable. A T visa recipient cannot obtain a green card unless he or she continues to comply with law enforcement's reasonable requests for assistance and has maintained good moral character since issuance of the T visa.

**Will USCIS approve a victim with a criminal history?**

USCIS may deny a U visa petition or T visa application for a variety of reasons including the victim's criminal history. Denials may occur in cases where a victim has multiple arrests or convictions, or has a serious or violent criminal arrest record. USCIS may also deny a petition if the victim was complicit or culpable in the qualifying criminal activity of which he or she claims to be a victim. USCIS conducts background and security checks (FBI fingerprint check, name/date of birth check, and a check of immigration records) on U visa petitioners and T visa applicants and reviews all available information concerning arrests, immigration violations, and security issues before making a final decision. The fact that a victim has a criminal history does not automatically preclude approval of U or T nonimmigrant status. Each petition or application is evaluated on a case-by-case basis, and USCIS takes into account whether any criminal behavior was related to the victimization. If the certifying official believes USCIS should know something particular about a victim's criminal history, that information can be cited on the certification or with an attached report or statement detailing the victim's criminal history with that law enforcement agency or his or her involvement in the crime.

# Other Law Enforcement Tools to Assist in Investigations and Prosecutions

There are two significant tools law enforcement agencies can use to benefit immigrant victims who may not qualify for a T or U visa, but who may need a means of temporarily being in the United States lawfully during the course of an investigation. These tools include Continued Presence and Significant Public Benefit Parole.

## Continued Presence

Continued Presence (CP) is a form of temporary immigration relief available to individuals who are identified by law enforcement as victims of human trafficking and who are potential witnesses in an investigation or prosecution. CP is authorized by ICE Homeland Security Investigations (HSI) Parole and Law Enforcement Program Unit and *can only be sponsored by a federal law enforcement agent*. **An application for CP should be initiated immediately upon identification of a victim of human trafficking.** CP allows victims of human trafficking to remain in the United States during an ongoing investigation into human trafficking- related crimes committed against them. CP is initially granted for one year and may be renewed in one-year increments. Recipients of CP also receive work authorization and social service benefits through the Department of Health and Human Services Office of Refugee Resettlement, which provides a sense of stability and protection. These conditions improve victim cooperation with law enforcement, which leads to more successful prosecutions and the potential to identify and rescue more victims.

CP is available to all trafficking victims, even if a human trafficking violation is not charged, if charges are never brought, or the victim is not cooperating in a law enforcement investigation. However, once an investigation has ended and a decision not to prosecute has been made, CP is no longer appropriate.

State, local, tribal, and territorial law enforcement officials who would like to request CP for human trafficking victims are encouraged to work with the local HSI office in their area. In addition, Victim Assistance Coordinators can assist law enforcement officials in obtaining referrals to non-governmental victim services providers who can offer a variety of services to assist crime victims, such as immigration legal assistance, crisis intervention, counseling, medical care, housing, job skills training, and case management.

## Significant Public Benefit Parole

Significant Public Benefit Parole (SPBP) may be utilized as a means of permitting an individual outside of the U.S. to enter the U.S. temporarily to serve as a witness, defendant, or cooperating source, and if necessary in extremely limited cases, the individual's immediate family members. It must be emphasized that SPBP will only be granted for the minimum period required to accomplish the requested purpose, for example, if a trial is 3 months long, parole will be granted for 3 months. SPBP is a temporary measure used on a case by case basis to allow an individual who is otherwise inadmissible to enter the United States.

# Other Forms of Legal Status for Immigrant Victims

Federal law provides additional options for immigration status to victims and witnesses of crime who may or may not be eligible for a T or U visa, including status under the Violence Against Women Act (VAWA) and Special Immigrant Juvenile Status (SIJS):

## VAWA

Recognizing that immigrant victims of domestic violence may remain in an abusive relationship when their immigration status is tied to their abuser, the Violence Against Women Act of 1994 (VAWA) created a self-petitioning process that removes control from the abuser and allows the victim to submit his or her own petition for permanent residence without the abuser's knowledge or consent. Those eligible for VAWA protection include the abused spouse or former spouse of a U.S. citizen or Lawful Permanent Resident, the abused child or step-child of a U.S. citizen or lawful permanent resident, or the abused parent of a U.S. citizen. VAWA immigration relief applies equally to women and men. To file for VAWA immigration relief, the self-petitioner must send a completed Form I-360 (Petition for Amerasian, Widow(er), or Special Immigrant) along with corroborating evidence to USCIS. A law enforcement certification is not needed in these cases.

