CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Immigration Center for Women and Children, et. al.,

Plaintiffs,

v.

Kristi Noem, et. al,

Defendants.

Case No.: 2:25-cv-09848-AB-AS

**DECLARATION OF ALIZABETH NEWMAN**

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* *Admitted Pro Hac Vice*

**DECLARATION OF ALIZABETH NEWMAN FOR SEPA MUJER, INC. (SERVICES FOR THE ADVANCEMENT OF WOMEN)**

I, Alizabeth Newman, declare and state as follows:

1. I have personal knowledge of the facts set forth below and if called to testify, I could and would do so competently.
2. My name is Alizabeth Newman, and I am the Interim Legal Director at SEPA Mujer, Inc., which is located at 110 N. Ocean Ave, Patchogue, NY 11772. I have been working at SEPA Mujer for 11 months in the position and worked as a Clinical Professor at CUNY School of Law for over 20 years prior to that. I am also the Founder of SEPA Mujer.
3. SEPA Mujer, Services for the advancement of women, is a nonprofit organization that aims to foster robust civic engagement, elevate women's and girls' leadership, and cultivate a gender-inclusive environment. Our dedicated efforts aim to empower individuals to actively participate in shaping their communities while championing and amplifying the voices of women and girls in leadership roles. We are committed to breaking down barriers for immigrant women and girls and creating an inclusive space where all genders can thrive, collaborate, and drive positive change. The legal work focuses on protection the most vulnerable in our community including U/T/VAWA cases, court advocacy and accompaniment.
4. SEPA Mujer represents approximately 100 U visa petitioners, approximately 2 T visa petitioners, and approximately 5 VAWA self-petitioners.
5. Our office has represented immigrant survivors seeking survivor-based protections for over 30 years.
6. The relief that Congress has made available to victims of gender violence and other crimes has been invaluable to our community members. Because immigrants are more vulnerable due to lack of familiarity with systems and customs, language barriers and lack of resources, they can more easily fall prey to unscrupulous people who will take advantage of them. The protections of the U, T, and VAWA have allowed our clients to leave dangerous situations, and to work with law enforcement when they would otherwise have been too frightened to do so.
7. In 2024 and before, ICE's victim-centered policy protected our clients who were survivors of abuse, trafficking, and crime. Many of our clients felt secure enough to report the harm they experienced or were able to leave their abuser because of immigrant survivor protections like the U visa, T visa, and VAWA.

*Impact of new policies on our clients:*

8. Since February 2025, one of our clients with a pending U petition was detained, in spite of the fact that she was in valid deferred action status. In 2024 and before, none of our clients with pending U, T, or VAWA petitions were detained and we could advise our clients that applying for a U or T visa or submitting a VAWA self-petition would protect them. In 2024 and before, we had never had a client detained who was in valid deferred action status.
9. Since February 2025, one of our clients with pending U visa petition was deported, in spite of the fact that she was in valid deferred action status. In 2024 and before, none of

our clients with pending U, T, or VAWA petitions were deported without any review of their petition, and we could advise our clients that applying for a U or T visa or submitting a VAWA self-petition would protect them. In 2024 and before, we had never had a client deported who was in valid deferred action status.

10. Since February 2025, our clients with pending U, T, or VAWA petitions are more fearful of detention and deportation, and many clients have been reluctant to file for status to which they qualify and should be able to provide them a path to legalization. Many who are in the midst of processes after filing petitions are concerned that showing up at an appointment would lead not to furthering their petitions, but to their detention or removal. Some have expressed being fearful of leaving the house or picking up their children at school. Some have expressed fear of going to the office for scheduled appointment.
11. Since February 2025, we have seen a drop in the number of people who request our assistance to apply for a survivor-based benefit.
12. Since February 2025, our clients express more fear of police and some clients have chosen not to report harm or not to pursue a restraining order out of fear of arrest, detention, deportation, or because they are more vulnerable to retaliation by the perpetrator without protection from deportation. Clients have expressed fear of going to the police or the court and have needed staff accompaniment in order to follow through.

