CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**DECLARATION OF SUZETTE COLON CALES** |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist* (DC Bar 1720816)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* *Admitted Pro Hac Vice*

**DECLARATION OF SUZETTE COLON CALES**
**MANAGING ATTORNEY FOR ELIZABETH ROSARIO LAW, PLC**

I, Suzette Colon-Cales, declare and state as follows:

1. I have personal knowledge of the facts set forth below and if called to testify, I could and would do so competently.
2. My name is Suzette Colon-Cales, and I am the Managing Attorney at Elizabeth Rosario Law, PLC, which main office is located at 545 28th St SW, Wyoming, MI 49509. I have been working at the firm for three years.
3. Elizabeth Rosario Law, PLC is a client-centered immigration law firm dedicated to helping individuals and families achieve safety, stability, and lawful status in the United States. The firm focuses on humanitarian immigration relief—particularly VAWA, U visas, T visas, and family-based petitions—and is known for its trauma-informed, detail-oriented advocacy. With a deep commitment to dignity and access to justice, Elizabeth Rosario Law PLC combines legal excellence with compassionate representation for some of the most vulnerable members of the community.
4. Elizabeth Rosario Law, PLC approximately 600 U visa petitioners, approximately 4800 T visa petitioners, and approximately 1500 VAWA self-petitioners.
5. Our office has represented immigrant survivors seeking survivor-based protections for approximately 13 years.
6. U, T, and VAWA protections are critical to our clients because they provide safety, stability, and lawful immigration options for survivors of crime, trafficking, and abuse—many of whom fear deportation if they seek help. These protections allow clients to report crimes, cooperate with law enforcement, or leave abusive situations without risking immigration consequences. By offering legal protection, work authorization, and a path to lawful status, U, T, and VAWA relief build trust between immigrant survivors and police, increasing the likelihood that clients will report crimes, assist investigations, and engage with the justice system without fear.
7. Prior to 2025, ICE's victim-centered policies protected our clients who were survivors of abuse, trafficking, and crime. Many of our clients felt secure enough to report the harm they experienced or were able to leave their abuser because of immigrant survivor protections like the U visa, T visa, and VAWA.
8. Since February 2025, 20 of our clients with pending U, T, or VAWA petitions have been detained, including 9 who were in valid deferred action status. In 2024 and before, none of our clients with pending U, T, or VAWA petitions were detained absent exceptional circumstances, and we could advise our clients that applying for a U or T visa or submitting a VAWA self-petition would protect them. In 2024 and before, we had never had a client detained who was in valid deferred action status.
9. Since February 2025, one of our clients with pending U, T, or VAWA petition have been deported while valid deferred action status. In 2024 and before, none of our clients with pending U, T, or VAWA petitions were deported without any review of their petition, and we could advise our clients that applying for a U or T visa or submitting a VAWA self-petition would protect them. In 2024 and before, we had never had a client deported who was in valid deferred action status.

