CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**DECLARATION OF AUGUY G. MANGONE** |

*Additional Counsel for Plaintiffs:*

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist* (DC Bar 1720816)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* *Admitted Pro Hac Vice*

**DECLARATION OF AUGUY G. MANGONE, ESQ.**

I, Auguy G. Mangone, declare and state as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, I could and would do so competently.

2. My name is Auguy G. Mangone, and I am an attorney at Mangone Law Firm, LLC, located at 440 Speedwell Ave., Morris Plains, New Jersey 07950. I have been practicing immigration law for over ten years and have represented immigrant survivors of violence, trafficking, and serious crimes for the majority of my legal career.

3. Mangone Law Firm, LLC is a law firm dedicated primarily to the representation of immigrants in humanitarian and removal defense matters. A substantial portion of our practice focuses on survivor-based immigration protections, including U visas, T visas, and VAWA self-petitions. Our mission is to provide trauma-informed, victim-centered legal representation to noncitizens who have suffered abuse, exploitation, or crime and who seek lawful protection under U.S. immigration law.

4. Our firm currently represents approximately eighty (80) or more U visa petitioners, approximately one thousand (1,000) or more T visa petitioners, and approximately two hundred fifty (250) or more VAWA self-petitioners.

5. Mangone Law Firm, LLC has represented immigrant survivors seeking survivor-based protections for more than ten years.

6. U visa, T visa, and VAWA protections are essential to our clients because they provide a lawful and life-saving pathway for immigrant survivors to escape abuse, exploitation, and criminal victimization. These protections offer stability and safety by reducing the immediate risk of detention and deportation, allowing survivors to separate from their abusers, secure housing, obtain lawful employment, and access medical, psychological, and social services necessary for recovery. Importantly, survivor-based protections foster trust between immigrant communities and law enforcement by assuring victims that cooperation with police, prosecutors, and courts will not result in immigration consequences. In my experience, when survivors are informed that they may qualify for U, T, or VAWA relief, they are significantly more likely to report crimes, comply with investigations, pursue protective orders, and serve as witnesses, thereby advancing public safety and the enforcement of criminal laws.

7. Prior to 2025, ICE's victim-centered policies generally protected our clients who were survivors of abuse, trafficking, and crime. Many of our clients felt sufficiently secure to report the harm they experienced, cooperate with law enforcement, and pursue protective measures, or were able to leave their abuser, specifically because immigrant survivor protections such as the U visa, T visa, and VAWA reduced their fear of detention or

deportation and provided a measure of legal stability during an otherwise dangerous and vulnerable period.

8. Since February 2025, approximately twenty-four (24) of our clients with pending U, T, or VAWA petitions have been detained by ICE, including multiple individuals who were in valid deferred action status at the time of their detention. By contrast, in 2024 and prior years, none of our clients with pending U, T, or VAWA petitions were detained absent truly exceptional circumstances. Prior to 2025, we had never experienced the detention of a client who was in valid deferred action status.

9. Since February 2025, approximately ten (10) of our clients with pending U, T, or VAWA petitions have been deported by ICE, including individuals whose petitions had not been denied and whose eligibility for survivor-based relief had not been revoked. Prior to 2025, we had never had a client deported while in valid deferred action status.

10. Since February 2025, our office has submitted approximately ten (10) requests for stays of removal on behalf of clients with pending U, T, or VAWA petitions. ICE has not granted a single one of these requests and, in many instances, has failed to provide any meaningful or timely response. Prior to 2025, ICE routinely granted stays of removal to survivor-based petitioners and frequently requested expedited USCIS review.

11. Since February 2025, approximately five (5) of our clients with pending U, T, or VAWA petitions have had previously closed or administratively stayed cases reopened by ICE. Prior to 2025, clients with pending survivor-based petitions did not face the risk of having their cases reopened before USCIS adjudicated their petitions. Absent exceptional circumstances, we were not required to represent clients in complex removal proceedings unless and until their petitions were denied.

12. Since February 2025, approximately sixty (60) of our clients with pending U, T, or VAWA petitions have been required to attend additional or more frequent ICE check-ins or have been placed under heightened supervision conditions. Prior to 2025, such check-ins were infrequent and routine.

13. Since February 2025, our clients with pending survivor-based petitions have experienced significantly heightened fear of detention and deportation. Many clients report persistent anxiety that has disrupted employment, education, and family stability.

14. Since February 2025, our clients express increased fear of interacting with law enforcement and are reluctant to report harm or seek protective measures due to fear of arrest, detention, or deportation, undermining the protective purpose of survivor-based immigration relief.

15. Our office represents a client whose VAWA self-petition was filed prior to 2025 and approved by USCIS. Based on that approval, the client was found eligible for adjustment of status under VAWA.

16. The client had resided in the United States for several years, maintained strong community ties, supported dependent family members, had no criminal history, and posed no danger or flight risk. The VAWA petition was based on documented domestic violence recognized under U.S. immigration law.

17. USCIS favorably adjudicated the client's application for adjustment of status and granted lawful permanent resident status. To my knowledge, that grant was never revoked or invalidated.

18. Following the client's detention, our office requested that ICE review the client's case and submitted documentation confirming USCIS's approval of the VAWA petition and the grant of lawful permanent residence. ICE did not provide any response to this request.

19. Removal proceedings were conducted before an Immigration Judge, who issued an order of removal. ICE executed the removal without allowing the client sufficient time to meaningfully pursue available appellate remedies.

20. The client was detained under conditions that caused significant emotional distress and exacerbated trauma associated with prior domestic violence.

21. ICE executed the client's removal from the United States despite the prior grant of lawful permanent resident status.

22. In my professional judgment, the sequence of events in this case reflects a failure to adequately coordinate between ICE enforcement actions and USCIS's prior humanitarian and adjustment determinations.

23. In cases involving detained clients with pending U visa, T visa, or VAWA petitions, our office has routinely submitted requests to ICE seeking a stay of removal. In the majority of these cases, ICE has not granted the requested relief and, to date, has failed to provide any substantive or timely response addressing the pending survivor-based petitions or the humanitarian equities presented.

24. Before 2025, in my experience representing survivors under the VAWA and T visa frameworks, cases like this were handled very differently. Prior to 2025, I had never represented a client with an approved VAWA petition who was arrested, detained, or removed absent extraordinary circumstances. ICE routinely exercised favorable prosecutorial discretion in cases involving approved or pending survivor-based relief, deferred to USCIS's humanitarian determinations, and avoided initiating removal proceedings against survivors whose eligibility for protection had already been established. ICE's prior practice reflected recognition that enforcement action in such cases would undermine the purpose of VAWA and T visa protections.

25. Based on my experience representing U, T, and VAWA petitioners under policies in place before 2025, a client in these circumstances would not have been arrested or detained, would not have been placed into removal proceedings, and would not have been removed from the United States after receiving an approved VAWA petition. Under prior policies, ICE would have deferred enforcement, coordinated with USCIS, and allowed the client to remain in the United States while survivor-based protections governed the case.

26. In my professional judgment, the enforcement actions described above represent a sharp departure from prior ICE practices. This change has had a profound impact on immigrant survivors and has materially altered my ability to advise and represent clients seeking VAWA and T visa protections, as longstanding reliance on victim-centered enforcement practices can no longer be assumed.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Date 01/05/2026

Auguy G Mangone, Esq.