CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**DECLARATION OF RACHEL PARRIS** |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist* (DC Bar 1720816)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* *Admitted Pro Hac Vice*

**DECLARATION OF RACHEL PARRIS OF LISINSKI LAW FIRM**

I, Rachel Parris, declare and state as follows:

1. I have personal knowledge of the facts set forth below and if called to testify, I could and would do so competently.
2. My name is Rachel Parris, and I am a Staff Attorney at Lisinski Law Firm, which is located at 6377 Emerald Pkwy, Dublin, OH 43016. I have been working at Lisinski Law Firm for 4 months.
3. Our mission is to bring compassion back to law by protecting client rights, representing and fighting for what our clients deserve. Our purpose is to change as many lives as possible. That means giving immigrant families the resources they need to build a safe future and stay together in the United States. Lisinski Law Firm stands out as a leader in immigration legal services because we are dedicated to humanitarian cases and recognize that everyone deserves an opportunity to obtain documents.
4. Immigrants often face dangerous situations, endure harsh living conditions, and have limited access to social and financial resources. Our legal practice is designed to provide protection, long-lasting safety, and immigration relief. While many believe that they must leave the United States to reach legal status, we look exclusively for ways to do so within the country, because families deserve to stay together.
5. The foundation of our legal immigration services is to provide humanitarian relief. We take on cases that focus on vulnerable communities because everyone deserves an opportunity to live with dignity and documents. Our trusted immigration lawyers work tirelessly to identify ways to provide legal protection in the U.S., so that no more families get separated.
6. Our firm has represented immigrant survivors seeking survivor-based protections for approximately 5 years.
7. Prior to 2025, ICE's victim-centered policies protected our clients who were survivors of abuse, trafficking, and crime.
8. Our office represents a client in their VAWA self-petition and Adjustment of Status application, which were both filed on 9/17/2021.
9. Our client came to the U.S. in the 1990s to escape the cartel problems facing his community, and to be able to economically help his family back home. Our client married his citizen spouse, and the problems and abuse in that marriage led him to qualify for a VAWA petition.
10. Our client's entire life is in the U.S. He has lived in the U.S. longer than he has ever lived in his home country. Additionally, our client has no strong family ties in his home country.
11. Coming to the U.S. completely changed our client's life. He owns his own business in the U.S. He has a strong relationship with God and he does charity work to support his community, family and friends. Our client would offer food, shelter, and money to people in need. Although our client has a criminal record, he has not had any serious criminal involvement in the last 20 years.
12. On 5/2/2025, USCIS issued a grant of deferred action to our client. USCIS also issued our client employment authorization pursuant to their deferred action. Our client has never received any notice of revocation of deferred action and to our knowledge; nothing has caused them to no longer be eligible for deferred action since it was granted. On 10/30/2025, our client was detained by ICE in the middle of his adjustment of status interview. The interview was never completed.
13. On 10/30/2025 when ICE entered the adjustment interview, they stated they were reinstating our client's prior removal order. No documentation was given. The ICE

officers provided me with the address our client would be taken to. Our client had valid deferred action at that point. We then prepared a stay of removal that stated our client had deferred action, employment authorization, and a pending adjustment application.

14. On 10/30/2025 and 10/31/2025, our office requested a stay of removal for our client based on his pending adjustment application and based on his deferred action and employment authorization. On 10/30/2025, when I went to the ICE processing office our client was sent to, I attempted to file the stay of removal and speak with our client. The officer at that processing office stated I had to file the stay at a different office and that I would not be allowed to speak with our client at that office. I was able to get a G-28 signed at the processing office.
15. On 10/31/2025 I went to file the stay at the other office. They took the stay and then returned it to me because they were unable to locate our client in the system. I told them I knew he was in ICE custody because I was there when he was taken. They informed me I had to come back to file it when he popped up in the system. Our client never showed up in the system.
16. We continued to check the ICE Detainee Locator multiple times a day. We emailed and called the field office on multiple occasions, and no answer was ever received. The only "official" updates we were ever able to receive about our client came through the detention facilities, and they would solely tell us our client was still detained there, and they would tell us nothing specifically about his case.
17. In 2012, our client was issued a removal order, and he was removed in connection with that order that same year. Our client returned to the country and was removed again in 2017, 2020, and now 2025. All our client's entries after being removed were in connection with the pressure from his wife to return to the country.
18. Our client was held in multiple ICE Detention Facilities for a little over two weeks before being removed from the United States. I was able to set up a meeting to speak with our client at one of the facilities. However, on the day of the meeting, our client was transferred to another facility, and I was unable to speak with him. When I contacted the new facility, they informed me he was transferred again, and they did not know where. I was later informed that he was deported.
19. We were never able to file a stay of removal as our client never showed in the system, and our client never saw a judge prior to being removed.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Date 1/5/2026 Signature Rachel Parris