CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al., <br><br> Plaintiffs, <br><br> v. <br> Kristi Noem, et. al, <br> Defendants. | Case No.: 2:25-cv-09848-AB-AS <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APA § 705 RELIEF AND INDIVIDUAL AND CLASSWIDE PRELIMINARY INJUNCTION** <br><br> Hon. Andre Birotte Jr. <br> Hearing Date: February 10, 2026 <br> Hearing Time: 10:00 AM |

*Additional Counsel for Plaintiffs:*

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

*Admitted pro hac vice*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................ii

INTRODUCTION ..........................................................................................................1

ARGUMENT...................................................................................................................2

   I.   Plaintiffs Have Standing........................................................................................2

      A.   Organizational Plaintiffs demonstrate organizational standing. ..............2

      B.   Plaintiff CHIRLA has Associational Standing..........................................5

      C.   Individual Plaintiffs have standing...........................................................6

   II.   The INA does not strip jurisdiction of this case. .........................................6

      A.   8 U.S.C. § 1252(g) is inapplicable. ..........................................................7

      B.   Sections 1252(a)(5) and (b)(9) are inapplicable........................................8

   III.   Plaintiffs are likely to succeed on merits. ..................................................9

      A.   Plaintiffs are likely to succeed in their challenge to 2025 Guidance........9

         1.   The 2025 Guidance is final agency action. ................................................9

         2.   The 2025 Guidance is arbitrary and capricious.......................................10

         3.   The 2025 Guidance is contrary to law. ....................................................12

      B.   The De Facto Revocation Policy is likely unlawful..............................12

         1.   Revoking deferred action must comport with due process. ....................12

         2.   Plaintiffs are likely to prevail on their APA and *Accardi* claims............14

      C.   The Blind Removal Policy is unlawful. .................................................14

   IV.   The balance of hardships and public interest favor preliminary relief.......15

CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Aguilar Gama v. Bondi*,
  25-01925, 2025 WL 3559942 (W.D. Wash. Dec. 12, 2025) ........................... 13

*Alcaraz v. I.N.S.*,
  384 F.3d 1150 (9th Cir. 2004) ................................................................... 10

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ................................................................... 9

*Arce v. United States,*
  899 F.3d 796 (9th Cir. 2018) ................................................................. 7, 8

*B.D.A.A. v. Bostock*,
  No. 6:25-CV-02062-AA, 2025 WL 3484912 (D. Or. Dec. 4, 2025) ................ 13

*Barahona-Gomez v. Reno*,
  236 F.3d 1115 (9th Cir. 2001) ................................................................... 13

*Bennett v. Spear*,
  520 U.S. 154 (1997) ................................................................................. 10

*Biden v. Texas*,
  597 U.S. 785 (2022) ................................................................................. 10

*Chiang v. Kempthorne*,
  503 F.Supp.2d 343 (D.D.C. 2007) .............................................................. 10

*Christensen v. Harris Cnty.*,
  529 U.S. 576 (2000) ................................................................................. 10

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ................................................................... 12

*Columbia Basin Apartment Ass'n v. City of Pasco*,
  268 F.3d 791 (9th Cir. 2001) ..................................................................... 6

*Cruz Zafra v. Noem*,
  No. 25-00541, 2025 WL 3239526 (W.D. Tex. Nov. 20, 2025) ..................... 13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ............................................................................... passim

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ........................................................... 7, 12, 15

*Espinoza Cruz v. English*,
  No. 3:25-CV-919-CCB-SJF, 2025 WL 3676992 (N.D. Ind. Dec. 18, 2025) ............................................................................................. 13

*Espinoza-Sorto v. Agudelo*,
  No. 25-23201, 25 WL 3012786 (S.D. Fla. Oct. 28, 2025) ........................... 13

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................... 3, 4

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
  98 F.4th 1180 (9th Cir. 2024) ................................................................... 13

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ................................................................................. 10

ii

*Ibarra-Perez v. United States*,
  154 F.4th 989 (9th Cir. 2025) ......................................................................... 7, 8, 9

*Immigr. Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ............................................................................... 2, 3

*Inland Empire—Immigrant Youth Collective v. Nielsen*,
  Case No. EDCV 17-2048, 2018 WL 4998230 (C.D. Cal. Apr. 19,
  2018) ......................................................................................................................... 13, 14

*Jimenez v. Dep't of Homeland Sec.*,
  No. 222CV00967SSSJPRX, 2022 WL 19410308 (C.D. Cal. Nov.
  14, 2022) ................................................................................................................... 15

*Las Americas Immigr. Advoc. Ctr. v. Trump*,
  475 F. Supp. 3d 1194 (D. Or. 2020) .................................................................. 10

*Lee v. Holder*,
  599 F.3d 973 (9th Cir. 2010) ............................................................................... 14

