CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Monika Y. Langarica (Cal. Bar No. 308518)
monika@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al., <br><br> Plaintiffs, <br><br> v. <br> Markwayne Mullin, et. al, <br> Defendants. | Case No.: 2:25-cv-09848-AB-AS <br><br> **PLAINTIFFS' EX PARTE MOTION TO CLARIFY OR ENFORCE OR, IN THE ALTERNATIVE, MODIFY THE COURT'S MAY 20, 2026 ORDER [UNOPPOSED EXPEDITED BRIEFING SCHEDULE REQUESTED]** <br><br> Hon. André Birotte Jr. <br> Hearing Date: TBD <br> Hearing Time: TBD |

*Additional Counsel for Plaintiffs:*

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333


*Admitted pro hac vice*

Plaintiffs' Ex Parte Motion and Motion to Clarify or Enforce or, in the Alternative, Modify the Court's May 20, 2026 Order

## **PLAINTIFFS' EX PARTE MOTION**

To avail themselves of the Court's May 20, 2025 Order enjoining Defendants from permitting their returns to the United States in the same legal position they occupied before this dispute, Plaintiff Carmen F. must be permitted to return with her minor son, and Plaintiff Yessenia Ruano must be permitted to return with her husband, both of whom are derivative beneficiaries of their pending petitions and who were similarly forced to leave the United States. Defendants will not consent to their returns without a court order.

Therefore, Plaintiffs hereby move the Court *ex parte* for clarification or enforcement of its May 20, 2026 Order or, in the alternative, for modification of the injunctions as to Plaintiffs Carmen F. and Yessenia Ruano issued in that order.[1] Specifically, they seek, against Defendants Markwayne Mullin, U.S. Immigration and Customs Enforcement ("ICE"), and United States Citizenship and Immigration Services ("USCIS"), an order clarifying or stating that:

(1) Defendants are preliminarily ENJOINED from preventing the re-entry of Carmen F. **and her minor son S.F., a derivative on her U visa application,** to the United States in the same immigration status they had prior to their forced expulsion from the United States, and are further ENJOINED from removing Carmen F. **and her minor son S.F.** without a prima facie determination regarding their eligibility regarding the visas for which they applied.; and

(2) Defendants are preliminarily ENJOINED from preventing the re-entry of Yessenia Ruano **and her husband Miguel Angel Guerra Dominguez, a derivative on her T visa application,** to the United States in the same

[1] Pursuant to C.D. Cal. L.R. 7-19, Plaintiffs provide that Opposing Counsel is Pushkal Mishra, Special Assistant United States Attorney, Central District of California, 411 W 4th St Ste 8000, Santa Ana, CA 92701-4540, Telephone: (714) 338-3503, Email: pushkal.mishra@usdoj.gov.

immigration status they had prior to their forced expulsion from the United States, and are further ENJOINED from removing Yessenia Ruano **and her husband Miguel Angel Guerra Dominguez** without a prima facie determination regarding their eligibility regarding the visas for which they applied.

This motion is made in accordance with the Court's Standing Order, the Local Rules of this Court and the Federal Rules of Civil Procedure and is based upon this notice of motion and motion; the supporting memorandum of points and authorities; all documents and pleadings on file in this action; and such other oral and documentary evidence and hearing as the Court may consider prior to or at the hearing on this motion.

In light of the exigent circumstances, Plaintiffs request that the Court consider their motion on an ex parte basis and shorten the time for consideration and any responsive briefing. As described below, Defendants have consented to such expedited briefing.

**Statement of Compliance With L.R. 7-3 & 7-19, Opposing Counsel's Position, and Timeline for Briefing**

On May 27, 2026, during a conference of counsel, Plaintiffs requested Defendants' position on permitting Carmen F.'s minor son and Yessenia Ruano's husband to return to the United States in light of the Court's order requiring the government to permit them to reenter the United States. Declaration of Bardis Vakili ¶ 3. On June 5, 2026, Plaintiffs sent a letter requesting Defendants permit Carmen F.'s minor son and Yessenia Ruano's husband return with them and laying out their position. *Id*. ¶ 4. On June 16, 2026, Defendants responded that facilitating the return of Carmen F.'s son and Ms. Ruano's husband is not required under the terms of the order. *Id.* ¶ 5. The parties met and conferred on June 22, 2026 and discussed this motion, but could not reach resolution. *Id.* ¶ 6. However, Defendants agreed to an expedited briefing schedule. *Id.* ¶ 7. Parties thereafter agreed that Plaintiffs would

file the present motion by Thursday, June 25, 2026; Defendants would file their response by Thursday, July 2, 2026; and, if an Order has not issued by that time, Plaintiffs would file a Reply by Tuesday July 7, 2026. *Id*. Parties accordingly request such briefing schedule. *Id*.

