CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Monika Langarica (Cal. Bar No. 308518)
monika@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Markwayne Mullin, et. al,<br><br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**DECLARATION OF CARMEN F. IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION TO CLARIFY OR ENFORCE, OR IN THE ALTERNATIVE, MODIFY THE COURT'S MAY 20, 2026 ORDER** |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist* (DC Bar 1720816)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

* *Admitted pro hac vice*

# DECLARATION OF [redacted]

I, [redacted],

1. I have personal knowledge of the facts set forth below and if called to testify, I could and would do so competently.
2. My son is a derivative applicant on my application for a U visa. He, like me, experienced abuse at the hands of my husband. I reported him and cooperated with the police, and that abuse formed the basis of our U visa petition.
3. When I first joined this case, *ICWC v. Noem*, as a named plaintiff, my then-eight-year-old son and I had been deported to our home country. We were living with his father—the man who abused us in the United States for many years—because when we were deported, he was waiting for us at the airport and coerced us into going with him and eventually living with him.
4. Before my son and I were deported we had finally gotten away from my husband, who treated us brutally, especially when he was drinking. Our deportation subjected us to his abuse all over again.
5. In September and October 2025 whenever I had to talk to my attorneys, I had to be extremely careful and could only do so while hiding from my abuser. I had to sneak away from my husband, whisper so he would not hear me, and even plan calls around times when I knew he would not be around. He frequently took my phone while we were together so he could screen my calls. At night, he would go through my phone looking for any number he didn't know. I was terrified of him.
6. I tried to plan calls with the lawyer for a certain time when I had an appointment outside the house, but one day plans changed and he answered when an attorney called. He kept asking over and over who I was calling, who was calling me.
7. It became too dangerous for me to speak directly with the attorneys after that. Instead, my daughter who lives in the United States would call the attorneys regularly for updates.
8. For other reasons, it was too dangerous for us to stay in our home country. My husband, son, and I managed to flee to another country.
9. In this country, my husband, son, and I found a room to rent. Others rented rooms in the same building.
10. My husband would come home drunk and he would become violent, hurting me or my son. This had become a part of my life.

11. The roommates were afraid of him and afraid of what he would do to us. They began to take photographs and videos of my injuries or of him when he became violent.
12. Once, the neighbors called the police on him. After that, I knew I had to get my son away from him.
13. I managed to find a very cheap apartment for my son and me. I waited for him to leave the house and then left, packing only what I could carry.
14. He found me at my new apartment and stood outside, banging on door, drunk. I called the police but he left before they got there.
15. One week later he came to the door again, refusing to leave and trying to break the door down. I called the police again, and this time they arrested him.
16. Until recently, I lived under his control.
17. When the order in this case came out, my daughter called me crying and told me that I could finally come home. I was ecstatic, but once I learned that the government did not want to allow my son to come with me, I was devastated. My son is my world. I have done everything in my power to keep him safe, and the thought that I would have to leave him behind so that I can return feels cruel and inhumane.
18. I am now working in a restaurant trying to support my son, but it is extremely difficult to make ends meet. I am afraid of losing our place. We would have nowhere to go.
19. Of course I cannot leave without my son. He is only nine years old now. I am his only parent, the only parent he is safe with. If I were to leave, he would be orphaned or end up living with his dad, with no one there to protect him. If I cannot return to the U.S. with my son, then I cannot return.

Declaro bajo protesta de decir la verdad y pena de falso testimonio que toda la información que aquí he proporcionado es correcta y completa a mi mejor conocimiento, consciente de las consecuencias legales de declarar con falsedad ante la autoridad.

Hecho el día 24th de Junio del año 2025, en Espana.

[redacted]

[redacted]

# CERTIFICATE OF INTERPRETATION

I Sarah Kahn, certify that I used a contracted interpretation service to interpret between Spanish and English, and that the interpreter translated the foregoing between Spanish and English. I further certify that, using the contracted interpreter, I read the foregoing to Carmen F. and she affirmed that it is true and correct.

Dated: June 24, 2026 *\/s/ Sarah Kahn*