CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Monika Langarica (Cal. Bar No. 308518)
monika@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br>v.<br>Markwayne Mullin, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**PLAINTIFFS' EX PARTE MOTION FOR PRELIMINARY INJUNCTION TO PERMIT THE RETURN OF DANIEL H. TO THE UNITED STATES [UNOPPOSED EXPEDITED BRIEFING SCHEDULE REQUESTED]**<br><br>Hon. André Birotte Jr.<br>Hearing Date: TBD<br>Hearing Time: TBD |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

*Admitted pro hac vice*

**PLAINTIFFS' EX PARTE MOTION**

Defendants removed Plaintiff Daniel H. while Plaintiffs' Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction, Dkt. 31, was pending. Accordingly, Plaintiffs in this action, by and through undersigned counsel, hereby move ex parte for a preliminary injunction forbidding Defendants from preventing Plaintiff Daniel H. from returning to the United States in the same legal position he occupied before his arrest and detention, and from detaining or removing him thereafter without first providing him the procedures to which he is entitled: specifically, consideration of his case under the 2021 Directive[1] as opposed to the now-stayed 2025 Guidance[2] which ICE applied to his case at the time of his detention and removal.

Because of the irreparable harm Daniel H. is facing and the fact that efforts to negotiate his return without the Court's intervention have stalled, Plaintiffs request an expedited briefing and hearing schedule, which Defendants do not oppose, as described in the Statement of Compliance with L.R. 7-3, 7-19 below.

The requested relief is authorized and necessary pursuant to Fed. R. Civ. P. 65, the Court's inherent equitable authority, and the All Writs Act, 28 U.S.C. § 1651(a).

**Statement of Compliance With L.R. 7-3 & 7-19, Opposing Counsel's Position, and Timeline for Briefing**

On May 27, 2026, during a conference of counsel, Plaintiffs requested Defendants' position on permitting Daniel H.'s return to the United States in light of the Court's May 20 order staying the 2025 Guidance challenged in this action. On June 5, 2026, Plaintiffs sent a letter requesting Defendants permit Daniel H. to return and laying out their position. Declaration of Bardis Vakili ¶ 4. On June 16, 2026, Defendants responded that facilitating the return of Daniel H. is not required under

[1] ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021) ("2021 Directive").

[2] ICE Policy Statement 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance").

the terms of the order. *Id.* ¶ 5. The parties met and conferred on June 22, 2026 and discussed this motion, but could not reach resolution. *Id.* ¶ 6. However, Defendants agreed to an expedited briefing schedule. *Id.* ¶ 7. Parties thereafter agreed that Plaintiffs would file the present motion by Thursday, June 25, 2026; Defendants would file their response by Thursday, July 2, 2026; and, if an Order has not issued by that time, Plaintiffs would file an Reply by Tuesday July 7, 2026. *Id.* Parties accordingly request such briefing schedule. *Id.*

Dated: June 25, 2026

Respectfully submitted,

*/s/ Sarah Kahn*
Sarah Kahn
CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Bardis Vakili
Monika Langarica
Sarah Kahn
Erika Cervantes

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner

PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese

*Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... II

**I. INTRODUCTION** .......... 1

**II. FACTUAL BACKGROUND** .......... 3

A. Daniel H.'s life in the United States and Guatemala. .......... 3

B. U Visa eligibility and application. .......... 4

C. ICE arrest, detention, and removal of Daniel H. .......... 4

D. The present case. .......... 6

**III. LEGAL FRAMEWORK** .......... 7

**IV. LEGAL STANDARD** .......... 8

**V. LEGAL ARGUMENT** .......... 8

A. Daniel H. is likely to succeed on the merits of his claims. .......... 8

*1. The Court has already decided that Daniel H. is likely to prevail on his claim that the 2025 Guidance violates the APA.* .......... 8

*2. Defendants' application of the 2025 Guidance to Daniel H.'s case likely violated the APA.* .......... 10

B. Daniel H. is suffering irreparable harm. .......... 14

C. The balance of hardships and public interest weigh in favor of preliminary relief. .......... 16

D. The scope of relief is appropriate because returning Daniel H. to the United States for application of the 2021 Directive is necessary to return him to the status quo ante. .......... 16

**VI. CONCLUSION** .......... 20

# TABLE OF AUTHORITIES

## CASES

*Abboud v. INS*,
140 F.3d 843 (9th Cir. 1998) ........ 14

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........ 8

*Andreiu v. Ashcroft*,
253 F.3d 477 (9th Cir. 2001) ........ 15

*B.P. v. Bostock*,
No. C23-0890-KKE, 2024 WL 2959550 (W.D. Wash. June 12, 2024) ........ 18, 19

*Cooney v. Dalton*,
877 F. Supp. 508 (D. Haw. 1995) ........ 16

*De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*,
720 F. Supp. 3d 794 (N.D. Cal. 2024) ........ 15

*Doe v. Noem*,
778 F. Supp. 3d 1151 (W.D. Wash. 2025) ........ 16

*Domingo-Ros v. Archambeault*,
Case No. CV 25-01208-DMS-DEB, 2025 WL 1425558 (S.D. Cal. May 18, 2025) ........ 18

