TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
PUSHKAL MISHRA (Cal. Bar No. 298695)
Special Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (714) 338-3503
    E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMIGRATION CENTER FOR WOMEN AND CHILDREN, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>KRISTI NOEM, Secretary of Homeland Security, *et al.*,<br><br>    Defendants. | No. 2:25-cv-09848-AB-AS<br><br>**DEFENDANTS' EX PARTE APPLICATION FOR A STAY PENDING APPEAL AUTHORIZATION**<br><br><br>Honorable André Birotte Jr. |

## EX PARTE APPLICATION FOR
## A STAY PENDING APPEAL AUTHORIZATION

Defendants respectfully apply ex parte, pursuant to Local Rule 7-19, for an order under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1) staying enforcement of ECF 57 ¶¶ 1–5 pending the Solicitor General's decision whether to authorize an appeal of ECF 57. The United States has filed a protective notice of appeal to preserve appellate jurisdiction, but the Solicitor General's authorization decision is pending. This short, status-quo-preserving stay is necessary to prevent irreparable harm to the Government and to avoid mooting the appeal (at least in part) before that decision can be made. The Motion is governed by the four *Nken* factors. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Acting Deputy Assistant Director Samuel Olson ("Olson Decl."); the concurrently filed Declaration of Pushkal Mishra (filed pursuant to Local Rules 7-19 and 7-19.1); the pleadings, records, and files in this action; and any further argument or evidence the Court may permit. A proposed order has been included herewith.

Pursuant to Local Rule 7-19, counsel for Defendants notified counsel for Plaintiffs of the date, substance, and grounds of this ex parte application on June 22, 2026 over a video conference and then again on June 25, 2026 over a phone call. The information for Plaintiffs' lead counsel is as follows: Bardis Vakili, Center for Human Rights and Constitutional Law, 1505 E. 17th St. Ste. 117, Santa Ana, CA 92705, 619-483-3490, bardis@centerforhumanrights.org. Plaintiffs oppose the requested relief. Ex parte relief is warranted because the Solicitor General's authorization decision is expected to be made in a relatively short time frame and Defendants would be irreparably harmed—and the appeal potentially mooted, at least in part—if required to comply with ECF 57 or to litigate the merits in parallel before that decision issues; the matter cannot be heard on the regular noticed-motion track in time to avoid that harm. *See* L.R. 7-19, 7-19.1.

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                    PAGE

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 2

III.    LEGAL STANDARD ........................................................................... 3

IV.     ARGUMENT ........................................................................................ 3

        A.      Defendants Are Likely to Succeed on the Merits of the Appeal. ................. 3

                1.      Section 1252(f)(1) Bars the Classwide § 705 Stays: What Congress Forecloses in One Step, Court(s) Cannot Accomplish in Two. ................................................................................. 3

                2.      The Jurisdiction-Stripping Provisions of § 1252(g), (b)(9), and (a)(5) Channel Plaintiffs' Claims Out of District Court. .................. 11

                3.      Plaintiffs Lack Article III Standing. ................................................. 14

                4.      Plaintiffs' "Blind Removal" Theory Misreads 8 U.S.C. § 1227(d). ......................................................................................... 15

                5.      Plaintiffs' Class Definitions Are Fail-Safe, and a Rule 23(b)(2) Class Cannot Be Certified to Deliver Relief that § 1252(f)(1) Forecloses. ......................................................................................... 19

                6.      The Individual Re-Entry Injunctions, ECF 57, Order ¶¶ 4–5, Are Independently Improper. ............................................................... 20

        B.      Defendants Will Be Irreparably Injured Absent a Stay. ............................. 22

        C.      A Stay Will Not Substantially Injure Plaintiffs. ....................................... 24

        D.      The Public Interest Strongly Favors a Stay. ............................................ 24

V.      CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) .......................................................................................... 9

*Aguilar v. ICE*,
510 F.3d 1 (1st Cir. 2007) ............................................................................... 12

*California v. Grace Brethren Church*,
457 U.S. 393 (1982) ............................................................................... 5, 8, 10

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ........................................................................................... 9

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ....................................................................................... 15

*Dep't of Homeland Sec. v. D.V.D.*,
145 S. Ct. 2627 (2025) ..................................................................................... 8

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ......................................................................................... 9

*D.V.D. v. U.S. Department of Homeland Security*,
No. 26-1212 (1st Cir. 2026) ............................................................................. 8

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ....................................................................................... 15

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) ......................................................... 21

*Garcia v. Noem*,
No. 25-06008, 2025 WL 3237502 (W.D. Wash. Nov. 20, 2025) ................... 17

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ................................................................. 2, 4, 5, 6, 7, 10

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ....................................................................................... 21

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ......................................................................................... 3

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) (en banc) ................................................................. 15

*Hunt v. Washington State Apple Advertising Commission*,
  432 U.S. 333 (1977) ................................................................................................. 15

*Ibarra-Perez v. United States*,
  154 F.4th 989 (9th Cir. 2025) ................................................................................. 14

*Immigrant Defenders Law Center v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ................................................................................... 7

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ............................................................. 11, 12, 13, 14

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ................................................................................................. 16

*Jimenez-Angeles v. Ashcroft*,
  291 F.3d 594 (9th Cir. 2002) ................................................................................... 12

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................................... 22

*Mullin v. Al Otro Lado*,
  No. 25-5, 2026 WL 1825741 (U.S. June 25, 2026) ......................................... 2, 4, 5

*Mullin v. Doe*,
  No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026) .............................. 3, 4, 8, 13

*National TPS Alliance v. Noem*,
  166 F.4th 739 (9th Cir. 2026) ................................................................................... 7

*National TPS Alliance v. Noem*,
  169 F.4th 796 (9th Cir. 2026) ................................................................................... 8

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................... passim

*Noem v. National TPS Alliance*,
  146 S. Ct. 23 (2025) ................................................................................................... 7

*Rauda v. Jennings*,
  55 F.4th 773 (9th Cir. 2022) ................................................................. 11, 13, 14, 15

*Reno v. American-Arab Anti-Discrimination Committee*,
  525 U.S. 471 (1999) ................................................................................. 4, 6, 11, 13

ii

*Sampson v. Murray*,
  415 U.S. 61 (1974) ............................................................................................ 3, 9

*San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n*,
  967 F.2d 683 (1st Cir. 1992) ............................................................................ 8, 10

*Sanchez Jimenez v. Department of Homeland Security*,
  No. 2:22-cv-00967, 2022 WL 19410308 (C.D. Cal. Nov. 14, 2022) ............ 16, 17, 18

*Sankara v. Barr*,
  No. 17-2257, 2019 WL 4943755 (2d Cir. May 8, 2019) .......................................... 17

*Scripps-Howard Radio, Inc. v. FCC*,
  316 U.S. 4 (1942) .............................................................................................. 3, 9

*SFFA v. President & Fellows of Harvard College*,
  600 U.S. 181 (2023) .......................................................................................... 4, 10

*Starbucks Corp. v. McKinney*,
  602 U.S. 339 (2024) ............................................................................................. 21

*Torres-Tristan v. Holder*,
  656 F.3d 653 (7th Cir. 2011) ............................................................................... 17

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................. 15

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................................... 7, 9, 22, 23

*United States v. Texas*,
  599 U.S. 670 (2023) ............................................................................................... 5

*U.S. Philips Corp. v. KBC Bank N.V.*,
  590 F.3d 1091 (9th Cir. 2010) ............................................................................. 21

*Velarde-Flores v. Whitaker*,
  750 F. App'x 606 (9th Cir. 2019) ........................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................. 19

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................. 21

**Federal Statutes**

iii

5 U.S.C. § 705 ................................................................................................... passim

5 U.S.C. § 706 ............................................................................................................ 5

8 U.S.C. § 1226 ...................................................................... 2, 6, 10, 20, 22, 25

8 U.S.C. § 1227 ............................................................ 2, 15, 16, 17, 18, 19, 22, 25

8 U.S.C. § 1229a ................................................................... 2, 6, 10, 20, 25

8 U.S.C. § 1231 ..................................................................... 2, 6, 10, 20, 25

8 U.S.C. § 1252(a)(2)(D) ................................................................................ 12

8 U.S.C. § 1252(a)(5) .................................................... 2, 3, 11, 12, 13, 14, 20, 23, 25

8 U.S.C. § 1252(b)(9) .................................................... 2, 3, 11, 12, 13, 14, 20, 23, 25

8 U.S.C. § 1252(f)(1) ................................................................................... passim

8 U.S.C. § 1252(g) ....................................................... 2, 3, 11, 12, 13, 14, 20, 23, 25

**Regulations**

8 C.F.R. § 214.14 ............................................................................................ 17

8 C.F.R. § 274a.12 ........................................................................................... 21

**Rules**

Fed. R. App. P. 8 ............................................................................................. 1

Fed. R. Civ. P. 23 ................................................................................ 1, 2, 19, 20

Fed. R. Civ. P. 62(d) ......................................................................................... 1, 3

## I.    INTRODUCTION

This Court's May 20, 2026 Order, ECF 57, preliminarily certified three nationwide classes under Federal Rule of Civil Procedure 23(b)(2) and granted preliminary relief: three nationwide stays of agency action under 5 U.S.C. § 705, ECF 57 at 96-97, Order ¶¶ 1–3, and two individualized injunctions running to specific Plaintiffs, *id.* ¶¶ 4–5. The United States has filed a protective notice of appeal to preserve appellate jurisdiction while the Solicitor General's authorization decision is pending. ECF 61.[1] Defendants now seek a short stay to preserve the status quo while that decision is made: Under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), a stay of enforcement of ECF 57's preliminary-injunction relief in ECF 57 at 96, Order ¶¶ 1–5, pending the Solicitor General's authorization decision. If authorization issues, Defendants will seek a separate stay pending appeal; if it does not, the requested stay dissolves.

The centerpiece of the likelihood-of-success showing is 8 U.S.C. § 1252(f)(1). That statute strips this Court of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–1232—the very provisions Plaintiffs ask this Court to displace classwide. § 1252(f)(1) is not a rule about what a court calls its order; it is a rule about what the order does, and the bar applies "[r]egardless of the nature of the action or claim,"

---

[1] For Defendants, any determination whether to appeal must be made by the Solicitor General. *See* 28 C.F.R. § 0.20(b); *See also* United States Attorney's Manual § 2-2.121 ("All appeals to the lower appellate courts in cases handled by divisions of the Department and United States Attorneys, and all petitions for certiorari and direct appeals to the Supreme Court must be authorized by the Solicitor General."). In deciding whether to authorize appeal in a case such as this one, the Solicitor General seeks input from and consults with multiple components of the Department of Justice (DOJ), and with the interested components of other federal departments. Thus, determining whether to appeal the Court's Order will require coordination among and consultation with multiple federal offices and agencies. That process will necessarily require careful consideration and will take time, because this Court's ruling impacts the nationwide operations of the immigration courts, the care and custody of all minors in the country designated as unaccompanied alien children, and, potentially, the responsibilities of nation's principal immigration law enforcement agency. To be sure, the Ninth Circuit has authorized such applications for stays pending the Solicitor General's determination regarding appeal. *E.g.*, *Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence*, 639 F.3d 876, 882 (9th Cir. 2010) ("We granted a stay pending appeal to allow the Solicitor General the opportunity to decide which part(s) of the summary judgment order to appeal.").

1

8 U.S.C. § 1252(f)(1). By staying "the 2025 Guidance, including its rescission of prior policies," ECF 57 at 96, Order ¶ 1, and thereby reinstating a refrain-from-enforcement regime classwide, the § 705 stay does what § 1252(f)(1) forbids: It "check[s], hold[s] back, [and] prevent[s]" ICE's operation of §§ 1226, 1229a, and 1231 as to three nationwide classes. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549–54 (2022). Independent likelihood-of-success grounds reinforce the same conclusion: the channeling provisions of § 1252(g), (b)(9), and (a)(5); the absence of Article III standing; the misreading of 8 U.S.C. § 1227(d); and the fail-safe class definitions. The Supreme Court reinforced that bar this Term: Although it reversed the Ninth Circuit in *Al Otro Lado* on other grounds, concurrence confirmed that § 1252(f)(1) cannot be evaded by recasting an injunction as nominally declaratory or APA relief—such an order has "the practical effect of 'restraining' the Government in the same way that an injunction would." *Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at *12 (U.S. June 25, 2026) (Thomas, J., concurring).

The remaining factors point the same way. The Government suffers irreparable injury when it is enjoined nationwide from administering the immigration laws Congress entrusted to it. Plaintiffs face no offsetting injury: The classwide stays merely restore the status quo ante, and a brief stay of the two individual injunctions—which are themselves improper. And the public interest is served by the orderly administration of the immigration laws and by deference to the Court of Appeals while it reviews ECF 57's jurisdictional and classwide rulings. The Motion should be granted.

## II.    BACKGROUND

On May 20, 2026, the Court issued ECF 57, a 97-page Order. The Court preliminarily certified three nationwide classes under Rule 23(b)(2) and granted preliminary relief in part, ECF 57 at 95, but held that 8 U.S.C. § 1252(f)(1) barred the classwide injunction Plaintiffs requested, and it declined to enter that injunction, *id.* at 35 ("The Court is not satisfied that such classwide injunctive relief avoids the prohibition of § 1252(f)(1)."). In its place, the Court entered three nationwide stays under 5 U.S.C. § 705—of the 2025 Guidance, the so-called De Facto Revocation Policy, and the so-called

Blind Removal Policy—and two individual injunctions barring the removal of named plaintiffs without a prima facie determination. *Id.* at 96 ¶¶ 1–5. Defendants have appealed ECF 57 to the Ninth Circuit. *See* ECF 61.

## III.   LEGAL STANDARD

A district court has authority to stay an order pending appeal under Federal Rule of Civil Procedure 62(d), and the same authority is preserved by Federal Rule of Appellate Procedure 8(a)(1). The standard is the familiar four-factor test of *Nken*, 556 U.S. at 434: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are "the most critical." *Id.* When the Government is the movant, the third and fourth factors "merge." *Id.* at 435.[2]

## IV.   ARGUMENT

### A.   Defendants Are Likely to Succeed on the Merits of the Appeal.

On a motion to stay pending appeal, the movant must make a "strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434. Defendants make that showing for each of several independent reasons. Because a court of appeals "may reverse on either jurisdictional or merits grounds a lower court order that granted interim relief," *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840, at *11 (U.S. June 25, 2026) (plurality opinion), each of Defendants' jurisdictional showings—§ 1252(f)(1) and the channeling bars of § 1252(g), (b)(9), and (a)(5)—establishes the requisite likelihood of success.

1.   Section 1252(f)(1) Bars the Classwide § 705 Stays: What Congress

---

[2] A stay pending appeal serves a function the Supreme Court has long recognized: It "does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it." *Nken*, 556 U.S. at 421. Section 705 of the APA itself reflects this same equitable function—one "as old as the judicial system of the nation," *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 17 (1942), and that § 705 was "primarily intended to reflect." *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974).

Forecloses in One Step, Court(s) Cannot Accomplish in Two.

Section 1252(f)(1) strips district courts of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–1232—the very provisions Plaintiffs ask this Court to displace. *Aleman Gonzalez*, 596 U.S. at 549–54; ECF 57 held the bar foreclosed the classwide injunction Plaintiffs sought but entered three nationwide § 705 stays in its place—reasoning that a § 705 stay is not injunctive relief within the statute's reach. ECF 57 at 37 (reasoning that the *AAADC* "descri[ption]" of § 1252(f)(1) as "nothing more or less than a limit on injunctive relief" puts § 705 stays outside the statute's reach).

The standard is the one ECF 57 itself adopted. Quoting *Aleman Gonzalez*, the Court held that "[a]n order that requires officials to take actions, or to refrain from taking actions, that are governed by one of § 1252(f)(1)'s covered provisions . . . 'enjoins or restrains the operation' of that provision," and that "[i]t does not matter that the Court understands its order to be enforcing the law rather than 'restraining the operation of' that law." *Id.* at 36 (quoting *Aleman Gonzalez*, 596 U.S. at 550–51). The statute confirms the point on its face: The bar operates "[r]egardless of the nature of the action or claim." 8 U.S.C. § 1252(f)(1). The inquiry is ***functional***. It asks whether a classwide order makes the Government take or refrain from actions under §§ 1221–1232—not whether the order is captioned an injunction, a stay, or a vacatur. A § 705 stay that produces the forbidden effect is barred no less than an injunction that produces it. *Cummings v. Missouri*, 71 U.S. 277, 325 (1866) ("[W]hat cannot be done directly cannot be done indirectly."); *accord Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023).

The Supreme Court reaffirmed that anti-evasion principle this Term, enforcing an express immigration jurisdiction bar by its "plain meaning"—which is "very broad"—and holding that such a bar cannot be circumvented "by creative pleading or clever lawyering." *Mullin v. Doe*, 2026 WL 1825840, at *7, *10. Section 1252(f)(1) is no different: A court does not place its order outside the bar by captioning it a § 705 "stay" when the order restrains the operation of §§ 1221–1232. Justice Thomas made the same point as to § 1252(f)(1) itself this Term. Concurring in *Al Otro Lado*, he explained that the statute

4

"strips lower courts of 'jurisdiction or authority' to 'enjoin or restrain the operation of'" the covered provisions "on a classwide basis," and that a court does not escape the bar by recasting an injunction as "nominally declaratory" or APA relief. *Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at \*11–13 (U.S. June 25, 2026) (Thomas, J., concurring). Previously, Justice Gorsuch also made this plain in another concurrence, noting that a district court cannot "sidestep § 1252(f)(1)" by "purport[ing] to 'vacate'" agency action under § 706(2) of the APA "[i]nstead of issuing an injunction"—such relief is "essentially an injunction imitating a vacatur order." *United States v. Texas*, 599 U.S. 670, 690, 693 (2023) (Gorsuch, J., concurring in the judgment, joined by Thomas and Barrett, J.J.). Because "there is little practical difference between injunctive and declaratory relief," such an order has "the practical effect of 'restraining' the Government in the same way that an injunction would"—the Government "conform[s] its current conduct to what a court has declared to be the law, just as it would under an injunction." *Mullin v. Al Otro Lado*, 2026 WL 1825741, at \*12 (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982)); Ex. A (Hearing Tr.) (a true and correct copy of the February 10, 2026 hearing transcript) at 85:7–15 (Defendants relying on *Grace Brethren Church*, 457 U.S. at 408). A § 706 order that "compel[s]" agency action likewise "require[s] officials to take actions that (in the Government's view) are not required by" the covered provisions, "contrary to § 1252(f)(1)." *Id.* at \*13. ECF 57's § 705 stays are barred more plainly still: They do not merely declare past conduct unlawful but affirmatively reinstate an enforcement-forbearance regime and direct DHS's future conduct toward three nationwide classes. *Aleman Gonzalez*, 596 U.S. at 550.

The carve-out also fails on the statute's text. Section 1252(f)(1) withdraws jurisdiction to "enjoin or restrain" the operation of the covered provisions—two verbs, in the disjunctive, and "restrain" is the broader. Indeed, as the Supreme Court held there, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "'inhibit' particular actions," or to "stop (or perhaps compel)" action. 596 U.S. at 549 (quoting, e.g., 5 Oxford English Dictionary 756 (2d ed. 1989)); *accord* ECF 57 at

35-36 (quoting *Aleman Gonzalez*, 596 U.S. at 550).

By that measure, the Court's stays are barred under § 1252(f)(1). The order does not abstractly suspend the 2025 Guidance; it "stays the 2025 Guidance, including its rescission of prior policies." ECF 57, Order ¶ 1. Those "prior policies" are the 2011 Policy and the 2021 Directive, and ECF 57's own findings establish what they command. The 2011 Policy made it "against ICE policy to initiate removal proceedings against" known crime victims and called for "release from detention" and "a stay of removal." ECF 57 at 11. The 2021 Directive in fact required ICE to "refrain from taking civil enforcement action against" applicants for victim-based benefits, to defer enforcement pending USCIS adjudication, and to issue stays of removal to certain noncitizens with final orders. *Id.* at 11–12. By staying the rescission of those policies and reinstating them as to three certified nationwide classes, the order compels DHS to refrain from detaining class members under 8 U.S.C. § 1226, from initiating and conducting their removal proceedings under § 1229a, and from executing their removal orders under § 1231. That is precisely an order compelling officials "to refrain from taking actions . . . governed by" the covered provisions, and it "restrains the operation" of §§ 1226, 1229a, and 1231 exactly as ECF 57 said such an order does. ECF 57 at 36; *cf. Nken*, 556 U.S. at 428 ("When a court employs 'the extraordinary remedy of injunction,' it directs the conduct of a party, and does so with the backing of its full coercive powers.").

Neither the § 705 label nor the authorities ECF 57 invoked supplies a carve-out. ECF 57 leaned on *Reno v. American-Arab Anti-Discrimination Committee (AAADC)*, which described § 1252(f)(1) as "nothing more or less than a limit on injunctive relief." 525 U.S. 471, 481 (1999); *see* ECF 57 at 29. That description defeats the carve-out rather than creating it: *AAADC* holds in the same breath that the statute "prohibits federal courts from granting classwide injunctive relief against ***the operation of***" the covered provisions, *id.* (emphasis added), and a § 705 stay that operates as a classwide injunction is injunctive relief. *AAADC*, 525 U.S. at 481–82. A § 705 stay that orders DHS to refrain from initiating proceedings, charging, detaining, and executing removal—the very operations §§ 1226,

6

1229a, and 1231 carry out—is paradigmatically a "restrain[t]" on the statute's operation, ECF 57 paragraphs 1 through 3 (staying the 2025 Guidance, the so-called De Facto Revocation Policy, and the Blind Removal Policy), no less than an order labeled "injunction" would be. *Aleman Gonzalez* read "enjoin or restrain" in the disjunctive precisely to defeat this kind of label-based escape. *Id.*

ECF 57 also read *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 990, 995-96 (9th Cir. 2025) and *National TPS Alliance v. Noem*, 166 F.4th 739, 767 (9th Cir. 2026) to place any § 705 relief beyond the statute's reach. *See, e.g.*, ECF 57 at 37, 93. But those decisions exempt § 705 set-aside for a reason that does not hold here. A set-aside escapes § 1252(f)(1), the Ninth Circuit reasoned, because "by its plain terms" it "does not affect the government's future actions"; it "merely declares that a past agency action was unlawful and returns the world to the status quo," and so "does not enjoin or restrain" the agency "from doing anything." *National TPS Alliance*, 166 F.4th at 760. ECF 57's stay fails that test at every step. It does not return the world to a neutral status quo; it affirmatively reinstates a refrain-from-enforcement regime from 2021, dictates the Government's future conduct toward three certified classes, and restrains DHS from detaining, charging, and removing them. And *National TPS Alliance* arose under the Temporary Protected Status statute—not the detention-and-removal provisions §§ 1221–1232 that § 1252(f)(1) singles out—where the Ninth Circuit expressly "acknowledge[d] that there are difficult and unanswered questions related to the limits of APA relief under" *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). *National TPS Alliance*, 166 F.4th at 767. ECF 57 quoted that very concession, ECF 57 at 93, but entered the sweeping classwide relief anyway. An order that flags the dispositive question as unsettled yet grants the relief regardless only underscores Defendants' likelihood of success. The Supreme Court has previously signaled the point in the same case. *See, e.g.*, *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). This Term the Supreme Court reversed materially identical § 705 relief postponing TPS terminations, quoting the observation that "[s]ometimes Congress decides that the political process is the proper forum for remedying improper conduct." *Mullin v.*

7

*Doe*, 2026 WL 1825840, at \*10 (quoting *National TPS Alliance v. Noem*, 169 F.4th 796, 807 (9th Cir. 2026) (Bumatay, J., dissenting from denial of rehearing en banc, in the same *National TPS Alliance* case that undergirds the Court's analysis in ECF 57)).

The First Circuit's recent treatment of an analogous district-court ruling confirms the point. In *D.V.D. v. U.S. Department of Homeland Security*, the district court tried to evade § 1252(f)(1) by recharacterizing forbidden classwide injunctive relief as a universal vacatur and classwide declaratory judgment of the Department's Guidance Regarding Third Country Removals. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 164–65 (D. Mass. 2026). The First Circuit promptly *stayed* that order pending appeal— just as the Supreme Court had previously stayed the district court's preliminary injunction in the same case. *Dep't of Homeland Sec. v. D.V.D.*, No. 26-1212 (1st Cir. Mar. 16, 2026) (emergency motion for stay pending appeal granted); *see also id.*, 145 S. Ct. 2627 (2025) (staying a classwide preliminary injunction barring third-country removals pending appeal). Like the Constitution, the INA "deals with substance, not shadows." *Students for Fair Admissions*, 600 U.S. at 230; *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n*, 967 F.2d 683, 684 (1st Cir. 1992) (a declaratory judgment of unlawfulness "is equivalent to an injunction" (relying on, among other cases, *Grace Brethren Church*, 457 U.S. at 411 (1982))). The same "substance, not shadows" principle the INA imposes here forecloses the district court's relabeling: Just as the *D.V.D.* court could not escape § 1252(f)(1) by calling its order a "vacatur" instead of an "injunction," ECF 57 cannot escape § 1252(f)(1) by calling its order a "stay" under 5 U.S.C. § 705.

Nor can the order be salvaged because a "stay" is a non-coercive remedy. *Nken* construed § 1252(f)(1)'s neighboring subsection, and it distinguished a stay from an injunction precisely by their operation: An injunction "is a means by which a court tells someone what to do or not to do," directing "the conduct of a party, and . . . with the backing of its full coercive powers," "operating in personam," whereas a stay, "instead of directing the conduct of a particular actor, . . . operates upon the judicial proceeding itself." *Nken*, 556 U.S. at 428. That distinction compels against ECF 57's § 705 stay. The § 705

stay does not "operate[] upon [a] judicial proceeding"—it halts no proceeding. It reaches outside the courthouse, reinstates a rescinded enforcement-refraining regime, and directs DHS to administer that regime toward three nationwide classes.

It is, in *Nken*'s own words, an order that "tells someone what to do or not to do" and "governs that party's conduct"—an injunction in substance, whatever its caption. *Id.* at 428. Even more recently, the Supreme Court has been abundantly clear that an order with the "practical effect" of granting or denying an injunction "should be treated as such." *Abbott v. Perez*, 585 U.S. 579, 594 (2018) ("[T]he District Court did not *call* its orders 'injunctions'—in fact, it disclaimed the term—but the label attached to an order is not dispositive. We have previously made clear that where an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction."); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) (holding that an order that did not "in terms" refuse an injunction but "had the practical effect of doing so" was appealable as such). Nor is a § 705 stay an APA-specific remedy unmoored from equity that a bar on equitable relief would somehow miss: § 705 codified the pre-existing equitable power to stay enforcement pending review—a power "as old as the judicial system of the nation," *Scripps-Howard Radio*, 316 U.S. at 17, and one § 705 was "primarily intended to reflect." *Sampson*, 415 U.S. at 68 n.15. A remedy of that equitable pedigree, operating classwide to restrain the Government's enforcement of §§ 1221–1232, is the heartland of what § 1252(f)(1) forbids.

Plaintiffs cannot retreat to declaratory relief to evade the bar. The Supreme Court has long held that declaratory and injunctive relief have "virtually identical" practical effect when directed at executive enforcement of contested statutes. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."); *CASA*, 606 U.S. at 844 (stating the same, quoting *Doran*, 422 U.S. at 931); Hearing Tr. at 84:14-85:20 (Defendants arguing at the hearing that § 1252(f)(1) was enacted against a settled equitable baseline—reflected in *Doran v. Salem*

*Inn*, *Samuels v. Mackell*, and *Grace Brethren Church*'s reading of the Tax Injunction Act—under which declaratory and injunctive relief carry "virtually identical" practical effect when directed at executive enforcement, so that a § 705 stay, "even if you set aside the injunctive part," "still operates to constrain or restrain the Government's application of" the covered provisions). The substance-over-label principle is dispositive: A § 705 stay that restrains the operation of §§ 1226, 1229a, and 1231 as to three certified classes is barred by § 1252(f)(1) for the same reason a classwide injunction would be. A complete appellate review of ECF 57 is likely to so hold.

What Congress forecloses in one step, a court cannot accomplish in two. *Cummings*, 71 U.S. at 325 ("[W]hat cannot be done directly cannot be done indirectly."). To hold otherwise would invite the very evasion this case illustrates: A court could forbid a classwide injunction in name, then enter a classwide stay that invites every class member to return for a follow-on injunction—accomplishing in two steps what the statute forecloses in one.[3] The bar turns on what an order does, not how it is captioned—whether a court reaches the forbidden result directly or through a two-step maneuver; like the Constitution, the immigration laws deal "with substance, not shadows." *Students for Fair Admissions*, 600 U.S. at 230; *Grace Brethren Church*, 457 U.S. at 408; *San Juan Cellular*, 967 F.2d at 684. Defendants are likely to prevail on appeal in showing that the classwide § 705 stays exceed the Court's jurisdiction.

That is more than a "strong showing" under *Nken*. On a likelihood-of-success inquiry, the question is whether Defendants' position has the merit a reasonable jurist would credit. ECF 57's reasoning collides head-on with *Aleman Gonzalez*'s functional test, with the statute's express "[r]egardless of the nature of the action" preface, and with

---

[3] That is precisely the maneuver in *Maldonado Bautista v. Noem*: The court there entered a final judgment "declar[ing]" the class's custody status and "vacat[ing]" the challenged DHS policy rather than enjoining it, No. 25-01873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), and then—two months later—"GRANT[ed]" the class's "Motion to Enforce Judgment" and ordered classwide compliance, *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1032 (C.D. Cal. 2026).

*Nken*'s own definition of an injunction. The Government's likelihood of success on this issue alone is sufficient to warrant a stay.

2. The Jurisdiction-Stripping Provisions of § 1252(g), (b)(9), and (a)(5) Channel Plaintiffs' Claims Out of District Court.

Defendants are also likely to prevail on the threshold argument that this Court lacks subject-matter jurisdiction. Plaintiffs' three challenged "policies" each target the discrete enforcement decisions that 8 U.S.C. § 1252(g) protects from district-court review—the decisions to commence proceedings, adjudicate cases, and execute removal orders. *AAADC*, 525 U.S. at 482, 485 n.9 (§ 1252(g) was "directed against" precisely "attempts to impose judicial constraints upon prosecutorial discretion"). Indeed, the Ninth Circuit has made clear that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it." *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (*quoting Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)).

Section 1252(b)(9)'s zipper clause additionally channels any claim "arising from" removal proceedings to the court of appeals on a petition for review. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031, 1035 (9th Cir. 2016) (making clear that § 1252(b)(9) is "breathtaking" in scope and "vise-like" in grip and therefore "swallows up virtually all claims that are tied to removal proceedings," including "policies-and-practices challenges"). And § 1252(a)(5) makes the petition for review "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Channeling is not a denial of any forum; it is the identification of the right one—§ 1252(a)(5) leaves Plaintiffs their remedy on a petition for review in the court of appeals, just not in the district court. A pending U visa petition or T visa application does not remove a claim from these bars. *Velarde-Flores v. Whitaker*, 750 F. App'x 606, 607 (9th Cir. 2019) (holding that a petition that "arises from the government's decision to execute valid orders of removal . . . facially falls within the statutory jurisdictional bar").

ECF 57 read § 1252(g) narrowly and concluded that Plaintiffs' claims arise not from the three protected decisions but from a "policy" of disregarding deferred action. That

reading cannot be reconciled with *J.E.F.M.*, which holds that §§ 1252(a)(5) and (b)(9) "channel review of all claims, including policies-and-practices challenges, through the PFR process whenever they 'arise from' removal proceedings," *J.E.F.M.*, 837 F.3d at 1035. The Ninth Circuit applies the same logic to ICE's timing decisions. *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g), which removes our jurisdiction over decisions to commence proceedings" to include not only a decision in an individual case whether to commence, but also when to commence, a proceeding." (cleaned up)). The Government's likelihood of prevailing on the channeling argument is therefore strong. To be sure, channeling is not a denial of any forum but the wrong forum: § 1252(a)(5) makes the petition for review the sole and exclusive means of review, and § 1252(a)(2)(D) preserves constitutional and legal questions for the court of appeals, so the bar leaves plaintiffs a remedy—just not in the district court. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) (making clear that § 1252(b)(9) "is a judicial channeling provision, not a claim-barring one").

The Court's own factual findings underscore why Defendants are likely to prevail on the channeling holding on appeal. ECF 57's narrower § 1252(g) reading rests on the premise that Plaintiffs are not challenging ICE's commence- and execute-removal decisions, but only an alleged policy of disregarding deferred action. That premise cannot be squared with the Court's own characterization of the relief it preliminarily reinstated. ECF 57 found that the 2011 Policy made it "against ICE policy to initiate removal proceedings against" known crime victims and called for "release from detention" and "a stay of removal," and that the 2021 Directive required ICE to "refrain from taking civil enforcement action against" victim-based applicants, to defer enforcement pending USCIS adjudication, and to issue stays of removal. ECF 57 at 11–12. The Court summarized that "the 2011 Policy and the 2021 Directive established that ICE policy was to refrain from immigration enforcement against persons with pending petitions for victim-based benefits, including by releasing them from detention . . . and granting administrative stays of removal." *Id.* at 12. By staying the rescission of those policies, the

12

preliminary injunction commands ICE to refrain classwide from the very decisions § 1252(g) protects: to commence proceedings and to execute removal orders. Plaintiffs therefore cannot maintain that their challenge is not "about" commence-and-execute when the relief they obtained directly forbids those decisions classwide. The Supreme Court confirmed this Term that immigration jurisdiction bars are read for their text, not narrowed to preserve review—their plain meaning "very clearly overcomes the general presumption in favor of judicial review"—and a challenger cannot evade such a bar by recasting subsidiary decisions, which "merge into the final agency action" and are equally unreviewable. *Mullin v. Doe*, 2026 WL 1825840, at \*8, \*10. That brings Plaintiffs' claims squarely within § 1252(g)'s bar on review of decisions to "commence proceedings, adjudicate cases, or execute removal orders," and within § 1252(b)(9)'s zipper clause. *AAADC*, 525 U.S. at 485 n.9 (§ 1252(g) was "directed against" precisely "attempts to impose judicial constraints upon prosecutorial discretion"); *J.E.F.M.*, 837 F.3d at 1035.

That conclusion extends to the individualized relief ECF 57 ordered as to three named Plaintiffs. ECF 57's preliminary relief has two distinct components: nationwide classwide § 705 stays in paragraphs 1 through 3, and three individualized prohibitory injunctions in paragraphs 4 and 5 directing Defendants to permit the re-entry of Lupe A., Carmen F., and Yessenia Ruano and—as to Carmen F. and Yessenia Ruano—conditioning future removal on a prima-facie eligibility determination by USCIS. ECF 57 at 96. Whatever else may be said about the classwide § 705 stays, the individualized injunctions in paragraphs 4 and 5 are squarely the kind of orders §§ 1252(g), 1252(a)(5), and 1252(b)(9) place beyond this Court's jurisdiction, independent of § 1252(f)(1).

The Ninth Circuit's most recent treatment of § 1252(g) resolves the point. In *Ibarra-Perez v. United States*, the court held that § 1252(g) did *not* bar a suit because the plaintiff "challenge[d] ICE's separate decision about where to send him," not the "when" or "whether" of executing any removal order. 154 F.4th 989, 997 (9th Cir. 2025). *Ibarra-Perez* expressly preserved *Rauda v. Jennings*, reiterating that "[t]he discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both

13

are covered by the statute." *Id.* at 999 (quoting *Rauda*, 55 F.4th at 777). ECF 57, Order ¶ 4 enjoins Defendants from preventing Lupe A.'s "re-entry . . . in the same immigration status she had prior to her detention and removal," ECF 57 at 96—an order that does nothing less than direct Defendants to reverse the execution of her removal order. ECF 57, Order ¶ 5 does the same for Carmen F. and Yessenia Ruano and goes further, enjoining Defendants from "removing Carmen F. and Yessenia Ruano without a prima facie determination," *id.*—an order that controls *when* ICE may execute their removal orders. Neither order is about "where" to send anyone. Both lie squarely in the "when" and "whether" lanes that *Ibarra-Perez* confirmed § 1252(g) shields from district-court review. The very statute the Court read narrowly to admit the classwide claims, forbid the individualized injunctions ECF 57 entered.

Sections 1252(a)(5) and 1252(b)(9) channel the same individual claims to the petition-for-review process. Lupe A., Carmen F., and Yessenia Ruano were all subject to a final order of removal at the time ECF 57 entered. Relief ordering Defendants to restore the status quo ante those removal orders, or to defer their execution pending a USCIS prima-facie determination, is direct intervention into "an order of removal"—review of which Congress made "the sole and exclusive means" available only in the court of appeals on a petition for review. 8 U.S.C. § 1252(a)(5). The "zipper clause" channels the same way: Any claim "arising from" the execution of a removal order goes to the PFR process, not to this Court. *Id.* § 1252(b)(9); *J.E.F.M.*, 837 F.3d at 1031, 1035 (channeling reaches even policies-and-practices challenges that arise from removal proceedings). The motion-to-reopen-plus-stay procedure that exists for noncitizens who wish to halt or undo an executed removal order is the prescribed mechanism. *Rauda*, 55 F.4th at 777 ("[Petitioner] Matias has taken full advantage of his statutory rights and will continue to have access to the process guaranteed to him under the statute even if he is removed." (*citing Nken*, 556 U.S. at 424). ECF 57 paragraphs 4 and 5 substitute a district-court injunction for that channel and, in doing so, exceed the Court's subject-matter jurisdiction.

3.    Plaintiffs Lack Article III Standing.

14

Defendants are also likely to prevail on the appeal's standing challenge. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The individual Plaintiffs cannot show redressable, imminent injury. Those in active proceedings allege at most a "legal consequence[s] under the law." *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 241 F. Supp. 2d 1111, 1113-14 (C.D. Cal. 2003). Released Plaintiffs face only the "possibility" of re-detention, insufficient under *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013), which held that "threatened injury must be certainly impending to constitute injury in fact," and "allegations of possible future injury" are not sufficient; and already-removed Plaintiffs lack any live controversy here—the remedy is a motion to reopen, *Rauda*, 55 F.4th at 777.

The organizational Plaintiffs cannot "spend [their] way into standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). The 2025 Guidance regulates noncitizens, not the organizations, and their alleged diversion-of-resources injuries are voluntary undertakings indistinguishable from the theory the Supreme Court rejected in *Hippocratic Medicine*. Associational standing fails for lack of identified injured members and individualized proof. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (holding that associational standing requires that "neither the claim asserted nor the relief requested requires the participation in the lawsuit of . . . the individual members"). Named plaintiffs who cannot show a "real and immediate threat" of future harm cannot anchor a class for prospective equitable relief. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041, 1044–45 (9th Cir. 1999) (en banc). The standing defects are substantial, and they too support a strong likelihood of reversal.

4.     <u>Plaintiffs' "Blind Removal" Theory Misreads 8 U.S.C. § 1227(d).</u>

ECF 57 read 8 U.S.C. § 1227(d)(1) to impose a "non-discretionary" duty to obtain a prima-facie determination from USCIS before executing a removal order, but § 1227(d)(1) is permissive: It provides that the Secretary "may grant" a discretionary administrative stay where a prima-facie case is shown. A. Scalia & B. Garner, Reading

15

Law: The Interpretation of Legal Texts 112–15 (2012) (Canon 11. Mandatory/Permissive Canon: "Mandatory words impose a duty; permissive words grant discretion."); *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). It imposes nothing on the Secretary's authority to deny a stay or to execute a removal order; subsection (d)(2) contemplates "[t]he denial of a request for an administrative stay of removal." 8 U.S.C. § 1227(d)(2). A pending victim-based petition therefore leaves ICE's removal authority intact.

ECF 57 borrowed its "if-then" construction from a single C.D. Cal. district-court decision, *Sanchez Jimenez v. Department of Homeland Security*, No. 2:22-cv-00967, 2022 WL 19410308, at *3 (C.D. Cal. Nov. 14, 2022), which reasoned that the "If" clause of § 1227(d)(1) makes "the Secretary's prima facie determination . . . a non-discretionary pre-requisite" to action on a stay request. ECF 57 at 86 (quoting *Sanchez Jimenez*, 2022 WL 19410308, at *3). Defendants are likely to show on appeal that following *Sanchez Jimenez* was error. It is a non-binding district-court outlier, and its reading collapses on contact with the statutory text. Section 1227(d)(1) conditions only the Secretary's discretion to *grant* a stay; it imposes no duty to make a prima-facie determination before denying a stay or executing a removal order, and it says nothing about timing. Put differently, § 1227(d)(1) makes a prima-facie determination a condition precedent to *granting* an administrative stay; it does not make prima-facie determination a condition precedent to *removal*. The Court read a pre-removal adjudication duty into the statute where none exists. Scalia & Garner 93–100 (Canon 8. Omitted-Case Canon: "Nothing is to be added to what the text states or reasonably implies . . . ."); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up)); *Iselin v. United States*, 270 U.S. 245, 251 (1926) (Brandeis, J.) ("To supply omissions transcends the judicial function."). That converts the mere filing of a victim-based petition into a de facto stay of removal—exactly the result Congress's implementing regulation forecloses. 8 C.F.R.

16

§ 214.14(c)(1)(ii) ("The filing of a petition for U-1 nonimmigrant status has no effect on ICE's authority to execute a final order . . . ."); *Sankara v. Barr*, No. 17-2257, 2019 WL 4943755, at *2 (2d Cir. May 8, 2019) ("A pending U visa application does not affect the agency's ability to execute a final order of removal . . . ."); *Torres-Tristan v. Holder*, 656 F.3d 653, 663 n.10 (7th Cir. 2011) ("[T]he pendency of [a U-visa application] would not affect the execution of a standing removal order."). Every other authority points the other way: *Garcia v. Noem*, No. 25-06008, 2025 WL 3237502, at *4 (W.D. Wash. Nov. 20, 2025), squarely rejects the *Sanchez Jimenez* reading on its face, observing that "[i]t is unclear how *Jimenez* reached the conclusion that a prima facie determination is required prior to removal" and that "[a]bsent from § 1227(d)(1) is any language stating that the filing of a T or U visa application grants an automatic stay of removal until the Secretary issues a prima facie determination." *Id.*

Plaintiffs cite the September 24, 2009 memorandum of David J. Venturella, Acting Director, ICE Office of Detention and Removal Operations (ICE Policy 11005.1), as evidence that "Defendants' own interpretation" of § 1227(d) requires a mandatory pre-removal determination. *See* ECF 31 at 37. It does no such work. The 2009 directive's first operative sentence describes the statutory authority Congress conferred in § 1227(d)—then codified at INA § 237(d)—as discretion to grant a stay, not as a mandatory pre-removal duty: "The Secretary of the Department of Homeland Security and her delegates *have discretion to* grant a Stay of an Administrative Final Order of Removal under section 241(c)(2) of the INA to an alien with a pending petition for a U-visa if the alien establishes prima facie eligibility for the benefit. *See* INA § 237(d)." ECF 31-8 at "Page 40 of 118" (emphasis added). That is the agency's contemporaneous reading of § 1227(d) stay authority—issued less than a year after Congress enacted the TVPRA of 2008—and it tracks the statute's permissive "may grant" text.

Plaintiffs will likely point to the 2009 directive's procedural language requiring then Office of Detention and Removal Operations (DRO) (now known as Enforcement and Removal Operations (ERO)), "Upon receiving a Stay request," to "contact its local [ICE

17

counsel] to request a prima facie determination from USCIS . . ." and not to "deport or remove the alien" during a five-business-day determination window. *Id.* at "Page 41 of 118." Three responses dispose of that gambit. *First*, the procedural duty is intra-agency and is triggered only by an affirmative *stay request*—not by execution of a removal order. The 2009 directive does not impose, and has never been read to impose, any duty to obtain a prima-facie determination before removing a U visa petitioner who has not affirmatively requested a stay. *Second*, the underlying authority remains discretionary even after a USCIS prima-facie finding: "serious adverse factors"—national-security concerns, human-rights violations, immigration fraud, significant criminal history, or public-safety concerns—still permit an ICE Field Office Director to deny the stay. *Id.* And *third*—dispositively—the 2009 directive closes with an express no-rights-conferred disclaimer: "This document provides only internal Immigration and Customs Enforcement guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." ECF 31-8 at "Page 42 of 118." The directive thus cannot be the source of any statutory pre-removal duty under § 1227(d). *Sanchez Jimenez* and ECF 57 imported a non-discretionary pre-requisite into the statutory text; the 2009 directive—the one document Plaintiffs invoke as "Defendants' own interpretation"—expressly disclaims that work.

The same admission appears in ECF 57's own findings as to the 2021 Directive—the more proximate of the two prior policies Plaintiffs invoke. The Court found that the 2021 Directive required deferral of enforcement only "absent exceptional circumstances," ECF 57 at 11; that "petitioners with final orders of removal 'should generally be issued a stay of removal,'" *id.* at 12 (quoting 2021 Directive p. 8, ¶ 5.4(a)) (emphasis added); and that for petitioners in pending removal proceedings, ICE officers were to inform ICE counsel "so that [ICE counsel] can consider whether to stay the removal proceedings," *id.* The Court further quoted the 2025 Guidance's characterization that the prior policies "generally required" ICE officers, "absent exceptional or exigent circumstances," to refrain from enforcement. *Id.* (quoting 2025 Guidance at 2). And the Court's own

18

summary list of the 2021 Directive's tools includes "granting administrative stays of removal"—a remedy that presupposes removal absent a stay. *Id.* These judicial findings confirm that the 2021 Directive itself was a discretionary, case-by-case enforcement framework—not a categorical no-removal rule—and that the agency has consistently treated the § 1227(d) stay authority as discretionary across every iteration of its victim-based-enforcement guidance. The "non-discretionary pre-requisite" theory *Sanchez Jimenez* and ECF 57 attribute to the statute cannot be reconciled with either the 2009 directive's text or ECF 57's own findings about the 2021 Directive.

> 5.   Plaintiffs' Class Definitions Are Fail-Safe, and a Rule 23(b)(2) Class Cannot Be Certified to Deliver Relief that § 1252(f)(1) Forecloses.

Defendants are also likely to prevail on the appeal's challenge to class certification. Each of Plaintiffs' three class definitions bakes the alleged violation into the class itself, rendering the class "fail-safe"—membership cannot be determined without resolving the merits. The Deferred Action Class is defined to include only those whom "ICE detains, seeks to detain, or removes without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status." ECF 1 ¶ 170. The Stay of Removal Class is defined as those who have "requested a stay of a final removal order prior to enforcement" and whom ICE removed without first making a prima-facie determination. *Id.* The Pending Petition Class hinges on whether "ICE detains or seeks to detain" a petitioner. *Id.* A class drawn that way cannot be certified: Its membership cannot be ascertained without first deciding the merits, so the Court could not say who is bound until the case is over. The definitions also defeat Rule 23(a)(2) commonality, because each individual putative member's situation requires a case-by-case review of criminal history, length of presence, public-safety factors, and the bona fide determination revocation criteria. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). More fundamentally, § 1252(f)(1) independently forecloses a Rule

23(b)(2) class whose objective is classwide relief against the operation of §§ 1226, 1229a, and 1231. A Rule 23(b)(2) class exists to deliver a single, indivisible injunction, and § 1252(f)(1) strips the Court of authority to enter the very injunction such a class is certified to obtain. Certification cannot rest on the § 705-stay theory instead, because that stay is itself barred by § 1252(f)(1) for the reasons set forth above. The Ninth Circuit is likely to vacate the class certification on either or both of these independent grounds.

> 6. <u>The Individual Re-Entry Injunctions, ECF 57, Order ¶¶ 4–5, Are Independently Improper.</u>

The Court's two individual injunctions are equally likely to be set aside. ECF 57 ¶¶ 4–5 order Defendants to allow three already-removed aliens—Lupe A., Carmen F., and Yessenia Ruano—to return to the United States "in the same immigration status" they held before removal, and bar removing Carmen F. and Ruano again absent a prima facie visa determination. That relief exceeds the Court's jurisdiction. Each plaintiff was subject to a final order of removal that has been executed, and an order compelling re-admission undoes the "execut[ion of] removal orders" that § 1252(g) shields from district-court review and that §§ 1252(a)(5) and (b)(9) channel to the court of appeals. *See supra* § IV.A.2 (detailing that argument). No statute empowers a district court to command the Executive to return a removed alien to the country. Indeed, the Court itself described the requested relief as "basically ordering the Government to find and return them back to the U.S." Hearing Tr. at 81:1–2. The operational burden of that command is extraordinary, and as to the certified Stay of Removal Class, it is classwide: Returning a removed alien requires ICE to locate the individual in foreign lands, confirm the alien's desire to return, coordinate international travel and parole paperwork with other agencies, obtain the necessary supervisory authority, and conduct security vetting—an undertaking ICE does not perform in the ordinary course of business—and the relief cannot be undone if the Court's order is reversed. And that burden is not hypothetical: Plaintiffs' ask in ECF 65 already shows, for starters, the complications surrounding even a single noncitizen's return from outside the United States.

The injunctions are also extraordinary mandatory injunctions that alter, rather than preserve, the status quo. "[T]he very purpose of a preliminary injunction . . . is to preserve the status quo and the rights of the parties until a final judgment issues . . . ." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (citing *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.")). When Plaintiffs moved for a preliminary injunction, the three subject noncitizens had already been removed; an order compelling their return alters that status quo and commands affirmative Executive action. Such mandatory injunctions are particularly disfavored and may issue only where the law and facts **clearly favor** the movant. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).[4]

The claims underlying the injunctions also fail, so the requisite likelihood of success is absent. The Court grounded Lupe A.'s injunction on procedural due process and the *Accardi* doctrine; however, deferred action is a discretionary and revocable exercise of prosecutorial discretion—not an entitlement protected by the Due Process Clause. Therefore, because Lupe A. lacked a constitutionally protected liberty or property interest in the continuation of discretionary deferred action, *see* 8 C.F.R. § 274a.12(c)(14), the Due

---

[4] Equitable analysis must be even-handed, and it must hold the moving party to its burden. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). That "clear showing" burden rests on Plaintiffs, not Defendants. The Court's analysis appears to have run the other way. It declined to consider Defendants' arguments because Defendants had raised them in footnotes, deeming them not "fairly raised" and disregarding them—though Defendants footnoted the points to preserve them. ECF 57 n.3. Yet when Plaintiffs' declarations drew a Federal Rule of Evidence 602 and hearsay objection, the Court invoked "the more liberal evidentiary standards for a preliminary injunction" to admit them. ECF 57 at 76. Relaxing the evidentiary standard for the very party that bears the burden of a clear showing—while exacting strict formalism from the party that does not—inverts the equitable inquiry. *See Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (rejecting a more lenient standard for equitable relief and reaffirming that "a plaintiff seeking a preliminary injunction must make a clear showing" of the traditional four factors).

Process Clause imposed no procedural requirements before DHS terminated that exercise of prosecutorial discretion. The *Accardi* claim flounders as well for want of any binding internal norm that constrained DHS's discretion. The Court grounded the Carmen F.-and-Ruano injunction on 8 U.S.C. § 1227(d)(1), but that provision is permissive. *See supra* § IV.A.4. The Court's presumption of irreparable harm from a "constitutional right" collapses with the due-process claims it rests on. The hardships the Court invoked, however sympathetic, are consequences of the lawful execution of final removal orders, not a warrant for an unauthorized injunction undoing them. ECF 57 ¶¶ 4–5 are therefore likely to be vacated on appeal.

## B.      Defendants Will Be Irreparably Injured Absent a Stay.

On the second *Nken* factor, Defendants will be irreparably injured if ECF 57 is not stayed pending appeal. The injury falls in three reinforcing categories.

*First*, the sovereign injury. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury . . . ." *CASA*, 606 U.S. at 860–61 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up)). The same is true even more so where, as here, a federal court enjoins the United States from administering the immigration laws Congress assigned to the Executive. ECF 57's three nationwide § 705 stays direct DHS to refrain from initiating, conducting, and executing removal proceedings against members of three certified nationwide classes—classes that, by Plaintiffs' own framing, could number in the hundreds of thousands. ECF 23 at 2, 11. The injury is intrinsic to the order and cannot be remedied if the order is later reversed: The deferred-enforcement window the stay creates cannot be reversed. The injunction also forces ICE into an untenable bind: detain a class member as the Laken Riley Act may require and risk violating ECF 57—or comply with ECF 57 and risk liability for failing to detain. *See* 8 U.S.C. § 1226(c)(1)(E) (providing that the Attorney General "shall take into custody any alien" who is charged with or convicted of certain qualifying crimes).The operational dimensions of that injury are set out in the concurrently filed declaration of Acting Deputy

22

Assistant Director Sam Olson: ICE must reinstate a rescinded victim-centered enforcement regime without the infrastructure that once supported it; screen for claimed U visa petitions, T visa applications, and VAWA petitions before any enforcement action (issuing a detainer or Notice to Appear, arresting, detaining, removing, or even stopping or questioning an alien for a civil immigration violation) is taken nationwide; defer the removal of a growing population of aliens who hold final orders of removal, and route discretionary decisions through multiple levels of supervisory approval, including headquarters-level approval—burdens that fall on a class numbering in the hundreds of thousands and that cannot be recouped once the stay expires. Olson Decl. ¶¶ 8–14. In ICE's words, the order "creates categories of illegal aliens who cannot be removed, even those with final orders of removal, thus clogging the federal removal process," *id.* ¶ 8, and applying it "across a class of this size is not workable within ordinary operational timeframes and diverts ICE's resources from other enforcement priorities," *id.* ¶ 14.

*Second*, and dispositively, an order entered without jurisdiction is itself an irreparable injury. Defendants have demonstrated above that ECF 57's § 705 stays are barred by § 1252(f)(1) and that the Court lacked subject-matter jurisdiction under § 1252(g), (b)(9), and (a)(5). To require the Government to comply with an order entered without statutory authority—classwide—inflicts a separation-of-powers injury Congress already determined the Executive should not be made to bear. Section 1252(f)(1) does not merely cap relief; it withholds "jurisdiction or authority" to enter it in the first place. 8 U.S.C. § 1252(f)(1). The Government suffers a discrete and irreparable injury every day it is held to an order Congress forbade.

*Third*, the order's structural effects compound the injury. ECF 57 is in substance a universal injunction dressed as a class remedy—its three nationwide § 705 stays run to classes "not geographically limited," ECF 57 at 94, and so reach every member nationwide. That is exactly the structure the Supreme Court rejected last Term. *See CASA*, 606 U.S. at 839–41. And Justice Alito's concurrence in *CASA* specifically warned that class certification cannot be used to resurrect the universal injunction "under the guise of

'nationwide class relief.'" *Id.* at 868 (Alito, J., concurring). The order's nationwide scope multiplies, rather than discounts, the irreparable injury a stay pending appeal is designed to prevent. Worse, the stays do not even stop at the certified classes: They run, by their terms, "in favor of . . . the current and future clients of the Organizational Plaintiffs," ECF 57 ¶¶ 1-3—a category of non-parties the Court listed separately from the named Plaintiffs and the classes, and one not even identifiable yet—indeed, those clients "have never been identified to ICE." Olson Decl. ¶ 13. Extending classwide relief to an organization's prospective book of clients is universal relief in its purest form, and it is independently barred by § 1252(f)(1).

### C.    A Stay Will Not Substantially Injure Plaintiffs.

On the third *Nken* factor, a stay would not substantially injure Plaintiffs. As to the classwide § 705 stays (¶¶ 1–3), a stay simply restores the status quo ante—the operation of the 2025 Guidance, which on its face disclaims legal effect and preserves case-by-case discretion. As to the individual injunctions (¶¶ 4–5), any injury from a brief stay is slight and is outweighed by Defendants' strong showing that those injunctions are improper.

For the certified classes, a stay simply restores the status quo ante. Before ECF 57, Plaintiffs lived under the 2025 Guidance, which on its face disclaims legal effect and preserves case-by-case discretion, as Plaintiffs themselves acknowledge. The class members would return to the same position they were in for months before the Court entered ECF 57; ICE's authority to act in any individual case remains subject to its discretion, statutory limits, and Article III judicial review on petition for review. To the extent any class member faces a particularized threat of an unlawful enforcement action, the petition-for-review process and individual habeas remain available.

Importantly, the only injury the third *Nken* factor recognizes is injury to "other parties interested in the proceeding." 556 U.S. at 426. A return to the discretionary, case-by-case enforcement regime that the 2025 Guidance memorializes is not a cognizable injury to Plaintiffs—especially given the standing defects. *See supra* § IV.A.3.

### D.    The Public Interest Strongly Favors a Stay.

The fourth *Nken* factor—the public interest—merges with the second on motions involving the United States. *Nken*, 556 U.S. at 435. The public interest weighs heavily in favor of a stay for three additional reasons. *First*, the public interest favors enforcement of the immigration laws. ICE's authority to detain noncitizens under § 1226, to initiate and conduct removal proceedings under § 1229a, and to execute removal orders under § 1231 reflects deliberate congressional judgments about how the Nation's immigration system should operate. ECF 57's classwide § 705 stays displace those judgments and reinstate a discretionary enforcement-forbearance regime that the agency itself disclaimed. The public interest does not favor classwide judicial preemption of the Executive's enforcement choices. The injunction's concrete interference with enforcement—including ICE's diminished ability to act promptly against noncitizens who present public-safety concerns—is confirmed by ICE's own declaration: The injunction's screening-and-forbearance requirements "impair ICE's ability to act promptly to protect public safety," and it "frustrates and impedes ICE's mission of enforcing immigration laws, preventing terrorism, and combating transnational criminal threats." Olson Decl. ¶¶ 7, 11.

*Second*, the public interest disfavors orders entered beyond a court's jurisdiction. ECF 57's § 705 stays cannot be reconciled with § 1252(f)(1) and the Court's subject-matter jurisdiction is foreclosed by § 1252(g), (b)(9), and (a)(5). *See supra* § IV.A.1-2. The public interest is not served by leaving in place a classwide order that Congress withdrew from any district court's power to enter.

*Third*, the public interest favors orderly appellate review. The Ninth Circuit will consider, on this same record, whether ECF 57's certified classes can stand, whether § 1252(f)(1) bars the § 705 stays, and whether the Court properly read § 1227(d). A stay pending appeal prevents the entrenchment of nationwide relief that the Court of Appeals is likely to vacate, and preserves the Government's ability to administer the immigration laws while the Ninth Circuit decides. The balance tips decisively in favor of a stay.

## V.    CONCLUSION

Defendants respectfully request that the Court grant this ex parte application.

25

Respectfully submitted,

Dated: June 29, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Special Assistant United States Attorney

Attorneys for Defendants

## **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants, certifies that this memorandum of points and authorities contains 25 pages, which complies with the limit set by the Court (ECF 10 at 6).

Dated: June 29, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA

26