CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Monika Y. Langarica (Cal. Bar No. 308518)
monika@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
Erika Cervantes (Cal. Bar No. 344432)
erika@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Markwayne Mullin, et. al,<br>                    Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION TO CLARIFY OR ENFORCE OR, IN THE ALTERNATIVE, MODIFY THE COURT'S MAY 20, 2026 ORDER**<br><br>Hon. André Birotte Jr.<br>Hearing Date: TBD<br>Hearing Time: TBD |

*Additional Counsel for Plaintiffs:*

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

*Admitted pro hac vice*

## INTRODUCTION

Defendants' Opposition to Plaintiffs' Ex Parte Motion for a Preliminary Injunction to Permit the Return of Daniel H., Dkt. 76 ("Opp."), yet again recycles arguments this Court has already rejected and otherwise raises a constellation of misstatements and irrelevant factual objections. Tellingly, Defendants open their opposing brief with a recitation of facts related to Daniel H.'s immigration court proceedings that have no bearing on the claims at issue before this Court, and they levy an unhinged accusation that "Plaintiffs ask this Court to order Defendants to locate Daniel H. in Guatemala and fly him back to this country." Opp. at 1. Plaintiffs' Motion does no such thing; it merely seeks what the Court has ordered for other Plaintiffs: that Defendants not prevent his return, based on legal arguments this Court has already considered and decided in favor of Plaintiffs.[1]

This Court should grant the requested relief because it has jurisdiction to do so; Plaintiffs have established likelihood of success on the merits; and the scope of relief is appropriate.

## ARGUMENT

### I.   The Law of the Case Precludes Defendants' § 1252 Arguments, Which Still Fail on the Merits.

Defendants' jurisdiction arguments fail for three reasons: this Court already held that 8 U.S.C. § 1252 does not bar jurisdiction over Plaintiffs' claims and the law of the case disposes of Defendants' insistence that it does; section 1252(g) does not apply where Defendants lacked authority to remove Daniel H. and therefore his claim does not arise from a decision to execute his removal order; and Daniel H.'s claims cannot be channeled into a Petition for Review by sections 1252(a)(5) and

---

[1] Defendants seek to "incorporate[] . . . by reference" arguments made in their pending Stay Motion, Opp. at 16. Plaintiffs object to this tactic to shoehorn extra arguments into their motion. See L.R. 7-5 (moving papers must be filed with a "brief but complete memorandum"); L.R. 15-2 (for amended pleadings, the local rules explicitly prohibit reference to the prior pleading); Judge's Rules, Hon. Birotte ("Replies must not exceed 15 pages."). If Defendants believed these arguments had merit, they should have sought leave for an oversized brief.

(b)(9) because removal proceedings provided no recourse for his claim that ICE ignored the survivor-based protections to which he was entitled.

First, the Court has already determined that 8 U.S.C. § 1252 does not bar Plaintiffs' claims nor the relief they seek. Order Granting Plaintiffs' Motion for Class Certification [Dkt. No. 23] and Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 31], May 20, 2026 at *24-26, Dkt. 57 ("May 20 Order") ("Plaintiffs are likely to establish that § 1252(g) does not bar their claims."); *id.* at *27 ("Plaintiffs are likely to show that their claims are not barred by § 1252(a)(5) and § 1252(b)(9)."). This Court's order constitutes law of the case, under which "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.**" *Old Pers. v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)). As Plaintiffs explained in their Ex Parte Motion for Preliminary Injunction to Permit the Return of Daniel H. to the United States, Dkt. 66 ("Daniel H. PI Mot.") at 9, and as they explain below, Plaintiffs do not "treat a preliminary injunction as though it were the trial itself." Opp. at 7. They rely on the May 20 Order's "conclusions on pure issues of law" which apply squarely to the arguments Plaintiffs raise here. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007).

Second, even if the law of the case doctrine does not control, Defendants' arguments are meritless because Defendants' removal of Daniel H. was unlawful. Defendants argue "[t]he [1252(g)] bar reaches the [Secretary]'s 'decision or action . . . to . . . execute removal orders.'" Opp. at 4 (quoting *Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018)). But *Arce* clarifies that "[w]here the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated." *Arce*, 899 F.3d at 800-01 ("Attorney General lacked the authority to execute the removal order because of the stay of removal issued by our court."). Here, too, ICE lacked the authority to remove Daniel H. without any consideration

of his pending U visa petition. Thus, § 1252(g) cannot preclude jurisdiction over his claims. Plaintiffs'—and this Court's—"interpretation is supported by the express instructions of the Supreme Court, . . . precedent, and common sense." *Id*. at 800.

With no Ninth Circuit authority on which to rely, Defendants turn to an out-of-circuit decision which they claim is "directly on point." Opp. at 4 (citing *Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 737 (7th Cir. 2012)). But Defendants' comparison is tenuous and the conclusion they draw from it is wrong. In *Rivas-Melendrez*, the Plaintiff argued "the execution of his removal order was invalid because it occurred too soon, while his time to appeal was still running." *Id*. at 737. But "Daniel H.'s claim" is not, as Defendants claim it is, "that he was removed before he could file a Form I-246." Opp. at 4. Daniel H.'s claim is that Defendants' application of the 2025 Guidance violated the APA. Daniel H. PI Mot. at 8-9. Indeed, as Plaintiffs have explained, and this Court laid out, ICE's application of the unlawful policies resulted in Daniel H. being unable to access a prima facie determination: "[h]is attorney requested an expedited prima facie determination on his pending petition, but USCIS will only consider such requests if they come from ICE, and pursuant to its Blind Removal Policy, ICE will not do so." May 20 Order at *19. Because Daniel H.'s claim does not challenge execution of a lawful removal order, § 1252(g) does not apply.

Third, neither § 1252(b)(9) nor § 1252(a)(5) bars review. Defendants cite *J.E.F.M.* for the proposition that "[s]ection 1252(b)(9) is 'breathtaking in scope' and 'vise-like' in grip; it 'swallows up virtually all claims that are tied to removal proceedings.'" Opp. at 4 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). But that case confirms what Plaintiffs have repeated throughout this case: the statute simply does not bar "claims that are independent of or collateral to the removal process." *J.E.F.M.*, 837 F.3d at 1032.

Daniel H.'s challenge to ICE's application of the 2025 Guidance to his case is collateral to his removal process; he cannot channel such review through a Petition

for Review of his removal order. Indeed, Daniel H. does not challenge the *immigration judge's* decision; rather, he challenges ICE's decision to prosecute his case and prevent him from benefiting from the interim protections available under the 2021 Directive. There is no review of such decisions through appellate review of his removal order. Thus, Daniel H.'s "claims do not challenge the removal proceedings themselves but instead concern matters collateral to removal proceedings," May 20 Order at *27, and subsections (b)(9) and (b)(5) do not bar this Court's review.

## II. Plaintiffs Are Likely to Succeed on the Merits of their Claims and the Remaining *Winter* Factors Tip in their Favor.

Defendants' arguments challenging the merits of Daniel H.'s claims fail because he has established that application of the 2025 Guidance likely violated the APA.[2]

First, this Court has already found that Plaintiffs are likely to "show that the 2025 Guidance is arbitrary and capricious" because it "reverses decades of policy (1) without a sufficiently-reasoned explanation for disregarding the concerns underlying that prior policy, (2) without considering the reliance interests of persons who have acted in reliance on those policies, and (3) without considering serious aspects of the problem." May 20 Order at *69. The Court has also already found that Plaintiffs, including Daniel H., are likely to show that the 2025 Guidance is "contrary to law" because it "undermines the legislative scheme Congress designed

---

[2] Defendants' complaints about the Ninth Circuit's "sliding scale" variant of the *Winter* standard are foreclosed by binding Ninth Circuit authority and thus have no bearing on Plaintiffs' arguments. *Fraihat v. ICE*, 16 F.4th 613, 635 (9th Cir. 2021) ("In this Circuit, we also employ an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard. Under that formulation, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest.") (cleaned up).

to protect" immigrant survivors. *Id*. at \*74. As discussed, *supra* Section I, the law of the case dictates that these questions are decided at this stage.

Defendants accuse Plaintiffs of relying too heavily on "findings a court makes in haste, on an incomplete record." Opp. at 7. The Court's 97-page order was hardly that, and, in any case—as Plaintiffs made clear in their Motion—"[a]lthough the 'general rule' is that rulings 'at the preliminary injunction' phase are not necessarily law of the case, 'conclusions on pure issues of law' even at that early phase of proceedings are typically 'binding' through judgment (absent exceptions not applicable in this case)." *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007); *see also Gonzalez v. Arizona*, 677 F.3d 383, 442 (9th Cir. 2012) (Kozinski, J., concurring) (asserting that there was no occasion to construe a statute de novo because the court was "bound by the law of the circuit and the law of the case"); *see also* Daniel H. PI Mot. at 9. Thus, Defendants' baseless assertion that Plaintiffs ask this Court to treat the May 20 Order as "a final adjudication on the merits" is untethered to Plaintiffs' actual arguments. Opp. at 7.[3]

Second, to the extent that Defendants challenge the application of the Court's conclusions of law to Daniel H.'s case, those arguments fail. As discussed, the Court has already found that Plaintiffs are likely to succeed on their claims that the 2025 Guidance violates the APA. May 20 Order at \*69, 74. Accordingly, the Court issued an order staying the Guidance as to all class members and individual Plaintiffs. *Id*. at \*96. As Plaintiffs explained, but for the likely unlawful 2025 Guidance, Daniel H. likely would never have been arrested, detained, or removed. Daniel H. PI Mot.

---

[3] Defendants' plea that this Court deny Plaintiffs' Motion because they have filed a Notice of Appeal, Dkt. 61 (which they have claimed in independent filings is "protective,") and a Motion to Stay Proceedings, Dkt. 72, is entirely baseless and does nothing to undermine the force of the operative May 20 Order or this Court's present authority to grant additional preliminary relief to which Plaintiffs are entitled. Defendants' Ex Parte Application for a Stay Pending Appeal Authorization, June 29, 2026 at 1, Dkt. 72.

Plaintiffs' Reply in Support Ex Parte Motion for Preliminary Injunction
to Permit the Return of Daniel H. to the United States, Dkt. 66

at 11-12.

Under ICE's 2021 Directive, which the 2025 Guidance rescinded, "ICE officers must consider any and all evidence that an individual has been a victim of crime—such as the receipt of victim-based immigration benefits or pending applications for such benefits . . . in rendering custody determinations." ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021) at 9 ¶ 5.6 ("2021 Directive").[4] Further, under that Directive, ICE generally only detains immigrant survivors when their release is "prohibited by law or exceptional circumstances exist." 2021 Directive at 8 ¶ 5.4(a). In the rare case such exceptional circumstances exist (they do not exist for Daniel H.), ICE "will request that USCIS expedite the decision . . . ." 2021 Directive at 8 ¶ 5.4(a). ICE's refusal to consider Daniel H. for release or request expedited review of his petition violated the APA. *See* Daniel H. PI Mot. at 10-14. Defendants claim that when he was arrested, "there was no receipted petition for ICE to know of." Opp. at 9. But Daniel H. had a petition pending before USCIS—a party to this case and sub-agency of DHS, along with ICE—and, in any event, his attorney made ICE aware of his pending petition by contacting them directly and through motions in his removal proceedings. *See, e.g.*, Decl. of Sarah Kahn ISO Pls.' Mot. for Class Certification, Dkt. 23-12 at 84, Ex. S.

Unable to contest Daniel H.'s actual legal arguments, Defendants instead recite facts they say constitute exceptional circumstances that would have justified his arrest under the 2021 Directive. Opp. at 10. Defendants point to a 2011 arrest resulting in a dropped charge of driving under the influence and a nolo contendere plea to driving without a license to suggest Daniel H. "poses an articulable risk of death, violence, or physical harm to any person" and thus exceptional circumstances apply. Opp. at 10. But again, Defendants ignore Plaintiffs' actual arguments.

---

[4] Filed as Decl. of Erika Cervantes ISO Pls.' Mot. for Prelim. Inj., Dkt. 31-8 at *59, Ex. G.

Plaintiffs' Reply in Support Ex Parte Motion for Preliminary Injunction
to Permit the Return of Daniel H. to the United States, Dkt. 66

Plaintiffs have not asked this Court—or Defendants' counsel—to assess Daniel H. for survivor-based protections in the first instance. They simply ask this Court to return him to the status quo ante Defendants' unlawful conduct so that he can benefit from application of the 2021 Directive, which, as Plaintiffs outlined, required Defendants to take numerous steps in order to properly weigh various relevant factors, including his status as a victim of crime. Daniel H. PI Mot. at 12-13

Finally, Defendants fixate on the fact that Daniel H. never had time to file an I-246 request for a stay, but omit that he is a representative of the Pending Petition Class, which this Court has already found is likely to succeed on its claims that the 2025 Guidance that resulted in Daniel H.'s removal is arbitrary and capricious and contrary to law.[5]

Thus, Daniel H. has established he is likely to succeed on the merits of his claim that application of the 2025 Guidance in his case was arbitrary and capricious in violation of the APA.

Moreover, for the reasons Plaintiffs have already articulated, he has also satisfied the remaining *Winter* factors. Daniel H. PI Mot. at 8-16. Defendants do not meaningfully contest the irreparable harm resulting from his removal pursuant to the unlawful 2025 Guidance—including his separation from his United States citizen teenaged daughters, inability to financially support his ill father, and the

---

[5] Defendants misunderstand the process for a stay request. Title 8 U.S.C. § 1227(d) permits a stay *of a final order of removal*, which requires the requestor to already have a final order of removal. Defendants claim filing a stay "could not have been futile," accusing Plaintiffs of filing too slowly because "Daniel H. had been detained since August 23, 2025, his amended petition had been on file with USCIS since September 17, 2025, and his counsel was engaged throughout. Yet no Form I-246 was ever filed with ICE, and counsel waited until on or about December 5, 2025, to mail an unsigned form to a detained client." Opp. at 9. But Plaintiffs did not have from August 23, when Daniel H. was arrested, or from September 17, when the amended U visa was filed, to December 5–they had from December 2, when Daniel H. received a final order of removal, to December 5, when he was removed. The effort to file the stay request was necessarily futile, because it takes longer than 3 days for mail to arrive in a detention and be signed and returned.

Plaintiffs' Reply in Support Ex Parte Motion for Preliminary Injunction
to Permit the Return of Daniel H. to the United States, Dkt. 66

physical danger he faces in Guatemala at the hands of the very abuser he reported to the police in the United States. Daniel H. PI Mot. at 14-15.[6] Nor do they reconcile their position on the remaining *Winter* factors with Ninth Circuit caselaw instructing that the balance of equities and the public interest favor orders requiring the government to follow the law. *Compare id.* at 16 *with* Opp. at 14.

### III.    The Scope of Relief is Warranted.

The relief Daniel H. seeks is the same granted to other Plaintiffs: return to the status quo ante Defendants' unlawful actions. Defendants identify the correct standard for assessing the status quo: the *last uncontested status* which preceded the controversy. Opp. at 14 (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Yet in the same breath, they claim the "status quo here" is that "Daniel H. is outside the United States following a final, unappealed removal order." Opp. at 14. But Defendants cannot simply pick a date and call it the status quo. The status quo to which Daniel H. is entitled to return is "before these violations," so he is able to "avail [himself] of the procedures to which [he is] entitled." May 20 Order at *92. Here, that is the position he was in before ICE's application of the unlawful 2025 Guidance to his case in August 2025 (before ICE arrested him). Thus, Daniel H.'s return to the United States is appropriate and necessary to preserve the status quo.

Defendants further confuse the standard by asserting that the status quo to which Daniel H. would return is "that of [a noncitizen] subject to a final, unappealed

---

[6] Defendants take issue with the fact that Daniel H.'s most recent declaration "carries an interpretation certificate signed by Plaintiffs' counsel, not the unnamed interpreter." Opp. at 15. Between May 27 and June 16, 2026, Plaintiffs awaited a response from Defendants regarding their position on the return of Daniel H. Decl. of Bardis Vakili ISO Daniel H. PI Mot., Dkt. 66-3, at ¶¶ 3-5. After waiting over two weeks for Defendants to confirm they would not agree to his return, Plaintiffs made arrangements to file the present Motion as quickly as possible in order to uphold the rights of Daniel H., but were not able to secure a certification from the third-party interpreter before filing. Plaintiffs have attached the interpreter's signature to this Reply.

Plaintiffs' Reply in Support Ex Parte Motion for Preliminary Injunction
to Permit the Return of Daniel H. to the United States, Dkt. 66

order of removal." Opp. at 8. First, the status quo is "the last *uncontested* status," before his arrest. *Tanner*, 316 F.2d at 809 (emphasis added). As discussed, Plaintiffs contest ICE's enforcement in his case pursuant to the 2025 Guidance, which occurred without regard for the protections to which he was entitled as a U visa petitioner. Plaintiffs simply seek to restore him to the position he was in when he would have been entitled to the protections of the 2021 Directive.

Defendants seek to distinguish the cases that Plaintiffs cite, but those arguments support Plaintiffs' position. Defendants assert "that courts order return only where the removal was *independently unlawful*." Opp. at 10. But they point to examples of "independently unlawful" removal that are tellingly similar to Daniel H.'s removal. For example, in *Juarez v. Noem*, the court found the petitioner was unlawfully removed, pursuant to a removal order, despite her deferred action status. No. 2:26-cv-00801, 2026 WL 799976, at *7-8 (E.D. Cal. Mar. 23, 2026). As is the case here, Defendants did not have "every authority to execute" the *Juarez* petitioner's removal order because she was entitled to the protections of her deferred action. Opp. at 11. Here, ICE denied Daniel H. the protections of the 2021 Directive at every turn, thus, his removal was independently unlawful.

Defendants cite *Singh v. Waters* for the same proposition, yet rely on quoted text that contradicts them: "the Government removed the [noncitizen] after the immigration judge had granted a stay; the court ordered return precisely because that removal defied an existing judicial order." *Id.* (citing *Singh v. Waters,* 87 F.3d 346, 349 (9th Cir. 1996)). There, the Ninth Circuit made no ruling on whether Singh should have been able to adjust status and avoid a removal order. *Id.* Instead, it held that he must be permitted to return to avail himself of the processes to which he was entitled, including review of his application for adjustment, pursuant to a district judge's stay. *Id.* at 350 (ordering return "to permit Singh to return to the United States for the purpose of appearing at a hearing before the immigration judge to determine whether discretion to adjust his status should be favorably exercised.").

Again, Daniel H. does not, through this motion, argue that his removal proceedings were defective. Daniel H. PI Mot. at 1-2. Daniel H. "seek[s] a prohibitory injunction because [he] seek[s] to preserve the status quo preceding this litigation—[his] physical presence in the United States free from detention." *Domingo-Ros v. Archambeault*, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025).[7]

Finally, Defendants' arguments opposing this Court's independent authority to grant Plaintiffs' requested relief under the All Writs Act have no merit. First, as Plaintiffs explained, *supra* Section I, 8 U.S.C. § 1252 does not constitute a "statute [that] specifically addressees the particular issue at hand." Opp. at 5. Second, Defendants fail to reconcile their claims that (1) Defendants are not required to return named Plaintiffs whom they unlawfully removed pursuant to the challenged 2025 Guidance, and that (2) doing so would turn the May 20 Order into an "affirmative decree of transportation," with this Court's May 20 Order enjoining Defendants from preventing the return of other named Plaintiffs. Opp. at 6. Thus, this Court retains authority to order Plaintiffs' requested relief pursuant to the All Writs Act. *See* Daniel H. PI Mot. at 19-20.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant their requested relief.

Dated: July 7, 2026                    Respectfully submitted,

                                       _/s/ Sarah E. Kahn_____
                                       Sarah E. Kahn

---

[7] Defendants additionally argue that Daniel H. cannot seek return through habeas corpus because he "has already been removed and . . . is no longer 'in custody.'" Opp. at 12 (quoting *Miranda v. Reno*, 238 F.3d 1156, 1158 (9th Cir. 2001)). Plaintiffs need not cite the plenary authority contradicting this assertion because the Motion pending before the Court is not a petition for habeas corpus.

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili
Monika Y. Langarica
Sarah E. Kahn
Erika Cervantes

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner

PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE
IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese

Plaintiffs' Reply in Support Ex Parte Motion for Preliminary Injunction
to Permit the Return of Daniel H. to the United States, Dkt. 66