TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
PUSHKAL MISHRA (Cal. Bar No. 298695)
Special Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (714) 338-3503
    E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMIGRATION CENTER FOR WOMEN AND CHILDREN, *et al*.,<br><br>    Plaintiffs,<br><br>      v.<br><br>MARKWAYNE MULLIN, Secretary of Homeland Security, *et al*.,<br><br>    Defendants. | No. 2:25-cv-09848-AB-AS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR A STAY PENDING APPEAL AUTHORIZATION**<br><br><br>Honorable André Birotte Jr.<br>United States District Judge |

# TABLE OF CONTENTS

DESCRIPTION                                                                                                  PAGE

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT .......................................................................................................... 2

        A.    Plaintiffs Fail to Rebut Defendants' Likelihood of Success........................ 2

              1.    Plaintiffs Fail to Rebut That § 1252(f)(1) Bars the Stays.................. 3

              2.    Plaintiffs Fail to Rebut That § 1252 Channels Their Claims ............. 7

              3.    Plaintiffs Fail to Rebut Their Lack of Standing ................................ 9

              4.    Plaintiffs Fail to Rebut That They Misread § 1227(d) ..................... 10

              5.    Plaintiffs Fail to Rebut That the Classes Are Fail-Safe................... 12

              6.    Plaintiffs Fail to Rebut the Re-Entry Injunction Defect................... 13

        B.    Plaintiffs Fail to Rebut Defendants' Irreparable Injury ............................ 14

        C.    Plaintiffs Fail to Rebut That a Stay Will Not Injure Them......................... 15

        D.    Plaintiffs Fail to Rebut That the Public Interest Strongly Favors a Stay ................................................................................................................... 15

III.    CONCLUSION ................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) ...................................................................................... 5

*Ayala-Morales v. Olson*,
No. 2:26-cv-00375-JRS-MJD, 2026 WL 1781976 (S.D. Ind. June 22, 2026) ........... 14

*Bautista v. Santacruz*,
820 F. Supp. 3d 1016 (C.D. Cal. 2026) ................................................................ 7

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*,
331 U.S. 519 (1947) ...................................................................................... 4

*Biden v. Texas,*
597 U.S. 785 (2022) ...................................................................................... 3

*Dep't of Homeland Sec. v. D.V.D.*,
145 S. Ct. 2627 (2025) .................................................................................. 5

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .......................................................................................... 8

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ...................................................................................... 10

*Galvez v. Jaddou*,
52 F.4th 821 (9th Cir. 2022) ..................................................................... 5, 6, 7

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ........................................................................ 13

*Garcia v. Noem*,
No. 3:25-cv-06008-DGE, 2025 WL 3237502 (W.D. Wash. Nov. 20, 2025) ............ 11

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ................................................................................ 1, 4, 5, 7

*Immigrant Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025) ...................................................................... 3, 4

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ........................................................................ 9

i

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ............................................................................................ 12

*Lopez v. Davis,*
531 U.S. 230 (2001) ............................................................................................ 11

*Mullin v. Al Otro Lado*,
No. 25-5, 2026 WL 1825741 (U.S. June 25, 2026) ........................................... 5

*Mullin v. Doe*,
No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026) .................................... 10

*Murthy v. Missouri,*
603 U.S. 43 (2024) ............................................................................................... 9

*Nat'l TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026) ............................................................................. 3

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................. 2, 3, 4, 15

*Osorio Gonzalez v. Wesling,*
No. 26-cv-231-JJM-AEM, 2026 WL 1765871 (D.R.I. June 19, 2026) ............. 1

*Patel v. Garland,*
596 U.S. 328 (2022) ........................................................................................... 10

*Perdomo Reynaud v. Lyons*,
No. 26-cv-05905, 2026 WL 1674229 (D.N.J. June 10, 2026) ............................ 8

*Rauda Choto v. Ladwig,*
No. 26-0322, 2026 WL 1652576 (W.D. La. June 8, 2026) ............................... 14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ............................................................................................. 8

*Sanchez Jimenez v. Dep't of Homeland Sec.,*
No. 2:22-cv-00967, 2022 WL 19410308 (C.D. Cal. Nov. 14, 2022) ............... 11

*Singh v. Waters*,
87 F.3d 346 (9th Cir. 1996) ............................................................................... 13

*Steel Co. v. Citizens for a Better Environment,*
523 U.S. 83 (1998) ............................................................................................. 13

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ..................................................................................... 14, 15

*Univ. of Tex. v. Camenisch,*
451 U.S. 390 (1981) ..................................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ................................................................................... 12

*Walters v. Reno,*
145 F.3d 1032 (9th Cir. 1998) .................................................................... 13

*Zavala Almanza v. Oddo,*
No. 3:26-cv-720, 2026 WL 1506283 (W.D. Pa. May 29, 2026) ................ 8

**Statutes and Regulations**

5 U.S.C. § 705 ......................................................................................... 3, 4

8 U.S.C. § 1226 ................................................................................... 1, 4, 6

8 U.S.C. § 1227(d)(1) ................................................................... 5–7, 10–12

8 U.S.C. § 1229a ................................................................................ 1, 4, 6

8 U.S.C. § 1231 .......................................................................... 1, 4, 6, 11

8 U.S.C. § 1232(d)(2) .............................................................................. 6, 7

8 U.S.C. § 1252(a)(2)(B)(ii) ....................................................................... 10

8 U.S.C. § 1252(a)(5) .................................................................................. 9

8 U.S.C. § 1252(b)(9) .................................................................................. 8

8 U.S.C. § 1252(f)(1) ........................................................................... passim

8 U.S.C. § 1252(g) ................................................................................... 7, 8

8 C.F.R. § 214.14(c)(1)(ii) ......................................................................... 12

8 C.F.R. § 241.6(a) .................................................................................... 10

28 C.F.R. § 0.20(b) ...................................................................................... 2

**Rules**

Fed. R. App. P. 8(a)(1) ................................................................................. 2

Fed. R. Civ. P. 23 ................................................................................. 12, 13

Fed. R. Civ. P. 62(d) ................................................................................. 2, 3

Fed. R. Civ. P. 65(d)(1) .............................................................................. 14

L.R. 7-18 .................................................................................................. 2, 3

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) ........ 4, 6

## I. INTRODUCTION

Plaintiffs' opposition rests on a label. Because ECF 57 captions its classwide relief a "stay," Plaintiffs insist that 8 U.S.C. § 1252(f)(1) has nothing to say about it. ECF 83 at 3–8. Plaintiffs, however, concede the controlling facts that decide the motion: The Order, they admit, "return[s] the parties to the status quo before those actions"—the status quo of 2021, in which ICE refrained from detaining and removing class members, *id.* at 5—and staying ECF 57 would again let Defendants "detain and deport class members," *id.* at 25. And Plaintiffs never engage the rule that decides the question. That rule is functional, and the Supreme Court has already supplied it: Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). What an order does—not what it is called—controls, and an order whose conceded function is to halt detention and removal for three classes restrains the operation of §§ 1226, 1229a, and 1231. ICE is no longer free to enforce within the INA's confines; it must instead administer the rescinded 2011 Policy and 2021 Directive, and it must do so prospectively, for "the members of all three Classes" and "the current and future clients of the Organizational Plaintiffs." ECF 57 at 96.

District courts are not treating ECF 57 as a quiet restoration of the status quo; they are enforcing it, nationwide, as a source of individual injunctions. One has ordered that, "[p]ursuant to the *ICWC* class action," the Government "shall not act under the 2025 Guidance" in re-detaining a petitioner. *Osorio Gonzalez v. Wesling*, No. 26-cv-231-JJM-AEM, 2026 WL 1765871, at *10 (D.R.I. June 19, 2026). Plaintiffs themselves have twice moved to extend the Order's re-entry commands to people it never names. ECF 65; ECF 66. An order that spawns injunctive relief in Rhode Island and Texas, splits district courts from Louisiana to California, and needs satellite motions to administer further relief at home is not a housekeeping "stay." It is classwide injunctive relief in daily operation— and a short, self-dissolving pause while the Solicitor General decides whether the United States will defend its enforcement prerogatives on appeal is the measured answer.

Plaintiffs' lead response on the merits—that "[t]he Court has already ruled in Plaintiffs' favor," ECF 83 at 9—is not a defense of the Order; it is an objection to the existence of Rule 62(d), under which every stay application asks the rendering court to gauge the prospects of its own order on appellate review. Its delay charge—Defendants' "languid pace," ECF 83 at 2—condemns a calendar Plaintiffs stipulated to and the Court approved, ECF 67, 73. And its answer to the burden of administering relief for two organizations' unidentified "current and future clients" invokes Form G-28 but concedes the very file-by-file burdensome inquiry the Olson Declaration forecasts. *Compare* ECF 83 at 24, *with* ECF 72-2 (Olson Decl.) ¶¶ 9, 13. The Application should be granted.

## II.  ARGUMENT

### A.  Plaintiffs Fail to Rebut Defendants' Likelihood of Success

Plaintiffs first argue (ECF 83 at 3) that because the appeal decision "remains 'pending,'" Defendants "cannot demonstrate a strong showing" on "arguments they have not even decided to pursue." The appeal is not hypothetical—Defendants noticed it on June 19. ECF 61. What remains pending is the decision of the officer Congress designated to determine whether the United States will prosecute it. 28 C.F.R. § 0.20(b). Nothing in *Nken v. Holder* requires the Government to complete that deliberation before seeking interim protection; the stay exists precisely so that the deliberation is not mooted by the order under review. 556 U.S. 418, 429 (2009).

Plaintiffs' combined response to everything else—law of the case plus Local Rule 7-18, ECF 83 at 10—would abolish stays pending appeal. Every application under Rule 62(d) and Fed. R. App. P. 8(a)(1) asks the rendering court to first assess "whether the stay applicant has made a strong showing that he is likely to succeed on the merits" of an appeal from that court's own order. *Nken*, 556 U.S. at 434. If a district court's own ruling were "law of the case" against its own stay analysis, no Rule 62(d) application could ever be granted. *Nken* presupposes the opposite.

Law of the case (ECF 83 at 10) is doubly inapposite because preliminary conclusions are provisional. Preliminary factual findings and conclusions of law "are not

binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs know so. ECF 80 at 5. Their carve-out for "conclusions on pure issues of law," *id.*, in fact sharpens the point: The questions this appeal will present—§ 1252(f)(1), the channeling provisions, standing—are pure issues of law, reviewed de novo, on which this Court's provisional answers bind no appellate panel. And Local Rule 7-18 governs motions asking a court to change its decision. A Rule 62(d) application asks for no change at all: It asks the Court to manage the consequences of its order while the court of appeals decides whether the order stands. That is why the *Nken* factors—not L.R. 7-18's criteria—supply the standard. Plaintiffs themselves invoke the rule when it suits them. ECF 81 at 2 (invoking the Court's power "to suspend, modify, restore, or grant an injunction during the pendency of the appeal"). According to Plaintiffs, Rule 62 is apparently available when it enlarges an injunction, and off-limits when it pauses one. That is not how Rule 62 works.

1. <u>Plaintiffs Fail to Rebut That § 1252(f)(1) Bars the Stays</u>

The Ninth Circuit's set-aside cases exempt backward-looking relief precisely when it leaves future conduct alone. *Immigrant Defenders* exempted a § 705 stay as "a less drastic remedy" that "re-establish[es] the status quo absent the unlawful agency action." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 990–91 (9th Cir. 2025); ECF 72 at 7. *National TPS Alliance v. Noem* rests on the same premise, 166 F.4th 739, 760 (9th Cir. 2026). Neither blesses what happened here. The Order does not suspend the 2025 Guidance and leave ICE free to act; it stays "the 2025 Guidance, including its rescission of prior policies," ECF 57 at 96—and the Order's own findings recite what the reinstated policies command: that it is "against ICE policy to initiate removal proceedings against" known crime victims. ECF 57 at 11. Reinstatement here is a prescription for the Government's future conduct, administered classwide—precisely what the Ninth Circuit's own test excludes from the exemption.

Plaintiffs' remaining defense of *Immigrant Defenders* is a title. They urge (ECF 83 at 4) that § 1252(f)(1)'s caption—"Limit on injunctive relief"—"makes clear the narrowness of its scope," *Biden v. Texas*, 597 U.S. 785, 798–99 (2022), such that the bar

3

reaches injunctions alone. "[H]eadings and titles are not meant to take the place of the detailed provisions of the text," and "they cannot undo or limit that which the text makes plain." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (2012) (Canon 35. Title-and-Headings Canon) (quoting *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 528–29 (1947)). The operative text here withdraws jurisdiction to "enjoin or restrain the operation of" the covered provisions, 8 U.S.C. § 1252(f)(1), and to "restrain" is not merely to enjoin. *Aleman Gonzalez*, 596 U.S. at 549. *Immigrant Defenders* proves the point against Plaintiffs: The panel there acknowledged that "the district court's § 705 Stay has many of the same practical effects as a preliminary injunction." 145 F.4th at 983. An order that operates like an injunction restrains the covered provisions whatever its caption. The panel's contrary conclusion turned on the *Nken* distinction between stays and injunctions, 145 F.4th at 989–90—a distinction drawn to decide when an order is appealable, not whether it "restrains" a statute—and it never engaged § 1252(f)(1)'s disjunctive "enjoin or restrain." Also, *Immigrant Defenders* is an interlocutory ruling, not a merits holding. 145 F.4th at 990. It does not foreclose the question this appeal presents; it confirms the question remains open.[1]

Plaintiffs' concurrences-are-not-holdings response, ECF 83 at 6, falls flat. The holding that matters is *Aleman Gonzalez*, and ECF 57 itself adopted its functional formulation: "An order that requires officials to take actions, or to refrain from taking actions, that are governed by one of § 1252(f)(1)'s covered provisions interferes with the government's efforts to operate that provision, and thus 'enjoins or restrains the operation' of that provision. . . ." ECF 57 at 36. The concurrences Defendants flagged, ECF 72 at 4–

---

[1] Plaintiffs' description of the remedy concedes each element. The Order, they write, "return[s] the parties to the status quo before those actions." ECF 83 at 5. A stay of ECF 57, they warn, would again let Defendants "detain and deport class members." ECF 83 at 25. An order whose office is to prevent DHS from detaining and deporting class members is restraint as the Supreme Court defines it: To "restrain" is to "check, hold back, or prevent (a person or thing) from some course of action." *Aleman Gonzalez*, 596 U.S. at 549. What is checked, held back, and prevented here is ICE's operation of §§ 1226, 1229a, and 1231 as to three nationwide classes.

4

5, merely confirm where that anti-label principle of *Aleman Gonzalez* leads. *Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at \*12 (U.S. June 25, 2026) (Thomas, J., concurring). So does the *Al Otro Lado* majority itself, which held the case was not moot because its classwide declaratory relief "continues to bar the Government." *Id.* at \*6 n.7. Labels did not immunize "declaratory" relief there; they do not immunize a "stay" that reinstates an enforcement-forbearance regime here. *Cf. Abbott v. Perez*, 585 U.S. 579, 594 (2018) ("[T]he label attached to an order is not dispositive.").

Plaintiffs attempt to dismiss *D.V.D.* because the First Circuit's stay was "unreasoned." ECF 83 at 7. But the Supreme Court's stay in the same case needs no divining: The Court stayed a classwide order barring third-country removals, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627 (2025), and when the district court reissued materially identical relief under new labels—a universal "vacatur" and classwide declaratory judgment—the First Circuit stayed that too. No. 26-1212 (1st Cir. Mar. 16, 2026). Defendants do not ask this Court to divine reasoning from either order. The point is much simpler: Relabeled classwide relief against removal operations was twice stayed pending appeal. ECF 72 at 8. And Plaintiffs are poorly placed to police inference: They treat ECF 57, a preliminary likelihood ruling, as "law of the case," ECF 83 at 10, and their companion reply collects out-of-district habeas orders as vindication, ECF 81 at 6–7. "[T]ea leaves," ECF 83 at 7, apparently, may be read only when they favor Plaintiffs.

*Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022), does not shrink the statute to Plaintiffs' preferred size. ECF 83 at 8. Section 1252(f)(1) asks which provision's operation the order enjoins or restrains—not which statute supplies the plaintiff's theory of illegality. *Aleman Gonzalez*, 596 U.S. at 550 (making clear that the bar reaches orders concerning actions "to enforce, implement, or otherwise carry out the specified statutory provisions"). And *Galvez* centered on a single statutory mandate: The injunction there enforced the TVPRA provision itself—"the law that § 235(d)(2) of the TVPRA enacted," which *Galvez* held "is not a provision of the INA even though it has been placed within Title 8 . . . ." 52 F.4th at 831. Here, whatever the stays' legal premises are—the APA for ¶¶ 1–2,

5

§ 1227(d)(1) for ¶ 3—their operation is to halt immigration enforcement through detention under § 1226, proceedings under § 1229a, and the execution of removal orders under § 1231, for three nationwide classes. Those are covered provisions, and classwide restraint of their operation is what the statute expressly forbids. Defendants made both points when Plaintiffs first invoked *Galvez* at the preliminary-injunction hearing. ECF 72-1 (Hr'g Tr.) 83:4–24. Plaintiffs' chronology argument runs the same way. The APA's "affirmative grant of authority," they note, "has existed since 1946" and so cannot be a "carve-out" of § 1252(f). ECF 83 at 6. Exactly—and that is why the 1996 statute controls: Section 1252(f)(1) is the later-enacted, specific command, and it withdraws "jurisdiction or authority"—all authority, the APA's included—"[r]egardless of the nature of the action or claim." § 1252(f)(1). Nor is the restraint here "collateral." ECF 83 at 8. Halting detention and removal classwide are the Order's stated effect.

Extending *Galvez* from § 1232(d)(2) to § 1227(d)(1) would only compound its error. The statute withdraws jurisdiction to restrain "the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996," except as to "an individual alien." 8 U.S.C. § 1252(f)(1). The "as amended by" clause is set off by commas—a nonrestrictive, descriptive clause that reports what IIRIRA did to part IV; it does not shrink "part IV" to the subset of provisions IIRIRA touched. *See* Scalia & Garner, *supra*, at 161 (Canon 23: "Punctuation is a permissible indicator of meaning."). *Galvez* reached the contrary reading only by dropping the punctuation. *Compare id.*, 52 F.4th at 830 ("Accordingly, the jurisdiction-stripping provision of § 242(f)(1) of the INA applies to certain injunctions that enforce or restrain certain provisions of the INA as modified by the IIRIRA."), *with* 8 U.S.C. § 1252(f)(1) (focusing on "the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996"). That recasting turned description into a limitation. Congress's placement decision in § 1252(f)(1) confirms the descriptive reading: It codified § 1227(d)(1) inside part IV, §§ 1221–1232—subjecting it to part IV's rules, § 1252(f)(1) included. On *Galvez*'s frozen-in-1996 reading, Congress

6

could never add a provision to part IV and have § 1252(f)(1) protect it without re-enacting the bar. Plaintiffs assured this Court at the preliminary-injunction hearing that *Galvez* is "basically binding." Hr'g Tr. 77:10–11. But then *Galvez* only held § 1252(f)(1) inapplicable to an injunction that operated on § 1232(d)(2); it held nothing about § 1227(d)(1), and nothing about classwide stays.

The statutory proviso does not save Plaintiffs either. Section 1252(f)(1) permits relief "with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The proviso is a carve-out for one alien's case at a time. ECF 72 at 10. Paragraphs 1–3 of ECF 57 are the opposite: They run to three nationwide classes and to "the current and future clients of the Organizational Plaintiffs." ECF 57 at 96. Plaintiffs respond that the proviso "permits individualized injunctive relief against the operation of the relevant statutes, as provided by the May 20 Order." ECF 83 at 9. But the May 20 Order provides classwide relief in a single decree. Calling a classwide order "individualized" because each class member ultimately benefits from it proves too much: If that arithmetic satisfied the proviso, *Aleman Gonzalez* would have come out the other way—the bond-hearing injunctions there also benefited each class member individually, and the Supreme Court held them barred anyway. 596 U.S. at 555. *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1031 (C.D. Cal. 2026), shows where Plaintiffs' reading leads: After final judgment, class counsel returned for classwide enforcement of "individual" rights, and the court held that § 1252(f)(1) did not stand in the way. *See id*. Plaintiffs' only answer to *Bautista* is that "there is no final judgment in this case yet." ECF 83 at 9 n.3. That is timing, not disavowal: Once judgment enters, Plaintiffs will enforce the classwide relief member by member exactly as the *Bautista* petitioners did. What Congress forecloses in one step, a court cannot accomplish in two—whether the second step is a certified class, a motion to enforce, or injunctive relief ordered by other courts enforcing ECF 57.

2. Plaintiffs Fail to Rebut That § 1252 Channels Their Claims

Plaintiffs re-run their "narrow reading" of § 1252(g), ECF 83 at 10–12, without

7

confronting what the classwide relief does. The Stay of Removal Class is defined by final orders of removal and pending stay requests, and the relief conditions the execution of those orders on new procedural steps. ECF 57 at 95–96. That is relief "arising from the decision or action by the [Secretary] to . . . execute removal orders," 8 U.S.C. § 1252(g), on any reading, narrow or otherwise. ECF 72 at 11–13. The orders now issuing under that stay also confirm it. Courts applying ECF 57 have entered injunctions that reach past release to bar removal itself—directing that Respondents "not remove [the petitioner] . . . until further order," *Zavala Almanza v. Oddo*, No. 3:26-cv-720, 2026 WL 1506283, at *1 (W.D. Pa. May 29, 2026), and that they "remain ENJOINED from rearresting or otherwise detaining Petitioner . . . ," *Perdomo Reynaud v. Lyons*, No. 26-cv-05905, 2026 WL 1674229, at *6 (D.N.J. June 10, 2026). However those courts styled the underlying claim, an order forbidding the Government to remove or to re-detain an alien under a final order of removal restrains the very thing § 1252(g) protects: "the decision or action . . . to execute removal orders." 8 U.S.C. § 1252(g). Defendants grounded this point in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) (*AAADC*), itself: Section 1252(g) was "directed against" precisely "attempts to impose judicial constraints upon prosecutorial discretion." ECF 72 at 11 (quoting *AAADC*, 525 U.S. at 482, 485 n.9). Plaintiffs offer no answer. Their only use of *AAADC* is to borrow its description of § 1252(f)(1) as "a limit on injunctive relief." ECF 83 at 3. They invoke the case for one subsection and ignore its holding on the other. And that holding forecloses their "narrow reading": *AAADC* applied § 1252(g) to a policy-level challenge—selective enforcement— not to any single enforcement decision—because "*[m]any* provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation." *AAADC*, 525 U.S. at 486. *DHS v. Regents of the University of California*, 591 U.S. 1 (2020) (*Regents*), as Plaintiffs invoke it, held § 1252(b)(9) inapplicable to parties "not challenging any removal proceedings." ECF 83 at 12 (quoting *Regents*, 591 U.S. at 19). Here the operative classes are built from removal proceedings and orders, and the remedy postpones the execution of those orders, plain and simple.

The "purely legal question" safe harbor invoked at ECF 83 at 10–11 describes declaratory answers that leave the Executive's discretion intact; it does not describe orders that postpone removal. The same mismatch defeats the "collateral" framing. ECF 83 at 12–13. A claim whose remedy postpones removal is not "independent of or collateral to the removal process"; it is the district court managing the removal process. And Plaintiffs' contention that immigration courts cannot adjudicate U- and T-visa petitions, ECF 83 at 13, answers a question no one asked. The question under § 1252 is not which forum Plaintiffs prefer but which forums Congress left open: the petition-for-review channel and § 1252(f)(1)'s individual proviso. ECF 72 at 11–12. Sections 1252(a)(5) and (b)(9) channel these claims independently, and Plaintiffs barely engage them. *J.E.F.M.* holds that § 1252(a)(5) and (b)(9) "channel review of all claims, including policies-and-practices challenges, through the PFR process whenever they 'arise from' removal proceedings." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016). Plaintiffs confirm the channeling: Having obtained the classwide order, they returned to this Court twice—ECF 65 and 66— to compel the readmission of particular individuals the order supposedly already covers, relief indistinguishable from the review of individual removal orders that § 1252(a)(5) commits to the court of appeals. Defendants rest on ECF 72 at 11–14 for the remainder.

3.     <u>Plaintiffs Fail to Rebut Their Lack of Standing</u>

Plaintiffs' time-of-filing frame, ECF 83 at 14, answers the wrong question. A plaintiff "bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit ***and maintaining it thereafter***." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (emphasis added) (cleaned up). Filing-date detention is a past injury; prospective classwide stays require a likelihood of future injury, and the Order's traceability finding rests on an inference—that pre-2025 forbearance policies, rather than individualized enforcement judgments, explain past practice—that Defendants have shown is unsupported. ECF 72 at 14–15. The relation-back doctrine, ECF 83 at 15, answers mootness for a named plaintiff's transitory claim; it does not manufacture the ongoing injury forward-looking relief requires, much less for the "future clients" of organizations

who have yet to walk through the door. ECF 57 at 96. Also, the organizational and associational theories fare no better. Diverting resources in response to a policy one opposes is the theory that the Supreme Court flatly rejected in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024). ECF 72 at 15. As for CHIRLA, Plaintiffs point back to member evidence "submitted" with an earlier reply. ECF 83 at 15 (citing ECF 45 at 5–6). A citation to earlier briefing identifies no injured member with individualized proof—and two organizations' standing cannot, in any event, carry relief for three nationwide classes.

### 4. Plaintiffs Fail to Rebut That They Misread § 1227(d)

Plaintiffs' own concession decides this point: "Defendants have long had the authority to grant stays of removal, regardless of U or T visa eligibility, *see* 8 C.F.R. § 241.6(a)." ECF 83 at 17. Exactly the point: Stay authority is discretionary and predates the TVPRA, and § 1227(d)(1) added a permissive, grant-side channel—the Secretary "may grant the alien an administrative stay"—for a defined class of applicants. It nowhere conditions removal on a prima facie eligibility adjudication. ECF 72 at 16. And because § 1227(d)(1) commits the stay decision to the Secretary's discretion, § 1252(a)(2)(B)(ii) independently bars review of it. *See Patel v. Garland*, 596 U.S. 328, 342 (2022); *Mullin v. Doe*, 2026 WL 1825840, at *10 ("If the final agency action is unreviewable, then so too are subsidiary determinations. This important principle ensures that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering."). Yet the Order stays the Blind Removal Policy "in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of the Stay of Removal Class," ECF 57 at 96, and separately enjoins removing two class representatives "without a prima facie determination regarding their eligibility regarding the visas for which they applied." *Id.* Plaintiffs' contrary reading—that a statute about granting stays must equally govern denying them, ECF 83 at 16–17—writes a mandatory pre-removal adjudication into a discretionary provision. The Order's own reasoning shows the slip: It described the prima facie determination as "a non-discretionary pre-requisite to the action described in the

second segment"—that is, to granting an administrative stay. ECF 57 at 86. Nothing in that if-then structure makes the determination a prerequisite to removal, yet ¶ 5 enjoins removal, classwide, without one. That is not § 1227(d)(1) enforced but rewritten.

Plaintiffs' remaining arguments concede the rest. The Order, they insist, "does not mandate any particular outcome on a stay request." ECF 83 at 16. An order that mandates no outcome, yet halts the removal of an entire class until a USCIS paperwork step occurs, is not enforcing § 1227(d)(1); it is suspending § 1231 and renaming the suspension a procedure. Their superfluity argument—Congress must have meant prima facie review to govern denials because stay authority already existed, ECF 83 at 17—inverts the text. Reading § 1227(d)(1)'s permissive, grant-side channel to forbid removal absent a prima facie adjudication converts "may grant" into "may not remove." *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' . . . contrasts with the legislators' use of a mandatory 'shall' in the very same section."). And Plaintiffs, unable to offer anything better, wave off *Garcia v. Noem*, No. 3:25-cv-06008-DGE, 2025 WL 3237502, at *4 (W.D. Wash. Nov. 20, 2025), as an unpublished decision that rejected only an argument "that the filing of a T or U visa application grants an automatic stay of removal"—which, they say, "is not Plaintiffs' argument here." ECF 83 at 18.

*Garcia* held more, in fact. The plaintiff there invoked *Sanchez Jimenez*—the same unpublished decision from which the Order borrowed its if-then reading, ECF 57 at 86; ECF 72 at 16—to argue that a prima facie determination is required before the Secretary may execute removal. *Garcia*, 2025 WL 3237502, at *4. That is Plaintiffs' argument here, in ¶ 5's own words. *See* ECF 57 at 96. And *Garcia* rejected it at the root: "It is unclear how *Jimenez* reached the conclusion that a prima facie determination is required prior to removal," because "§ 1227(d)(1) says nothing about the timing of the prima facie determination relative to removal." *Garcia*, 2025 WL 3237502, at *4; *accord* ECF 72 at 17 (quoting *Garcia*). Nor does "unpublished" carry Plaintiffs anywhere: The Order's own reading rests on *Sanchez Jimenez*, a decision no less unpublished. ECF 72 at 16. And *Garcia* is the only court to have actually examined *Sanchez Jimenez*'s reasoning.

11

Plaintiffs' last move on § 1227(d)(1) recasts the Ex Parte Application's regulatory point as a deference argument and refutes the invention: A regulation, they say, "may never exceed the limits of a statute," and courts owe agency interpretations no deference. ECF 83 at 18 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024)). Defendants argued no agency deference. They invoked 8 C.F.R. § 214.14(c)(1)(ii) for the consequence of Plaintiffs' construction: If a prima facie determination must precede removal, the mere filing of a petition becomes a de facto stay—"exactly the result Congress's implementing regulation forecloses." ECF 72 at 16–17 (quoting 8 C.F.R. § 214.14(c)(1)(ii)). The statute's permissive text does the interpretive work; the regulation, the agency's contemporaneous 2009 directive, and the Second and Seventh Circuits confirm it. ECF 72 at 15–17. *Loper Bright* endorses precisely that use of agency materials: "[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." 603 U.S. at 394. And the hornbook rule they invoke—that a regulation "may never exceed the limits of a statute"—describes the Order's defect: It is the Order that reads into § 1227(d)(1) a classwide removal bar its text nowhere contains. ECF 72 at 16.

### 5. Plaintiffs Fail to Rebut That the Classes Are Fail-Safe

Plaintiffs' lead answer is that Rule 23(c)(1)(C) "permits a court to alter or amend an order granting class certification at any point prior to the entry of final judgment." ECF 83 at 18 (citation omitted). That is a concession dressed as a defense: Definitions that need future repair cannot support present classwide relief. Their merits answer—"whether those policies are lawful has nothing to do with class membership," ECF 83 at 19—does not engage the definitions' own terms, which incorporate the challenged conduct they are meant to adjudicate. ECF 72 at 19. Plaintiffs' own illustration proves the defect: Deferred Action Class membership turns on whether Defendants "failed to provide 'notice and an opportunity to be heard.'" ECF 83 at 19. That is the very conduct the due-process claim adjudicates—if Defendants prevail, the class dissolves around them. Rule 23(b)(2) is an independent obstacle. Its "key" is "the indivisible nature of the injunctive or declaratory

12

remedy warranted." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); ECF 72 at 19. Yet § 1252(f)(1) makes relief available only "to an individual alien"—the antithesis of an indivisible, one-injunction remedy. A class whose relief the governing statute parcels out alien-by-alien cannot be certified under Rule 23(b)(2) to deliver that relief wholesale.

And Plaintiffs have proved the remedy divisible in fact: Twice already they have returned to this Court, in ECF 65 and 66, to secure individualized readmission for particular people the classwide order supposedly covers. A remedy administered one movant at a time is not the single, indivisible injunction Rule 23(b)(2) demands; it is the individualized relief § 1252(f)(1) confines to individual proceedings. And there is no "waiver," ECF 83 at 16: The Ex Parte Application challenges ECF 57 ¶¶ 1–5 on jurisdictional grounds—§ 1252(f)(1), the channeling provisions, standing—and so challenges every paragraph of the relief. Indeed, jurisdictional defects are not forfeited. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). Plaintiffs' authorities (ECF 83 at 16) do not bridge the gap: Each concerns a litigant's failure to raise an argument at all. And Plaintiffs cannot have it both ways—insisting (ECF 83 at 9–10) that Defendants merely re-litigate issues the Court has already decided, then arguing (ECF 83 at 16) that they failed to raise them.

6.     Plaintiffs Fail to Rebut the Re-Entry Injunction Defect

Plaintiffs defend ECF 57 ¶¶ 4–5 as near-nullities—the Order "merely enjoins" interference with re-entry—yet concede that it "commands 'Defendants,' including the Secretary of Homeland Security . . . to permit Plaintiffs' returns." ECF 83 at 20. The concession refutes the defense. An order that commands DHS to effectuate the readmission of individuals now abroad is mandatory relief, and such relief issues only where the movant "establish[es] that the law and facts clearly favor [its] position . . . ." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Plaintiffs' authorities, ECF 83 at 19–20, even assuming they remain good law, are remedial decrees entered on adjudicated violations—*Walters v. Reno*, 145 F.3d 1032, 1050 (9th Cir. 1998), after judgment that the INS's notice procedures violated due process; *Singh v. Waters*, 87 F.3d

13

346, 350 (9th Cir. 1996), on a record of accomplished unlawful removal—not preliminary return mandates entered before any merits determination.

Plaintiffs' burden answer similarly refutes itself. Nothing on the Olson Declaration's list, they say, "ha[s] actually come to pass." ECF 83 at 21. The obligations exist now—and events have come to pass: Plaintiffs have already filed two follow-on motions to extend the re-entry mandate. ECF 65; ECF 66. An order Plaintiffs themselves must ask the Court to "clarify," ECF 81 at 7, is neither self-executing nor specific, *see* Fed. R. Civ. P. 65(d)(1)—and the motion practice it has already generated is the case-by-case administration the Olson Declaration forecasts. *See generally* ECF 72-2. The status-quo defense also fails on its own definition. The "last uncontested status which preceded the pending controversy," ECF 83 at 21 (citation omitted), for individuals removed before this suit was filed, is their post-removal status. An order compelling their readmission does not preserve that status; it reverses it. That is affirmative, status-quo-altering relief—available, if at all, only upon a showing that clearly favors Plaintiffs, which they never attempt. Defendants rest on ECF 72 at 20–21 for the remainder.

### B. Plaintiffs Fail to Rebut Defendants' Irreparable Injury

The Supreme Court has answered the irreparable-harm question in terms that Plaintiffs never engage: The Government "is likely to suffer irreparable harm" from "injunctions that likely exceed the authority conferred by the Judiciary Act." *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025); ECF 72 at 22–23. Plaintiffs' only reply—that Defendants have shown no likelihood of success, ECF 83 at 24—assumes the answer to the question presented: If ECF 57 ¶¶ 1–3 likely exceed § 1252(f)(1)'s jurisdictional grant, *CASA* supplies the harm showing. Tellingly, Plaintiffs' contrary authority is a footnote from an opinion their own citation describes as "vacated and remanded." ECF 83 at 23.

The injury is not hypothetical. Plaintiffs' own filings collect out-of-district decisions ordering release—and barring re-detention—under ECF 57, ECF 81 at 6–7, while other courts refuse the Order any effect, *see Rauda Choto*, 2026 WL 1652576, at *2; *Ayala-Morales v. Olson*, No. 2:26-cv-00375-JRS-MJD, 2026 WL 1781976, at *3 (S.D.

14

Ind. June 22, 2026) ("ICWC does not compel his release.")—disuniformity a stay would quiet. Enforcement forgone under a stayed-policy regime cannot be recovered, and Defendants must answer ECF 57 one habeas petition at a time. And Plaintiffs' answer on the Laken Riley Act—"the Court can address any alleged resulting harm then," ECF 83 at 24 n.7—concedes the point: A sovereign that must ask permission to enforce an Act of Congress suffers the institutional injury *CASA* describes—now, not hypothetically.

Plaintiffs' Form G-28 response, ECF 83 at 24, concedes the burden it disputes. A G-28 identifies counsel in a single alien's file, after that file is opened and read; it is not a queryable registry of two organizations' clienteles—much less of their "future clients," to whom the Order's relief also runs. ECF 57 at 96. Plaintiffs' proposed compliance method *is* the burden: Before any enforcement step against anyone, agents must pull the A-file, locate any G-28, and determine whether counsel's firm is one of two named organizations.

### C. Plaintiffs Fail to Rebut That a Stay Will Not Injure Them

Plaintiffs' harm theory assumes their merits: A stay injures class members only if Defendants' policies are unlawful. ECF 83 at 25. If the appeal succeeds, the interim "harm" is ordinary enforcement—and during this short, self-dissolving stay, class members retain § 1252(f)(1)'s individual proviso and the stay authority Plaintiffs concede Defendants have long had. ECF 72 at 1, 24; ECF 83 at 17.

### D. Plaintiffs Fail to Rebut That the Public Interest Strongly Favors a Stay

The public interest "merge[s]" with the Government's showing, *Nken*, 556 U.S. at 435, and "[t]here is always a public interest in prompt execution of removal orders," *id*. at 436. Plaintiffs' own epigraph—a stay is "an intrusion into the ordinary processes of administration and judicial review," ECF 83 at 3 (quoting *Nken*, 556 U.S. at 427)—describes ECF 57's classwide stays far better than a brief pause while the United States decides whether to appeal. ECF 72 at 24–25.

## III. CONCLUSION

For the foregoing reasons and those stated in ECF 72, the Court should stay enforcement of ECF 57 ¶¶ 1–5 pending the Solicitor General's authorization decision.

15

Respectfully submitted,

Dated: July 14, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Special Assistant United States Attorney

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Defendants, certifies that this memorandum of points and authorities contains 15 pages, which complies with the page limit set by the Court in its order. *See* Standing Order at 6, ECF 10.

Dated: July 14, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA