TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
PUSHKAL MISHRA (Cal. Bar No. 298695)
Special Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (714) 338-3503
    E-mail: pushkal.mishra@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMIGRATION CENTER FOR WOMEN AND CHILDREN, *et al*.,<br><br>    Plaintiffs,<br><br>       v.<br><br>MARKWAYNE MULLIN, Secretary of Homeland Security, *et al*.,<br><br>    Defendants. | No. 2:25-cv-09848-AB-AS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**<br><br>Hearing Date:    September 4, 2026<br>Hearing Time:    10:00 a.m.<br>Courtroom:       7B<br><br>Honorable André Birotte Jr.<br>United States District Judge |

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on September 4, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable André Birotte Jr., U.S. District Judge, located at the First Street U.S. Courthouse, 350 West First Street, Los Angeles, California 90012, Defendants will and hereby do move this Court to enter an order dismissing the Complaint in its entirety.

This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that: (1) this Court lacks jurisdiction over this case; (2) Plaintiffs fail to state a claim upon which relief can be granted; (3) Plaintiffs' claims impermissibly intrude on the Executive's plenary authority over immigration detention; and (4) the Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the pleadings (and exhibits it references, incorporates, or relies on), files, and records in this action; and such further evidence and/or argument as may be presented at or before the hearing on this Motion. A proposed order has been included herewith.

This Motion is made following a pre-filing conference of counsel held on May 27, 2026, in compliance with Local Rule 7-3 and Section 12.b of the Court's Standing Order for Civil Cases (ECF 10).

i

# TABLE OF CONTENTS

DESCRIPTION                                                                                    PAGE

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND .............................................................................................. 2

III.    LEGAL STANDARD ...................................................................................... 2

IV.     ARGUMENT ................................................................................................... 3

        A.      The Court Lacks Subject-Matter Jurisdiction Under Rule 12(b)(1) ............. 3

                1.      Section 1252(f)(1) Bars the Classwide Relief Plaintiffs Seek ........... 3

                2.      § 1252(g), (b)(9), and (a)(5) Channel Plaintiffs' Claims Out of Here ........................................................................................... 5

                3.      Plaintiffs Lack Article III Standing ...................................................... 7

        B.      Plaintiffs' Impermissible Shotgun Pleading Fails Rule 8 ......................... 11

        C.      The Complaint Fails to State a Claim for Relief Under Rule 12(b)(6) ...... 13

                1.      The 2025 Interim Guidance Is Not Final Agency Action (Counts 1, 2) ........................................................................................ 14

                2.      ICE's Enforcement Choices Are Committed to Agency Discretion by Law (Counts 1, 2, 3, 9) .............................................. 16

                3.      The 2025 Guidance Is Not Arbitrary or Capricious (Counts 1, 3, 9) ................................................................................................... 18

                4.      Plaintiffs Allege No Protected Interest (Counts 5, 6, 7) ................... 19

                5.      The "Blind Removal" Theory Misreads § 1227(d) (Counts 8, 9) ........................................................................................ 23

                6.      The *Accardi* Claim Fails for Lack of a Binding Norm (Count 4) ........................................................................................ 24

V.      CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Accardi v. Shaughnessy,*
347 U.S. 260 (1954) ................................................................................... 24, 25

*Aguilar v. Semaia,*
No. 26-00023, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026) ....................................... 22

*Alcaraz v. INS,*
384 F.3d 1150 (9th Cir. 2004) ................................................................................ 14

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................................................ 24

*Arizona v. United States,*
567 U.S. 387 (2012) ................................................................................................ 16

*Asgari v. USCIS,*
No. 22-01888, 2023 WL 6785801 (C.D. Cal. July 31, 2023) ................................... 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................... passim

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) .................................................................................... 3

*Bennett v. Spear,*
520 U.S. 154 (1997) ........................................................................................ 14, 15

*Beno v. Shalala,*
30 F.3d 1057 (9th Cir. 1994) ................................................................................... 17

*Block v. Rutherford,*
468 U.S. 576 (1984) ................................................................................................ 21

*Board of Regents of State Colleges v. Roth,*
408 U.S. 564 (1972) ................................................................................................ 20

*Byambadorj Tsendayush v. Bondi,*
No. 5:26-cv-00970-SB-KES, ECF 24 (C.D. Cal. May 7, 2026) ............................... 23

*Carranza v. INS,*
277 F.3d 65 (1st Cir. 2002) ..................................................................................... 25

i

*Christensen v. Harris County*,
    529 U.S. 576 (2000) ........................................................................................... 24

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013) ............................................................................................. 9

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) ......................................................................... 15

*Cummings v. Missouri*,
    71 U.S. 277 (1866) .............................................................................................. 5

*Demore v. Kim*,
    538 U.S. 510 (2003) ...................................................................................... 22, 23

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) .............................................................................................. 20

*Doran v. Salem Inn, Inc.*,
    422 U.S. 922 (1975) ............................................................................................ 5

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
    543 F.3d 586 (9th Cir. 2008) ........................................................................... 16

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009) .......................................................................................... 18

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) .......................................................................................... 11

*FDA v. Wages & White Lion Invs., LLC*,
    604 U.S. 542 (2025) .......................................................................................... 18

*Galvez v. Jaddou*,
    52 F.4th 821 (9th Cir. 2022) .............................................................................. 4

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ......................................................................................... 4, 5

*Gibson v. City of Portland*,
    165 F.4th 1265 (9th Cir. 2026) .................................................................... 11, 12

*Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*,
    800 F.2d 1514 (9th Cir. 1986) ......................................................................... 17

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .......................................................................................... 11

ii

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ............................................................................ 16, 17

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ..................................................................................... 3

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ................................................................. 11

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977) ................................................................................. 10

*Matter of Ibarra-Vega*,
    29 I. & N. Dec. 476 (BIA 2026) ......................................................... 10, 20

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ................................................................... 6

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ................................................................................... 7

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................. 16

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ................................................................................. 16

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ............................................................... 12

*Make the Road N.Y. v. Mullin*,
    179 F.4th 16 (D.C. Cir. 2026) .................................................................. 21

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ....................................................................... 20, 21, 22

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ................................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................... 20, 21

*Mullin v. Al Otro Lado*,
    146 S. Ct. 2079 (2026) ............................................................................ 4, 5

*Mullin v. Doe*,
    146 S. Ct. 2121 (2026) ........................................................................... 4, 24

*Munoz v. Ashcroft*,
339 F.3d 950 (9th Cir. 2003) ................................................................ 20

*National TPS Alliance v. Noem*,
166 F.4th 739 (9th Cir. 2026) ................................................................ 4

*Norton v. SUWA*,
542 U.S. 55 (2004) ............................................................................... 16

*Osorio Gonzalez v. Wesling*,
No. 26-cv-231-JJM-AEM, 2026 WL 1765871 (D.R.I. June 19, 2026) ........ 5

*Patel v. Garland*,
596 U.S. 328 (2022) ....................................................................... 23, 24

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) ............................................................................... 24

*Matter of Quintero*,
18 I&N Dec. 348 (BIA 1982) ............................................................... 10

*Rauda v. Jennings*,
55 F.4th 773 (9th Cir. 2022) .................................................................. 6

*Regents of the Univ. of Cal. v. DHS*,
908 F.3d 476 (9th Cir. 2018) ............................................................... 20

*Reno v. American-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ............................................................................. 19

*Rivas-Melendrez v. Napolitano*,
689 F.3d 732 (7th Cir. 2012) ...................................................... 6, 7, 25

*Rodriguez Diaz v. Garland*,
53 F.4th 1189 (9th Cir. 2022) .............................................................. 22

*Rodriguez Vazquez v. Bostock*,
No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026) ...................... 22

*Romeiro de Silva v. Smith*,
773 F.2d 1021 (9th Cir. 1985) ............................................................. 20

*S. Cal. All. of POTW v. EPA*,
8 F.4th 831 (9th Cir. 2021) ............................................................ 14, 16

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ............................................................... 2

*Samuels v. Mackell*,
401 U.S. 66 (1971) ................................................................................................ 5

*Sanchez Jimenez v. DHS*,
No. 2:22-cv-00967, 2022 WL 19410308 (C.D. Cal. Nov. 14, 2022) ........................ 23

*SMART v. FRA*,
988 F.3d 1170 (9th Cir. 2021) .............................................................................. 18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........................................................................... 14, 15

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...................................................................... 1, 14, 15

*Tazu v. Att'y Gen.*,
975 F.3d 292 (3d Cir. 2020) .................................................................................. 6

*Tovar-Landin v. Ashcroft*,
361 F.3d 1164 (9th Cir. 2004) .............................................................................. 20

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) ............................................................................................ 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .............................................................................................. 8

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .............................................................................................. 5

*Trump v. New York*,
592 U.S. 125 (2020) .............................................................................................. 9

*United States v. Caceres*,
440 U.S. 741 (1979) ............................................................................................ 25

*United States v. Lee*,
274 F.3d 485 (8th Cir. 2001) ............................................................................... 25

*United States v. Texas*,
599 U.S. 670 (2023) ....................................................................... 5, 9, 16, 17, 18

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) .............................................................................................. 3

*Village of Bald Head Island v. U.S. Army Corps of Eng'rs*,
714 F.3d 186 (4th Cir. 2013) ............................................................................... 15

*Visendi v. Bank of Am., N.A.*,
   733 F.3d 863 (9th Cir. 2013) ............................................................................ 13

*W. Radio Servs. v. Espy*,
   79 F.3d 896 (9th Cir. 1996) ............................................................................. 14

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ......................................................................................... 21

*Webster v. Doe*,
   486 U.S. 592 (1988) ......................................................................................... 17

*Matter of Yajure Hurtado*,
   29 I. & N. Dec. 216 (BIA 2025) .................................................................. 8, 22

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ......................................................................................... 21

**Statutes**

5 U.S.C. § 553 .................................................................................................... 14

5 U.S.C. § 701 .................................................................................................... 16

5 U.S.C. § 705 ............................................................................................. 3, 4, 5

5 U.S.C. § 706 ............................................................................................... 5, 24

6 U.S.C. § 202 .................................................................................................... 16

8 U.S.C. §§ 1221–1232 ....................................................................................... 4

8 U.S.C. § 1225 .................................................................................................. 22

8 U.S.C. § 1226 ............................................................................... 4, 5, 19, 22, 23

8 U.S.C. § 1227 ............................................................................................. 23, 24

8 U.S.C. § 1229a .................................................................................................. 4

8 U.S.C. § 1231 .................................................................................................... 4

8 U.S.C. § 1252 ............................................................................................ passim

8 U.S.C. § 1357 .................................................................................................. 23

8 U.S.C. § 1367 ............................................................................................. 18, 19

28 U.S.C. § 1391 ................................................................................................ 13

**Regulations**

8 C.F.R. § 212.16 ............................................................................................... 10

8 C.F.R. § 212.17 ................................................................................................. 9

8 C.F.R. § 214.14 ..............................................................................9, 20, 22

8 C.F.R. § 214.204 ................................................................................ 10, 20

8 C.F.R. § 214.207 ..................................................................................... 10

8 C.F.R. § 236.1 .......................................................................................... 23

8 C.F.R. § 274a.12 ...................................................................................... 19

8 C.F.R. § 287.3 .......................................................................................... 23

8 C.F.R. § 1003.1 ........................................................................................ 21

8 C.F.R. § 1003.18 ...................................................................................... 21

**Rules**

Fed. R. Civ. P. 8 ................................................................................... 11, 12

Fed. R. Civ. P. 12 ................................................................................ 2, 3, 13

Fed. R. Civ. P. 20 ....................................................................................... 13

**Other Authorities**

Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025) .......................... 18

ICE Directive 11005.1, Guidance Regarding U Nonimmigrant Status (U Visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal (Sept. 25, 2009) (superseded) ............................................................ 18

ICE Directive 11005.2, Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners (Aug. 2, 2019) (superseded) ................................................................................................... 18

ICE Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021) (rescinded) .............................................. passim

ICE Policy 11005.4, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits (Jan. 30, 2025) ............................................................ passim

Memorandum from Julie L. Myers, Asst. Sec'y, ICE, Prosecutorial and Custody Discretion (Nov. 7, 2007) ............................................................... 18

USCIS Policy Manual .................................................... 9, 10, 16, 17, 24, 25

## I.    INTRODUCTION

Plaintiffs ask this Court to set aside the four-page 2025 Interim Guidance, to enjoin two policies that appear nowhere in writing, and to order the release and the return of people across the country who are not before it. The Complaint cannot carry that weight. It is refuted by the exhibit it attaches, it pleads two nationwide policies from a handful of anecdotes and news reports, and it contradicts itself on the facts that matter most.

Start with Plaintiffs' own Exhibit A. The Complaint alleges that the 2025 Interim Guidance "authorizes the removal of Pending Petition Class members without observing any of the[] protections" of the INA's U and T visa provisions and their implementing regulations. ECF 1 ¶¶ 197–98. But the 2025 Interim Guidance says the exact opposite. Enforcement occurs "at the discretion of Field Office Directors (FODs) and Special Agents in Charge (SACs) in consultation with the Office of the Principal Legal Advisor (OPLA), where the totality of circumstances warrant" it. ECF 1-1 at 1 n.1. Officers "should consult with" OPLA (ICE's in-house legal counsel) before acting "to ensure any such action is consistent with applicable legal limitations." *Id.* at 2. That ICE personnel "remain bound to adhere to ***all applicable statutory and policy requirements***" is one of those legal limitations. *Id.* at 3 (emphasis added). And the 2025 Interim Guidance disclaims the enforceable norm on which every count depends: It "provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice," and "may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law." *Id.* at 4. A characterization that the incorporated document plainly refutes is not entitled to the presumption of truth. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

The two unwritten policies rest on far less. For the "De Facto Revocation Policy," the Complaint offers four individual accounts and the assertion that ICE "now routinely detains and deports people who have valid grants of deferred action." ECF 1 ¶ 88. For the "Blind Removal Policy," it offers three, and the assertion that ICE "now engages in a

1

pattern and practice of refusing to request prima facie determinations." *Id.* ¶ 89. No written directive, no memorandum, no instruction, and no declarant is identified for either. Neither is pleaded on information and belief. A policy is not pleaded by naming it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading then contradicts itself on the facts that would matter if the policies existed. It asks the Court to order the release of Camila B., ECF 1 at 74, Request for Relief ¶ 8, after pleading that "[t]he immigration judge ordered release on bond on July 30, 2025," *id.* ¶ 116. It places Luna E. "in approved deferred action status," *id.* ¶ 19, while her own factual section alleges no grant at all, *id.* ¶¶ 135–41. It alleges that Luna E. "likely would have been released" under prior policy, *id.* ¶ 140, while simultaneously pleading that she has been detained since 2023—roughly eighteen months of it under the 2021 Directive she says would have freed her, *id.* ¶ 139. And the three Plaintiffs whose petitions postdate the 2025 Interim Guidance could not have relied on the regime it replaced. *Id.* ¶¶ 21 (Ruano), 145 (Carmen), 157 (Daniel H.). What remains is a request for relief that Congress has withdrawn. Plaintiffs seek classwide orders postponing and setting aside enforcement policies, barring removals nationwide, and compelling the release of absent class members in custody across the country. Section 1252(f)(1) forecloses it. The Complaint should be dismissed in its entirety.

## II.    BACKGROUND

Eight individual Plaintiffs and four organizational Plaintiffs sue the Secretary of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Immigration and Customs Enforcement ("ICE"). ECF 1. The Complaint challenges three asserted "policies"—the 2025 Interim Guidance, an alleged "De Facto Revocation Policy," and an alleged "Blind Removal Policy"—in nine counts. *Id.* ¶¶ 170–71, 180–247. The factual, statutory, and regulatory background is set forth in full in ECF 39 and 40.

## III.    LEGAL STANDARD

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting

the motion to dismiss into a motion for summary judgment." *Id.* The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). A Rule 12(b)(6) attack warrants dismissal where the complaint lacks a cognizable legal theory or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must be dismissed if it fails to allege facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## IV.    ARGUMENT[1]

### A.    The Court Lacks Subject-Matter Jurisdiction Under Rule 12(b)(1)

#### 1.    Section 1252(f)(1) Bars the Classwide Relief Plaintiffs Seek

Start with the relief the Complaint itself calls an injunction. Whatever the reach of § 1252(f)(1) as applied to a classwide stay under 5 U.S.C. § 705, the Prayer does not stop at § 705. It demands preliminary and permanent injunctions against the alleged policies, ECF 1 at 73–75, Prayer ¶¶ 3–4, 9; an injunction barring ICE from "ignoring or overriding deferred action granted by USCIS," *id.* ¶ 6; orders requiring classwide release of absent class members, *id.* ¶ 8; and the classwide return of removed individuals, *id.* ¶ 10. That relief is classwide injunctive relief by its own terms and as to its own proposed classes. This Court has already held that § 1252(f)(1) "barred classwide injunctive relief," ECF 96 at 2, describing ECF 57. Plaintiffs cannot invoke that holding to preserve their stay and escape it as to their injunctions. On the Court's own construction of the statute, the Prayer's injunctive demands are beyond the Court's jurisdiction to award, and the counts that seek them fail at the threshold—without the Court revisiting any contested question.

---

[1] The Court's intervening order, ECF 57, does not foreclose dismissal on the pleadings under Rule 12(b)(1) and (6). The Court's assessments there were preliminary by design, resting on a likelihood-of-success standard, not on the legal sufficiency of the Complaint. Also, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); ECF 88 at 8–9. Plaintiffs acknowledge so. ECF 80 at 5.

Section 1252(f)(1) strips district courts of "jurisdiction or authority to enjoin or restrain the operation of" 8 U.S.C. §§ 1221–1232—the very provisions the Complaint asks this Court to displace—and because the bar applies "[r]egardless of the nature of the action or claim," 8 U.S.C. § 1252(f)(1), the inquiry is functional, turning on what a classwide order makes the Government do rather than on the order's label. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) ("Putting these terms together, § 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions."); *see* ECF 72 at 3–11 (§ IV.A.1, establishing that a classwide § 705 stay restrains the operation of §§ 1221–1232); ECF 88 at 2–7 (rebutting Plaintiffs' label-based defense). Yet the Prayer is a catalog of the forbidden relief, each entry asking this Court to order DHS to refrain from detaining class members under § 1226, from initiating and conducting their removal proceedings under § 1229a, and from executing their removal orders under § 1231. Relief reinstating the 2011 Policy and the 2021 Directive classwide is no neutral restoration: Those policies affirmatively directed ICE to refrain from enforcement against victim-based petitioners, to release them from detention, and to grant stays of removal, ECF 1 ¶¶ 71–81, so an order reinstating them prescribes the Government's future conduct toward three nationwide classes. That is the exact opposite of what the Ninth Circuit says a § 705 set-aside is supposed to be. *Nat'l TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) ("By its plain terms, a set aside does not affect the Government's future actions."); *see also* ECF 72 at 3–11 (§ IV.A.1, establishing that a classwide § 705 stay restrains the operation of §§ 1226, 1229a, and 1231); ECF 88 at 3–7 (§ II.A.1, rebutting Plaintiffs' § 705, *Galvez*, and statutory-title arguments).[2]

---

[2] The Supreme Court reaffirmed the anti-evasion principle this Term, enforcing an express immigration jurisdiction bar by its "plain meaning"—which is "very broad"—and holding that such a bar cannot be circumvented "by creative pleading or clever lawyering." *Mullin v. Doe*, 146 S. Ct. 2121, 2133, 2136 (2026). Justice Thomas applied that principle to § 1252(f)(1) itself, explaining that a court does not escape the bar by recasting an injunction as "nominally declaratory" or APA relief, because such an order has "the practical effect of 'restraining' the Government in the same way that an injunction would." *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2097–98 (2026) (Thomas, J., concurring); *see*

4

Nor can Plaintiffs retreat to declaratory relief. Declaratory and injunctive relief carry "virtually identical" practical effect when directed at executive enforcement of contested statutes, *Doran v. Salem* Inn, Inc., 422 U.S. 922, 931 (1975) (quoting *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)); *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025); *see also* ECF 72 at 6–8 (§ IV.A.1, establishing that declaratory and § 705 relief restrain the covered provisions no less than an injunction). The statutory consequence is dismissal, not adjustment. Section 1252(f)(1) permits relief only "with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The proviso is a carve-out for one alien's case at a time; the Complaint is its opposite. Every count runs for the named Plaintiffs and the proposed classes, and the Prayer demands classwide orders in a single decree. Calling classwide relief "individualized" because each member ultimately benefits from it proves too much: On that arithmetic *Aleman Gonzalez* would have come out the other way, because the bond-hearing injunctions there also benefited each class member individually. 596 U.S. at 555; *see* ECF 88 at 5–6 (on the proviso and the "as amended by" clause). What Congress forecloses in one step, a court cannot accomplish in two. *Cummings v. Missouri*, 71 U.S. 277, 325 (1866) ("[W]hat cannot be done directly cannot be done indirectly."). Because Counts 1 through 9 all pray for classwide orders restraining the operation of §§ 1226, 1229a, and 1231, the Court lacks jurisdiction to award the relief that is the Complaint's entire object—and no amendment can restore power Congress withdrew.

      2.    § 1252(g), (b)(9), and (a)(5) Channel Plaintiffs' Claims Out of Here

Sections 1252(g), (b)(9), and (a)(5) withdraw jurisdiction over claims arising from the decisions to "commence proceedings, adjudicate cases, or execute removal orders." 8

---

*also* ECF 72 at 8–9 (collecting *Al Otro Lado*, 146 S. Ct. at 2097–98, and *United States v. Texas*, 599 U.S. 670, 690, 693 (2023) (Gorsuch, J., concurring in the judgment), on relabeled vacatur and § 706 relief). Nor is the concern hypothetical. A district court has ordered that, "[p]ursuant to the *ICWC* class action," the Government "shall not act under the 2025 Guidance" in re-detaining a class member "while the Guidance remains stayed." *Osorio Gonzalez v. Wesling*, No. 26-cv-231-JJM-AEM, 2026 WL 1765871, at *10 (D.R.I. June 19, 2026); ECF 88 at 1. Relief that spawns injunctions is not a housekeeping stay.

U.S.C. § 1252(g). *See Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020) (§ 1252(g) "reaches only these three specific actions": commencing proceedings, adjudicating cases, and executing removal orders, and "funnels jurisdiction over that challenge into a petition for review in a single court of appeals"); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031, 1035 (9th Cir. 2016) (making clear that § 1252(b)(9) is "breathtaking" in scope and "vise-like" in grip and therefore "swallows up virtually all claims that are tied to removal proceedings," including "policies-and-practices challenges"); *see also* ECF 72 at 11–14 (§ IV.A.2, establishing that §§ 1252(a)(5) and (b)(9) channel policies-and-practices challenges arising from removal proceedings to the court of appeals); ECF 88 at 7–9 (§ II.A.2, rebutting Plaintiffs' collateral-claim theory); ECF 40 at 17–21 (§ IV.A.1.b, applying *J.E.F.M.* and *Rauda* to these claims); ECF 76 at 4–6 (§ III.A, arguing that 8 U.S.C. § 1252(g) bars district-court jurisdiction over a claim arising from ICE's execution of a removal order). What the *J.E.F.M.* briefing established as a matter of law, this Complaint supplies as a matter of pleading: Each of the three "policies" it challenges is defined by reference to a protected decision. The alleged "De Facto Revocation Policy" is a challenge to whom ICE detains and against whom it commences proceedings. ECF 1 ¶¶ 88, 202. The alleged "Blind Removal Policy" is a challenge to when and how ICE executes final orders. *Id.* ¶¶ 89, 242. And the 2025 Interim Guidance is challenged precisely because—on Plaintiffs' own theory—it governs detention and removal. *Id.* ¶ 83.

That the Complaint calls these individualized, case-by-case decisions under a totality of the circumstances analysis (*see* ECF 1-1 at 1 n.1, 3) a "policy" or "policies" does not make the claims collateral. Aggregation does not beget avoidance from § 1252(g)'s channeling: A "policy" of exercising the protected discretion is not something different from the discretion; it is the discretion, exercised more than once—and *J.E.F.M.* channels "all claims, including policies-and-practices challenges," whenever they "arise from" removal proceedings. 837 F.3d at 1035.[3]

---

[3] *Rivas-Melendrez v. Napolitano* shows how the rule applies to a pleading like this one, especially as to execution of removal that Plaintiffs challenge among other things.

6

Plaintiffs' allegations close off the escape. By their own account, the policies they ask this Court to restore made it "generally against" ICE policy to enforce against known victim-based petitioners, ECF 1 ¶ 76, and the 2021 Directive "continued ICE's longstanding policy to 'refrain from taking civil enforcement action against' individuals 'known to have a pending application' for 'victim-based immigration benefits.'" *Id.* ¶ 81; *cf.* ECF 44 ("[P]rior to the 2025 Guidance, it was rare for Defendants to detain and remove people with pending petitions for Survivor-based Benefits."). A plaintiff cannot say his challenge is not "about" commence-and-execute while demanding an order that forbids those decisions classwide. Plaintiffs' own motion practice confirms it: Having obtained the classwide order, they returned to this Court twice to compel the readmission of specific individuals, ECF 65; ECF 66—relief indistinguishable from the review of individual removal orders that § 1252(a)(5) commits to the court of appeals. These claims belong in the courts of appeals on a petition for review, or nowhere. These bars are not technicalities; they mark a constitutional line. The exclusion of aliens "is a fundamental act of sovereignty," and "[t]he right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Plaintiffs improperly demand what the channeling provisions were enacted to forbid: a single district court superintending, nationwide, ICE's dockets, priorities, and removal calendar.

3.    Plaintiffs Lack Article III Standing

---

There, a lawful permanent resident since 1970 was ordered removed on a 1980 conviction and removed to Mexico; two months later he filed in a district court contending that "both the removal order and the ICE agents' execution of that order are legally invalid," and he "seeks to be returned to the United States." 689 F.3d 732, 736 (7th Cir. 2012). His theory, like Plaintiffs', turned on "the procedural adequacy of his removal proceedings under the relevant immigration regulations." *Id*. The Seventh Circuit held the claim jurisdictionally barred: "[8 U.S.C.] § 1252(g) prevents district courts from reviewing the execution of removal orders." *Id*. Plaintiffs ask this Court for the same relief on the same theory. They allege the removals were procedurally defective under ICE's internal guidance and the regulations (for example, under the 2021 Guidance); and they ask a district court to order their return. That the asserted defect is the absence of a prima-facie determination rather than the absence of notice makes no difference: § 1252(g) categorically speaks to the execution of removal orders, not to the merit of the procedural objection lodged against it.

7

Standing "is not dispensed in gross": Plaintiffs must establish it "for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see also* ECF 40 at 12–17 (§ IV.A.1.a, establishing that no Plaintiff pleads injury traceable to the 2025 Interim Guidance and redressable here); ECF 39 at 6–12 (§ IV.A, establishing that Plaintiffs show no Article III case or controversy warranting prospective classwide relief); ECF 72 at 14–15 (§ IV.A.3); ECF 88 at 9–10 (§ II.A.3). The defect here is starker on the pleading: Twelve plaintiffs must each allege an injury that is concrete and imminent, traceable to the 2025 Interim Guidance, and redressable here, and the Complaint attempts none of that plaintiff-by-plaintiff work. Its allegations show why.

The eight individual Plaintiffs plead away standing element by element. Start with reliance. Yessenia Ruano's T petition was filed twelve days after the Guidance issued, ECF 1 ¶ 153—she could not have relied on a regime that was already rescinded—and ICE never detained her nor executed a removal order against her: Advised at a check-in that detention would follow, she departed the United States on her own, *id*. ¶¶ 155–56. Daniel H. pleads no deferred action, no bona fide determination, and no stay request—nothing to rely on, and nothing to revoke. *Id*. ¶¶ 157–63. Next, traceability. Lupe A. was removed on a final order entered in 1998—twenty-seven years before the Guidance she challenges. *Id*. ¶¶ 104–08. Carmen F. was removed on an order the BIA affirmed in July 2024, six months before the Guidance existed, and only after a six-month stay of removal—granted in November 2024—had expired by its own terms, *id*. ¶ 145; an adjudicated, then-lapsed stay is the opposite of a "blind" refusal. Paulo C. was denied a bond hearing under *Matter of Yajure Hurtado*—a mandatory-detention ruling, not the Guidance. *Id*. ¶ 124. Kenia Merlos was arrested at the border by CBP, *id*. ¶ 131—an encounter no challenged policy directs—and her later transfer to ICE custody flows from that independent arrest, *id*. ¶ 132, not from the Guidance. And Luna E. is alleged to have been in ICE custody since 2023, *id*. ¶¶ 137–40—two years under the 2021 Directive the Complaint holds up as the guarantor of her liberty, with a conviction the prior directives' own "serious adverse factors" exception reached. Last, redressability. Lupe A. and Carmen F. have already been removed; setting

8

aside the Guidance restores nothing their completed removals took. Camila B. has already been ordered released on bond by an immigration judge, *id*. ¶ 116—relief obtained from an independent adjudicator, leaving nothing for this Court to supply. Eight plaintiffs; not one injury that is imminent, traceable to the challenged Guidance, and redressable here. What remains are theories of future injury, and none is "certainly impending." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013). Plaintiffs allege only a fear of how ICE may someday exercise its discretion in their individual cases—that is a claim "riddled with contingencies and speculation." *Trump v. New York*, 592 U.S. 125, 131 (2020).

The removed Plaintiffs are worse off still: Their injuries are past, their recourse is a motion to reopen, and removal extinguishes neither eligibility nor adjudication. An alien "who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U-1 nonimmigrant status directly with USCIS," 8 C.F.R. § 214.14(c)(1)(ii); USCIS adjudicates and approves the petitions of "U-1 petitioners outside the United States," forwarding notice of approval "to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the alien is located," *id.* § 214.14(c)(5)(i)(B); and inadmissibility—including any ground arising from the removal itself—is waivable on Form I-192 "in accordance with 8 CFR 212.17," *id.* § 214.14(c)(2)(iv). Causation then runs the wrong way. The injuries Plaintiffs plead flow from the Executive's underlying Article II enforcement discretion and from independent agency decisions in each individual case—not from the rescission of the 2021 Directive— so setting the Guidance aside would leave ICE with the same discretion it has always had, and would redress nothing. *United States v. Texas*, 599 U.S. 670, 678–80 (2023) ("[W]hen the Executive Branch elects not to arrest or prosecute, it does not exercise coercive power over an individual's liberty or property."). And what remains at the end of the chain is discretion stacked on discretion: On the Complaint's own account, USCIS grants deferred action only when USCIS finds petitioners have a bona fide petition and "warrant a favorable exercise of discretion," ECF 1 ¶ 53 (quoting USCIS PM vol. 3, pt. C, ch. 5(C))— the same Policy Manual standards the Court identified as the scheme's source of

"meaningful standards," ECF 57 at 78. The BIA has since confirmed how little a pending petition secures: A pending U nonimmigrant status petitioner may hold one for over a decade without obtaining "any form of lawful status in the United States"; "almost 250,000" petitions are pending, so today's petitioners "will likely need to wait over 2 decades for a visa to become available"; and even an approved petition "does not entitle [an alien] to delay the completion of deportation proceedings pending availability of a visa number." *Matter of Ibarra-Vega*, 29 I. & N. Dec. 476, 479–80 (BIA 2026) (quoting *Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982)). Relief that depends on a visa two decades away, three discretionary judgments deep, is not redressable injury; it is speculation.[4]

CHIRLA's associational theory fails on the pleading and on the record. Associational standing requires members who could sue in their own right and claims that do not require their participation. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The Complaint names no member, alleging only that "at least three members" have pending U visa petitions, ECF 1 ¶ 167, and no individual Plaintiff is alleged to be a CHIRLA member. CHIRLA's fallback theory—that the 2025 Interim Guidance led it to devote more "resources" to community presentations, id.—fares no

---

[4] Physical presence is assessed at the time of application—"USCIS cannot approve the application for T nonimmigrant status until the applicant returns to the United States," USCIS PM vol. 3, pt. B, ch. 2(C)(2)—so a pending application is not abandoned by removal; it awaits the applicant's return. An applicant "removed from the United States at any time after the act of a severe form of trafficking" re-establishes physical presence upon reentry for "participation in the detection, investigation, prosecution, or judicial processes associated with an act or a perpetrator of trafficking," or where presence rests "on account of their past or current participation in investigative or judicial processes"—including, on USCIS' own reading, a return "to pursue civil, administrative, or criminal remedies related to their trafficking"—or upon return for "treatment or services related to their victimization that cannot be provided in their home country." 8 C.F.R. § 214.207(b)(3)–(5); USCIS PM vol. 3, pt. B, ch. 2(C)(2). The procedural vehicle is likewise supplied: An applicant under a DOJ-issued removal order "may seek rescission of such order by filing a motion to reopen and terminate removal proceedings," which ICE "may agree, as a matter of discretion, to join," 8 C.F.R. § 214.204(o)(2), and any inadmissibility flowing from removal is waivable—an inadmissible T applicant "must submit a request for a waiver of inadmissibility on the Application for Advance Permission to Enter as a Nonimmigrant" (Form I-192), *id.* § 214.204(d) (citing 8 C.F.R. § 212.16). USCIS has applied these provisions to approve presence for applicants who departed and reentered. *See* USCIS PM vol. 3, pt. B, ch. 2(C)(2) n.55 (collecting AAO decisions).

10

better: Organizational standing requires that the challenged conduct have "perceptibly impaired [the organization's] ability to provide . . . services," with "the consequent drain on . . . resources," *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), and the Supreme Court has since confined *Havens* to its facts, holding that an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("An organization cannot manufacture its own standing in that way."). A self-directed decision to fund more presentations against a policy the organization opposes is *Hippocratic Medicine*'s forbidden theory, pleaded verbatim. The record confirms the gap is not curable: The organizations' "current and future clients have never been identified to ICE." ECF 72-2 ¶ 13. And where no named plaintiff has standing, none may litigate for a class. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc).

## B.    Plaintiffs' Impermissible Shotgun Pleading Fails Rule 8

The Ninth Circuit has squarely rejected shotgun pleading: "Shotgun pleading undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." *Gibson v. City of Portland*, 165 F.4th 1265, 1290 (9th Cir. 2026); *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996). The Complaint here is a textbook specimen.

Every count opens with the identical formula: "Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained in the above paragraphs." ECF 1 ¶¶ 180, 195, 200, 210, 215, 223, 234, 238, 245. Each of the nine counts therefore sweeps in all 179 preceding paragraphs—eight individual case histories, four organizations' resource narratives, and three class definitions—so that the constitutional counts absorb the APA allegations and the APA counts absorb the constitutional ones. *Gibson*, 165 F.4th at 1288; *McHenry*, 84 F.3d at 1179–80. The counts then mismatch their own plaintiffs. Counts 3 through 7 are brought by "all Organizational Plaintiffs," though no organization holds deferred action, faces detention, or can be "seized"; as to them, the counts contain nothing but the incorporated atmospherics. Counts 8 and 9 run for "All

11

Plaintiffs," though most plead no stay request at all. Luna E.—the one named plaintiff whose detention allegations might fit the De Facto Revocation counts—appears on none of them, while the operative allegation of Count 3 defines the alleged policy in terms of "U visa petitioners" only, ECF 1 ¶ 202, though the class it fronts includes T petitioners as well, *id.* ¶ 170. The mismatches are structural, not scrivener's errors.

The Complaint likewise pleads against an undifferentiated "Defendants," without distinguishing the Secretary, USCIS, and ICE—distinct entities whose functions the pleading itself distinguishes when convenient, *compare* ECF 1 ¶ 213 (deferred action lies in "USCIS' sole and unreviewable discretion"), *with id.* ¶ 88 ("ICE now routinely detains and deports")—and it attributes to undifferentiated "Defendants" an arrest the pleading elsewhere concedes was made by CBP, a non-party. *Id.* ¶¶ 131, 237.[5] It braids the three alleged "policies" into one undifferentiated course of conduct, attributing every Plaintiff's harm jointly to "the 2025 Interim Guidance and the De Facto Revocation Policy and Blind Removal Policy that it unleashed." *Id.* ¶ 101. Defendants are entitled to notice of which plaintiff asserts which claim, on which facts, against which agency, under which policy. Rule 8 requires "a short and plain statement"; *Iqbal* requires more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Rule 8 demands notice; the Complaint offers a maze.

The same disparities independently defeat joinder and expose the venue anchor. *See* ECF 40 at 12 n.2 (incorporated herein by reference in full). The center of gravity lies outside this District: The ICE field offices involved are in Texas, Washington, Oregon, and Wisconsin; the arrests, detentions, and removals occurred elsewhere; and the USCIS adjudications occurred at the Vermont or Nebraska Service Centers. *Id.* Even if 28 U.S.C.

---

[5] That undifferentiated lumping is fatal because each agency is entitled to know what it did that is asserted to be wrongful—and virtually every element of Plaintiffs' theories—traceability, final agency action, the identity of the revoking agency—turns on whose conduct is actually at issue. *Gibson*, 165 F.4th at 1290 ("[P]ermitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8."); *see, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (condemning a "quintessential 'shotgun' pleading" that charged all defendants in each count, "making no distinction among the fourteen defendants charged," and was "in no sense the 'short and plain statement of the claim' required by Rule 8").

§ 1391(e)(1)(B)–(C) makes venue technically available, joinder is proper only where the plaintiffs assert a right to relief "arising out of the same transaction and occurrence" and share a common question. Fed. R. Civ. P. 20(a). Another court in this District rejected precisely this attempt to anchor venue by adding resident plaintiffs, holding that claims turning on different applications, agency interactions, and filing dates are "not sufficiently related to constitute the same transaction or occurrence," and that the "[f]actual disparities" were "too great to support permissive joinder." *Asgari v. USCIS*, No. 22-01888, 2023 WL 6785801, at *4 (C.D. Cal. July 31, 2023) (quoting *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013)). Even if the Court does not dismiss outright, it should require a more definite statement so each count identifies the Plaintiff, the Defendant, and the policy on which it rests; it should anyway sever the misjoined claims.

### C.    The Complaint Fails to State a Claim for Relief Under Rule 12(b)(6)

The Complaint contradicts itself wherever precision matters. As but one example, it pleads that Luna E. remains detained "despite her being in approved deferred action status," ECF 1 ¶ 19, yet its own narrative pleads no grant of deferred action—only a bona fide determination and a pending T petition, *id.* ¶¶ 135–41—and then omits Luna from Counts 3 through 7, the very counts her circumstances are offered to anchor. It pleads that under the prior policy Luna "likely would have been released," *id.* ¶ 140, while pleading that she has been in ICE custody since 2023—two years under the 2021 Directive it credits for that likelihood of release. *Id.* ¶ 139. And the premise has since collapsed: Luna's T visa application has been denied—a fact Plaintiffs cannot dispute—her bond request was denied, and her only remaining proceeding is withholding-only, outside this District. ECF 40 at 7–8. The Prayer demands the release of a plaintiff whom the Complaint alleges an immigration judge released on bond months before filing, compare Prayer ¶ 8, with ECF 1 ¶ 116, and the return of "Maria A.," a person named nowhere else in the pleading. Prayer ¶ 10. It pleads a categorical "Blind Removal Policy" alongside ICE's grant of a six-month stay of removal to Carmen F. ECF 1 ¶ 145. It rests its reliance theory on victim-based filings made only after the 2025 Interim Guidance issued. *Id.* ¶ 153 (Ruano's T petition,

filed twelve days after the Guidance issued); *id.* ¶¶ 157–63 (Daniel H.'s U petition, filed weeks after his August 2025 arrest). Allegations contradicted by the pleader's own exhibit or paragraphs are not entitled to the presumption of truth. *Steckman*, 143 F.3d at 1295–96; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001) ("We have held that a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims."). A pleading at war with itself pleads nothing plausibly.

### 1.    The 2025 Interim Guidance Is Not Final Agency Action (Counts 1, 2)

An APA claim lies only against "final agency action," and finality has two conditions: The action must "mark the 'consummation' of the agency's decisionmaking process," and it must be "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The document Plaintiffs attached to their own Complaint flunks the second condition by its own terms: It "is not intended to, does not, and may not be relied upon to create any right or benefit" (2025 Interim Guidance at 4), and it "may be modified, rescinded, or superseded at any time without notice." The 2025 Interim Guidance, which binds no one, confers nothing, and may vanish tomorrow, is the textbook profile of a general statement of policy—exempt from notice-and-comment, 5 U.S.C. § 553(b)(A), and not reviewable final action. *Alcaraz v. INS*, 384 F.3d 1150, 1162–63 (9th Cir. 2004) (holding internal INS policy memoranda unreviewable because they did not create enforceable rights and did not bind the agency); *S. Cal. All. of POTW v. EPA*, 8 F.4th 831, 837–38 (9th Cir. 2021) (holding a guidance document not final agency action where, on its face, it did "not bind anyone to anything"); W. Radio Servs. v. Espy, 79 F.3d 896, 901 (9th Cir. 1996) (holding that agency manuals and handbooks "do not have the independent force and effect of law"); ECF 40 at 21–26 (§ IV.A.1.c(A), establishing on these same authorities that the 2025 Interim Guidance is not final agency action because its disclaimers "mirror[] the disclaimers that the Ninth Circuit has found dispositive").

Plaintiffs' contrary characterizations do not help. The Complaint describes a categorical mandate that "greenlights" detention and removal "as a routine matter." ECF

1 ¶ 8; *see id.* ¶ 83 (alleging that the Guidance "requires enforcement"). Exhibit A says otherwise at every turn: Enforcement lies "at the discretion of Field Office Directors (FODs) and Special Agents in Charge (SACs) in consultation with the Office of the Principal Legal Advisor (OPLA), where the totality of the circumstances warrant enforcement," ECF 1-1 at 1 n.1; OPLA should be consulted "prior to conducting a civil enforcement action," *id.* at 2 ¶ 2; and expedited-adjudication requests continue "subject to a case-by-case determination," *id.* at 3 ¶ 4. The Court need not credit the caricature over the exhibit. *Steckman*, 143 F.3d at 1295–96; *Sprewell*, 266 F.3d at 988; *see* also ECF 40 at 21–29 (§ IV.A.1.c, arguing that the 2025 Interim Guidance is not final agency action and that the APA's discrete-action requirement bars a programmatic challenge).

The Complaint asserts final agency action on the theory that the 2025 Interim Guidance reverses course from decades of agency practice and requires enforcement. ECF 1 ¶ 83. Measured against *Bennett*, that theory fails as a matter of law: Finality turns on whether the action determines "rights or obligations" or carries "legal consequences," *Bennett*, 520 U.S. at 178, but the Complaint pleads no right determined as a matter of course and no obligation imposed. *See supra* (Exhibit A showing prosecutorial discretion over enforcement). The Complaint's own framing compounds the defect. It pleads that ICE "maintains a policy and practice" of treating enforcement decisions as de facto revocations, ECF 1 ¶ 202, and that Defendants "engage in a policy and practice" of removing petitioners without a prima facie determination, *id.* ¶ 242. An ongoing policy-and-practice is not agency action: The term "does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract," *Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013), and "an on-going program or policy is not, in itself, a 'final agency action' under the APA," *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006). The APA's limitation to discrete agency action precludes the kind of broad programmatic attack the Supreme Court rejected when it held that a plaintiff "cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where

15

programmatic improvements are normally made." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)). Plaintiffs' own pleading supports the point: The 2025 Interim Guidance carries the same disclaimer as the 2021 Directive Plaintiffs insist was binding, and the disclaimer cannot switch off and on with the administration. Finality is a legal question, and on the pleading it resolves against Plaintiffs. Prong two turns on "the concrete consequences an agency action has or does not have," and a document that merely advises agency employees of the agency's position—binding no one and assuring no one of any right—has none. *S. Cal. All. of POTW*, 8 F.4th at 836–37. So too where the asserted obligations "arise directly and solely from" the statutory scheme rather than from the challenged document. *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 594 (9th Cir. 2008).

> 2. ICE's Enforcement Choices Are Committed to Agency Discretion by Law (Counts 1, 2, 3, 9)

Even final action is unreviewable if it "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Enforcement priorities are the paradigm: "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Heckler v. Chaney*, 470 U.S. 821, 830–33 (1985). In immigration the presumption sits at its zenith. "Under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law,'" *United States v. Texas*, 599 U.S. 670, 678–80 (2023); removal proceedings are marked by "the broad discretion exercised by immigration officials," *Arizona v. United States*, 567 U.S. 387, 396 (2012); and Congress itself assigned enforcement-priority setting to the Secretary, 6 U.S.C. § 202(5) ("Establishing national immigration enforcement policies and priorities."). Resource allocation is committed to discretion for the same reason: "as long as the agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives, § 701(a)(2) gives the courts no leave to intrude." *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

The Complaint relies on the USCIS Policy Manual as the governing standard, ECF

1 ¶ 213, but that Manual applies to USCIS's adjudications, not ICE's enforcement: It cannot supply law to apply against the agency whose conduct is challenged, and a manual that disclaims enforceable rights is not law at all. *Heckler*, 470 U.S. at 833 n.4. The Complaint, quoting USCIS's Policy Manual, states: Deferred action "is by its nature an exercise of prosecutorial discretion," and the decision whether to extend it lies within "USCIS' sole and unreviewable discretion." ECF 1 ¶ 213. A benefit the granting agency calls unreviewable cannot be the standard the court applies to the enforcing agency. The caselaw authority Plaintiffs invoke proves the point. *Beno* locates unreviewability where "statutes are drawn in such broad terms that in a given case there is no law to apply," and where "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994) (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988), and *Heckler*, 470 U.S. at 830). Enforcement timing is such a case: The Ninth Circuit has held that an agency "need not promulgate rules constraining his discretion as to when to employ a particular statutory enforcement action." *Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*, 800 F.2d 1514, 1523 (9th Cir. 1986); *see also* ECF 40 at 24–25 (§ IV.A.1.c(A), arguing that ICE's enforcement decisions are committed to agency discretion under *Heckler* and unreviewable under the APA).

In fact, the Complaint concedes that deferred action "is by its nature an exercise of prosecutorial discretion" committed to "USCIS' sole and unreviewable discretion," ECF 1 ¶ 213; that recipients "may be considered" for it only "on a case-by-case basis," *id.* ¶ 38; and that every predecessor policy back to 2007 was an exercise of the same discretion, *id.* ¶¶ 71–81. There is, therefore, no "law to apply" to ICE's enforcement priorities—which Plaintiffs themselves describe, page after page, as discretionary. Nor does this case fit *Heckler*'s reserved exception for an agency that "has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." *United States v. Texas*, 599 U.S. 670, 682–83 (2023) (quoting *Heckler*, 470 U.S. at 833 n.4). The Complaint inverts the exception: Plaintiffs' grievance is that ICE now enforces too much, not too little. Enforcing the immigration laws is not abdicating

17

them. Moreover, a statement of enforcement priorities cannot be "in excess of" an authority Congress committed to the agency, *United States v. Texas*, 599 U.S. at 678–79; *see supra* Part IV.A.2, and it is not "contrary to law" where the Complaint identifies no statute transgressed and the exhibit itself commands adherence "to all applicable statutory and policy requirements including the provisions of 8 U.S.C. § 1367." ECF 1-1 at 3.

3.   The 2025 Guidance Is Not Arbitrary or Capricious (Counts 1, 3, 9)

Arbitrary-and-capricious review of a policy change asks for "good reasons," not the better or the best ones. *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009). The "agencies are free to change their existing policies as long as they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Invs*., LLC, 604 U.S. 542, 568 (2025) (cleaned up). The Court "is not to substitute its judgment for that of the agency." *SMART v. FRA*, 988 F.3d 1170, 1178 (9th Cir. 2021). The 2025 Interim Guidance meets that modest standard on its face. ECF 40 at 27–28 (§ IV.A.1.c(B), arguing that the 2025 Interim Guidance is not arbitrary or capricious because the agency supplied good reasons for the change and considered the relevant factors). It acknowledges the shift; it explains it—Executive Order 14159, resource constraints, and the continued statutory protections for victims that it expressly preserves; and it retains the case-by-case, OPLA-vetted, totality-of-the-circumstances discretion to which any reliance could reasonably have attached. ECF 1-1 at 1 n.1, 2 ¶ 2, 3.

The premise of Plaintiffs' contrary argument—"decades of agency practice"—is refuted by their own history section. The Complaint walks through the 2007 Myers Memo, ICE Directive 11005.1 (2009), the 2011 Morton Memo, ICE Directive 11005.2 (2019), and ICE Directive 11005.3 (2021), and describes each as discretionary: The 2007 memo said attorneys "may agree to exercise appropriate prosecutorial discretion," ECF 1 ¶ 72; the 2009 directive would "generally 'favorably view'" stays "except" in cases presenting "serious adverse factors," *id.* ¶ 73; the 2011 policy yielded to "special circumstances or aggravating factors," *id.* ¶ 76; and the 2019 directive was, in Plaintiffs' own words, "less

18

protective than previous policy in several ways," *id.* ¶ 79. What Plaintiffs call decades of settled practice is decades of serial recalibration—including a prior-administration recalibration their own pleading concedes. And the bona-fide-determination process they treat as ancient is of recent vintage: 2021 for U visa petitions, ECF 1 ¶ 51, and 2024 for T visa applications, *id.* ¶ 64. And the statutory backdrop runs the other way—§§ 1226 and 1231 affirmatively authorize detention and removal of aliens with final removal orders.

The Complaint pleads two arbitrariness theories: that the 2025 Interim Guidance "relies only on the Invasion EO and fails to offer any contrary factual findings," ECF 1 ¶ 193, and that it "fails to address the reliance interests" of petitioners, *id.* ¶ 188. Neither carries past the pleadings. The 600,000 figure belongs to the U- and T-visa programs, ECF 23-24 ¶ 18, which the Guidance leaves wholly intact—every petition, bona fide determination, and § 1367 protection Congress enacted remains exactly where Congress put it, ECF 1-1 at 3–4. And there is no protected reliance in one agency's internal enforcement priorities, least of all priorities that every prior directive reserved the right to change—and that did change, repeatedly. *See, e.g.*, ECF 1 ¶¶ 72–73, 76, 79. What remains is disagreement through harsh criticism: that the Guidance rests on "a fiction of political convenience," ECF 1 ¶ 194, and belongs to "an arbitrary, xenophobic, and militarized mass deportation campaign that has terrorized immigrant communities," *id.* ¶ 10, executed by agencies that have been "deputized" along with "the military," *id.* ¶ 94. But criticism is not allegation by any measure, the Supreme Court makes clear. *Iqbal*, 556 U.S. at 678.

### 4.    Plaintiffs Allege No Protected Interest (Counts 5, 6, 7)

The due-process counts rest on a category error. Deferred action is not a status and confers none; it is "an act of administrative convenience to the government that gives some cases lower priority . . . ." 8 C.F.R. § 274a.12(c)(14); *accord Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484–85 (1999). The Complaint concedes so: A grant reflects only a "favorable exercise of discretion," ECF 1 ¶¶ 53, 207; USCIS "identifies four circumstances when early revocation of deferred action is appropriate," *id.* ¶ 56; USCIS "may remove an applicant from the waiting list and terminate any grant of

deferred action or parole at its discretion," *id.* ¶ 68; and deferred action "is by its nature an exercise of prosecutorial discretion," *id.* ¶ 213. A revocable act of grace, held at the discretion of the grantor, is not a protected liberty or property interest—and Plaintiffs' contrary label, "formal authorization to remain lawfully," *id.* ¶ 3, is a misdefinition that cannot manufacture a protected interest.[6] A protected property interest requires "a legitimate claim of entitlement," not "an abstract need or desire" or "a unilateral expectation." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). And "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Deferred action—revocable "at [USCIS's] discretion," ECF 1 ¶ 68—is that kind of benefit, not an entitlement. Plaintiffs cannot have it both ways: The same pleading that calls deferred action "mandatory by regulation," ECF 1 ¶ 58, concedes that it is revocable "at [USCIS's] discretion," *id.* ¶ 68, and rests in "USCIS' sole and unreviewable discretion," *id.* ¶ 213. A benefit the pleading itself describes as discretionary is not a "legitimate claim of entitlement." The BIA also confirms that premise: One may hold a pending U nonimmigrant status petition for thirteen years and still not have obtained any form of lawful status. *Matter of Ibarra-Vega*, 29 I. & N. Dec. at 479–80; *see supra* Part IV.A.3.

The regulatory design confirms the two-track structure Plaintiffs refuse to accept. Filing a U visa petition or T visa application "has no effect on ICE's authority to execute a final order." 8 C.F.R. §§ 214.14(c)(1)(ii), 214.204(b)(2)(i). Plaintiffs plead that class members "possess a protected property interest in their deferred action," ECF 1 ¶ 217, and they cast the claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), *id.* ¶ 216. Even assuming that *Mathews*, rather than "the less demanding standard" in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), is the correct standard to be applied here,

---

[6] Noncitizens have no cognizable due process interests in discretionary relief or forbearance from removal. *See, e.g.*, *Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476, 514–15 (9th Cir. 2018), *rev'd in part on other grounds*, 591 U.S. 1 (2020); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003); *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004); *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1024 (9th Cir. 1985).

*Make the Road N.Y. v. Mullin*, 179 F.4th 16, 33 (D.C. Cir. 2026) ("Recent Supreme Court precedent favors application of *Mullane* instead of *Mathews*."), the label does not survive the pleading. ECF 40 at 31 (arguing that Plaintiffs "fail to raise an unfulfilled or infringed upon qualifying property interest" (citing *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997))). A protected interest is the threshold question, and it is one of law: Absent a protected liberty or property interest, no process is due, and the balancing is never reached. The Complaint forecloses the interest it asserts. Deferred action is granted only as a "favorable exercise of discretion," is revocable, and is "by its nature an exercise of prosecutorial discretion." ECF 1 ¶¶ 53, 56, 58, 68, 213. A revocable act of administrative grace is not property, and "possess a protected property interest" is precisely the legal conclusion a court does not credit. *Iqbal*, 556 U.S. at 678.

What process is due, if any, is not fixed in any event. *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001). A noncitizen under a final order of removal, seeking discretionary forbearance from the agency Congress charged with executing that order, sits at the low end of that range, and the conditions the Complaint pleads are not punitive. *Block v. Rutherford*, 468 U.S. 576, 584 (1984). Start with the private interest: As detailed above, what Plaintiffs hold is discretionary, revocable forbearance—not lawful status. Plaintiffs urge reliance instead, pleading that the 2025 Interim Guidance "fails to address the reliance interests" of petitioners who applied for the protections Congress promised, and that those interests "are significant." ECF 1 ¶¶ 188–89. But reliance cannot convert a discretionary benefit into a protected interest. Second, even assuming a protected interest, the risk of erroneous deprivation and the value of added procedure are rather low here. That is so because a deferred-action holder retains a meaningful forum: An immigration judge may terminate or administratively close proceedings, 8 C.F.R. §§ 1003.18(d)(1)(ii), 1003.1(m)(1)(ii), and may consider a stay or continuance. Plaintiffs reason that because detained class members were later released—an immigration judge "ordered release on bond" for Camila B., ECF 1 ¶ 116—ICE should not have detained them at all. That inverts the inference: Release through the immigration forum shows the forum works, and

21

Congress placed the process there. Nor is USCIS's determination that a petitioner qualifies for deferred action a determination that ICE may not enforce: A pending petition "has no effect on ICE's authority to execute a final order." 8 C.F.R. § 214.14(c)(1)(ii). The Ninth Circuit makes that abundantly clear: In *Rodriguez Diaz v. Garland*, the court analyzed the risk of an erroneous deprivation of the noncitizen's interest through the procedures used and held the existing § 1226(a) procedures constitutionally adequate. 53 F.4th 1189, 1209–13 (9th Cir. 2022). "That [the noncitizen] objects to the outcome of his proceedings does not demonstrate a procedural due process violation." *Id.* at 1213; *accord Aguilar v. Semaia*, No. 26-00023, 2026 WL 166906, at *5 (C.D. Cal. Jan. 16, 2026).

Third, the Government's interest. The interest in the prompt, flexible exercise of removal authority is substantial. Plaintiffs deem it insubstantial because, on their pleading, "USCIS, not ICE, has exclusive authority over deferred action determinations," ECF 1 ¶ 213, so that due process "requires a pre-detention hearing at which Defendants provide notice and an opportunity to be heard regarding the revocation of deferred action status." *Id.* ¶ 232. That inverts the factor. *Mathews* asks what the demanded additional procedure would cost the Government—here, requiring ICE to obtain a USCIS revocation adjudication before any enforcement action against any deferred-action holder nationwide. That USCIS maintains an internal process for revoking its own grants says nothing about the burden of grafting that process onto the agency Congress charged with enforcement. *See* ECF 40 at 30–31 (arguing that the due process owed immigration detainees is limited and has been satisfied, and that the conditions Plaintiffs plead are not punitive).[7]

---

[7] Plaintiffs demand a hearing before any detention under Count 6, ECF 1 ¶¶ 223–33, but detention during removal proceedings requires no pre-deprivation hearing. *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). The process due is a bond hearing, and that process is available: An immigration judge ordered Camila B. released on bond, ECF 1 ¶ 116, and Paulo C. was denied a bond hearing only under *Matter of Yajure Hurtado*, *id.* ¶ 124. Daniel H. was denied on the same ground. ECF 1 ¶¶ 163–64. The Ninth Circuit has since rejected *Hurtado*, holding that noncitizens apprehended in the interior after entering without inspection "are subject to the detention regime of § 1226, not § 1225(b)(2)(A)," and so remain eligible for bond. *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). The § 1226 bond hearing Congress provided is thus open to both. Due process does not require the agency "to employ the least

Count 7 falls with the same premise: The Fourth Amendment theory is a single conclusory paragraph—"Defendants routinely seize individuals in valid deferred action status without probable cause," ECF 1 ¶ 237—that never engages the statutory arrest authority, the final removal orders the named Plaintiffs concede, or the circumstances of any actual seizure. *Iqbal*, 556 U.S. at 678. The theory also misidentifies the authority. Arrest here proceeds under 8 U.S.C. § 1226(a), not § 1357: Section 1226(a) operates through two parallel tracks—arrest on a warrant, and warrantless arrest under § 1357(a)(2) followed by a post-arrest warrant under 8 C.F.R. § 287.3(d)—and the regulations route both tracks into § 1226(a)'s custody framework. 8 C.F.R. §§ 236.1, 287.3(d); *see Byambadorj Tsendayush v. Bondi*, No. 5:26-cv-00970-SB-KES, ECF 24 (C.D. Cal. May 7, 2026). A Fourth Amendment claim that never mentions § 1226(a), the warrant issued under it, or the custody determination that follows does not plead an unreasonable seizure. Counts 5, 6, and 7 should be dismissed. No interest, no process due; no facts, no claim.

### 5. The "Blind Removal" Theory Misreads § 1227(d) (Counts 8, 9)

Counts 8 and 9 read a mandate into a statute that grants a permission. Section 1227(d)(1) provides that the Secretary "may grant the alien an administrative stay of a final order of removal" if a victim-based petition "sets forth a prima facie case for approval." 8 U.S.C. § 1227(d)(1). The Complaint quotes the operative words—the Secretary "may grant . . . an administrative stay," ECF 1 ¶ 239—and asks this Court to read them as "must first determine." The Supreme Court has rejected exactly that move: Had Congress intended to condition removal on a prima facie determination, "it could easily have used that language—as it did elsewhere in the immigration code." *Patel v. Garland*, 596 U.S. 328, 341–42 (2022). Defendants have already briefed the text and structure defeating the contrary "if-then" construction borrowed from *Sanchez Jimenez v. DHS*, No. 2:22-cv-00967, 2022 WL 19410308 (C.D. Cal. Nov. 14, 2022)—including the 2009 Venturella directive and every predecessor policy, each of which reserves "serious

burdensome means to accomplish its goal," *Demore*, 538 U.S. at 528.

23

adverse factors" discretion and thereby treats the stay power as discretionary—and incorporate that showing by reference in full. ECF 72 at 15–19 (§ IV.A.4); ECF 88 at 10–12 (§ II.A.4). Case-by-case discretion—granting some requests, denying others—is not a "Blind Removal Policy"; it is what "may grant" says. And because § 1227(d)(1) commits the stay decision to the Secretary's discretion, 8 U.S.C. § 1252(a)(2)(B)(ii) independently bars review of it. *Patel*, 596 U.S. at 342; *Mullin v. Doe*, 146 S. Ct. 2121, 2136 (2026) ("If the final agency action is unreviewable, then so too are subsidiary determinations.").

The counts also fail on their own terms. Count 8 is captioned as a freestanding INA violation and invokes no APA provision, but "[p]rivate rights of action to enforce federal law must be created by Congress," and Congress created none for § 1227(d)(1). *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Count 9 repleads the identical theory under § 706 and adds nothing. And the record refutes the categorical practice both counts allege: ICE granted Carmen F. "a six-month stay of removal" in November 2024, ECF 1 ¶ 145; two stay applications were adjudicated for Ms. Ruano, *id.* ¶¶ 154–55; and Plaintiffs do not allege that Daniel H. timely filed the required Form I-246—an agency cannot be faulted for declining a determination in support of an application no one filed. Counts 8 and 9 fail for these reasons and are also barred by § 1252(g) and (b)(9). *See supra* Part IV.A.2.

### 6. The *Accardi* Claim Fails for Lack of a Binding Norm (Count 4)

An *Accardi* claim begins with a binding norm, and Plaintiffs never identify one. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954), requires an agency to follow its own binding rules while they remain in force; it does not freeze hortatory guidance in place, and it does not bind ICE to USCIS's Policy Manual—a manual whose interpretations "lack the force of law," *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *accord Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015), and whose domain is adjudication, not the enforcement act § 1252(g) removes from district-court review, *see supra* Part IV.A.2. And § 1252(g) forecloses the claim at the threshold: An *Accardi* theory aimed at the execution of removal orders challenges the very enforcement acts Congress removed from district-court review, *see supra* Part IV.A.2;

24

*Rivas-Melendrez*, 689 F.3d at 739 (dismissing for want of jurisdiction even where ICE agents allegedly committed "procedural violations" in carrying out a removal)—and Plaintiffs identify no controlling authority applying *Accardi* to enforcement rather than adjudication. Noncitizens lack an enforceable right with respect to DHS's internal prosecutorial discretion guidance, and the *Accardi* doctrine does not apply to law enforcement policies and procedures. *See United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001); *see also United States v. Caceres*, 440 U.S. 741, 754 n.18 (1979) ("[A]gencies are not required, at the risk of invalidation of their action, to follow all of their rules, even those properly classified as 'internal.'"); *Carranza v. INS*, 277 F.3d 65, 71–72 (1st Cir. 2002) (concluding that alien lacked colorable *Accardi* claim based on alleged failure of INS to properly exercise its enforcement discretion).

Count 4 fails each element on the Complaint's own terms: no rule—the Policy Manual governs USCIS adjudication, not ICE enforcement, *see supra* Part IV.C.2; no revocation—Plaintiffs plead that class members "maintain authorized presence," ECF 1 ¶ 225, which is to say no grant of deferred action has been revoked by anyone; and no rule-bound agency—deferred action rests in "USCIS' sole and unreviewable discretion," *id.* ¶ 213, and the Prayer asks this Court to declare that "only USCIS" may revoke it, Prayer ¶ 5, so ICE, the agency whose conduct is challenged, is not the agency whose norms are said to bind. The 2021 Directive cannot fill the gap: The directive the Complaint itself incorporates, ECF 1 ¶ 80, disclaimed enforceable rights, 2021 Directive at 12 ¶ 9, and rescinding internal prosecutorial-discretion guidance is not an *Accardi* violation— otherwise no administration could revisit its predecessor's enforcement memoranda. Plaintiffs themselves told the Court the claim is "more of a belt-and-suspenders sort of argument." ECF 72-1 (Hr'g Tr.) 66:12–15. A claim its own proponents so describe adds nothing once the underlying theories fail; Count 4 should be dismissed.

## V.    CONCLUSION

Defendants respectfully request that the Court grant the motion.

Respectfully submitted,

Dated: August 5, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

*/s/ Pushkal Mishra*
PUSHKAL MISHRA
Special Assistant United States Attorney

Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Defendants, certifies that this memorandum of points and authorities contains 25 pages, which complies with the limit set by the Court (ECF 10 at 6).

Dated: August 5, 2026

*/s/ Pushkal Mishra*
PUSHKAL MISHRA

26