## Special Immigrant Juvenile Status

Some children present in the United States without legal immigration status may be in need of humanitarian protection because they have been abused, abandoned, or neglected by a parent. The abuse may have occurred in the United States or prior to the child's arrival in the United States. Special Immigrant Juvenile (SIJ) status is an immigration classification that may allow vulnerable children to immediately apply for Lawful Permanent Resident status. To be eligible for SIJ, a child must:

- be unmarried, under 21 years of age at the time of filing Form I-360 with USCIS;
- be physically present in the United States; and
- have an order from a state court with jurisdiction over the child that: (1) declares the child is a dependent of the court/dependent on the court, or legally commits or places the child under the custody of either a state agency or department or an individual or entity appointed by a juvenile court; (2) declares reunification with one or both of the child's parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law; and (3)finds it would not be in the child's best interest to be returned to his or her country of origin.

# DHS Contact Information

## USCIS Contacts

| *Type of Information/Inquiry* | *Where to go/Who to contact* |
|---|---|
| For more information about the U and T visa programs and law enforcement certifications and declarations: | www.uscis.gov<br>www.uscis.gov/humantrafficking |
| To ask a question about a specific case or to rescind a signed certification or declaration: | The question or rescind letter should be scanned and emailed to the Vermont Service Center at:<br><br>LawEnforcement_UTVAWA.VSC@uscis.dhs.gov.<br>*Please note that this e-mail address is for law enforcement personnel only. Any e-mail sent by any person or entity that is not law enforcement to this specific e-mail address will not be answered.*<br>or mailed to:<br>USCIS-Vermont Service Center<br>Attn: VAWA,T, & U Section<br>75 Lower Welden Street<br>St. Albans, VT 05479 |
| To request T or U visa training for your agency: | T_U_VAWATraining@uscis.dhs.gov |
| To ask specific policy questions about T and U visa certifications: | Call (202) 272-1470 |
| Representatives may submit an inquiry regarding a specific case by emailing: | hotlinefollowupI918I914.vsc@uscis.dhs.gov |

## Citizenship and Immigration Services Ombudsman

The Office of the Citizenship and Immigration Services Ombudsman (Ombudsman) is dedicated to improving the quality of citizenship and immigration services delivered to the public by providing individual case assistance, as well as making recommendations to improve the administration of immigration benefits by USCIS. Created by section 452 of the Homeland Security Act of 2002, the Ombudsman is an impartial and confidential resource that is independent of USCIS. Customers can request case assistance by visiting the website listed below. The Ombudsman's Office also has a duty officer available Monday-Friday between 11 a.m. and 3 p.m. to answer emails and phone calls for those who are unable to file through the online process.

| *Type of Information/Inquiry* | *Where to go/Who to contact* |
|---|---|
| For more information about the CIS Ombudsman and protections for victims: | www.dhs.gov/cisombudsman |
| To refer U visa petitioners or T visa applicants who are experiencing problems that have not been able to be resolved through DHS customer assistance avenues: | http://cisomb.dhs.gov/oca/form7001.aspx |

| | |
|---|---|
| To request telephonic case assistance: | Toll Free: (855) 882-8100<br>Phone: (202) 357-8100 |
| To share specific policy concerns about T and U visa certifications or request information about a pending request for assistance: | cisombudsman@dhs.gov |

## U.S. Immigration and Customs Enforcement (ICE)

If a law enforcement official is aware of a victim of human trafficking, the official should promptly contact his or her local ICE Homeland Security Investigations (HSI) office. If a law enforcement official is aware of a victim or witness against whom a detainer has been lodged, who has been detained, who has been placed in removal proceedings for an immigration violation, or who has been ordered removed, the official should promptly contact his or her local ICE Enforcement and Removal Operations (ERO) contact or the local Office of the Principal Legal Advisor (OPLA) to make ICE aware of the situation.

| ***Type of Information/Inquiry*** | ***Where to go/Who to contact*** |
|---|---|
| To contact your local ICE HSI office: | http://www.ice.gov/contact/hsi/ |
| To contact your local ICE ERO office: | http://www.ice.gov/contact/ero/ |
| To contact your local ICE OPLA office: | http://www.ice.gov/contact/opla/ |
| Specifically with regard to a lodged detainer, the law enforcement official should notify the ICE Law Enforcement Support Center: | Phone: (802) 872-6050<br>LESC Computer Services Division<br>188 Harvest Lane<br>Williston, Vermont 05495<br>https://www.ice.gov/contact/lesc |

## Office for Civil Rights and Civil Liberties

| ***Type of Information/Inquiry*** | ***Where to go/Who to contact*** |
|---|---|
| To refer individuals who would like to file a complaint concerning abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion, by employees and officials of the Department of Homeland Security: | By Mail:<br>Office for Civil Rights and Civil Liberties<br>U.S. Department of Homeland Security Building 410,<br>Mail Stop #0190<br>Washington, D.C. 20528<br><br>By Phone or Email:<br>Phone: (202) 401-1474<br>Toll Free: (866) 644-8360<br>TTY: (202) 401-0470<br>Toll Free TTY: (866) 644-8361<br>Fax: (202) 401-4708<br>E-mail: crcl@dhs.gov |

| | |
|---|---|
| To report a violation of T visa, U visa, or VAWA relief confidentiality protections by a federal employee (*see* 8 U.S.C. § 1367(a)(2)). | By Mail:<br>Office for Civil Rights and Civil Liberties<br>U.S. Department of Homeland Security Building 410,<br>Mail Stop #0190<br>Washington, D.C. 20528<br><br>By Phone or Email:<br>Phone: (202) 401-1474<br>Toll Free: (866) 644-8360<br>TTY: (202) 401-0470<br>Toll Free TTY: (866) 644-8361<br>Fax: (202) 401-4708<br>crcl@dhs.gov<br>VAWA@hq.dhs.gov |

## Office for State and Local Law Enforcement

On the recommendation of the 9/11 Commission, Congress created the Office for State and Local Law Enforcement (OSLLE) in 2007 to serve as the liaison between the Department of Homeland Security and non-Federal law enforcement agencies across the country. The primary mission of OSLLE is to lead the coordination of DHS-wide policies related to state, local, tribal, and territorial law enforcement's role in preventing, preparing for, protecting against, and responding to natural disasters, acts of terrorism, and other man-made disaster within the United States. For more information about DHS coordination with federal, state, local, tribal, and territorial law enforcement, please contact the DHS Office for State and Local Law Enforcement.

Phone: (202) 282-9545
Email: OSLLE@hq.dhs.gov

# Further Resources

| Links and Information for T & U Nonimmigrant Status Resources | |
|---|---|
| **Victims of Human Trafficking -T Nonimmigrant Status Information:** | Victims of Human Trafficking: T Nonimmigrant Status |
| **Victims of Criminal Activity - U Nonimmigrant Status Information:** | Victims of Criminal Activity: U Nonimmigrant Status |
| **Information Guides**: | ICE Toolkit for Prosecutors<br><br>DHS Council on Combating Violence Against Women Resource Guide |
| **Poster**: | Don't Be Afraid To Ask For Help |
| **Brochures:** | Immigration Options for Victims of Crime<br><br>Information for Law Enforcement Officials (PDF)<br><br>Pamphlet on victim support (PDF) for law enforcement, first responders, and healthcare professionals<br><br>Pamphlet on victim support for judges (PDF)<br><br>Brochure on T visa, U visa and VAWA (PDF)<br><br>Brochure on Continued Presence (PDF)<br><br>Pamphlet on the Legal Rights Available to Immigrant Victims of Domestic Violence in the United States and Facts About Immigrating on a Marriage-Based Visa |
| **Video**: | Video on the U and T visa and other immigration relief process and paperwork for law enforcement<br><br>Video on the T Nonimmigrant Status - Immigration Relief for Victims of Human Trafficking<br><br>Human Trafficking 101 – DHS Blue Campaign |

| | |
|---|---|
| | Roll-Call Video (Part 1) featuring law enforcement experts explaining human trafficking<br><br>Roll-Call Video (Part 2) featuring law enforcement experts explaining immigration relief<br><br>The DHS Federal Law Enforcement Training Center (FLETC) offers a web-based human trafficking training course which teaches law enforcement officers how to recognize human trafficking during routine duties, protect victims, and initiate human trafficking investigations. |
| **Non-Governmental Organization Support** | Anti-human trafficking task forces comprise federal, state, local, county, and tribal law enforcement and prosecutors, as well as non-governmental organizations (NGOs) providing victim services. To find out whether there is a task force in your area, visit the Bureau of Justice Assistance, Anti-Human Trafficking Task Force Initiative Web page. |

# EXHIBIT J

# Press Release: Deportations of U Visa Petitioners Undermine Law Enforcement Work

November 10, 2025

Law Enforcement Immigration Task Force LEITF

**WASHINGTON, D.C.** — Leaders of the Law Enforcement Immigration Task Force (LEITF) are expressing concerns after recent reports that immigrant victims of crime have been deported while waiting for a decision about U visas.

According to official data, close to half a million immigrants are awaiting decisions on U visa applications — established by Congress to protect from deportation immigrants who assist law enforcement.

Legislative proposals such as the Immigrant Witness and Victim Protection Act, recently reintroduced by Rep. Jimmy Panetta (D-California), would help address backlogs and ensure that immigrant victims and witnesses are protected.

“For us in the field, U visas play a key role in fostering trust within immigrant communities, since they represent an opportunity to protect victims of crime who lack legal status,” said LEITF co-chair **Chief Chad Kasmar of Tucson, Arizona**. “When immigrants feel safe in reporting crimes, it strengthens the community’s safety.”

“U visas encourage crime victims and witnesses to come forward, regardless of their immigration status,” said co-chair **Chief Ruben Quesada of Swampscott, Massachusetts**. “Law enforcement officers can promise some sort of protection as they cooperate in a crime investigation. Seeing others being deported will only undermine our work.”

“Petitioners often endure years of waiting for their U visa cases to be resolved. The threat of deportation not only deters other victims from cooperating with law enforcement — it risks years of progress in building trust within our communities,” said **retired Chief Michael Tupper of Marshalltown, Iowa**.

###

Follow

# EXHIBIT K

U.S. Citizenship and Immigration Services

MENU

Home > Policy Manual > Volume 3 - Humanitarian Protection and Parole > Part B - Victims of Trafficking > Chapter 1 - Purpose and Background

# Chapter 1 - Purpose and Background

Guidance

Resources (22)

Appendices (1)

Updates (4)

---

## A. Purpose

Human trafficking (also known as trafficking in persons) involves the exploitation of persons in order to compel labor, services, or commercial sex acts.[1] The Trafficking Victims Protection Act (TVPA), part of the Victims of Trafficking and Violence Protection Act of 2000, was enacted to strengthen the ability of law enforcement agencies to investigate and prosecute trafficking in persons, while offering protections to victims of such trafficking, including temporary protections from removal, access to certain federal and state public benefits and services, and the ability to apply for T nonimmigrant status (commonly referred to as the T visa).

T nonimmigrant status allows eligible victims of a severe form of trafficking in persons[2] to remain in the United States on a temporary basis, receive employment authorization, and qualify for benefits and services to the same extent as a refugee.[3] It also allows victims to apply for T nonimmigrant status for certain family members.

## B. Background

USCIS has sole jurisdiction over the adjudication of the Application for T Nonimmigrant Status (Form I-914).[4] T nonimmigrant status provides:

- Nonimmigrant status and employment authorization for an initial period of up to 4 years;
- Access to public benefits and services;
- Nonimmigrant status for certain eligible family members; and
- The opportunity to apply for lawful permanent resident status if eligible.[5]

Applications are adjudicated by officers who receive trauma-informed and victim-centered training. There are protections in place to safeguard the confidentiality of any information relating to the applicant.[6] In addition, in recognition of the unique challenges trafficking victims may face in pro[...] of their victimization, USCIS must consider "any credible evidence" in determining w[...] established eligibility for T nonimmigrant status.[7]

Need Help?
Chat with Emma™

## C. Legislative History

Since the initial creation of the T nonimmigrant classification in 2000, Congress has amended the program requirements several times. In addition to creating a nonimmigrant classification for victims of human trafficking, the TVPA and subsequent reauthorizing legislation provide various means to combat trafficking in persons, including tools to effectively prosecute and punish perpetrators of trafficking in persons and prevent incidents of human trafficking.

**T Nonimmigrant Status: Acts and Amendments**

| Acts and Amendments | Key Changes |
|---|---|
| **Trafficking and Violence Protection Act (TVPA) of 2000[8]** | • Established T nonimmigrant classification as a temporary immigration benefit available to eligible victims of a severe form of trafficking in persons.<br>• Created a pathway to lawful permanent residence (a green card) for eligible T nonimmigrants. |
| **Trafficking Victims Protection Reauthorization Act (TVPRA) of 2003[9]** | • Extended derivative T nonimmigrant status to certain family members of the principal trafficking victim. |

| Acts and Amendments | Key Changes |
|---|---|
| **Violence Against Women and Department of Justice Reauthorization Act (VAWA) of 2005**[10] | • Authorized the duration of T nonimmigrant status for up to 4 years, with the option to extend status in yearly increments when the T nonimmigrant's presence is necessary to assist in the criminal investigation or prosecution of human trafficking.<br>• Defined law enforcement requests where the trafficking victims were unable to cooperate due to physical or psychological trauma suffered as unreasonable.<br>• Eliminated the requirement that relatives of the principal trafficking victim demonstrate extreme hardship to obtain derivative T nonimmigrant status.<br>• Created an additional avenue for trafficking victims to adjust status before accruing 3 years of continuous physical presence in cases where the Attorney General certifies that the investigation or prosecution is complete.<br>• Permitted some trafficking victims earlier access to permanent residence by allowing period(s) of continuous physical presence during the investigation or prosecution into acts of trafficking to count towards the physical presence requirement for adjustment of status under INA 245(l).<br>• Extended 8 U.S.C. 1367 confidentiality protections to applicants for T nonimmigrant status.<br>• Created a waiver for the unlawful presence ground of inadmissibility where the trafficking was at least one central reason for the applicant's unlawful presence in the United States.<br>• Permitted aliens who entered the United States in certain nonimmigrant statuses to later change status to T nonimmigrant status, if eligible. |

| Acts and Amendments | Key Changes |
|---|---|
| **William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA 2008)[11]** | • Provided that an applicant can establish the physical presence requirement if the applicant was allowed entry into the United States to participate in investigative or judicial processes associated with an act or a perpetrator of trafficking.<br>• Provided an exception to the requirement to comply with reasonable requests for assistance from law enforcement due to physical or psychological trauma.<br>• Extended eligibility for derivative status to parents or unmarried siblings under the age of 18 who face a present danger of retaliation as a result of the principal's escape from trafficking or cooperation with law enforcement.<br>• Expanded ability to extend T nonimmigrant status by allowing DHS to consider exceptional circumstances.<br>• Extended the validity period of T nonimmigrant status to include the period the application for adjustment of status is pending.<br>• Authorized DHS to waive good moral character disqualifications at the adjustment of status stage if the disqualification was caused by or incident to the trafficking. |
| **Violence Against Women Reauthorization Act of 2013 (VAWA 2013)[12]** | • Created a new classification of derivative relatives for the adult or minor child of the principal's derivative relative, if the adult or minor child faces a present danger of retaliation as a result of the principal's escape from trafficking or cooperation with law enforcement.<br>• Clarified that presence in the Commonwealth of the Northern Mariana Islands constitutes presence in the United States.<br>• Exempted from the public charge ground of inadmissibility T nonimmigrants and applicants setting forth a prima facie ("at first look") case for eligibility for T nonimmigrant status.[13] |
| **Justice for Victims of Trafficking Act of 2015 (JVTA)[14]** | • Added "patronizing" and "soliciting" to the definition of sex trafficking at 22 U.S.C. 7102(12).<br>• Added "patronized or solicited" to the crime of sex trafficking at 18 U.S.C. 1591.<br>• Mandated human trafficking awareness training for relevant DHS personnel with law enforcement and public facing roles. |

# D. Legal Authorities

- INA 101(a)(15)(T) – Definition of T nonimmigrant classification
- 8 CFR 214.200 – 8 CFR 214.216 – Alien victims of severe forms of trafficking in persons
- INA 101(i) – Referral to nongovernmental organizations and employment authorization
- INA 212(d)(3)(A)(ii) and INA 212(d)(13); 8 CFR 212.16 – Waivers of inadmissibility
- INA 214(o) – Nonimmigrants guilty of trafficking in persons, numerical limitations, and length and extension of status
- 8 CFR 274a.12(a)(16), 8 CFR 274a.12(c)(25), and 8 CFR 274a.12(c)(40) – Employment authorization
- INA 237(d) – Administrative stay of removal
- 8 U.S.C. 1367 – Penalties for disclosure of information
- 28 CFR 1100.35 – Authority to permit continued presence in the United States for victims of severe forms of trafficking in persons
- 22 U.S.C. 7105(b)(1) – Assistance for victims of trafficking in the United States
- 22 CFR 41.84 – Victims of trafficking in persons

# Footnotes

[^ 1] See Trafficking and Violence Protection Act (TVPA) of 2000, Pub. L. 106-386 (PDF), 114 Stat. 1464, 1470 (October 28, 2000), codified at 22 U.S.C. 7101.

[^ 2] The term "severe form of trafficking in persons" is a legal term defined in the TVPA. The term is often referred to as "trafficking," "human trafficking," or "acts of trafficking."

[^ 3] See TVPA, Pub. L. 106–386 (PDF), 114 Stat. 1464, 1475 (October 28, 2000) (stating that such persons "shall be eligible for benefits and services…to the same extent as an alien who is admitted to the United States as a refugee under section 207 of the [INA]"). See INA 101(i)(2) (mandating employment authorization for principal T nonimmigrants).

[^ 4] USCIS also has sole jurisdiction over the adjudication of the Application for Derivative T Nonimmigrant Status (Form I-914, Supplement A).

[^ 5] Congress provided a specific basis for T nonimmigrants to adjust under INA 245(l), with eligibility criteria distinct from the criteria that apply to family-based, employment-based, and diversity visa adjustment under INA 245(a). For more information, see Volume 7, Adjustment of Status, Part J, Trafficking Victim-Based Adjustment [7 USCIS-PM J].

[^ 6] See 8 U.S.C. 1367. See 8 CFR 214.216. See Volume 1, General Policies and Procedures, Part A, Public Services, Chapter 7, Privacy and Confidentiality, Section E, VAWA, T and U Cases [1 USCIS-PM A.7(E)].

[^ 7] See 8 CFR 214.204(l). USCIS also determines the evidentiary value of submitted evidence in its sole discretion.

[^ 8] See Pub. L. 106–386 (PDF) (October 28, 2000). See 22 U.S.C. 7101–7110. See 22 U.S.C. 2151n. See 22 U.S.C. 2152d.

[^ 9] See Pub. L. 108-193 (PDF) (December 19, 2003).

[^ 10] See Pub. L. 109-162 (PDF) (January 5, 2006). See Violence Against Women and Department of Justice Reauthorization Act of 2005 Technical Amendments, Pub. L. 109-271 (PDF) (August 12, 2006).

[^ 11] See Pub. L. 110-457 (PDF) (December 23, 2008).

[^ 12] See Pub. L. 113-4 (PDF) (March 7, 2013).

[^ 13] See 8 U.S.C. 1641(c)(4). See INA 212(a)(4)(E)(iii).

[^ 14] See Pub. L. 114-22 (PDF) (May 29, 2015).

Current as of November 03, 2025