*RXA's story:*

13. Our office represents a client in their VAWA petition where her abusive husband did not show up for the interview. She explained her situation that she was planning to file a VAWA petition and asked to reschedule her interview. Instead, she received a letter stating that she was being placed in removal proceedings.
14. In another case, we determined that a client qualified for a U visa and began the process of collecting information and preparing the affidavit. Hearing of all the ICE actions and understanding that the filing of a U visa, even a strong case, would take years and that the ICE administration would not afford any protection to the applicant for years, the individual decided not to file the U visa and to leave the US.
15. The most egregious instance of harm to a client because of ICE's drastic change in policy was the case of our client, RXA. Our office represents a client, RXA, in her petition for a U visa, which was filed on August 14, 2023.
16. *Life & basis of visa petition:* RXA is an indigenous Guatemalan woman who survived domestic abuse both in leaving Guatemala and then again in the United States. This time however, she found assistance. She reported the crime, worked with law enforcement and received an order of protection. RXA has 3 children, one who is a legal permanent resident, and two younger children, 4 and 12, who are US citizens and who were living with her and in her care.
17. *Grant of deferred action:* On January 4, 2025, USCIS issued RXA a Bonafide Determination letter and a grant of deferred action. USCIS also issued our client employment authorization pursuant to her deferred action valid from 1/04/2025-1/03/2029. RXA has never received any notice of revocation of deferred action and to our knowledge, nothing has caused her to no longer be eligible for deferred action since it was granted.

18. *Enforcement under the new policy:* This client received a notice to appear for biometrics on October 31, 2025. At the Hauppauge Application Support Center. When she complied, she was detained by ICE. She was told that she had an outstanding order of removal that she did not know about.
19. Client RXA was quickly sent out of New York to a detention Center in Louisiana. This was extremely traumatic to her and devastating to her husband and children.
20. Her information never showed up in the ICE Locator, but because RXA called her family, we learned where she was.
21. At the moment of attending her biometrics appointment RXA showed her documents to the ICE agents who told her that having a U visa pending meant very little and would have no impact on their actions to detain and remove her.
22. One of SEPA Mujer's attorneys did send her letter of representation to the Southern Louisiana Detention Center and requested to know who was the agent in charge. Her efforts to identify and reach the agent were unsuccessful. Either no one answered the telephone, or upon picking up the phone, they hung up, or when she did speak with someone, they promised that the appropriate agent would be in touch with her. This never happened.
23. The attorney also emailed a request that the officer in charge be in touch with the attorney to give information about the charges against her, and to request a Reasonable Fear interview because our client expressed being afraid to return to Guatemala. No one ever got in touch with the attorney.
24. Before 2025, I never had a client arrested, detained or removed while in deferred action status; ICE routinely agreed to administratively close cases for clients with deferred action or pending U/T/V petitions.
25. I have been working on VAWA self-petitions and U visas for over 25 years. In the past, I could reassure victims that they could feel comfortable telling their stories and seeking protection from the police or USCIS. Minor immigration violations could be waived in the context of supporting victims of crime. This year, there has been a radical shift in immigration policy and procedures that completely undermine the protections so thoughtfully passed by Congress with bipartisan support. No longer are crime victims empowered to seek protection, to rely on police or immigration authorities. No longer are petitions that are being adjudicated providing support for those courageous enough to speak out against their abusers. These policy changes have had a terrible chilling effect on victims, allowing them to fall prey to unscrupulous abusers, which flies in the face of the exact reason that the Violence Against Women Act (VAWA) and the Victims of Trafficking and Violence Protection Act (VTVPA) were passed. These drastic changes in the last year have undermined 30 years of Congressional work and precedent. They have created severely unsafe conditions for victims of gender violence and they are bolstering the power of abusers to prey on unprotected immigrants. All women are less safe in such an environment.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Alizabeth Newman

Date: December 15, 2025