10. Since February 2025, we have requested stays of removal for one of our clients with a qualifying T petition filed days before being detained, and ICE denied that request. In 2024 and before, ICE routinely granted U, T, and VAWA petitioners stays of removal and requested expedited review by USCIS, and we had never had a client whose first request for a stay was denied absent exceptional circumstances.
11. Since February 2025, our clients with pending U, T, or VAWA petitions are more fearful of detention and deportation, and many have changed their lives, such as giving up jobs, or missing school out of fear of being arrested by ICE.
12. Since February 2025, we have seen a drop in the number of people who request our assistance to apply for a survivor-based benefit.
13. Our office represents a client in their VAWA petition, which was filed on December 10, 2021.
14. The client had resided in the United States for many years and established substantial family and community ties, including a long-term relationship and marriage to a U.S. citizen spouse and close parental bonds with the spouse's children, who relied on the client for emotional and practical support. The client maintained steady employment, contributed to the household, and was consistently described by family members, friends, and coworkers as hardworking, dependable, and actively engaged in the community. The client did not pose a danger to the community, as reflected in state criminal clearance records showing no arrest history, and any prior minor traffic-related incidents were resolved without further issue. The client likewise did not pose a flight risk, having complied with court obligations, attended required proceedings, and voluntarily departed the United States when previously ordered. The basis of the visa petition was a VAWA self-petition, founded on a good-faith marriage to a U.S. citizen spouse and the abuse the client suffered during that relationship, as supported by detailed affidavits, corroborating witness statements, and documentary evidence demonstrating both the bona fides of the marriage and the client's good moral character.
15. USCIS issued the client a prima facie determination in connection with the pending VAWA self-petition, which at the time of the client's arrest was in its sixth or seventh issuance and remained valid through March 2026. Based on this prima facie determination, USCIS also issued the client employment authorization. The client never received any notice of revocation or termination of the prima facie determination, and to counsel's knowledge, no facts or circumstances arose after its issuance that would have rendered the client ineligible for such determination during its validity period.
16. The client was arrested on or about October 26, 2025, in Gastonia, North Carolina, following a traffic stop for driving without a license. The arrest occurred on the street and was not the result of an ICE check-in or courthouse enforcement action. The client was initially held in local custody before being transferred to immigration authorities.
17. Following the arrest, the client was detained continuously from late October 2025 through removal in November 2025. The client was held first in local custody and later transferred to detention facilities in Georgia, including Irwin County Detention Center. During detention, the client experienced prolonged uncertainty regarding location and custody status, did not appear on the ICE detainee locator for an extended period, and had severely limited, monitored phone access. The client reported poor detention conditions, including extreme cold, lack of adequate medical attention while ill, and sleep deprivation due to

early-morning transfers. As a survivor of abuse with a pending VAWA petition, the detention caused significant emotional distress, anxiety, and loss of hope, and materially interfered with the client's ability to communicate confidentially with counsel and participate meaningfully in their own case.

18. Throughout the client's detention, our office made repeated efforts to alert ICE to the client's pending VAWA self-petition and valid prima facie determination, including submission of a Form G-28, transmission of prima facie documentation, and direct communications with ICE liaisons and ERO officers. Counsel also sought to coordinate attorney calls and detainee visits and requested consideration of prosecutorial discretion, parole, or release in light of the client's survivor status. ICE did not meaningfully respond to these requests and did not indicate that the pending VAWA petition or prima facie determination would affect the decision to detain or remove the client.
19. On or about November 2025, counsel submitted a request for a stay of removal directly to ICE while the client was detained in Georgia. Despite follow-up calls, emails, and attempts to reach deportation officers, ICE did not issue a written response or grant the stay before executing the client's removal.
20. Before 2025, in my professional experience, cases like this were handled differently. I had not previously had a client detained and removed while holding a valid prima facie determination tied to a pending VAWA petition. Historically, ICE routinely exercised prosecutorial discretion for survivors with pending U, T, or VAWA petitions, frequently agreed to administrative closure or stays of removal, and often coordinated with USCIS to request expedited adjudication when a survivor was detained. ICE typically conducted background checks, deferred to USCIS's determinations, and avoided enforcement actions that would undermine congressionally protected survivor-based relief. The handling of this case represents a significant departure from those prior practices.
21. Based on my experience representing U, T, and VAWA self-petitioners prior to 2025, a client in this posture would not have been arrested or detained by ICE in the first instance, particularly where the client held a valid prima facie determination or other form of survivor-based protection. If an arrest had occurred, ICE would have promptly released the client upon notification of the pending survivor-based petition and submission of proof of eligibility, including prima facie documentation. Under prior practice, ICE routinely granted stays of removal, declined to execute old removal orders, and refrained from reopening or enforcing removal proceedings while a U, T, or VAWA petition was pending. ICE generally deferred to USCIS's determinations regarding eligibility and frequently exercised prosecutorial discretion to avoid enforcement actions that would undermine congressionally protected survivor relief.
22. In my professional judgment, the shift in enforcement practices after 2025 represented a sharp and significant departure from prior policy. This change has had a profound impact on my clients, particularly survivors of abuse, by increasing fear, destabilizing families, and undermining confidence in the protections afforded by survivor-based immigration statutes. It has also materially affected my ability to effectively represent clients, as detention and rapid removal now routinely occur before counsel can meaningfully intervene, communicate with ICE, or seek relief that previously would have been granted as a matter of course.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Date 1/3/2026

NAME