*Magassa v. Mayorkas*,
  52 F.4th 1156 (9th Cir. 2022) ............................................................................. 9

*Maldonado v. Noem*,
  No. 25-CV-2541, 2025 WL 1593133 (S.D. Tex. June 5, 2025) .................... 13

*Nevarez Jurado v. Freden*,
  No. 25-CV-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19,
  2025) ......................................................................................................................... 13

*O.A.M.R. v. Wofford*,
  No. 1:25-CV-01955-TLN-JDP, 2025 WL 3702171 (E.D. Cal. Dec.
  21, 2025) ................................................................................................................... 13

*Oliveira v. Edlow*,
  No. CV 25-13228-BEM, 2025 WL 3492110 (D. Mass. Dec. 4,
  2025) ................................................................................................................ 2, 7, 9, 12

*Pablo Sequen v. Albarran*,
  No. 25-CV-06487-PCP, 2025 WL 3724878 (N.D. Cal. Dec. 24,
  2025) ......................................................................................................................... 10

*Patel v. Hyde*,
  No. 25-12518, 2025 WL 3169875 (D. Mass. Nov. 12, 2025) ...................... 13

*Perez v. Mortg. Bankers Ass'n*,
  575 U.S. 92 (2015) ................................................................................................. 10

*Rauda v. Jennings*,
  55 F.4th 773 (9th Cir. 2022) ............................................................................... 8

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) .......................................................................................... 7, 8

*Republic of the Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) ............................................................................ 13

*Singh v. Gonzales*,
  499 F.3d 969 (9th Cir. 2007) ............................................................................... 9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard
  Coll.*,
  600 U.S. 181 (2023) ............................................................................................... 5

iii
Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

*Trump v. CASA, Inc.*,
   606 U.S. 839 (2025) ................................................................................. 15

*United States v. Hovsepian*,
   359 F.3d 1144 (9th Cir. 2004) ..................................................................... 7

*Vasquez Perdomo v. Noem*,
   148 F.4th 656 (9th Cir. 2025) ...................................................................... 6

*W. Radio Servs. Co. v. Espy*,
   79 F.3d 896 (9th Cir. 1996) ...................................................................... 10

*Wade v. Kirkland*,
   118 F.3d 667 (9th Cir. 1997) ...................................................................... 6

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ..................................................................... 6

*Washington v. U.S. Dep't of Homeland Sec.*,
   614 F. Supp. 3d 863 (W.D. Wash. 2020) .................................................... 10

**STATUTES**
5 U.S.C. § 705 ........................................................................................... 15
5 U.S.C. § 706(2)(A) ................................................................................. 12
8 C.F.R. § 214.14(c)(1) .............................................................................. 14
8 U.S.C. § 1227(d) ........................................................................... 2, 8, 14, 15
8 U.S.C. § 1252(a)(5) ........................................................................... 1, 8, 9
8 U.S.C. § 1252(b)(9) ........................................................................... 1, 8, 9
8 U.S.C. § 1252(f)(1) ............................................................................. 1, 5, 6
8 U.S.C. § 1252(g) ................................................................................. 1, 7, 8

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

**INTRODUCTION**

In opposing preliminary relief, Defendants present a series of strawman arguments without seriously addressing Plaintiffs' claims or binding caselaw.

First, Defendants assert Organizational Plaintiffs are merely spending their way into standing, but they explicitly acknowledge that the offending policies have drained the organizations' resources, undercutting their own argument. Then to support their claim that this Court cannot redress Plaintiffs' injuries, Defendants conjure up invented relief that Plaintiffs do not seek. Plaintiffs ask this Court to address three unlawful agency policies that upended decades of balanced enforcement, and to permit three unlawfully deported Individual Plaintiffs to return to the U.S. for lawful process. None of these forms of relief seek "absolute protection from detention and removal," and, under clear Ninth Circuit and Supreme Court precedent, none are barred by 8 U.S.C. § 1252(f)(1).

Next, Defendants recite a familiar set of jurisdictional booby traps that they raise in seemingly every case challenging their authority. Because these arguments are so well-worn, there is ample precedent that forecloses them, which Defendants conveniently ignore. The Supreme Court and Ninth Circuit have repeatedly held that 8 U.S.C. § 1252(g) only bars challenges to three discrete discretionary decisions, none of which is at issue in this case. Similarly, 8 U.S.C. §§ 1252(a)(5), (b)(9) only impact claims that can be raised in removal proceedings, which clearly does not apply to Plaintiffs' challenges to Defendants' policies.

On the merits, Defendants cannot dodge the Administrative Procedures Act ("APA") by claiming the 2025 Guidance is not "final agency action" simply because it has a disclaimer that it may be superseded one day. Courts routinely approve APA review over similar policies, because an agency cannot excuse itself from APA review with mere boilerplate. The 2025 Guidance is no exception.

Defendants unconvincingly downplay the sea change wrought by the 2025 Guidance, arguing that it merely preserves discretion. This ignores that it capsized

decades of prior policy that similarly preserved discretion, but, consistent with Congressional intent, also required that eligibility for survivor-based benefits be favorably considered in the discretionary analysis. Whether or not such an about-face is otherwise permissible, Defendants fail to provide a reasoned explanation for it, impermissibly providing post-hoc rationalizations and ignoring seminal cases like *Regents*. Thus, as the District Court for Massachusetts recently held, the 2025 Guidance is arbitrary and capricious. *Oliveira v. Edlow*, No. CV 25-13228-BEM, 2025 WL 3492110 (D. Mass. Dec. 4, 2025). It is also contrary to law.

Defendants dispute the existence of the De Facto Revocation and Blind Removal policies, but their own admissions belie their claims. By stating that USCIS granting deferred action creates no legal prohibition on ICE's enforcement actions, they effectively concede the existence of the De Facto Revocation Policy. And by suggesting that ICE agents need not request USCIS adjudication whenever a U or T visa petitioner requests a stay under 8 U.S.C. § 1227(d), they admit the existence of the Blind Removal Policy. Meanwhile, Defendants do not bother to substantively oppose Plaintiffs' APA and *Accardi* challenges to the De Facto Revocation Policy, and their opposition to Plaintiffs' due process claims rests on a fallacy that immigration court provides sufficient process. Immigration courts have no authority over deferred action, and enduring months of detention to try to convince an immigration court otherwise condemns class members to the very harm they seek to avoid through this action.

In sum, Defendants' briefing demonstrates preliminary relief is warranted.

**ARGUMENT**

**I.    Plaintiffs Have Standing**

    **A.    Organizational Plaintiffs demonstrate organizational standing.**

"Direct organization standing can be satisfied if the organization alleges that a defendant's actions 'affected and interfered with [a plaintiff's] core business activities.'" *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025)

2
Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

("*ImmDef*") (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) ("*Hippocratic Med.*"). It also remains the case that "where a defendant's behavior has 'frustrated its mission and caused it to divert resources in response to that frustration of purpose,'" an organization has standing.[1] *Id.* (citation omitted).

**1.** Reading too much into *Hippocratic Med.,* Defendants mischaracterize Plaintiffs' injury by trivializing it as a spending spree to get into court. Defs. Opp'n to Pltfs.' Mtn. for Prelim Inj. ("PI Opp.") at 14, Dkt. 40. But "[u]nlike the plaintiffs in *Hippocratic Medicine,*" Organizational Plaintiffs are "not 'asserting standing simply because'" each "'objects to the government's actions.'" *ImmDef*, 145 F.4th at 988 (quoting *Hippocratic Med.,* 602 U.S. at 394) (brackets omitted). "Rather, to *continue* advancing" their "core business activities and longstanding mission[s] of providing direct representation," and community education to victims of crime, trafficking, and abuse, each organization has had to pursue several initiatives to limit the adverse impacts of the 2025 Guidance, De Facto Revocation Policy, and Blind Removal Policy. *Id.* These include hiring additional staff to examine immigration court records, strengthening outreach and workshop efforts to counsel fearful survivors, and devoting more staff time to respond to the increased concerns of frightened clients and to represent clients fighting removal or attending ICE check-ins, who ICE would likely excuse from such enforcement under prior policies. Farb Decl. ¶¶ 22-24, Dkt. 31-2; Weiner Decl. ¶ 16, Dkt. 31-4; Salas Decl. ¶ 22-23, Dkt. 31-5; Beatty Decl. ¶¶ 20-21, 23. These efforts come at the expense of representing additional clients, which frustrates their missions and even impacts some of their funding bottom lines. Farb Decl. ¶¶ 21-22, 24; Weiner Decl. ¶¶ 9-10, 17; Salas Decl. ¶ 24, Dkt. 31-5; Beatty Decl. ¶ 24.

---

[1] Defendants are wrong that *Hippocratic Med.* held organizations cannot establish standing "by arguing a policy has 'impaired' their 'ability to provide services and achieve their organizational missions.'" PI Opp. at 13-14. The Supreme Court merely held that the plaintiffs in *Hippocratic Med.* did not meet this standard because they failed to demonstrate the challenge policy actually "imposed any… impediment to [their] advocacy businesses." *Hippocratic Med.*, 602 U.S. at 395.

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

This is not Plaintiffs "'spend[ing] their way into standing simply by expending money to gather information and advocate against'" the challenged policies, as in *Hippocratic Med*. PI Opp. at 14. Defendants even acknowledge the many ways the policies have demanded their resources, *id*. at 13, and agree that a "drain on the organization's resources" is sufficient for standing, *id.* at 14, but they argue this is not enough, begging the question what more Defendants believe is necessary. Defendants provide no answer, because nothing more is needed.

**2.** Defendants' traceability arguments unconvincingly seek to minimize the paradigm shift created by the 2025 Guidance and ascribe the Organizational Plaintiffs' injuries to different sources. It strains credulity to argue that 2025 injuries suffered by the organizations are traceable to a "statutory and regulatory scheme" that has been in place for years. PI Opp. at 15. And Defendants' attempt to pin the blame on an Executive Order that does not even mention VAWA, U visas, or T visas fares no better. PI Opp. at 15. As Plaintiffs noted in their opening brief, it is readily possible to comply with the Executive Order's goal of enforcing immigration laws against "all" removable noncitizens by having USCIS adjudicate VAWA, U visa, and T visa petitions when seeking to enforce and enforcing only against those individuals denied relief, as the 2011 Policy and 2021 Directive did. Pltfs' Mtn. at 21, Dkt. 31. Defendants chose instead to comply with that order by (1) issuing the 2025 Guidance, (2) detaining and deporting U and T visa petitioners in deferred action status, and (3) declining to seek prima facie determinations whenever such petitioners requests stays of removal. Those choices have caused Organizational Plaintiffs' injuries.

Because the 2025 Guidance eliminates a presumption against removal of immigrant survivors that existed for decades, the organizations' staff who advised clients about those policies have become "not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Hippocratic Med.*, 602 U.S. at 395 (citation omitted). Thus, they have standing.

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

**3**. Defendants' redressability arguments misrepresent the relief sought, as Plaintiffs clearly do not seek any order eliminating Defendants' "underlying discretion," PI Opp. at 15. The remainder of Defendants' redressability arguments focus on 8 U.S.C. § 1252(f)(1). PI Opp. at 15-17. Plaintiffs address that provision at length in their reply in support of class certification on behalf of the Individual Plaintiffs and thus do not repeat the arguments here, as the arguments apply equally to the relief sought by the organizations. In sum, § 1252(f)(1) does not bar the relief Plaintiffs actually seek in this motion: APA relief and injunctive relief that does not enjoin the operation of any of the statutes covered by § 1252(f)(1).

**B.      Plaintiff CHIRLA has Associational Standing.**

Plaintiff CHIRLA also has associational standing. To establish associational standing, an association must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). Each of those elements is present in this case.

**First**, CHIRLA has U visa petitioner members who would have standing, including a 17-year-old who has been "scared to leave his home" since February 2025, causing him "to miss a week of school." Salas Decl. ¶¶ 26, 31, Dkt. 31-5. Although he received deferred action in August 2025, he remains "fearful" that it "will not protect them from immigration enforcement." *Id*. ¶ 30. Another member "received a motion to reopen her administratively closed" immigration court case from ICE, because the 2025 Guidance instructs ICE that her pending U visa petition need not be considered favorably. *Id*. ¶ 33-34. A third member "understands that now, . . . her U Visa application cannot protect her from detention or deportation," though it could have "previously." *Id*. ¶ 39. **Second**, CHIRLA "seeks to protect the constitutional and statutory rights of its immigrant members, including its U-visa

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

applicant members," which is germane to its mission "to achieve a just society, fully inclusive of immigrants." *Id.* ¶¶ 4, 6; *see Vasquez Perdomo v. Noem*, 148 F.4th 656, 677 (9th Cir. 2025) (recognizing CHIRLA's "institutional goals" and affirming it had associational standing in challenge to L.A. ICE raids). **Third**, because CHIRLA "request[s] only injunctive and declaratory relief," as well as relief under the APA, "the third prong" is satisfied because "these forms of relief do not require individualized proof." *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001).

### C.    Individual Plaintiffs have standing.

Because Defendants challenge the Individual Plaintiffs' standing for classwide relief in opposition to class certification, Dkt. 39, Plaintiffs address those arguments in their reply in support of class certification. For the reasons articulated there, the Individual Plaintiffs have standing and their class claims are not moot, pursuant to the relation-back doctrine.[2] *See, e.g.*, *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).

Apart from class claims, Defendants rightly do not challenge the standing of Lupe A., Carmen F., and Ms. Ruano to seek individualized relief in the form of an order enjoining Defendants from preventing their return to the United States. The Court has authority to issue such relief to redress their injuries. *See, e.g., Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998). And because this relief is not classwide, it is not barred by § 1252(f)(1), which permits individualized relief.

### II.    The INA does not strip jurisdiction of this case.

Because "there is a strong presumption favoring judicial review of administrative action," "non-reviewability is an exception that must be clearly evidenced in the statute." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021) ("*EBSC*"). The Court must "resolve any ambiguities in a

---

[2] Paulo C.'s request for individualized relief ordering his release is moot, as he was recently released from ICE custody. He therefore withdraws that request.

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

jurisdiction-stripping statute in favor of the narrower interpretation." *Arce v. United States,* 899 F.3d 796, 801 (9th Cir. 2018).

### A. 8 U.S.C. § 1252(g) is inapplicable.

"The Supreme Court has given a 'narrow reading' to § 1252(g)," holding that it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (citations omitted). "The Court has characterized § 1252(g) as a 'discretion-protecting provision.'" *Id.* (citation omitted). Thus, "[i]nstead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves." *Id.* (cleaned up).

Importantly, § 1252(g) does not bar resolution of a "purely legal question, which does not challenge the Attorney General's discretionary authority" in making one of the three types of decisions. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004). This is so "even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority." *Id.*

Under this well-settled precedent, § 1252(g) is plainly inapplicable to Plaintiffs' claims here, because Plaintiffs challenge three policies, not any individual decision to commence proceedings, adjudicate cases, or effect removal orders. *See Oliveira*, 2025 WL 3492110, at *9 (holding § 1252(g) does not bar challenge to 2025 Guidance); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("*Regents*") (holding § 1252(g) does not bar review of agency memorandum rescinding a deferred action program).

Seeking to escape this inevitable result, Defendants resort to inventing caselaw. Purporting to quote *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 471 (1999), they state, "In *Reno*, 525 U.S. at 471, the Supreme Court held that broad 'pattern-or-practice' challenges to DHS's discretionary

enforcement decisions are foreclosed because Congress 'barred federal courts from reviewing broad challenges to immigration enforcement decisions' under 8 U.S.C. § 1252(g)." PI Opp. at 20-21. The purported quote is found nowhere in *Reno*, nor are the phrases "pattern or practice," "broad challenges," or "immigration enforcement decisions." The reason is obvious, because the case involved a challenge by eight individuals against INS for "selectively enforcing immigration laws against them," not any broad pattern-and-practice challenge. *Reno*, 525 U.S. at 474. That is nothing like the instant case.

Defendants also find no comfort in *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022). PI Opp. at 18. There, a habeas petitioner sought to forestall ICE's decision to remove him after the Board of Immigration Appeal "refus[ed] to enter a stay of removal" pending a decision on his motion to reopen, so he challenged ICE's "decision to remove him *now*." *Rauda*, 55 F.4th at 777 (quotations omitted). Thus, the petitioner did not challenge the BIA's stay denial as unlawful, but ICE's discretionary decision to remove him *after* the stay was denied. Accordingly, "*Rauda* made no new law" and "fits easily into a long series of decisions in our circuit." *Ibarra-Perez*, 154 F.4th at 999. That is unlike Plaintiffs' challenge to the Blind Removal Policy here, which raises a purely legal issue whether § 1227(d) requires prima facie determinations before a stay request is decided.[3]

**B.      Sections 1252(a)(5) and (b)(9) are inapplicable.**

8 U.S.C. §§ 1252 (a)(5) and (b)(9) – which require that "questions of law and fact ... arising from any action taken or proceeding brought to remove" a noncitizen be brought through a "petition for review" – do not bar review of

---

[3] The result is no different for Ms. Ruano's or Carmen F's individualized request to be permitted to return to the United States. They do not challenge the *discretionary decision* to execute their removal orders, only the legality of executing their orders without a prima facie determination first. *See Arce*, 899 F.3d at 800 (holding §1252(g) does not bar claim challenging removal while a stay of removal was in place, because the government "lacked the authority to execute the removal order").

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

Plaintiffs' claims. "By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply *only* to those claims seeking judicial review of orders of removal." *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) (emphasis added). Thus, if the issue cannot be addressed through a petition for review of a final removal order, such as an issue that is "independent of or collateral to the removal process," then the provisions are inapplicable. *Ibarra-Perez*, 154 F.4th at 1000 (citation omitted). Plaintiffs here do not challenge their removal orders.

## III.    Plaintiffs are likely to succeed on merits.

### A.    Plaintiffs are likely to succeed in their challenge to 2025 Guidance.

#### 1.    The 2025 Guidance is final agency action.

Defendants are wrong that the 2025 Guidance does not constitute "final agency action" simply because it has disclaimers that it "may be modified." Opp. at 23. "The fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). The same is necessarily true for agency "Guidance" that is "subject to change" and contains a "disclaimer." *Id*. at 1022-23. Indeed, for these very reasons, the court in *Oliveira* recently determined that the 2025 Guidance is final agency action. *Oliveira*, 2025 WL 3492110, at *9.

"Agency action is 'final' under the APA if it 'amounts to a definitive statement of the agency's position,'" or "'immediate compliance with [its terms] is expected.'" *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022) (citations omitted). Defendants cannot seriously contend that ICE agents were not expected to immediately comply with the 2025 Guidance, as it states explicitly that it is "effective immediately and remains in effect until superseded," and that prior ICE policies are "now rescinded and superseded." 2025 Guidance at 1, Dkt. 1-1. A statement that "guidance [is] effective immediately" demonstrates "there is nothing 'tentative' or 'interlocutory' about the Guidelines; rather they 'mark the consummation of the agency's decision-making process.'" *Chiang v. Kempthorne*,

9

503 F.Supp.2d 343, 350 (D.D.C. 2007).

Where a policy document "alter[s] the legal regime to which the action agency is subject," it constitutes final agency action. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). This is precisely what the 2025 Guidance does, altering the legal regime to which ICE is subject by rescinding prior policies that required ICE agents to take certain protective measures for immigrant survivors. Indeed, the 2025 Guidance is not unlike the memoranda in *Regents*, 591 U.S. at 30-31, and in *Biden v. Texas*, 597 U.S. 785, 808-09 (2022) (holding "October 29 Memoranda" rescinding "Remain in Mexico" program was "final agency action" because it "bound DHS staff by forbidding them to continue the program in any way from that moment on."). As in *Biden*, the Court should conclude the 2025 Guidance is final agency action, as courts routinely do for similar immigration policy guidance.[4] The cases cited by Defendants, PI Opp. 23-24, are not on point.[5]

2.      The 2025 Guidance is arbitrary and capricious.

Defendants cannot save the 2025 Guidance with a strawman argument that Plaintiffs insist on "absolute immunity from detention and/or removal proceedings," PI Opp. at 27, or their thin, post hoc rationalizations for its creation.

First, nowhere do Plaintiffs argue for "absolute immunity," "rigid, irrational

---

[4] *See, e.g., Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 3724878, at *1, 7 (N.D. Cal. Dec. 24, 2025) ("guidance issued by ICE and EOIR" authorizing immigration court arrests is final agency action because it "'stat[ed] a definitive position', that ICE agents may arrest noncitizens at immigration courthouses at their discretion"); *Las Americas Immigr. Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194, 1216 (D. Or. 2020) (directives imposing deadlines to adjudicate family cases were final agency action because the "policies change the way immigration judges run their dockets" and have "practical consequence for parties"); *Washington v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 3d 863, 871, 873 (W.D. Wash. 2020) ("Directive No. 11072.1" does not "merely provide[] guidance to agents in exercising their discretion"; it constitutes final agency action because, "in conducting the 65 'courthouse arrests' at issue, ICE agents relied on" it).

[5] *Christensen v. Harris Cnty.*, 529 U.S. 576 (2000) (not an APA case); *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1152 (9th Cir. 2004) (same); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (notice-and-comment case); *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996) (challenged action *was* final agency action); *Heckler v. Chaney*, 470 U.S. 821, 823 (1985) (*declining* to act is not final agency action).

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

rules," or a total "bar [on] detention and/or removal." PI Opp. at 23, 27, 28. Nor did prior policies confer anything close to "absolute immunity." On this claim, Plaintiffs merely seek to stay the 2025 Guidance while this litigation proceeds. While doing so may necessarily reinstate 2021 Directive and 2011 Policy, that is only because they will no longer be rescinded by virtue of the 2025 Guidance being stayed. Defendants may rescind those policies again, provided they do so in a sufficiently reasoned manner that is consistent with Congressional intent.

Second, Defendants offer that the 2025 Guidance's "core rationale" was that the 2021 Directive was too "resource-intensive," and the 2025 Guidance represents no more than an "efficiency-and-priority recalibration." PI Opp. at 27. But those explanations are found nowhere in the record. Defendants are "limited to the agency's original reasons, and [their] explanation must be viewed critically to ensure that the rescission is not upheld on the basis of impermissible post hoc rationalization." *Regents*, 591 U.S. at 21 (citations omitted).

Defendants also repeat the stated rationale of the 2025 Guidance that it is justified by a need for "total and efficient enforcement" of immigration law to address an "unprecedented flood of illegal immigration." PI Opp. at 29. However, like the Executive Order on which they rely, they provide no evidence to support such claims. The APA requires something more than "because the President said so." Nor do Defendants explain how unleashing enforcement on survivors actively petitioning for *legal* status serves the purpose of stemming *illegal* immigration. Indeed, Defendants provide no response to Plaintiffs' argument that "total enforcement" against "all" removable people can be achieved by promptly adjudicating the petitions of people they seek to deport. Pltfs' Mtn at 21. Tellingly, Defendants also ignore *Regents*, failing to demonstrate that DHS was "cognizant" of any "serious reliance interests" of trafficked, abused, and victimized immigrants who came out of the shadows "in reliance on" decades of prior policy providing protection for immigrant survivors. *Regents*, 591 U.S. at 30-31.

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

As the *Oliveira* court held, Defendants' actual "stated rationale. . . ignores congressional findings and closes its eyes to the effects on people like Plaintiffs." *Oliveira*, 2025 WL 3492110, at *11. "Nowhere does DHS seem to recognize, let alone address, that withdrawing protections might chill non-citizen cooperation and '[weaken] the ability of law enforcement.' Indeed, DHS seems unaware of the fact that its actions are plainly in tension, following Congress's logic, with the President's expressed concern for 'national security and public safety.'" *Id.* at *10.

> 3.    The 2025 Guidance is contrary to law.

Defendants argue that the 2025 Guidance is consistent with law because it has a savings clause stating that ICE "remain bound to adhere to all applicable statutory and policy requirements." Opp. at 26. But if a statement that a policy is "'consistent with law' precludes a court from examining whether [it] is consistent with law, judicial review is a meaningless exercise[.]" *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018).

Defendants also make much of the Guidance's stated compliance with 8 U.S.C. § 1367. PI Opp. at 3, 26. But compliance with one information sharing law does not mean compliance with all laws, much less the many laws, regulations, and policies Plaintiffs cite that protect VAWA, U visa, and T visa petitioners from arbitrary removal while their petitions are pending. Perhaps because there is no disputing the point, Defendants nowhere explain how the 2025 Guidance is consistent with these decades of consistent legislative history evidencing Congress's desire to presumptively protect survivors from removal. Because the 2025 Guidance "conflicts with the plain congressional intent" in the statutes creating the VAWA, U visa, and T visa programs, it "is therefore 'not in accordance with law.'" *EBSC*, 993 F.3d at 671 (quoting 5 U.S.C. § 706(2)(A)).

**B.    The De Facto Revocation Policy is likely unlawful.**

> 1.    Revoking deferred action must comport with due process.

Defendants seemingly argue that the De Facto Revocation Policy does not

exist, PI Opp. at 29-30, but their own words belie any such claim. By stating that USCIS "grant[ing] deferred action" presents "no legal prohibition that prevents ICE from enforcement actions," they concede its existence. PI Opp. at 22. Perhaps this is why they do not dispute Plaintiffs' evidence of dozens of putative Deferred Action Class members being detained and deported.[6] With their reply in support of class certification, Plaintiffs submit many more. These declarations and the many habeas petitions on behalf of people with deferred action referenced herein, *infra* n. 7, provide more than sufficient evidence of the policy's existence.

By detaining and/or deporting U and T visa petitioners with deferred action, Defendants effectively revoke their deferred action unilaterally, as the very premise of deferred action is that DHS will "take[] no action to proceed against" a recipient. *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001) (quotations omitted). Such revocation by fiat violates due process, as a growing list of courts have held.[7] In opposing Plaintiffs' due process claims, Defendants fail even to address *Inland Empire* or the *Matthews* factors. *See Inland Empire— Immigrant Youth Collective v. Nielsen*, Case No. EDCV 17-2048, 2018 WL 4998230, at *19 (C.D. Cal. Apr. 19, 2018) ("[O]nce [deferred action] is conferred,

---

[6] Defendants raise (but not through formal objection) hearsay or authentication concerns regarding class counsel's authentication of documents sent by Plaintiffs' immigration attorneys. Opp. at 30. "[G]iven the haste that is often necessary" at the preliminary injunction stage, the Court may rely on "evidence that is less complete than in a trial." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1189-90 (9th Cir. 2024) (citation omitted); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (hearsay permitted at preliminary injunction stage). Nonetheless, Plaintiffs submit with their replies declarations directly from the immigration lawyers re-authenticating the documents.

[7] *See, e.g., Maldonado v. Noem*, No. 25-CV-2541, 2025 WL 1593133 (S.D. Tex. June 5, 2025); *Espinoza-Sorto v. Agudelo*, No. 25-23201, 25 WL 3012786 (S.D. Fla. Oct. 28, 2025); *Patel v. Hyde*, No. 25-12518, 2025 WL 3169875 (D. Mass. Nov. 12, 2025); *Cruz Zafra v. Noem*, No. 25-00541, 2025 WL 3239526 (W.D. Tex. Nov. 20, 2025); *B.D.A.A. v. Bostock*, No. 6:25-CV-02062-AA, 2025 WL 3484912 (D. Or. Dec. 4, 2025); *Aguilar Gama v. Bondi*, 25-01925, 2025 WL 3559942 (W.D. Wash. Dec. 12, 2025); *Espinoza Cruz v. English*, No. 3:25-CV-919-CCB-SJF, 2025 WL 3676992 (N.D. Ind. Dec. 18, 2025); *Nevarez Jurado v. Freden*, No. 25-CV-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025); *O.A.M.R. v. Wofford*, No. 1:25-CV-01955-TLN-JDP, 2025 WL 3702171 (E.D. Cal. Dec. 21, 2025).

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

recipients have a protected property interest that requires a fair process before the government may take that benefit away."). Instead, Defendants counter that removal proceedings are sufficient process. PI Opp. at 30. But this misses the point. An "IJ ha[s] no authority to grant [a petitioner] U visa interim relief." *Lee v. Holder*, 599 F.3d 973, 974 (9th Cir. 2010); 8 C.F.R. § 214.14(c)(1) (USCIS has sole jurisdiction over U visas); 8 U.S.C. § 1227(d) (conferring authority solely to the "Secretary of Homeland Security"). Further, relief in immigration court occurs only *after* the injury Plaintiffs seek to avoid. For instance, an immigration judge may have terminated Ms. Merlos's immigration case, PI Opp. at 30, but not until after she endured four agonizing months in DHS custody, during which she lost her business and her children were traumatized. Merlos Decl. ¶¶ 33-45, 47-53, Dkt. 23-6. This is precisely why Plaintiffs argue a pre-deprivation hearing is required before detaining someone in deferred action status.

> 2.  Plaintiffs are likely to prevail on their APA and *Accardi* claims.

Notably, Defendants do not challenge Plaintiffs' claims that the De Facto Revocation Policy violates the APA and *Accardi* doctrine, thereby waiving any such arguments. Even if not waived, the evidence clearly establishes that Defendants are not complying with their own policies for revoking deferred action, and that this failure is arbitrary and capricious because it has no connection to the goals of the VAWA, U visa, and T visa programs. Pltfs' Mtn. at 31-35.

**C.   The Blind Removal Policy is unlawful.**

Defendants allege the Blind Removal Policy "is a fiction." Opp. at 26. Yet again, Defendants concede the policy's existence with their own words. Plaintiffs argue 8 U.S.C. § 1227(d) requires Defendants to determine a U or T visa petitioner's prima facie eligibility for the benefit *whenever* such a petitioner requests a stay. And Defendants' position is that "expedited adjudication requests to USCIS may still be made 'subject to a case-by-case determination that it is in ICE's best interests.'" PI Opp. at 28 (quoting 2025 Guidance at 1-3). This position

reveals the policy is no fiction at all: by asserting that obtaining such a determination is *optional* in the discretion of ICE on a case-by-case basis, Defendants reveal their policy is that they do not believe it is *required* whenever a U or T visa petitioner request a stay and that they are free to remove such petitioners, willfully blind to their prima facie eligibility. This is unlawful. *Jimenez v. Dep't of Homeland Sec.*, No. 222CV00967SSSJPRX, 2022 WL 19410308, at *3 (C.D. Cal. Nov. 14, 2022).

This policy is further confirmed by attorneys attesting that stays of removal, once routinely granted to U and T visa petitioners, are no longer considered. *See, e.g.,* Decl. of Marguerite Marty ¶ 12 ("[B]efore February 2025, ICE routinely granted stays of removal for clients with pending U visa applications," describing a client whose stay request for a stay was summarily denied).

**IV.     The balance of hardships and public interest favor preliminary relief.**

Without a hint of irony, Defendants assert that the requested preliminary relief will compromise enforcement of immigration laws. But Plaintiffs explicitly seek *compliance* with the immigration laws, including 8 U.S.C. § 1227(d). The requested relief would merely stay novel and aggressive policies that upended decades of prior policy, under which there remained consistent enforcement of immigration laws. "The public interest is served by compliance with the APA" and "preserving congressional intent." *EBSC*, 993 F.3d at 678.

Finally, as explained in Plaintiffs' reply in support of class certification, *Trump v. CASA, Inc.*, 606 U.S. 839 (2025) does not render the requested relief inappropriate or tip the balance of hardships, because it explicitly left in place the availability of nationwide relief for certified classes and says nothing about classwide APA relief to stay offending agency action under 5 U.S.C. § 705.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion.

Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction

Dated: January 12, 2026

Respectfully submitted,

 _/s/ Bardis Vakili_____
Bardis Vakili

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili
Sarah E. Kahn
Erika Cervantes

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner


PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE
IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese

16
Plaintiffs' Reply ISO Motion for APA 705 Relief and
Individual and Classwide Preliminary Injunction