Dated: June 25, 2026                    Respectfully submitted,

                                        */s/ Sarah Kahn*
                                        Sarah Kahn
                                        CENTER FOR HUMAN RIGHTS &
                                        CONSTITUTIONAL LAW
                                        Bardis Vakili
                                        Monika Langarica
                                        Sarah Kahn
                                        Erika Cervantes

                                        LA RAZA CENTRO LEGAL
                                        Stephen A. Rosenbaum
                                        Jordan Weiner

                                        PUBLIC COUNSEL
                                        Rebecca Brown
                                        Kathleen Rivas

                                        COALITION FOR HUMANE IMMIGRANT
                                        RIGHTS
                                        Carl Bergquist
                                        Adam Reese

                                        *Attorneys for Plaintiffs*

Plaintiffs' Ex Parte Motion and Motion to Clarify or Enforce or, in the Alternative, Modify the Court's May 20, 2026 Order

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... II

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND......................................................................................... 3

      A.    The Court stayed the 2025 Guidance and the Blind Removal
            Policy and enjoined the government from preventing the return
            of Carmen F. and Yessenia Ruano.......................................................... 3

      B.    Carmen F.'s son and Ms. Ruano's husband are U and T
            derivative applicants with no criminal records whose homes are
            in the United States. ................................................................................ 4

      C.    Carmen F. and Yessenia Ruano are irreparably harmed by
            Defendants' delay in complying with the Court's Order....................... 5

III.  LEGAL STANDARD.................................................................................. 7

IV.   ARGUMENT ............................................................................................. 7

      A.    The Court has discretion to clarify the scope of the injunction to
            require the return of S.F. and Mr. Guerra Dominguez. ....................... 7

      B.    The Court has authority to enforce its order permitting the return
            of Carmen F. and Ms. Ruano, and to do so it must order
            Defendants to permit the return of S.F. and Mr. Guerra
            Dominguez. .............................................................................................. 8

      C.    Alternatively, this court has authority to modify the May 20
            Order to include S.F. and Mr. Guerra Dominguez. ........................... 10

      D.    The Court has authority under the All Writs Act to issue the
            relief Plaintiffs seek in order to protect the integrity of its May
            20 Order. .................................................................................................. 12

V.    CONCLUSION ........................................................................................ 14

i

# TABLE OF AUTHORITIES

**CASES**

*A & M Recs., Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002).................................................................................3, 7

*Al Otro Lado, Inc. v. McAleenan*,
423 F. Supp. 3d 848 (S.D. Cal. 2019) .......................................................................12

*Brown v. Plata*,
563 U.S. 493 (2011) .....................................................................................................8

*City & Cnty. of San Francisco v. Trump*,
782 F. Supp. 3d 830 (N.D. Cal. 2025)..............................................................7, 9, 10

*Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*,
700 F.2d 1279 (9th Cir. 1983)......................................................................................8

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
321 F.3d 878 (9th Cir. 2003)........................................................................................8

*F.T.C. v Dean Foods Co.*,
384 U.S. 597 (1966) ...................................................................................................13

*F.V. v. Jeppesen*,
477 F. Supp. 3d 1144 (D. Idaho 2020).........................................................................8

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ...................................................................................................13

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014)............................................................................8, 9, 10

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004)............................................................................13, 14

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ...................................................................................................11

*N.A. Sales Co., Inc. v. Chapman Indus. Corp.*,
736 F.2d 854 (2d Cir. 1984).........................................................................................7

*Nat'l Org. for the Reform of Marijuana L. v. Mullen*,
828 F.2d 536 (9th Cir. 1987)......................................................................................13

*Salazar v. Buono*,
559 U.S. 700 (2010) .....................................................................................................9

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*,
428 F.3d 831 (9th Cir. 2005).......................................................................................13

*Smagin v. Yegiazaryan*,
No. 2:14CV09764RGKPLA, 2020 WL 1652347 (C.D. Cal. Apr. 1,
2020).............................................................................................................................7

*State v. Trump*,
263 F. Supp. 3d 1049 (D. Haw.) .......................................................................3, 10, 12

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
402 U.S. 1 (1971) ..................................................................................................3, 13

*Sys. Fed'n No. 91 v. Wright*,

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify
the Court's May 20, 2026 Order

364 U.S. 642 (1961) ......................................................................................... 11

*Trump v. Int'l Refugee Assistance Project*,
    582 U.S. 571 (2017) ...................................................................................... 11

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977) ...................................................................................... 13

*United States v. United Shoe Mach. Corp.*,
    391 U.S. 244 (1968) ................................................................................. 11, 12

**STATUTES**

28 U.S.C. § 1651.............................................................................................. 12

8 U.S.C. § 1227(d)(1) ........................................................................................ 3

Fed. R. Civ. P. 65(d) ........................................................................................ 11

iii
Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify
the Court's May 20, 2026 Order

## I.      INTRODUCTION

Plaintiffs Carmen F. and Yessenia Ruano bring this Motion because, despite this Court's order requiring Defendants to permit their return, Defendants have declined to permit the return of their immediate family members who are derivatives on their pending survivor-based petitions—Carmen F.'s nine-year-old son and Ms. Ruano's husband—both of whom are outside of the United States as a result of Defendants' unlawful conduct. Carmen F. and Ms. Ruano now seek this Court's intervention to ensure the return of their loved ones, to "return them to the status quo before these violations and allow[s] them to avail themselves of the procedures to which they are entitled." Order Granting Plaintiffs' Motion for Class Certification [Dkt. 23] and Granting in Part and Denying in Part Plaintiffs' Motion for preliminary Injunction [Dkt. 31], May 20, 2026 at *85, Dkt. 57 ("May 20 Order").

This Court is familiar with Defendants' recent actions impacting the rights of applicants for U visa, T visa, and VAWA protections. In brief, on January 30, 2025, Defendants issued a policy directive that, for the first time in the history of the VAWA, U visa, and T visa programs, authorized the routine detention and removal of individuals like Carmen F. and Ms. Ruano—victims of domestic violence, human trafficking, and other significant crimes—who had petitioned for these forms of protection against removal. Complaint, ¶¶ 82-95, Dkt. No. 1 ("Compl."); *id.*, Ex. A, Dkt. 1-1, ICE Policy Statement 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"). On October 14, 2025, Carmen F. and Ms. Ruano were two of eight U visa, T visa, and VAWA petitioners who challenged the 2025 Guidance, including its rescission of prior policies that had presumptively protected individuals like them against immigration enforcement, as well as two unlawful policies and practices stemming from that Guidance which strip immigrant survivors of past protections. May 20 Order at *85.

On May 20, 2026, this Court issued an order staying on a classwide basis the

challenged policies. Relevant to this motion, the Court stayed the 2025 Guidance, including its rescission of the prior policies, and the Blind Removal Policy, pursuant to which ICE takes enforcement actions without first determining whether the pending petitions are prima facie approvable. *Id.* at \*96. The Court further enjoined the government "from preventing the re-entry of" Carmen F., Lupe A., and Ms. Ruano, who were unlawfully removed pursuant to those policies. *Id*. Carmen F. intends to return with her nine-year-old son, and Ms. Ruano intends to return with her husband, both of whom are derivatives on the pending visa petitions which gave rise to the claims at issue in this case. Plaintiffs attempted to coordinate the returns of these Plaintiffs together with their derivatives, but Defendants informed Plaintiffs they would not permit Carmen F.'s minor child or Ms. Ruano's husband to enter the country because the court order does not name them explicitly.

Plaintiffs Carmen F. and Ms. Ruano now seek clarification or enforcement of the Court's May 20 Order to explicitly provide for the return of Carmen F.'s minor son and Ms. Ruano's husband, whose inclusion is required to "return them to the status quo before these violations and allow[s] them to avail themselves of the procedures to which they are entitled." May 20 Order at \*57. The status quo before these violations was Carmen F.'s and Ms. Ruano's life in the United States with their families. Thus, the order requires the return of their immediate loved ones. Further, the "procedures to which they are entitled" under the unlawfully rescinded policies include a prima facie determination of eligibility as to their pending petitions, which include their qualifying family members as derivatives. *Id.* at \*92. Therefore, the order requires them and the derivative petitioners on their applications to be returned to the "same immigration status they had prior to their forced expulsion from the United States." *Id*. at \*96.

In the alternative and for the same reasons, Plaintiffs seek a modification to "clarify the injunction and supervise compliance" by ordering Defendants to permit the return of Carmen F.'s son and Ms. Ruano's husband. *State v. Trump*, 263 F.

Supp. 3d 1049, 1056 (D. Haw.), *aff'd*, 871 F.3d 646 (9th Cir. 2017) (citing *A & M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098–99 (9th Cir. 2002)). The Court has additional equitable authority to issue the requested injunction under the All Writs Act. The Court's "equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).

## II.     BACKGROUND

A. The Court stayed the 2025 Guidance and the Blind Removal Policy and enjoined the government from preventing the return of Carmen F. and Yessenia Ruano.

On May 20, 2026, this Court granted Plaintiffs' Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction, Dkt. 31. First, in relevant part, the order stayed on a classwide basis the 2025 Guidance, including its rescission of previous policies, based on the Court's finding that Plaintiffs are likely to succeed on their claims that the 2025 Guidance is arbitrary and capricious and contrary to law in violation of the APA. May 20 Order at *64-74.[2] Second, the order stayed on a classwide basis the Blind Removal Policy, which "allows ICE to deny stay requests and take enforcement action, including executing a final order of removal, without first determining if the petitioner's petition is prima facie approvable," based on findings that the policy likely violates 8 U.S.C. § 1227(d)(1) and thus is not in accordance with law and is in excess of statutory authority in violation of the APA. *Id*. at *84-86. Finally, for the same reasons, the Court enjoined Defendants "from preventing the re-entry of Carmen F. and Yessenia Ruano," court-appointed representatives of the Stay of Removal Class, *id.* at 96, "to the United States in the

---

[2] As to the arbitrary and capricious claim, the Court found that Plaintiffs are likely to show that "the 2025 Guidance is arbitrary and capricious because it reverses decades of policy (1) without a sufficiently-reasoned explanation for disregarding the concerns underlying that prior policy, (2) without considering the reliance interests of persons who have acted in reliance on those policies, and (3) without considering serious aspects of the problem." May 20 Order at *69. As to the contrary-to-law claim, the Court found it "undermines the legislative scheme Congress designed to protect such individuals from removal." May 20 Order at *74.

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify the Court's May 20, 2026 Order

same immigration status they had prior to their forced expulsion from the United States, and . . . from removing Carmen F. and Yessenia Ruano without a prima facie determination regarding their eligibility regarding the visas for which they applied." *Id*. at *96. The Court additionally found that "Requiring Defendants to permit them to re-enter would partially return them to the status quo before these violations and allow them to avail themselves of the procedures to which they are entitled." *Id*. at *92.

B. <u>Carmen F.'s son and Ms. Ruano's husband are U and T derivative applicants with no criminal records whose homes are in the United States.</u>

Carmen F.'s minor son ("S.F.") is a social nine-year-old. He had many friends in the United States and is a talented soccer player. Declaration of Carmen F., October 15, 2025, Dkt. 23-8 ¶ 9 ("2025 Carmen Decl."). Carmen F. filed her U visa application in March 2025 based on the domestic violence she suffered at the hands of her husband, S.F.'s father. *Id*. ¶ 22. She included S.F. as a derivative on that application. Declaration of Carmen F., June 24, 2026 ¶ 2 ("2026 Carmen Decl."). Like his mother, he is a survivor of abuse by his father, Carmen F.'s husband. Carmen F. reported her husband to the police, obtained a restraining order, and temporarily escaped him. 2025 Carmen Decl. ¶ 21. S.F.'s father was later deported. *Id*. ¶ 28.

ICE detained Carmen F. at an ICE check in, pursuant to the 2025 Guidance and in violation of the protections it unlawfully rescinded. 2025 Carmen Decl. ¶ 30. ICE imprisoned her with S.F., who was then just eight years old, for two months. *Id*. ¶ 33. He told his mother that he would try to sleep as late as he could so that the days in prison would be shorter. *Id*. ¶ 34. Despite their requests for a stay and for release pursuant, in part, to their pending U visa petition, ICE refused to release them and then deported them together without prima facie review of their petition. *Id*. ¶¶ 37-39. Indeed, as a result of this stay request on behalf of both mother and

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify
the Court's May 20, 2026 Order

son, S.F. is a member of the same classes – the Pending Petition Class and the Stay of Removal Class – that his mother represents.

Ms. Ruano met her husband Miguel Angel Guerra Dominguez, a national of El Salvador, shortly after she entered the United States, while working together at a pizza shop. Declaration of Yessenia Ruano, June 23, 2026 ¶ 3 ("2026 Ruano Decl."). In 2015, they had twin daughters, and in 2024 they officially married. *Id*. ¶ 4. Mr. Guerra Dominguez is a devoted husband and father, and his daughters adore him. *Id*. ¶ 6. On February 11, 2025, Ms. Ruano filed her T visa application based on her experience being kidnapped and trafficked by smugglers who had promised to help her get to the United States. Declaration of Yessenia Ruano, October 3, 2025, Dkt. 23-9 ¶¶ 3-9 ("2025 Ruano Decl."). She included Mr. Guerra Dominguez as a derivative on her application. 2026 Ruano Decl. ¶ 9. Mr. Guerra Dominguez has no criminal record in the United States or anywhere in the world. *Id*. ¶ 8.

ICE has provided no individualized reasons for why either S.F. or Mr. Guerra Dominguez should not be permitted to return notwithstanding their derivative statuses.

### C. Carmen F. and Yessenia Ruano are irreparably harmed by Defendants' delay in complying with the Court's Order.

As this Court already found, "after [Carmen F.] and her son were removed, the very abuser she tried to escape forced them to live with him again, despite having relied on the U visa process to protect her." May 20 Order at *87. The harm Carmen F. has endured as a result of Defendants' unlawful actions is inextricable from how those actions have affected her nine-year-old son. When Defendants deported Carmen F. and her son, her husband and abuser was waiting for them at the airport and coerced them to leave with him. 2026 Carmen Decl. ¶ 3. In the months that have ensued, Carmen F.'s husband has continued to abuse her and their son, resulting in "ongoing personal danger," May 20 Order at *88, to both of them. To make matters worse, because their lives were in danger in Colombia, Carmen F.,

her son, and her abuser eventually fled to another country, where they currently reside. 2026 Carmen Decl. ¶ 8. There, the abuse from her husband has continued. After their roommates called the police because of his repeated violence, Carmen F. and her son finally escaped and found a new apartment. *Id*. ¶ 10-13. Her abuser found them and has twice attempted to break into the new apartment. *Id*. ¶¶ 14-15. Defendants' refusal to permit the re-entry of S.F. has put Carmen F. in an impossible situation which forces her to either abandon her son abroad by availing herself of her rights under the May 20 Order, or remain together with her young child outside of the United States. This has only worsened the agony under which Carmen F. lives. *Id*. ¶ 19.

Ms. Ruano left the United States under threat of detention. She took her ten-year-old twin daughters, from whom she cannot bear to be separated, with her. 2026 Ruano Decl. ¶ 11. Feeling he had no choice to keep his family together, and knowing his family needed his financial and emotional support, Ms. Ruano's husband ultimately followed them. *Id*. ¶¶ 14-15. He now resides with Ms. Ruano and their children in El Salvador. *Id*.

As this Court additionally found, as a result of Defendants' unlawful actions, "Ms. Ruano's U.S. citizen twins have been taken away from their school, community, and life in the United States, and are struggling to adjust to living in El Salvador, a country they have never visited." May 20 Order at \*87. Similarly, her husband has been forced to give up his community, job, and life in the United States and worries about his daughters' educations and future. 2026 Ruano Decl. ¶¶ 15-16. These factors have only exacerbated the "distress" Ms. Ruano and her family face. May 20 Order at \*88. Ms. Ruano continues to live with them in El Salvador even after this Court's order because her husband's return to the United States is not ensured. 2026 Ruano Decl. ¶ 18. Indeed, Ms. Ruano has continued to experience anguish as a result of Defendants' refusal to permit his return, which essentially forces her to choose between either availing herself of this Court's May 20 Order requiring Defendants to

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify
the Court's May 20, 2026 Order

permit her return, or remaining an intact family unit with her children and husband outside of the United States.

## III.    LEGAL STANDARD

A district court has discretion to clarify the scope of an injunction. *Smagin v. Yegiazaryan*, No. 2:14CV09764RGKPLA, 2020 WL 1652347, at *3 (C.D. Cal. Apr. 1, 2020). "By clarifying the scope of a previously issued injunction, a court 'add[s] certainty to an implicated party's effort to comply with the order and provide[s] fan warning as to what future conduct may be found contemptuous.'" *Id.* (citing *N.A. Sales Co., Inc. v. Chapman Indus. Corp.,* 736 F.2d 854, 858 (2d Cir. 1984).

Moreover, "[i]t is well-settled that district courts have the power to supervise compliance with an injunction and to 'modify a preliminary injunction in consideration of new facts.'" *City & Cnty. of San Francisco v. Trump*, 782 F. Supp. 3d 830, 833 (N.D. Cal. 2025) (quoting *A & M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002)). When a Defendant's methods of compliance with a preliminary injunction fail to produce the result it requires, a further order is "a proper exercise of the district court's power to enforce compliance with the . . . preliminary injunction." *A & M Recs.*, 284 F.3d at 1099. Further, "[a] district court has inherent authority to modify a preliminary injunction in consideration of new facts." *Id.* at 1098 (holding the district court both properly *enforced* an injunction by shutting down a music streaming service when its efforts to comply with the court's preliminary injunction failed to properly prevent copyright infringement, and it properly *modified* the injunction when it required the streaming service to engage in new efforts to so).

## IV.    ARGUMENT

### A. The Court has discretion to clarify the scope of the injunction to require the return of S.F. and Mr. Guerra Dominguez.

Where a party is uncertain of what an injunction requires of the defendant—as when parties differ in their interpretation—the "proper approach would be for [the

party] to seek a modification or clarification of the injunction from the district court." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003); *see Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc.*, 700 F.2d 1279, 1285 (9th Cir.1983) (noting that if there is a question about the terms of an injunction, counsel should attempt to clarify with the court). Plaintiffs may seek clarification from the court because they "have a protectable interest in ensuring full compliance with the Injunction." *F.V. v. Jeppesen*, 477 F. Supp. 3d 1144, 1149 (D. Idaho 2020).

The parties in this case dispute the meaning of the Court's injunction "partially return[ing Carmen F. and Ms. Ruano] to the status quo before these violations and allow[ing] them to avail themselves of the procedures to which they are entitled." May 20 Order at *92. Defendants read the order so narrowly as to impede its purpose; Plaintiffs understand it to mean what it says: that Defendants must take reasonable steps to permit the Plaintiffs they detained, separated, and removed under the unlawful 2025 Guidance to return to their status before Defendants' unlawful acts, with their families, in their homes, able to continue the process of awaiting adjudication of their pending U or T visa petitions from within the United States, as they were before.

B. <u>The Court has authority to enforce its order permitting the return of Carmen F. and Ms. Ruano, and to do so it must order Defendants to permit the return of S.F. and Mr. Guerra Dominguez</u>.

A district court has continuing jurisdiction to enforce its injunctions and "the continuing duty and responsibility to assess the efficacy and consequences of its order." *Brown v. Plata*, 563 U.S. 493, 542 (2011). "'In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded.'" *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (activists enjoined from attacking whalers' sea vessels who separated from but

provided support to a partner organization likely to attack those vessels "effectively nullified [the] injunction by ensuring that" the planned attacks on whaling ships "proceeded unimpeded" through proxy "entities it believed to be beyond the injunction's reach.") (internal citation omitted). Technical compliance with an order, if it thwarts the order's intention to make the plaintiffs whole and protect their rights, is not truly compliance. *Id*. at 945-955 ("By construing their obligations narrowly to include only refraining from acts specifically enumerated in the injunction, and not acts likely to nullify the injunction, the Defendants assumed the risk that their attempts at technical compliance would prove wanting.").

Carmen F. and Ms. Ruano have a right to the benefit of the May 20 Order, but cannot do exercise that right without leaving behind their young child and husband, respectively—both derivatives on the pending petitions that gave rise to their claims in this case. *See Salazar v. Buono*, 559 U.S. 700, 712, (2010). Defendants' assertion of technical compliance with this Court's May 20 Order, refusing to permit the entry of S.F. and Mr. Guerra Dominguez on the ground that the Order does not specifically name them, fails to make Carmen F. and Ms. Ruano whole. *See Cetacean Rsch.,* 774 F.3d at 945.

Moreover, the "Government cannot avoid liability down the line by 'hewing to the narrow letter of the injunction' while 'simultaneously ignoring its spirit[.]'" *San Francisco*, 782 F. Supp. at 833 (quoting *Cetacean Rsch.*, 774 F.3d at 954). In *San Francisco v. Trump*, the district court enjoined the government from "taking any action to withhold, freeze, or condition federal funds from" sanctuary cities targeted by a February 2025 Executive Order ("EO"), finding such conditions unconstitutional. *Id*. at 832. The government thereafter issued a new executive order, also targeting sanctuary cities. *Id*. at 833. The court made "clear" that "[w]hile the *letter* of the Preliminary Injunction refers to specific sections of [a specific] EO . . . its *spirit* enjoins the kind of coercion that was evident, at the time of the Preliminary Injunction's issuance, in the language of those sections." *Id*. The court held that the

new EO infringed on some of the same constitutional rights and enjoined the government from enacting the offending portions, admonishing that no "Government action that postdates the Preliminary Injunction can be used as an end run around the Preliminary Injunction Order." *Id.* at 836.

Here, the Court made the spirit of its May 20 Order clear: Defendants violated the APA and the INA in forcing the removal of Carmen F. and Ms. Ruano, and they must "permit them to re-enter [to at least] partially return them to the status quo before these violations and allow them to avail themselves of the procedures to which they are entitled." May 20 Order at *92. For both women, the "status quo before these violations" was with their family members—and derivatives included in their petitions—in the United States. Therefore, the order's requirement to return them to the status quo should encompass the return of their immediate family members, who were also forced to leave the country as a result of the same unlawful policies and actions. Moreover, the "procedures to which they are entitled" include review of their prima facie eligibility for U and T visa petitions – including the derivative applications of their qualifying family members.

The government's refusal to permit S.F. and Mr. Guerra Dominguez to enter with Carmen F. and Ms. Ruano "hew[s] to the narrow letter of the injunction" while "simultaneously ignoring its spirit." *Cetacean Rsch.*, 774 F.3d at 954. It is nothing more than an "end run" around this Court's order. *San Francisco*, 782 F. Supp. 3d at 836. Thus, this Court has authority to enforce the May 20 Order to require Defendants to permit the return of S.F. and Mr. Guerra Dominguez.

C. <u>Alternatively, this court has authority to modify the May 20 Order to include S.F. and Mr. Guerra Dominguez.</u>

In the alternative, "[p]ursuant to Rule 62(c), the court may modify or broaden the scope of its injunction under its continuing duty to supervise the relief granted if it is informed of new facts that require additional supervisory action." *State,* 263 F.

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify the Court's May 20, 2026 Order

Supp. 3d at 1056 (cleaned up); *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961) (holding that a district court has "wide discretion" to modify an injunction based on changed circumstances or new facts). Modification is appropriate if an injunction has not "achieved its 'principal objects,'" in which case, "the time has come to prescribe other, and if necessary more definitive, means to achieve the result." *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 249, 251-52 (1968). Modification may also be appropriate to ensure that the injunction "state[s] its terms specifically" and "describe[s] in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). Modification is appropriate here for two principal reasons.

First, a court may modify an injunction to enjoin the government from preventing the entry of a noncitizen in order to vindicate the rights of a plaintiff, even if the noncitizen is not a party to the case. *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 581-82 (2017) ("*IRAP*") (leaving in place district court injunctions protecting "people or entities in the United States who have relationships with foreign nationals abroad, and whose rights might be affected if those foreign nationals were excluded" as well as "foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States," but staying injunction to the extent it reached "foreign nationals abroad who have no connection to the United States at all"); *see Kleindienst v. Mandel*, 408 U.S. 753, 764 (1972) (upholding injunction requiring the government to permit entry of noncitizens based "not [on] a non-resident [noncitizen's] individual and personal interest in entering and being heard, but with the rights of the citizens of the country to have the [noncitizen] enter . . . ").

Second, a court may modify an injunction where a Defendant's interpretation of the injunction permits actions the court intended to prohibit. In *IRAP*, the Supreme Court stayed a preliminary injunction preventing a blanket entry ban for noncitizens from certain countries, but left the injunction in place with respect to individuals with

11
Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify
the Court's May 20, 2026 Order

ties to the U.S., including those with "close familial relationship" *IRAP* at 582. After the Supreme Court order, the government then issued guidance defining "close familial relationship" to include only a very narrow subset of immediate family members. *State*, 263 F. Supp. 3d at 1054. The district court modified the injunction, holding that the government's definition was "unduly restrictive." *Id.* at 1057.

Here, the government's interpretation—that the May 20 Order requires it only to permit entry of Plaintiffs who can point to their name in the Order, but not of their immediate family who are derivatives on their applications—is "unduly restrictive." *Id*. To "achieve[] its 'principal object[],'" to "return [Carmen F. and Ms. Ruano] to the status quo before these violations," the order must require their husband and child, with whom they lived before ICE targeted them pursuant to its unlawful 2025 Guidance, to return with them. *See Shoe Mach. Corp*., 391 U.S. at 249, 251-52; May 20 Order at *92. Further, to "allow them to avail themselves of the procedures to which they are entitled," the order must permit their husband and child to return with them so that they can avail themselves of their right to adjudication of their applications for their qualifying family member. May 20 Order at *92. "[T]he time has come to prescribe other, . . .more definitive, means to achieve the result." *Shoe Mach*. *Corp*., 391 U.S. at 252 (1968).

D. The Court has authority under the All Writs Act to issue the relief Plaintiffs seek in order to protect the integrity of its May 20 Order.

"Alternatively . . . the All Writs Act ("AWA"), 28 U.S.C. § 1651, authorizes this Court to issue injunctive relief to preserve its jurisdiction in the underlying action." *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 868 (S.D. Cal. 2019). The Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

"In allowing courts to protect their 'respective jurisdictions,' the Act allows them to safeguard not only ongoing proceedings, but potential future proceedings,

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify the Court's May 20, 2026 Order

as well as already-issued orders and judgments." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099–100 (11th Cir. 2004). "[T]he All Writs Act[] empowers a district court to protect its judgment from a subsequent action that frustrates the purpose of the . . . order." *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 841 (9th Cir. 2005). "Thus, while a party must state a claim to obtain a traditional injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Klay,* 376 F.3d at 1100 (cleaned up). Such writs may be directed not only to the immediate parties to a proceeding, but to "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977).

As "a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have," *Klay*, 376 F.3d at 1099, the Court's power to fashion equitable relief under the Act is broad. *See Nat'l Org. for the Reform of Marijuana L. v. Mullen (NORML)*, 828 F.2d 536, 544 (9th Cir. 1987) ("One of the recognized applications of the All Writs Act is the issuance of orders necessary to ensure the integrity of orders previously issued."). Indeed, "the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann*, 402 U.S. at 15; *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case," applying "[f]lexibility rather than rigidity" and "[t]he qualities of mercy and practicality").

Here, the requested order is necessary to "maintain the status quo by injunction pending review" of Defendants' actions, making relief under the Act appropriate. *F.T.C. v Dean Foods Co.*, 384 U.S. 597, 604 (1966). The relief

Plaintiffs seek falls well within the Court's "inherent power to protect the jurisdiction [it] already ha[s]," *Klay,* 376 F.3d at 1099, and causes no "harm, disadvantage, or restriction upon someone that is unnecessarily broad," *id*. at 1096. Indeed, it causes no identifiable burden on Defendants at all. They need do nothing more than *not* refuse entry to the minor son and husband of two Plaintiffs to whom they *must* permit entry, and whose returns will benefit their communities and strengthen public safety.

The injunction Plaintiffs seek is necessary to preserve the Court's jurisdiction and to protect its May 20 Order and any future judgment. The Court has ordered Defendants to permit Carmen F. and Ms. Ruano to return to the status quo ante Defendants' unlawful acts; they cannot return to the status quo ante without their husband and child, respectively.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion as requested herein.

Dated: June 25, 2026                    Respectfully submitted,

    _/s/ Sarah E. Kahn_____
Sarah E. Kahn

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili
Monika Langarica
Sarah E. Kahn
Erika Cervantes

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify
the Court's May 20, 2026 Order

PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE
IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese

Plaintiffs' Ex Parte Motion to Clarify or Enforce or, in the Alternative, Modify the Court's May 20, 2026 Order