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ........ 16

*F.T.C. v. Dean Foods Co.*,
384 U.S. 597 (1966) ........ 20

*Gonzalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) ........ 9

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) ........ 17

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ........ 17

*Hsiao v. Scalia*,
821 F. App'x 680 (9th Cir. 2020) ........ 14

*Immigrant Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025) ........ 8

*Jimenez v. Dep't of Homeland Sec.*,
No. 2:22-CV-00967-SSS-JPRX, 2022 WL 19410308 (C.D. Cal. Nov. 14, 2022) ........ 18

*Juarez v. Noem*,
No. 2:26-CV-00801-DC-CKD (HC), 2026 WL 799976 (E.D. Cal. Mar. 23, 2026) .......... 18

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .......... 14, 15

*Magassa v. Mayorkas*,
52 F.4th 1156 (9th Cir. 2022) .......... 10

*Mantena v. Johnson*,
809 F.3d 721 (2d Cir. 2015) .......... 15

*Mendez v. INS*,
563 F.2d 956 (9th Cir. 1977) .......... 18, 19

*Nat'l Org. for the Reform of Marijuana L. v. Mullen*,
828 F.2d 536 (9th Cir. 1987) .......... 19

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 16

*Old Pers. v. Brown*,
312 F.3d 1036 (9th Cir. 2002) .......... 9

*Or. Natural Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) .......... 10

*Patel v. U.S. Citizenship & Immigr. Servs.*,
732 F.3d 633 (6th Cir. 2013) .......... 15

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*,
499 F.3d 1108 (9th Cir. 2007) .......... 9

*Richardson v. United States*,
841 F.2d 993 (9th Cir. 1988) .......... 9

*Singh v. Waters*,
87 F.3d 346 (9th Cir. 1996) .......... 18

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
402 U.S. 1 (1971) .......... 17

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
316 F.2d 804 (9th Cir. 1963) .......... 17

*Tapia Garcia v. I.N.S.*,
237 F.3d 1216 (10th Cir. 2001) .......... 13

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) .......... 16

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) .......... 17

*Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806 (7th Cir. 1958) ..... 17

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..... 8

*Zegarra-Gomez v. I.N.S.*, 314 F.3d 1124 (9th Cir. 2003) ..... 13

**STATUTES**

28 U.S.C. § 1651(a) ..... 19

5 U.S.C. § 705 ..... 8

5 U.S.C. 551(10)(A) ..... 10

5 U.S.C. 551(13) ..... 10

8 U.S.C. § 1184(p)(6) ..... 11

8 U.S.C. § 1225(b)(2)(A) ..... 5

8 U.S.C. § 1227(d) ..... 6

## I. INTRODUCTION

Plaintiff Daniel H. is an immigrant survivor who had a U visa petition pending with USCIS when, on August 23, 2025, Defendants detained him, consistent with then-operative ICE policy which rescinded longstanding ICE directives that protected U visa applicants against immigration enforcement. Complaint, ¶¶ 82-95, Dkt. 1 ("Compl."); Compl., Ex. A, Dkt. 1-1, ICE Policy Statement 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"). Defendants deported him to Guatemala in December 2025, despite longstanding policies that should have protected him against such immigration enforcement.

In fall 2025, Daniel H., along with the other Plaintiffs in this action, brought this lawsuit and moved, *inter alia*, for a preliminary injunction and order staying the challenged policy while the case proceeds. On December 7, 2025, while that motion was pending, Defendants deported him to Guatemala, where he currently lives in hiding from the perpetrator who stabbed and beat him in the United States during the incident which formed the basis of his U visa eligibility.

In light of the Court's May 20, 2026 order granting in part Plaintiffs' motion for preliminary relief, Daniel H. now respectfully requests a preliminary injunction forbidding Defendants from preventing his return to the United States, so that he may reunite with his wife and daughters and receive the benefit from the Court's order staying the ICE policy he challenged and which led to his detention and removal. Order Granting Plaintiffs' Motion for Class Certification [Dkt. No. 23] and Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 31], May 20, 2026, Dkt. 57 ("May 20 Order"). Plaintiffs further request the Court also issue an order enjoining Defendants from detaining or removing Daniel H. thereafter without first providing him the procedures required by ICE's prior policies that the 2025 Guidance unlawfully rescinded.

The Court should grant this application because Daniel H. meets the standards for preliminary injunctive relief. First, he is likely to prevail on the merits. Indeed, the Court has already held as much, and the Court's May 20 Order constitutes law of the case on the question. Even if not, Daniel H. is likely to prevail for the same reasons as those articulated in the Court's Order. Second, he continues to suffer irreparable harm, both due to the loss of his opportunity to have Defendants apply lawful and now-operative policies to this case, and from the many harms that stem directly from his removal, including family separation and fear of retaliation from his attacker. Finally, the balance of equities and public interest, which merge in this case, favor granting the injunction.

In the alternative, should the Court find it more appropriate, the Court has authority to grant this motion under the All Writs Act.

The scope of relief sought is appropriate and necessary to remedy Daniel H.'s harm and to return Daniel H. to the status quo ante ICE's application of the unlawful 2025 Guidance to arrest and detain him. Indeed, it is substantially similar to the Court's preliminary injunction with respect to the other deported Plaintiffs—Carmen F., Lupe A., and Yessenia Ruano—enjoining Defendants "from preventing the[ir] re-entry . . . to the United States in the same immigration status they had prior to their forced expulsion from the United States," and from thereafter removing them without affording the procedures to which they were entitled. May 20 Order at *96. Furthermore, regardless of his likelihood of success on the merits, the relief sought is appropriate under the All Writs Act to enforce the Court's order staying the 2025 Guidance as to Daniel H. and to preserve its jurisdiction to address his claims through final judgment.

In sum, Daniel H. merely seeks preliminary relief that will return him, like his fellow named Plaintiffs, to the status quo ante Defendants' unlawful application of the 2025 Guidance, so that lawful procedures, including those improperly

rescinded by the 2025 Guidance, may be applied to his case. He respectfully requests the Court issue such preliminary injunctive relief.

## II. FACTUAL BACKGROUND

A. Daniel H.'s life in the United States and Guatemala.

Daniel H. was born in Guatemala in 1990. Declaration of Daniel H. ISO Pls.' Motion for Class Certification, Oct. 30, 2025 ¶ 1, Dkt. 23-10 ("2025 DH Decl."). When Defendants deported him on or about December 7, 2025, he had been living in the United States since 2007. Declaration of Daniel H., June 24, 2026 ¶ 16 ("2026 DH Decl.").

Daniel H.'s removal separated him from his wife and his two U.S. citizen daughters ages thirteen and fifteen. 2025 DH Decl. ¶ 3. They remain in Oklahoma, where his daughters were born and where Daniel H. and his wife lived prior to his deportation. Daniel H. supported his wife through his work remodeling houses and hotels. *Id*. ¶ 6. Daniel H. was also a valuable member of his community in Oklahoma. He, along with several friends who shared a love of classic cars, started a neighborhood group dedicated to community service. *Id*. ¶¶ 8-9. The group put on fundraisers to support families who had lost loved ones and to buy gifts for neighborhood children during the holidays. *Id*. He desperately wants to return home to Oklahoma to watch his daughters grow, support his wife, resume providing for his family, and rejoin his community. 2026 DH Decl. ¶ 25.

At present, Daniel H. is living essentially in hiding with family in Guatemala. *Id*. ¶ 22. He fears the perpetrator of the crime which formed the basis of his U visa eligibility, who also lives in Guatemala and has vowed to kill Daniel H. *Id*. ¶¶ 18-21 Due to the ever-present risk of retaliation for reporting his perpetrator's crime, Daniel H. fears for his life while in Guatemala. *Id*. Because he is too afraid to go far from the house he lives in, his work opportunities are limited and inconsistent. *Id*. ¶ 23.

B. U Visa eligibility and application.

On July 31, 2009, Daniel H. survived a brutal attack. 2025 DH Decl. ¶¶ 10-12. When he and his father approached a suspicious group of men outside of their home, one of the men hit Daniel H. in the face and mouth with an iron car jack, breaking his front teeth, while another stabbed him in the neck. *Id*. Daniel H. recognized one of his attackers from high school. *Id*. ¶ 11. He identified the man to police, directed them to where the man lived, and agreed to testify against him. *Id*. ¶ 13. The attacker was sentenced to prison and later deported to Guatemala. *Id*. ¶ 14. Daniel H. later heard through a mutual acquaintance that his attacker had vowed to kill Daniel H. if he ever returned to Guatemala. *Id*.

In April 2025, a *notario*, who Daniel H. later learned was under investigation for fraud, filed an incomplete U visa application for Daniel H. *Id*. ¶ 16. When Defendants later detained Daniel H., a lawyer explained to him that the person who had filed his U visa petition was not a lawyer and had filed his petition improperly. *Id*. On September 16, 2025, Daniel H.'s newly retained lawyer filed an amended U visa petition on his behalf, which USCIS received on September 17, 2025. Declaration of Sarah Kahn, June 21, 2026 ("2026 Kahn Decl."), Ex. A (U Visa Receipt Notice).

C. ICE arrest, detention, and removal of Daniel H.

On August 23, 2025, Daniel H. was driving near his house when police or ICE agents pulled him over. 2025 DH Decl. ¶ 17. They told him that they were looking for him because of a charge for driving under the influence. *Id.* However, the only time Daniel H. has ever been charged with driving under the influence was fifteen years earlier, and the charge was dropped, as ICE's own contemporaneous records confirm. *Id.*; 2026 Kahn Decl. Ex. B (I-213 submitted with ICE Nov. 7, 2025 Opp. to Bond). Indeed, this 15-year-old incident remains the only matter ICE noted in Daniel H.'s criminal history, and he was convicted only of driving without a state driver's license from the incident, resulting only in a fine. *Id.*

ICE detained him, first at Logan County Detention Center in Logan County, Oklahoma, then at Bluebonnet ICE Detention Facility in Anson, Texas, and finally at Rio Grande ICE Detention Center in Laredo, Texas. 2025 DH Decl. ¶ 19.

On September 16, 2025, when Daniel H's lawyer submitted his corrected U visa petition, she also requested that USCIS expedite review of the petition. Declaration of Sarah Kahn ISO Pls.' Mtn. for Class Certification, October 27, 2025 ("2025 Kahn Decl.") at *88, Ex. S., Dkt. 23-12. As this Court found, although Daniel H.'s "attorney requested an expedited prima facie determination on his pending petition . . . USCIS will only consider such requests if they come from ICE, and pursuant to its Blind Removal Policy, ICE will not do so." May 20 Order at *19.

On October 2, 2025, Daniel H.'s attorney requested his release from ICE detention based on his pending U visa petition. 2025 Kahn Decl. at *84, Ex. S. On October 15, 2025, ICE denied that request without explanation. *Id.*

On October 4, 2025, Daniel H. sought release through a habeas petition, and on November 3, 2025 the District Court for the Southern District of Texas held that he was not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and ordered the government to grant him a bond hearing. *See* Redacted Sealed Declaration in Support of Application, Ex. 11, Notice of Pendency of Other Actions, Dkt. 20-11 ("Sealed Habeas Order"). ICE opposed bond and, after a hearing, the immigration judge denied it on November 7, 2025, finding Daniel H. failed to prove he was not a danger to the community, based on his previous arrest "for driving while intoxicated," years-old speeding violations, and the fact that he entered the United States without inspection. 2026 Kahn Decl., Ex. C (IJ Order Denying Bond).

While the custody proceedings were playing out, Daniel H. pursued other avenues for his release as well, including moving the immigration court to administratively close his proceedings based on his pending U visa. On October 7, 2025, the same immigration judge that denied him bond denied Daniel H.'s motion, finding that he "has provided insufficient information to determine how long it would

take for respondent's U-Visa petition to be adjudicated by DHS." 2026 Kahn. Decl. Ex. D (IJ Order Denying Motion to Admin. Close).

While detained, Daniel H. experienced extreme medical neglect. He contracted bronchitis, causing such severe coughing that it triggered vomiting. 2026 DH Decl. ¶ 7. He became unable to eat or hold down food because of the chronic vomiting. *Id.* ¶ 8. He was alternatively freezing cold and feverish. *Id.* ¶ 7. He was permitted to see a doctor only once and reports that the doctor dismissed his symptoms. *Id.* ¶ 6. When he fainted, guards accused him of faking his illness and kicked him to force him to stand up. *Id.* ¶ 8. His mental health deteriorated, and the strain of detention, family separation, and harsh treatment by guards made imprisonment unbearable. *Id.* ¶ 10 ("I couldn't support [my wife], I couldn't provide for her, I couldn't even hold her while I listened to her cry."). Despite his lawyer's requests that ICE release him or seek expedited review of his petition, ICE continued to detain him throughout his immigration proceedings.

On December 2, 2025, the immigration judge denied Daniel H.'s applications for relief from removal, which did not include adjudication of his U visa petition because USCIS has exclusive jurisdiction over such petitions. Unable to bear further prolonged detention, Daniel H. asked his immigration lawyer not to appeal the denial of relief. However, Daniel H.'s counsel prepared an I-246 Application for a Stay of Deportation or Removal for his signature so that he could request a stay of removal pursuant to 8 U.S.C. § 1227(d). 2026 Kahn Decl. ¶ 7. On or about December 5, 2025 counsel mailed it to him at the Rio Grande ICE Detention Center for his signature, but ICE deported him that same day, before he could receive it. 2026 DH Decl. ¶¶ 15-17.

D. <u>The present case.</u>

On October 14, 2025, Daniel H., alongside the seven other individual Plaintiffs and four organizational Plaintiffs, brought this action against Defendants for, *inter alia*, unlawfully rescinding protections for survivors under the U visa, T visa, and

VAWA programs via the 2025 Guidance. Compl. On October 30, 2025, Plaintiffs filed a Motion for Class Certification. Dkt. 23. On November 14, 2025, Plaintiffs filed a Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction. Dkt. 31. At the time these motions were filed, Daniel H. was still detained in ICE custody.

On May 20, 2026, this Court granted the motions in part. Dkt. 57. In its order, the Court provisionally certified three classes and appointed Daniel H., along with other class representatives, to represent the Pending Petition Class. May 20 Order at *95. The Pending Petition Class is defined as: "All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement." *Id.* at *95.

Pursuant to 5 U.S.C. § 705, the Court stayed "the 2025 Guidance, including its rescission of prior policies," as to all Plaintiffs and class members. *Id*. at *96. The Order additionally enjoined the government from preventing the return of three individual Plaintiffs who had been removed. *Id*. Daniel H. now seeks a similar remedy for Defendants' unlawful application of the 2025 Guidance in his case, which directly resulted in his detention and removal.

## III. LEGAL FRAMEWORK

This Court has already made extensive findings regarding the U visa program and ICE's recent changes to its longstanding internal policies governing the treatment of U visa applicants. May 20 Order at *5-10 (summarizing history and purpose of the U visa); *id*. at *10-15 (summarizing DHS's policies of protecting immigrant survivors and its 2025 Guidance which rescinded those protections). Due to the Court's familiarity with this legal framework, Plaintiffs do not repeat it here, instead incorporating by reference the above-cited portions of the Court's order and Section I of their Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction, Dkt. 31.

## IV. LEGAL STANDARD

For the Court to issue a preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the Ninth Circuit's "sliding scale test," which recognizes that "a weaker claim on the merits can still justify" preliminary relief "depending on the amount of 'net harm' that could be prevented," a preliminary injunction may be appropriate if there are "serious questions going to the merits" and the "balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (cleaned up).

The same standard applies to an injunction pursuant to the Court's authority to "issue all necessary and appropriate process to postpone" an unlawful policy. 5 U.S.C. § 705. ("On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."). "[T]he factors used to determine whether to issue a § 705 stay under the APA are the same equitable factors used to consider whether to issue a preliminary injunction." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025).

## V. LEGAL ARGUMENT

### A. Daniel H. is likely to succeed on the merits of his claims.

#### *1. The Court has already decided that Daniel H. is likely to prevail on his claim that the 2025 Guidance violates the APA.*

This Court has already found that Plaintiffs, including Daniel H., are likely to "show that the 2025 Guidance is arbitrary and capricious" because it "reverses decades of policy (1) without a sufficiently-reasoned explanation for disregarding the concerns underlying that prior policy, (2) without considering the reliance interests

of persons who have acted in reliance on those policies, and (3) without considering serious aspects of the problem." May 20 Order at *69. The Court has also already found that Plaintiffs, including Daniel H., are likely to show that the 2025 Guidance is "contrary to law" because it "undermines the legislative scheme Congress designed to protect" immigrant survivors. *Id*. at * 74. Accordingly, the Court held that the 2025 Guidance likely violates the APA and issued an order staying the Guidance as to all class members and individual plaintiffs. Therefore, Daniel H.'s claims on likelihood of success on the merits have already been resolved for purposes of preliminary relief.

This Court's order constitutes law of the case, under which "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case**."** *Old Pers. v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)). Although the "general rule" is that rulings "at the preliminary injunction" phase are not necessarily law of the case, "conclusions on pure issues of law" even at that early phase of proceedings are typically "binding" through judgment (absent exceptions not applicable in this case). *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007); *see also Gonzalez v. Arizona,* 677 F.3d 383, 442 (9th Cir. 2012) (Kozinski, J., concurring).

Thus, the Court and the parties are bound by the May 20, 2026 Order's holding that the 2025 Guidance likely violates the APA. This is not to suggest that a ruling on *likelihood* of success is binding on the question of *ultimate* success on the merits for judgment, but Daniel H. need only prove *likelihood* of success in this application for preliminary relief. On this limited question, the Court has already ruled in Daniel H.'s favor.

*2. Defendants' application of the 2025 Guidance to Daniel H.'s case likely violated the APA.*

Even if the Court's May 20 Order is not dispositive on the question under the law of the case doctrine, the Court should once again find that Daniel H. is likely to prevail on his argument that the 2025 Guidance as applied to his case violated the APA.

As a threshold matter, as this Court found, the 2025 Guidance is likely reviewable final agency action because it marks "the consummation of the agency's decision-making process and is neither tentative nor interlocutory, as 'immediate compliance with [its terms] is expected'" and "legal consequences flow from the 2025 Guidance." May 20 Order at *66-67 (quoting *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022)) (citations omitted). *Id*. Indeed, the "practical and legal effects of the agency action" were to deprive Daniel H. of his liberty for months and then remove him without the protections that his pending U visa petition should have afforded him under the arbitrarily rescinded 2021 Directive. *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006); *see also* 5 U.S.C. 551(10)(A), (13) (defining "agency action" to include an agency's "prohibition, requirement, limitation, or other condition affecting the freedom of a person").

Next, as the Court already found, "Plaintiffs are likely to show that the 2025 Guidance is arbitrary and capricious" because "it reverses decades of policy (1) without a sufficiently-reasoned explanation for disregarding the concerns underlying that prior policy, (2) without considering the reliance interests of persons who have acted in reliance on those policies, and (3) without considering serious aspects of the problem." May 20 Order at *69. Of particular relevance to Daniel H.'s claims were the Court's findings that the 2025 Guidance erased decades of protections for survivors, "eliminating the . . . express presumption of protection from immigration enforcement for petitioners for victim-based benefits and replacing it with a presumption of enforcement subject to narrow limitations." May 20 Order at *13.

Indeed, when Daniel H. courageously came forward to support the criminal investigation surrounding an attacker he knew to be dangerous, the U visa program promised him protection that the 2025 Guidance deprived him of. Thus, Daniel H. is likely to prevail on his claim that the 2025 Guidance, and Defendants' application of the Guidance in his case, is arbitrary and capricious.

Furthermore, this Court has also already concluded that the 2025 Guidance is likely contrary to law, and there is no reason to revisit that finding here. May 20 Order at *73-74. "By allowing ICE agents to turn a blind eye to persons with pending petitions, the 2025 Guidance undermines the legislative scheme Congress designed to protect such individuals from removal." *Id*. at 74. Congress's "clearly stated [] purpose" for creating victim-based benefits was to "protect noncitizen victims of crime from unnecessary removal." *Id.* at 73. As the Court found, Congress did this for "humanitarian reasons—to protect victims from abuse—and to promote public safety." *Id*. at 74. Indeed, to accomplish these goals, Congress created protections for victims who cooperated with policy, not only through a pathway to citizenship, but also through protection while they await adjudication of their visas. 8 U.S.C. § 1184(p)(6) (permitting DHS to grant work authorization to survivors with bona fide pending U visa petitions).

Daniel H.'s experience illustrates how the 2025 Guidance thwarts Congress' purpose for enacting U visa protections. Despite the harrowing experience of surviving a brutal stabbing and significant risk Daniel H. took in coming forward to assist a law enforcement investigation of his attack, ICE detained and deported him without consideration of his prima facie eligibility for a U visa or the public safety benefits of his decision to come forward to report crime notwithstanding his lack of lawful immigration status at the time. This runs counter to Congress' stated purpose of protecting noncitizen victims of crime from unnecessary removal and encouraging them to come forward to report crime.

Meanwhile, application of the 2021 Directive that the 2025 Guidance arbitrarily rescinded would have been consistent with Congress's goals. Specifically:

- Under the 2021 Directive, "[A]bsent exceptional circumstances, ICE will refrain from taking civil enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits." 2021 Directive at 2 ¶ 2. "Exceptional circumstances generally exist only" where the "noncitizen poses national security concerns" or the "noncitizen poses an articulable risk of death, violence, or physical harm to any person." *Id*. at 3 ¶ 3.4. There appear to be no such exceptional circumstances in Daniel H.'s case. 2026 Kahn Decl. Ex. B (I-213 submitted with ICE Nov. 7, 2025 Opp. to Bond). However, the 2025 Guidance no longer "required ICE officers and agents, absent exceptional or exigent circumstances, to refrain from taking civil immigration enforcement actions against . . . petitioners for" U visas. 2025 Guidance at *2-3. As a result, Defendants detained and ultimately removed Daniel H.
- Under the 2021 Directive, "ICE officers must consider any and all evidence that an individual has been a victim of crime—such as the receipt of victim-based immigration benefits or pending applications for such benefits . . . in rendering custody determinations." 2021 Directive at 9 ¶ 5.6. Daniel H. informed ICE that he had a pending application for such benefits when ICE arrested, detained, and eventually deported him. 2025 Kahn Decl. Ex. S, at *84-86. Under the 2025 Guidance, this did not matter.
- Under the 2021 Directive, ICE generally only detains immigrant survivors when their release is "prohibited by law or exceptional circumstances exist." 2021 Directive at 8 ¶ 5.4(a). As the district court in Daniel H.'s case held, his release was not prohibited by law. *See* Redacted Habeas Petition. However, the 2025 Guidance abandoned any presumption against detention, requiring ICE only to "deconflict internally" and with law enforcement when seeking to

detain someone with a pending petition. 2025 Guidance at *2 ¶ 1. Thus, Defendants detained and ultimately removed Daniel H.

- Under the 2021 Directive, if ICE determines detention of an immigrant survivor is required by law or the presence of exceptional circumstances, "ICE will request that USCIS expedite the adjudicative action…." 2021 Directive at 8 ¶ 5.4(a). Meanwhile, the 2025 Guidance plainly states "'ICE will no longer routinely request expedited adjudications from USCIS. ICE officers and agents may continue to do so subject to a case-by-case determination that it is in ICE's best interests." 2025 Guidance at 3 ¶ 4. Presumably because it was not in ICE's interests to do so, ICE did not request expedited adjudication of Daniel H.'s pending U visa petition after detaining him.

The fact that Daniel H. has been removed does not undermine his likelihood of success by mooting his eligibility for consideration under the 2021 Directive. Plaintiffs sought postponement of the 2025 Guidance, including its recission of the 2021 Directive, when they filed their motion for preliminary relief. May 20 Order at *43-44 ("When Plaintiffs filed their CC Motion on October 30, 2025, . . . Daniel H. [was] still detained . . . Under the relation back doctrine, these Plaintiffs' claims are not moot."). It is only through Defendant's impermissible application of the very policy he challenged that Daniel H. has been removed at all. As described below, he continues to be harmed by Defendants' actions, and the Court may still remedy this harm. "[T]he case or controversy requirement is satisfied where the petitioner is deported, so long as . . . [s/he] continues to suffer actual collateral consequences of his removal." *Zegarra-Gomez v. I.N.S.*, 314 F.3d 1124, 1127 (9th Cir. 2003); *Tapia Garcia v. I.N.S.*, 237 F.3d 1216, 1218 (10th Cir. 2001) (the "inability to reenter and reside legally in the United States with his family is a collateral consequence of [plaintiff's] deportation" defeating mootness). Therefore, his likelihood of success is not lessened based on any specious assertions of mootness.

Regardless of how application of the 2021 Directive to Daniel H.'s case will turn out, ICE's failure to apply it at all violated the APA because it resulted from the 2025 Guidance, which is arbitrary and capricious and contrary to law. Daniel H. simply asks this Court to remedy Defendants' failure to apply the 2021 Directive to his case by returning him to the status quo ante for proper consideration under that directive.

B. Daniel H. is suffering irreparable harm.

Daniel H. is suffering irreparable harm based on ICE's failure to apply the 2021 Directive to his case, including the harm of removal, separation from his immediate family, and ongoing fear of retaliation in Guatemala. As the Court has found, being "removed despite [a] pending petition[] for victim-based benefits and the protections from removal that those petitions offered in exchange for coming forward" constitutes irreparable harm. May 20 Order at *87.

"[A] noncitizen must show that there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all [noncitizens] and all cases, that removal would inflict irreparable harm—for example, that removal would effectively prevent her from pursuing her petition for review, or that, even if she prevails, she could not be afforded effective relief." *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011). Here, effective relief for Daniel H. means application of the 2021 Directive to his case while the 2025 Guidance is stayed, which would have entitled him to the procedures described above that likely would have prevented his detention and removal while his U visa petition is pending.

Critically, Daniel H. is harmed by Defendants' failure to provide the protective measures afforded by the 2021 Directive, regardless of their outcome. The Ninth Circuit has long held that a "lost opportunity" to receive immigrant relief "represents a concrete injury." *Abboud v. INS*, 140 F.3d 843, 847 (9th Cir. 1998), *superseded on other grounds by statute as stated in Hsiao v. Scalia*, 821 F. App'x 680, 682–83 (9th Cir. 2020) (citation omitted); *see also Mantena v. Johnson*, 809 F.3d 721, 731 (2d

Cir. 2015) ("[E]ven if USCIS ultimately decides not to grant [the plaintiff] a green card, the 'lost opportunity is itself a concrete injury.'") (quoting *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 638 (6th Cir. 2013)); *De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 720 F. Supp. 3d 794, 802 (N.D. Cal. 2024) ("while USCIS retains discretion to deny advance parole in the end, the BFD Plaintiffs have suffered a concrete injury by losing the opportunity to even be considered for it."). Here, even if he still might ultimately obtain a U visa from abroad decades from now, Daniel H. lost the opportunity to remain in the United States with his family while he awaits adjudication, which was a potential – and indeed likely – outcome of applying the 2021 Directive, as opposed to the 2025 Guidance, in his case.

Further, Daniel H. is also "in physical danger [because of his] return[] to his [] home country," and "[c]onsideration of the likelihood of such treatment . . . should be part of the irreparable harm inquiry." *Leiva-Perez*, 640 F.3d at 969. He is in hiding because the person who stabbed him and who he reported to law enforcement is living in Guatemala and has threatened to kill him in retaliation. 2026 DH Decl. ¶-¶ 20-22.

"Other important [irreparable harm] factors include separation from family members, medical needs, and potential economic hardship." *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc). For Daniel H., all these factors are present. First, he is separated from his wife and his U.S. citizen daughters, as well as his church and his community of friends and neighbors. 2026 DH Decl. ¶ 25. Further, his father is ill, and although he desperately wants to help him, he has no economic prospects in Guatemala, where he is forced to work only when a nearby mechanic needs him because it is too dangerous for him to go farther from his parents' house. 2026 DH Decl. ¶-¶ 23-24.

C. <u>The balance of hardships and public interest weigh in favor of preliminary relief.</u>

The final factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). First, there is a public interest in providing a remedy for unlawful removal. *Id*. ("Of course there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm.") "Violations of federal law are neither equitable nor in the public's interest." May 20 Order at *89 (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). Second, "there is also a public interest in 'preserving congressional intent,' which, as discussed above, Defendants' policies likely undermine." *Id.* (quoting *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021)). Third, the government's purported, generalized interest in deporting as many people as possible cannot outweigh the public's interest in adherence to Congressional intent and reasoned agency policy. *E. Bay Sanctuary*, 993 F.3d at 679 (executive action "overriding plain congressional intent" is against the public interest); *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) ("The public has a strong interest in having a [government] that conducts itself fairly and according to its stated regulations and policies.") (quoting *Cooney v. Dalton*, 877 F. Supp. 508, 515 (D. Haw. 1995)). This cannot be outweighed by a vague intent to conduct mass deportations.

D. <u>The scope of relief is appropriate because returning Daniel H. to the United States for application of the 2021 Directive is necessary to return him to the status quo ante</u>.

Plaintiffs seek an order forbidding Defendants from preventing Daniel H. to return to the United States in the same legal status as he had when he applied for his U visa, so that he may benefit from the protections that the 2025 Guidance unlawfully rescinded, including application of the 2021 Directive to his case. This is the only appropriate remedy because it is required to return him to the status quo ante as a

remedy for the government's unlawful act. In addition, the Court has authority under the All Writs Act to grant the relief Daniel H. requests.

It is "so well settled" the purpose of preliminary relief "is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). The status quo ante litem means "the last uncontested status which preceded the pending controversy." *Id*. at 809 (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Here, the last uncontested status between Daniel H. and Defendants was when he had a pending petition for a U visa and ICE sought to arrest and detain him applying the now-stayed 2025 Guidance in the process. Daniel H. should be permitted to return for ICE to apply the improperly rescinded 2021 Directive when considering whether to detain him for removal proceedings.

"[T]he scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (affirming district court order providing broad remedies for segregation, including requiring school to provide free transportation for students between districts to achieve desegregation). "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).

Accordingly, the Ninth Circuit has affirmed district court injunctions mandating the return of individuals deported unlawfully so that they can access the protections and procedures they were wrongfully denied. *Walters v. Reno*, 145 F.3d 1032, 1050 (9th Cir. 1998) ("Permitting the class members to reopen their proceedings is necessary in order to provide a suitable remedy for the INS's failure

to give adequate notice . . . [but this is] basically meaningless if they are unable to attend the hearings . . . [a]ccordingly, the district court's injunction requires the INS to parole class members into the United States."); *Mendez v. INS*, 563 F.2d 956, 959 (9th Cir. 1977) (requiring return to permit the person "to pursue any administrative and judicial remedies to which he is lawfully entitled"); *see also Singh v. Waters*, 87 F.3d 346, 350 (9th Cir. 1996) (ordering the government "to permit Singh to return to the United States for the purpose of appearing at a hearing before the immigration judge to determine whether discretion to adjust his status should be favorably exercised.").

Many courts in the Ninth Circuit have exercised this authority to protect the rights of wrongfully removed individuals in recent years. *See, e.g.*, *Domingo-Ros v. Archambeault*, Case No. CV 25-01208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation — their physical presence in the United States free from detention."); *Juarez v. Noem*, No. 2:26-CV-00801-DC-CKD (HC), 2026 WL 799976, at *5, 9 (E.D. Cal. Mar. 23, 2026) ("a noncitizen unlawfully removed from the United States under extreme circumstances" – removal despite DACA deferred action – "may seek their return" in order to "be returned to the status quo, including that she shall be entitled to all the rights and benefits afforded to her by her DACA status as if her February 19, 2026 removal never occurred"); *B.P. v. Bostock*, No. C23-0890-KKE, 2024 WL 2959550, at *8 (W.D. Wash. June 12, 2024) ("Individuals who are wrongfully removed are entitled to be readmitted to the United States to 'pursue any administrative and judicial remedies to which [they are] lawfully entitled.'") (quoting *Mendez*, 563 F.2d at 959); *Jimenez v. Dep't of Homeland Sec.*, No. 2:22-CV-00967-SSS-JPRX, 2022 WL 19410308, at *4 (C.D. Cal. Nov. 14, 2022) (concluding plaintiffs adequately stated claim for mandamus relief requiring return after unlawful removal).

Indeed, this Court did just that in its May 20 Order, concluding that permitting the return of Lupe A., Yessenia Ruano, and Carmen F. is proper because the government's "actions are likely unlawful" and "[r]equiring Defendants to permit them to re-enter would partially return them to the status quo before these violations and allow them to avail themselves of the procedures to which [they are] entitled." May 20 Order at *92. For Daniel H., the procedures to which he is entitled are those contained in the 2021 Directive that the 2025 Guidance impermissibly rescinded. Thus, he is entitled "to be readmitted to the United States to 'pursue any administrative and judicial remedies to which [they are] lawfully entitled,'" including application of the 2021 Directive to his case. *Bostock*, 2024 WL 2959550, at *8 (quoting *Mendez*, 563 F.2d at 959).

In addition to the Court's equitable authority, the Court has independent authority to issue the requested order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which codifies "the inherent power of the court to enforce its own orders" or to preserve its jurisdiction. *Nat'l Org. for the Reform of Marijuana L. v. Mullen*, 828 F.2d 536, 544 (9th Cir. 1987) ("*NORML*"). The Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Here, the All Writs Act authorizes the requested order for several reasons. First, it would allow the Court to "enforce its own order[]," *NORML* at 544, staying "the 2025 Guidance, including its recission of prior policies," which "applies in favor of All Individual Plaintiffs," including Daniel H., by granting him the opportunity for treatment under the reinstated policies. May 20 Order at *96. Second, the requested order is necessary to preserve the Court's jurisdiction to adjudicate Plaintiffs' requested relief. Compl. at 75, Req. for Relief Nos. 3, 11, Dkt. 1. Finally, the requested order is necessary to "maintain the status quo by injunction pending review" of Defendants' actions, making the All Writs Act a proper independent basis

on which this Court can order Daniel H.'s requested relief. *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966).

Accordingly, the Court should issue the requested order pursuant to its equitable authority and/or the All Writs Act.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion as requested herein.

Dated: June 25, 2026

Respectfully submitted,

*/s/ Sarah Kahn*

Sarah Kahn

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Bardis Vakili
Monika Langarica
Sarah E. Kahn
Erika Cervantes

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner

PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese