CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Monika Langarica (Cal. Bar No. 308518)
monika@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>Markwayne Mullin, et. al,<br><br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: October 9, 2026<br>Hearing Time: 10am<br>Courtroom: 7B<br><br>Hon. Andre Birotte Jr. |

*Additional Counsel for Plaintiffs:*

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

*Admitted pro hac vice*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 3

I. The Court has subject matter jurisdiction. .......... 3

A. Plaintiffs have sufficiently pled standing. .......... 4

B. Defendants' § 1252(a)(5), (b)(9), and (g) arguments already failed. .......... 6

C. Defendants' § 1252(f)(1) arguments fail. .......... 8

1. Section 1252(f)(1) is a limitation on remedy, not subject matter jurisdiction, and thus does not warrant dismissal. .......... 8

2. Plaintiffs' claims are not barred by 1252(f)(1) because Plaintiffs also seek APA relief and declaratory judgment. .......... 9

3. The classwide injunctive relief sought is not barred by 1252(f)(1). .......... 11

II. The Complaint satisfies Rule 8. .......... 14

III. Claims 1-6 and 8-9, which the Court has found likely to succeed, are facially plausible. .......... 15

A. The May 20, 2026 Order forecloses Defendants' arguments. .......... 16

B. The 2025 Guidance is final agency action. .......... 16

C. Plaintiffs' APA claims should not be dismissed because the challenged policies are not committed to agency discretion by law. .......... 17

D. Plaintiffs state claims that the 2025 Guidance is arbitrary and capricious and contrary to law. .......... 19

E. Plaintiffs plead sufficient facts to support a finding that Deferred Action Class members have a due process interest in their deferred action status. .......... 19

F. Defendants (again) misread the Blind Removal Policy claims. .......... 22

G. The *Accardi* claim clearly articulates the policies and regulations which ICE violates. .......... 23

IV. Plaintiffs' Seventh Claim states a Fourth Amendment claim upon which relief can be granted. .......... 24

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
138 F.4th 1102 (9th Cir. 2025) ........ 12, 13

*Alcaraz v. I.N.S.*,
384 F.3d 1150 (9th Cir. 2004) ........ 17, 23

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........ 22

*Andrawes v. Flora Media, Inc.*,
2018 WL 1942197 (C.D. Cal. March 16, 2018) ........ 10

*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ........ 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 16

*B.P. v. Bostock*,
No. C23-0890-KKE, 2024 WL 2959550 (W.D. Wash. June 12, 2024) ........ 8

*Bell v. Burson*,
402 U.S. 535 (1971) ........ 20

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 17

*Biden v. Texas*,
597 U.S. 785 (2022) ........ 9

*Carranza v. I.N.S.*,
277 F.3d 65 (1st Cir. 2002) ........ 24

*Castañon-Nava v. DHS*,
175 F.4th 828 (7th Cir. 2026) ........ 9

*City & Cnty. of San Francisco v. Trump*,
816 F. Supp. 3d 1017 (N.D. Cal. 2026) ........ 1, 16

*Com. Point Cap., Inc. v. First Data Corp.*,
No. 19-CV-556-W (LL), 2019 WL 7020057 (S.D. Cal. Dec. 20, 2019) ........ 10

*DHS v. Regents of the Univ. of California*,
591 U.S. 1 (2020) ("*Regents*") ........ 17, 21

*F.R.P. v. Wamsley*,
No. 3:25-CV-01917-AN, 2025 WL 3037858 (D. Or. Oct. 30, 2025) ........ 20

*Galvez v. Jaddou*,
52 F.4th 821 (9th Cir. 2022) .......... 11, 12

*Garro Pinchi v. Albarran*,
No. 25-CV-10831-PCP, 2026 WL 1975598 (N.D. Cal. July 8, 2026) .......... 6

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 14

*Gonzales v. DHS*,
508 F.3d 1227(9th Cir. 2007) .......... 12, 13

*Gonzalez v. United States Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) .......... 7, 24

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 18

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) .......... 5

*Ibarra-Perez v. United States*,
154 F.4th 989 (9th Cir. 2025) .......... 7

*Immigr. Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025) .......... 14

*Inland Empire - Immigrant Youth Collective v. Nielsen*,
No. ED-CV-172048PSGSHKX, 2018 WL 4998230 (C.D. Cal. Apr. 19, 2018) .......... 17, 21

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) .......... 7

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .......... 7

*Lee v. Holder*,
599 F.3d 973 (9th Cir. 2010) .......... 7

*Leonard v. Clark*,
12 F.3d 885 (9th Cir.1993) .......... 4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 3

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 4

*Mendez–Gutierrez v. Ashcroft*,
340 F.3d 865 (9th Cir. 2003) .......... 18

*Mountain High Knitting, Inc. v. Reno*,
51 F.3d 216 (9th Cir. 1995) .......... 24

*Mullin v. Al Otro Lado*,
146 S. Ct. 2079 (2026) .......... 10, 13

*Mullin v. Doe*,
146 S. Ct. 2121, (2026) .......... 10

*Munoz v. Ashcroft*,
339 F.3d 950 (9th Cir. 2003) .......... 21

*Nat'l Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) .......... 2, 3

*Nat'l TPS All. v. Noem*,
150 F.4th 1000 (9th Cir. 2025) .......... 9

*Oliveira v. Edlow*,
No. CV 25-13228-BEM, 2025 WL 3492110 (D. Mass. Dec. 4, 2025) .......... 14

*Osorio Gonzalez v. Wesling*,
No. 26-cv-231-JJM-AEM, 2026 WL 1765871 (D.R.I. June 19, 2026) .......... 10

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*,
945 F.3d 1076 (9th Cir. 2019) .......... 25

*Perez-Funez v. DHS*,
No. CV 81-01457-MWF (EX), 2026 WL 982623 (C.D. Cal. Apr. 6, 2026) .......... 13

*Planned Parenthood of Greater Wash. and N. Idaho v. HHS*,
946 F.3d 1100 (9th Cir. 2020) .......... 17

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
No. CV 25-306 (RDM), 2025 WL 1825431 (D.D.C. July 2, 2025) .......... 22

*Regents of the Univ. of California v. DHS*,
908 F.3d 476 (9th Cir. 2018) .......... 21

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .......... 6, 7, 9, 20

*Rivas-Melendrez v. Napolitano*,
689 F.3d 732 (7th Cir. 2012) .......... 8

*Rodriguez v. Marin*,
909 F.3d 252 (9th Cir. 2018) .......... 9

*Romeiro de Silva v. Smith*,
773 F.2d 1021 (9th Cir. 1985) .......... 21

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006) .......... 4

*Segura v. City of La Mesa*,
647 F. Supp. 3d 926 (S.D. Cal. 2022) .......... 10

*Tivoli LLC v. Sankey*,
2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) .......... 15

*Tohono O'odham Nation v. United States Dep't of the Interior*,
138 F.4th 1189 (9th Cir. 2025) .......... 16, 19

*Tovar-Landin v. Ashcroft*,
361 F.3d 1164 (9th Cir. 2004) .......... 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954) .......... 23, 24

*United States v. Caceres*,
440 U.S. 741 (1979) .......... 24

*United States v. Lee*,
274 F.3d 485 (8th Cir. 2001) .......... 23

*United States v. Texas*,
599 U.S. 670 (2023) .......... 10

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) .......... 16

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 3

*Zegarra-Gomez v. I.N.S.*,
314 F.3d 1124 (9th Cir. 2003) .......... 5

**STATUTES**

8 C.F.R. § 214.14(d)(2) .......... 18

8 C.F.R. § 214.14(d)(3) .......... 23

8 C.F.R. § 214.205 .......... 18, 23

8 C.F.R. § 214.207(a) .......... 5

8 U.S.C. § 1184(p)(6) .......... 12

8 U.S.C. § 1226 .......... 25

8 U.S.C. § 1227(d) .......... 13, 22

8 U.S.C. § 1227(d)(1) ........ 12, 18, 22
8 U.S.C. § 1252(a)(5) ........ 1, 3, 6, 8
8 U.S.C. § 1252(b)(9) ........ passim
8 U.S.C. § 1252(f) ........ 1, 9, 10
8 U.S.C. § 1252(f)(1) ........ passim
8 U.S.C. § 1252(g) ........ passim
8 U.S.C. § 1357 ........ 25
8 U.S.C. § 1357(a)(2) ........ 24
8 U.S.C. §§ 1101(a)(15)(T)-(U) ........ 11
8 U.S.C. §§ 1184(o)-(p) ........ 11
8 U.S.C. §§ 1221-1232 ........ 11, 12
Fed. R. Civ. P. 12(b)(1) ........ 3, 8, 9
Fed. R. Civ. P. 12(b)(6) ........ 3, 9, 23

## INTRODUCTION

In their futile effort to dismiss this action "in its entirety," Defendants muster only recycled arguments regarding the insufficiency of claims that this Court has already held likely to succeed, attacks founded in mischaracterizations of the pleadings, and invented legal standards. Defendants' Notice of Motion and Motion to Dismiss the Complaint at 2, Dkt. 98 ("MTD"). The Court should deny their motion.

First, the Court has already held that Plaintiffs are likely to succeed on their arguments that 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g) do not bar Plaintiffs' claims and that Plaintiffs have standing. Applying the proper standards, all Plaintiffs have standing, though the Court need only find one Plaintiff has standing to bring each claim to deny a motion to dismiss. Finally, the Court has subject matter jurisdiction over Plaintiffs' claims. 8 U.S.C. § 1252(f)(1) does not warrant dismissal of the Complaint, because it only reaches, at most, the Court's power to grant certain non-individualized *injunctions*, but not all relief Plaintiffs seek. In any event, the class-wide injunctions Plaintiffs do seek do not fall within § 1252(f)'s limited scope.

Second, the fact that Plaintiffs' claims incorporate by reference previous paragraphs of the Complaint is a standard feature of notice pleading, not per se evidence of a so-called "shotgun pleading." MTD at 11. The Complaint clearly alleges specific facts in support of each claim sufficient to put Defendants on notice.

Third, with the exception of the Fourth Amendment claim, the Court has already addressed the sufficiency of Plaintiffs' claims, correctly holding that Plaintiffs are likely to succeed on each of them. "[T]o the extent [this Court] previously found that certain claims survived the heightened preliminary injunction standard, [it may] rely on that analysis in concluding that plaintiffs' [complaint] is adequately pleaded," because Defendants' "suggest[ions] otherwise" lack merit. *City & Cnty. of San Francisco v. Trump*, 816 F. Supp. 3d 1017, 1026 fn. 3 (N.D. Cal. 2026) (internal citations omitted).

Regarding the only claim on which the Court has not yet ruled, Plaintiffs have plausibly pled a Fourth Amendment claim, and Defendants' arguments to the contrary ignore the legal standard by disputing facts pled in the Complaint.

In sum, Defendants offer nothing to warrant this Court holding that it lacks jurisdiction over claims this Court already held are likely to succeed or that they are implausible on their face. If the Court finds any merit in Defendants' chaotic maze of attacks, any alleged flaws are curable, warranting leave to amend. *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1041 (9th Cir. 2015).

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs challenge Immigration and Customs Enforcement ("ICE") Policy No. 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"), which they allege allowed, for the first time in decades, ICE to ignore the protections Congress created for immigrant survivors of crime and trafficking. Complaint ¶¶ 2, 82-86, Dkt. 1 ("Compl."). Plaintiffs also challenge two policies and practices that they allege emerged from the 2025 Guidance: (1) a "De Facto Revocation Policy," pursuant to which ICE unilaterally revokes deferred action status issued by United States Citizenship and Immigration Service ("USCIS") to petitioners for U and T visas, by arresting, detaining, and/or removing such petitioners without notice or opportunity to be heard regarding such revocation, and (2) a "Blind Removal Policy," pursuant to which ICE removes U and T visa petitioners who have requested stays of removal without any determination of their prima facie eligibility for the visas for which they applied. *Id.* ¶¶ 3, 89.

Plaintiffs are four organizations who routinely represent individuals applying for legal status through the Violence Against Women Act ("VAWA"), U visas, or T visas, as well as eight individuals with pending petitions for such relief. *Id.* ¶¶ 15-26. Each provides detailed allegations regarding how the challenged policies have harmed them. *Id.* ¶¶ 101-169.

On October 14, 2025, Plaintiffs filed their Complaint, Dkt. 1. On October 30, 2025, Plaintiffs filed a Motion for Class Certification, Dkt. 23. On November 14, 2025, Plaintiffs filed a Motion for APA § 705 Relief and Individual and Classwide Preliminary Injunction, Dkt. 31. On May 20, 2026, this Court issued an order Granting Plaintiffs' Motion for Class Certification [Dkt. No. 23] and Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 31], Dkt. 57 ("May 20 Order").[1]

## LEGAL STANDARD

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) may challenge subject-matter jurisdiction on facial or factual grounds. Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where, as here, the defendant brings a facial challenge, the Court must accept all allegations as true and draw any reasonable inferences in the plaintiff's favor. *See id.*

Motions under Rule 12(b)(6) are brought for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For purposes of assessing such motions, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Leave to amend must be granted unless amendment is futile. *Nat'l Council of La Raza*, 800 F.3d at 1041.

## ARGUMENT

### I. The Court has subject matter jurisdiction.

This Court has already held that Plaintiffs have standing and explained why Defendants' §§ 1252(a)(5), (b)(9), and (g) arguments fail. Further, dismissal based

[1] Subsequent procedural steps are largely immaterial to Defendants' motion.

on § 1252(f)(1) is inappropriate because that provision limits certain types of injunctions, not subject matter jurisdiction, and Plaintiffs' requests for classwide injunctive relief do not fall within § 1252(f)(1)'s limitations in any event.

**A. Plaintiffs have sufficiently pled standing.**

Defendants' standing arguments are meritless for several reasons, particularly in light of the May 20 Order. May 20 Order at 27-28 (reciting relevant standards).

First, in a suit for equitable relief, "the general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012) (quoting *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir.1993)). Thus, Defendants' claim that all "[t]welve plaintiffs must each" establish standing, MTD at 8, misstates the standard for equitable relief at the pleadings stage, citing a *damages* case involving whether "[e]very class member" established standing *at trial* "to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quotations and citations omitted). After thorough analysis, this Court has already found that Organizational Plaintiffs are likely to establish each element of standing. May 20 Order at 27-32. Indeed, Defendants do not challenge the organizational standing of any of the Organizational Plaintiffs.[2] This alone is enough to prevent dismissal, because Organizational Plaintiffs bring each claim. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n. 2 (2006) (limiting discussion to organizational plaintiff because "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement").

Second, Defendants' arguments regarding the Individual Plaintiffs are contrary to this Court's holdings, confuse the facts, and invent standards. Standing requires plaintiffs to show three elements: injury in fact; traceability; and

---

[2] Defendants' challenge CHIRLA's standing on their "associational theory," but not their distinct organizational standing theory. MTD at 10-11. Because resolving the associational standing inquiry is unnecessary if CHIRLA has organizational standing, the Court need not address it. *See* May 20 Order at 32 n.12.

redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

As to injury, Defendants ignore this Court's holding that the removed Plaintiffs "made a clear showing that they are suffering an injury-in-fact." May 20 Order at 33. Defendants misunderstand the harm Plaintiffs allege by claiming they face no injury from their removals because they can continue to wait for adjudication of their visas from outside the country. MTD at 9-10. Plaintiffs do not limit their injuries to ultimate ineligibility for any visa, but the loss of their *interim* benefits, unlawful detention, and removal. Compl. ¶¶ 109, 116, 118, 125-126, 131-134, 140-141, 146-148, 156, 164.[3] Further, unlawful removal is not an injury in the "past," MTD at 9, but an ongoing injury with present consequences.[4] *See Zegarra-Gomez v. I.N.S.*, 314 F.3d 1124, 1127 (9th Cir. 2003).

Regarding traceability, this Court has already found that "Plaintiffs have presented substantial evidence showing that prior to the 2025 Guidance, Defendants . . . honored USCIS grants of deferred action, requested USCIS to perform expedited prima facie determinations, and granted requests for stay of removal based on positive USCIS prima facie determinations, whereas now such persons are routinely detained and deported." May 20 Order at 33-34.[5] What Plaintiffs have already proven is also alleged in the Complaint. Compl. ¶¶ 70-95. To avoid the same result, Defendants invent a "reliance" element of standing, but once again cite no precedent

---

[3] Even as to ultimate eligibility, contrary to Defendants' arguments, removed T visa petitioners do lose their opportunity for a visa because they are not present in the United States. 8 C.F.R. § 214.207(a). Speculating, beyond the pleadings, that DHS might obviate this ineligibility by one day inviting some T visa petitioners back to the United States for "participation in . . . judicial processes associated with [the] trafficking" does not alter the analysis. MTD at 10 n. 4.

[4] Defendants properly do not attempt to argue that detention is not an injury-in-fact. *See, e.g., Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

[5] Defendants misconstrue Luna E.'s claims. First, they argue that because she has been detained since 2023, the 2021 Directive does not "hold[] up as the guarantor of her liberty." MTD at 8. Plaintiffs nowhere argue that setting aside the 2025 Guidance will guarantee the liberty of all petitioners. Rather, had ICE acted lawfully, Luna E. should have received consideration for release *after* being granted a bona fide determination on February 24, 2025, but, when the Complaint was filed, she did not receive such consideration under the 2025 Guidance. Compl. ¶ 140.

supporting their theory that reliance is an element of standing. MTD at 8. It is not.

As to redressability, Defendants' audacious claim that "not one injury" of Plaintiffs is "redressable," MTD at 9, is belied by the fact that this Court has granted preliminary relief under the APA to the classes and redressed the injuries of three individual Plaintiffs in its May 20 Order, ordering that Lupe. A., Carmen F., and Yessenia Ruano be permitted to the United States. This alone is sufficient to preclude dismissal of the Plaintiffs' claims.[6] The requested relief will remedy the injuries of countless other class members and the Organizational Plaintiffs.

**B. Defendants' § 1252(a)(5), (b)(9), and (g) arguments already failed.**

This Court has already found Plaintiffs are likely to succeed on their arguments that 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g) do not bar Plaintiffs' claims nor the relief they seek. May 20 Order at 24-27. Far from giving the Court reason to revisit its prior order, Defendants make no effort to separate or clarify the standards for (a)(5), (b)(9), and (g), and their confused read of each directly contradicts controlling precedent.

First, Plaintiffs' claims are not barred by 8 U.S.C. §§ 1252(a)(5) or (b)(9), the "zipper clauses" that channel claims "arising from any action taken or proceeding brought to remove" a noncitizen into the circuit courts through a petition for a review of removal orders, because Plaintiffs cannot bring their claims through a petition for review of their removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481, 483 (1999). They do not challenge their removal orders at all, as this Court properly acknowledged. May 20 Order at 26-27 (holding Plaintiffs "challenge [ICE's policies]," they do "not challenge the removal proceedings themselves but instead concern matters collateral to removal proceedings"). "[C]laims that are

---

[6] Defendants are correct that Camila B. was released on bond before Plaintiffs filed the Complaint. MTD at 2. She "remain[ed] subject to onerous reporting requirements, including answering ICE's calls 'right away' or she may be re-detained." May 20 Order at 41. Courts have found such "supervisory conditions . . . custodial," and detention is an injury-in-fact. *Garro Pinchi v. Albarran*, No. 25-CV-10831-PCP, 2026 WL 1975598, at *3 (N.D. Cal. July 8, 2026). This Court's final order may redress her injury by ending such onerous supervision and protecting her from redetention.

independent of or collateral to the removal process do not fall within the scope of 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).[7] Indeed, immigration judges cannot adjudicate the merits of Plaintiffs' challenge. *See Lee v. Holder*, 599 F.3d 973, 975 (9th Cir. 2010).

It is immaterial that the Ninth Circuit in *J.E.F.M.* applied (b)(9) to claims for appointment of counsel to represent children *in removal proceedings,* because, unlike the *J.E.F.M.* plaintiffs, Plaintiffs here challenge no aspect of their removal proceedings.[8] Defendants assert Plaintiffs challenge ICE's decision "against whom [to] commence[] proceedings," MTD at 6, but the cited paragraphs do not mention removal proceedings at all. Compl. ¶¶ 89, 242. Further, "a challenge to whom ICE detains," MTD at 6, has nothing to do with (a)(5) or (b)(9), as the Supreme Court has clearly held that detention is collateral to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

Second, 8 U.S.C. § 1252(g) is inapplicable because it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (citing *Reno*, 525 U.S. at 482). As the Court held, "Individual Plaintiffs' claims 'arise' not from ICE's decisions to commence proceedings, adjudicate cases, or execute removal orders, but from ICE's decisions to ignore prior grants of deferred action and their statutory obligation to seek prima facie determinations." May 20 Order at 24-25.

Defendants' only semblance of a 1252(g) argument is a footnote citation to

---

[7] Defendants exaggerate the reach of *J.E.F.M.*, as "[t]he Supreme Court has since instructed that § 1252 (b)(9) is a 'targeted' and 'narrow' provision that 'is certainly not a bar where, as here, the parties are not challenging any removal proceedings.'" *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (citations omitted).

[8] Defendants' extended discussion of "policies-and-practices challenges," MTD at 6, is therefore immaterial. It is not the policies and practice nature of the challenge that renders (b)(9) inapplicable, it is the fact that Plaintiffs do not challenge any part of their removal proceedings.

*Rivas-Melendrez v. Napolitano*, an out-of-circuit decision in which the Seventh Circuit held that § 1252(g) barred a habeas petitioner's claim challenging "both the removal order and the ICE agents' execution of that order." MTD at 6 n.3 (citing 689 F.3d 732, 736 (7th Cir. 2012)). First, the Court need not consider this argument, as it has already admonished Defendants not to "relegate[] several substantive arguments and extensive citations to footnotes." May 20 Order at 5 fn. 3 (citing Standing Order at 6:18, Dkt. 10). Second, the argument, which is apparently tied to Plaintiffs' challenge to the Blind Removal Policy, fails. The petitioner in *Rivas-Melendrez* challenged the adequacy of his removal proceedings but sought to avoid the channeling provisions of 8 U.S.C. § 1252(a)(5) and (b)(9) by "now attempt[ing] to characterize his habeas suit as a challenge to the *execution* of his removal order." *Rivas-Melendrez*, 689 F.3d. at 738. This characterization ran afoul of § 1252(g). But Plaintiffs' claims do not challenge "the procedural adequacy of [their] removal proceedings," MTD at 7 n. 3, or any discretionary decision to execute their removal orders. Rather, they "center on . . . allegations of affirmative government misconduct," a failure to comply with their nondiscretionary statutory duty to consider applicants' prima facie eligibility, which is "collateral to the issues to be presented in any future removal proceedings." *B.P. v. Bostock*, No. C23-0890-KKE, 2024 WL 2959550, at *7 (W.D. Wash. June 12, 2024) (distinguishing *Rivas-Melendrez*). Accordingly, § 1252(a)(5), (b)(9) and (g) do not "Channel Plaintiffs' Claims Out of Here." MTD at 5.

### C. Defendants' § 1252(f)(1) arguments fail.

1. <u>Section 1252(f)(1) is a limitation on remedy, not subject matter jurisdiction, and thus does not warrant dismissal.</u>

Defendants argue for dismissal under Rule 12(b)(1) on the ground that certain remedies Plaintiffs seek are barred by 8 U.S.C. § 1252(f)(1). MTD at 3. But Rule 12(b)(1) only permits dismissal for lack of subject-matter jurisdiction, and, whatever

the reach of § 1252(f)(1), it indisputably "does not deprive the lower courts of all subject matter jurisdiction over claims" that fall within its reach. *Biden v. Texas*, 597 U.S. 785, 798 (2022).

"By its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief." *Reno*, 525 U.S. at 481. The "question whether a court has jurisdiction to grant a particular remedy is different from the question whether it has subject matter jurisdiction over a particular class of claims." *Biden*, 597 U.S. at 801. Thus, § 1252(f)(1) does not require dismissal under Rule 12(b)(1) of claims that also seek individualized relief, declaratory relief, or vacatur of unlawful agency action under the APA.[9]

2. Plaintiffs' claims are not barred by 1252(f)(1) because Plaintiffs also seek APA relief and declaratory judgment.

As this Court has already recognized, the Ninth Circuit has foreclosed Defendants' arguments that § 1252(f)(1) restricts the Court's authority to issue declaratory or APA relief. May 20 Order at 37. Defendants' attempts to paint such relief as injunctive are unavailing.

The Ninth Circuit has unequivocally held that "1252(f)(1) does not prohibit relief in the form of a stay or postponement [] under the APA." *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1018 (9th Cir. 2025). Similarly, § 1252(f)(1) "does not affect classwide declaratory relief." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). This Court properly applied this precedent, stating, "that § 1252(f)(1) bars some relief that Plaintiffs seek does not render Plaintiffs' claims unredressable because they also seek a stay under APA § 705 and declaratory relief."[10] May 20 Order at 37.

---

[9] Defendants argue only that §1252(f) bars the "Classwide Relief Plaintiffs Seek," MTD at 3, but not injunctive relief for the Organizational Plaintiffs. Thus, they have waived any such argument on reply. *Castañon-Nava v. DHS*, 175 F.4th 828, 838 (7th Cir. 2026) ("[W]e conclude that any objection based on § 1252(f)(1) is waivable, and Defendants did so here.").

[10] Defendants appropriately do not argue that § 1252(f)(1) warrants dismissal under Rule 12(b)(6). "As potential remedies, and not standalone claims, Plaintiff's requests for injunctive and declaratory relief are not subject to dismissal under Rule

Seeking once again to avoid this binding precedent, Defendants argue that the Court's stay relief was an injunction masquerading by another name because it may have "spawn[ed] injunctions." MTD at 5 n. 2 (citing *Osorio Gonzalez v. Wesling*, No. 26-cv-231-JJM-AEM, 2026 WL 1765871, at *10 (D.R.I. June 19, 2026)). But the injunction in *Osorio Gonzalez* is precisely the kind of individualized "[one] case at a time" injunction that Defendants concede § 1252(f) permits. MTD at 5. This Court's May 20 Order stayed three unlawful policies. When ICE detained a class member pursuant to one of the stayed policies, he sought an individual injunction in an appropriate district court, which reviewed the individual facts and merits of his case. *Osorio Gonzalez*, 2026 WL 1765871, at *4-8. To the extent it enjoined ICE from "the operation of" any statute, it did so only "with respect to the application of such provisions to an individual . . . against whom" immigration proceedings had "been initiated," as explicitly authorized by 8 U.S.C. § 1252(f)(1). MTD at 5 (quoting 8 U.S.C. § 1252(f)(1)).

Unsurprisingly, Defendants find no precedent to support their "spawn" theory that § 1252(f) bars any non-injunctive ruling on which another court might rely. Instead, they again turn to Supreme Court concurrences that did not garner the support of a majority, a case that does not even analyze 1252(f)(1), and, in a bizarre form of bootstrapping, their own prior failed arguments as "establishing" a legal rule that they clearly did not establish. MTD at 4 & n.2 (citing *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2097-98 (2026) (Thomas, J., concurring); *United States v. Texas*, 599 U.S. 670, 690, 693 (2023) (Gorsuch, J. concurring, joined by Justices Thomas and Barrett); *Mullin v. Doe,* 146 S. Ct. 2121, (2026) (analyzing the Temporary Protected Status ("TPS") statute—*not* § 1252(f)(1)); Dkt 72, 88. These cases do not disturb clear, binding Ninth Circuit precedent.

12(b)(6)." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 942 (S.D. Cal. 2022); *Com. Point Cap., Inc. v. First Data Corp.*, No. 19-CV-556-W (LL), 2019 WL 7020057, at *10 (S.D. Cal. Dec. 20, 2019) ("[A] 12(b)(6) motion to dismiss… is not the proper mechanism to challenge a prayer for relief."); *Andrawes v. Flora Media, Inc.*, 2018 WL 1942197, *2 (C.D. Cal. March 16, 2018).

This Court has already rejected Defendants' argument that the APA relief Plaintiffs seek is "functionally an injunction." Order Denying Defendants' Ex Parte Application for a Stay Pending Appeal Authorization [Dkt. No. 72] at 2, Dkt. 96 ("[R]elying on binding Ninth Circuit authority distinguishing between injunctions and APA stays, the Order determined that § 1252(f)(1) barred classwide injunctive relief, not classwide APA stays."). It should do so again.

3. <u>The classwide injunctive relief sought is not barred by 1252(f)(1).</u>

Though the Court need not examine the classwide injunctive relief Plaintiffs seek to deny Defendants' motion, § 1252(f)(1) does not bar such relief because Plaintiffs do not ask the Court to restrain or enjoin the operation of any provisions that fall within that section's reach.

Section 1252(f)(1) only bars injunctions against "the operation of the provisions of Part IV" of the INA "*as amended by the Illegal Immigration Reform Act ["IIRIRA"] of 1996*". 8 U.S.C. § 1252(f)(1) (emphasis and bracketed term added). "[T]he reference in § 1252(f)(1) to 'the provisions of part IV of this subchapter' appears to refer to 8 U.S.C. §§ 1221–1232," but the Ninth Circuit has noted an important exception to this generalization. *Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022). Statutes that, though they are now codified in that statutory range, were enacted *after* IIRIRA, could not have been "amended by" IIRIRA and therefore do not fall within § 1252(f)(1)'s reach. *Id.* at 829-31. Specifically, the Ninth Circuit held that provisions of the 2008 Trafficking Victims Protection Reauthorization Act ("TVPRA") do not fall within §1252(f)(1)'s reach because, although some of its provisions were ultimately codified in 8 U.S.C. §§ 1221–1232, "[t]he TVPRA was enacted in 2008," and therefore "it could not have enacted a law that was amended by the IIRIRA of 1996." *Id.* at 831.

*Galvez* controls the inquiry here. The U and T visa programs are not found in Part IV of the INA or 8 U.S.C. §§ 1221-1232. *See* 8 U.S.C. §§ 1101(a)(15)(T)-(U); §§ 1184(o)-(p). They were also created *after* IIRIRA of 1996. *See* Compl. ¶¶39, 42

(noting U visa was created by the Violence against Women Act of 2000); *id.* ¶¶ 60-61 (noting T visa was created by the Trafficking Victims Protection Act of 2000). The 2025 Guidance is inarguably not part of Part IV of the INA. Therefore, enjoining "Defendants from implementing it or any other policy that fails to consider eligibility for VAWA, U visa, and T visa relief," which fall outside of Part IV of the INA, "as a positive factor weighing against imposition of civil immigration enforcement," has, at most, only a collateral impact on Part IV. Compl., Request for Relief No. 3.c.

Furthermore, the TVPRA also created eligibility for work authorization, thus authorizing deferred action, for bona fide U visa petitioners. Compl. ¶¶ 44-48. This provision was ultimately codified at 8 U.S.C. § 1184(p)(6), *id.*, which is *outside* the statutory range covered by § 1252(f)(1), and deferred action is never referenced in the covered provisions. Thus, "[p]reliminarily and permanently enjoining" the De Facto Revocation Policy and "enjoin[ing] ICE from ignoring or overriding deferred action granted by USCIS based on a U or T visa petition," would merely result in Defendants comporting with USCIS policy, the APA, and Due Process when seeking to rescind deferred action. *Id.*, Request for Relief Nos. 4.e, 6. While following such processes *might* temporarily postpone a detention or removal, "such an effect is collateral" at best. *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1126 (9th Cir. 2025); *Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007).

Similarly, 8 U.S.C. § 1227(d)(1)—the provision at the heart of Plaintiffs' challenge to the Blind Removal Policy—was created by the TVPRA, just like the provision at issue in *Galvez.* Compl. ¶ 43. Thus, like the provision in *Galvez*, it falls outside § 1252(f)(1)'s reach, even though it was ultimately codified in the range of 8 U.S.C. §§ 1221-1232. Plaintiffs merely ask this Court to require Defendants to properly apply § 1227(d)(1) by "preliminarily and permanently enjoin Defendants from removing U or T visa petitioner who request a stay without first determining whether they are prima facie eligible for relief." *Id.*, Request for Relief No. 9.b. To

the extent requiring compliance with 8 U.S.C. § 1227(d) impacts any statute covered by 8 U.S.C. § 1252(f)(1), it only does so collaterally.

Moreover, § 1252(f)(1) is inapplicable for the additional reason that the Ninth Circuit has held that 1252(f)(1) does not bar a district court from enjoining, on a classwide basis, the Department of Homeland Security ("DHS") from applying unlawful policies that result in denying or rescinding affirmative relief, even though such an injunction may have a collateral effect of preventing removal or detention. *Gonzales* 508 F.3d at 1233 (holding 1252(f)(1) did not bar an injunction that "directly implicates the adjustment of status provision which falls under part V of subchapter II, notwithstanding that a reinstatement proceeding," which falls under Part IV of the INA, "may be a collateral consequence of an unsuccessful adjustment application."); *Al Otro Lado*, 138 F.4th at 1126 ("Even though asylum eligibility may change the outcome of a removal proceeding under a covered provision, such an effect is collateral under our precedents."), *rev'd and remanded on other grounds sub nom. Mullin v. Al Otro Lado*, 146 S. Ct. 2079 (2026); *Perez-Funez v. DHS*, No. CV 81-01457-MWF (EX), 2026 WL 982623, at *9-10 (C.D. Cal. Apr. 6, 2026) (injunction requiring government to protect rights of children to knowing and voluntary decision regarding voluntary departure not barred by 1252(f)(1) because, "to the extent the Injunction compels the Government to take certain procedural steps when processing UAC, it does so with respect to the TVPRA's requirements," notwithstanding that the "TVPRA cross-references the covered provisions").

"[T]he responsibilities of immigration officers when they encounter [survivors] are dictated by the" VAWA, U, and T programs and interim protections, "not by the covered provisions of the IIRAIRA." *Perez-Funez*, 2026 WL 982623 at *10. A "policy that permits ICE to disregard USCIS grants of deferred action" and remove petitioners before USCIS has a chance to conduct prima facie review of their petition, May 20 Order at 26-27, "constitutes at least the partial rescission of the U

visa interim relief system," *Oliveira v. Edlow*, No. CV 25-13228-BEM, 2025 WL 3492110, at *8 (D. Mass. Dec. 4, 2025). The Court may enjoin Defendants' unlawful rescission of a program of affirmative protections even if that has some collateral effect on Part IV of the INA.

## II. The Complaint satisfies Rule 8.

Plaintiffs clearly allege sufficient details in each of their claims to satisfy the notice pleading standards of Rule 8. Incorporation-by-reference paragraphs of the kind Defendants criticize are a standard feature of federal pleading, not ipso facto proof of an impermissible "shotgun pleading." MTD at 11. The Complaint adequately places Defendants on notice because Plaintiffs do not rely solely on this incorporation; they carefully identify the specific facts on which each claim is based.

A shotgun pleading that fails to meet Rule 8's requirements is one where "a party indiscriminately incorporates assertions from one count to another," requiring the district court to "cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claim." *Gibson v. City of Portland*, 165 F.4th 1265, 1288-89 (9th Cir. 2026) (internal citation omitted). That is hardly the case here. In their Complaint, Plaintiffs incorporated paragraphs from previous counts, but each claim in the Complaint clearly includes sufficient allegations to put Defendants on notice of the basis of each claim.

Defendants once again invent standards that they complain Plaintiffs have failed to meet, arguing that Organizational Plaintiffs cannot bring Counts 3 through 7 because the Organizations do not have deferred action. MTD at 11. An organization need not suffer the precise harm borne by its clients to state their own claim.[11] *See Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025); *see also* May 20

---

[11] Counts 8 and 9 include an inadvertent scrivener's error; they are meant to be brought on behalf of Carmen F., Ms. Ruano, the Stay of Removal Class, and "All Organizational Plaintiffs," not "All Plaintiffs."

Order at 32 ("Organizational Plaintiffs have [] made a clear showing of a concrete and demonstrable injury to their core activities.").

Next, Defendants propose that Plaintiffs' references to multiple parties as "Defendants" defeats notice. MTD at 12. Where defendants are alleged to be "related entities" who acted in concert "it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant." *Tivoli LLC v. Sankey*, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015). That Plaintiffs allege DHS and its subcomponents USCIS and ICE may coordinate to conduct the unlawful acts Plaintiffs challenge does not mean the Complaint fails to place them on notice. Defendants cherry-pick phrases at random, conjuring insufficiencies from them, MTD at 12, yet they can identify no legitimate question about which party engaged in what conduct.

Further, even ignoring the detailed, incorporated allegations preceding their Claims for Relief, Plaintiffs plainly identify in those claims the actions they allege support liability. *See, e.g.*, Compl. ¶¶ 181-194 (Claim One), 196-199 (Claim Two), 201-209 (Claim Three), 211-214 (Claim Four), 216-222 (Claim Five), 224-233 (Claim Six), 235-237 (Claim Seven), 239-244 (Claim Eight), 246-247 (Claim Nine).[12]

## III. Claims 1-6 and 8-9, which the Court has found likely to succeed, are facially plausible.

In its May 20 Order, this Court already ruled that Plaintiffs' claims are likely to succeed. Defendants now seek to dismiss the same claims as legally insufficient. They cannot meet the standard for dismissal.

---

[12] Defendants tack on brief arguments that joinder and venue are improper. MTD at 13. But this class action is not a joinder case, and venue is proper because at least one Plaintiff resides and/or has its principal place of business in this district and each Defendant is an agency of the United States or an officer of the United States sued in his or her official capacity. Compl. ¶ 14, 16, 23-24 (noting ICWC has "its principal place of business" in Los Angeles, CHIRLA is headquartered in Los Angeles; and Lupe A. and Camila B. live in Los Angeles).

**A. The May 20, 2026 Order forecloses Defendants' arguments.**

Defendants claim that the May 20 Order "does not foreclose dismissal" because it "rest[s] on a likelihood-of-success standard, not on the legal sufficiency of the Complaint." MTD at 3 fn. 1. But "this conclusion [is] erroneous, as it [would] result[] in the district court" holding that claims that survived "the more burdensome likelihood-of-success standard used for motions for preliminary injunctions" should be dismissed as legally insufficient.[13] *Tohono O'odham Nation v. United States Dep't of the Interior*, 138 F.4th 1189, 1202 (9th Cir. 2025); *see Iqbal*, 556 U.S. at 678 ("The plausibility standard [for a motion to dismiss] is not akin to a probability requirement.") (cleaned up).

"[T]he 'standard for demonstrating a likelihood of success on the merits, let alone a clear or substantial showing of such entitlement, is far more demanding than the plausibility standard applied to survive dismissal for the failure to state a claim at the pleading stage.'" *City & Cnty. of San Francisco*, 816 F. Supp. 3d at 1026 fn. 3 (internal citations omitted). "Accordingly, to the extent [this Court] previously found that certain claims survived the heightened preliminary injunction standard, [it may] rely on that analysis in concluding that plaintiffs' [complaint] is adequately pleaded, unless defendants provide an argument that suggests otherwise." *Id.* Defendants' arguments offer nothing to disturb the Court's analysis that Plaintiffs' claims are not only plausible but likely to succeed.

**B. The 2025 Guidance is final agency action.**

Defendants argue that the self-serving boilerplate language appended to the 2025 Guidance, stating that it "is not intended to, does not, and may not be relied upon to create any right or benefit," 2025 Guidance at 4, proves that the Guidance "binds no one, confers nothing, and may vanish tomorrow," MTD at 14. But the

---

[13] *Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) is inapposite. MTD at 3 n.1. That case involved whether a preliminary injunction was binding "at trial on the merits," under a standard *higher* than that required for a preliminary injunction.

Guidance also states that it is "effective immediately and remains in effect until superseded," and that prior ICE policies are "now rescinded and superseded." 2025 Guidance at 1. Plaintiffs' "rights" and Defendants' "obligations have been determined" by the Guidance, and "legal consequences [] flow" from it. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). That is final agency action, as this Court already held. May 20 Order at 66-67.

**C. Plaintiffs' APA claims should not be dismissed because the challenged policies are not committed to agency discretion by law.**

Plaintiffs allege sufficient facts to support a ruling that the three challenged policies are unlawful under the APA, INA, and Constitution. Compl. ¶¶ 181-194, 196-199. Obviously, an agency does not have discretion to enact policy that violates the law. *Planned Parenthood of Greater Wash. and N. Idaho v. HHS*, 946 F.3d 1100, 1112 (9th Cir. 2020). Thus, Defendants' arguments that Plaintiffs' APA claims (Claims 1-3 and 9) should be dismissed because their "enforcement choices" are committed to agency discretion necessarily fail. MTD at 16.

Defendants misrepresent decades of policy protecting immigrant survivors as a matter of unreviewable enforcement priorities. MTD at 16. As Plaintiffs allege, protections for VAWA, U visa, and T visa petitioners are more than discretionary non-enforcement; they are "a program for conferring affirmative immigration relief" while petitions are pending, which offers the "types of benefits . . . 'courts are often called upon to protect.'" *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 18-19 (2020) ("*Regents*") (citations omitted). "The Ninth Circuit has repeatedly found that APA jurisdiction exists where 'discretion has been legally circumscribed by various memoranda.'" *Inland Empire - Immigrant Youth Collective v. Nielsen*, No. ED-CV-172048PSGSHKX, 2018 WL 4998230, at *16 (C.D. Cal. Apr. 19, 2018) (quoting *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004)); Compl. ¶¶ 37-38, 50-59.

Further, Defendants are wrong that there is "no law to apply to ICE's enforcement priorities." MTD at 17 (internal citation omitted). Both Congress and DHS created "statutes, regulations, [and] established agency policies . . . that provide a meaningful standard against which to assess" the agency's actions. *Mendez–Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003); Compl. ¶ 70-81. For instance, Congress created the opportunity for work authorization and protection from removal for U visa petitioners through 8 U.S.C. § 1184(p)(6). Compl. ¶ 51. Defendants created T and U visa regulations governing BFD or waiting list decisions that result in deferred action. 8 C.F.R. § 214.14(d)(2); 8 C.F.R. § 214.205. Section 1227(d)(1) requires consideration of prima facie eligibility when reviewing a stay request from a U or T visa petitioner. The USCIS Policy Manual prescribes criteria and processes for granting and revoking VAWA, U, and T interim benefits, including deferred action. USCIS Policy Manual Vol. 3, Pts. B chap. 6, C chap. 5, D chap. 5.[14] Thus, there is "law to apply" to Plaintiffs' APA challenges to Defendants' policies.

*Heckler v. Chaney* is inapposite. MTD at 16-17. There, the Supreme Court applied a presumption of unreviewability regarding an agency's individual decision not to pursue enforcement in a particular case, but that presumption does not bar a challenge to a general policy that purports to govern those individual decisions agency-wide. 470 U.S. 821, 830–33 (1985). Thus, *Heckler* preserves review where an agency has "consciously and expressly adopted a general policy" that amounts to an abdication of its statutory responsibilities. *Id*. at 833 fn.4. Plaintiffs plausibly allege that Defendants have adopted three such general policies. Compl ¶ 82-95.

---

[14] Defendants present a strawman argument that "the USCIS Policy Manual" cannot be "the governing standard" for ICE's enforcement. MTD at 16-17 (citing Complaint ¶ 213). Plaintiffs merely allege that the Manual governs the grant and revocation of deferred action, which is solely in USCIS's authority. Compl. ¶ 213. Thus, the Manual provides sufficient law to apply to any agency within DHS seeking to usurp USCIS's deferred action authority, including ICE.

**D. Plaintiffs state claims that the 2025 Guidance is arbitrary and capricious and contrary to law.**

Defendants' arguments that Plaintiffs fail to state APA claims regarding the 2025 Guidance because they present merely "harsh criticism" fail. MTD at 18-19. For the reasons this Court articulated, Plaintiffs adequately state that the 2025 Guidance is arbitrary and capricious and contrary to law.

This Court held that Plaintiffs are likely to "show that the 2025 Guidance is arbitrary and capricious" because it "reverses decades of policy (1) without a sufficiently-reasoned explanation for disregarding the concerns underlying that prior policy, (2) without considering the reliance interests of persons who have acted in reliance on those policies, and (3) without considering serious aspects of the problem." May 20 Order at 69. The Court also held that Plaintiffs are likely to show that the 2025 Guidance is "contrary to law" because it "undermines the legislative scheme Congress designed to protect" immigrant survivors. *Id*. at 74. Claims that are likely to succeed cannot fail to state a claim on which relief can be granted. *Tohono O'odham Nation*, 138 F.4th at 1202. Nothing Defendants regurgitate in their Motion to Dismiss disturbs this Court's well-reasoned analysis.

**E. Plaintiffs plead sufficient facts to support a finding that Deferred Action Class members have a due process interest in their deferred action status.**

Plaintiffs state a claim for a due process violation in Claims Five and Six. Defendants' argument that deferred action is a "revocable act of grace" in which Plaintiffs have no protected due process interest, MTD at 20, ignores settled law. Binding precedent, which Defendants continue to ignore, holds that a recipient's interest in maintaining their current, valid deferred action status is a protected interest for purposes of due process and forecloses Defendants' arguments.

Each Plaintiff seeking to represent the Deferred Action Class alleges that, at the time of the Complaint, they had deferred action status. Compl. ¶¶ 102, 110, 119,

128. They also allege, and the Supreme Court has recognized, that "[a]pproval of deferred action status means that. . . no action will thereafter be taken to proceed against an apparently deportable [non-citizen], even on grounds normally regarded as aggravated." *Reno*, 525 U.S. at 484. Further, Plaintiffs allege that deferred action is granted for a prescribed period, representing a promise that a recipient can rely on its protection until the date it expires. *See, e.g.*, Compl. ¶ 102 (Lupe A.'s deferred action as "valid until October 2026"). Therefore, deferred action represents a promise not to detain or remove for a prescribed period, and "it is beyond dispute that" a person with deferred action "has a protected interest in his freedom," which Plaintiffs allege that Defendants deprive through revocation-by-arrest. *F.R.P. v. Wamsley*, No. 3:25-CV-01917-AN, 2025 WL 3037858, at *4 (D. Or. Oct. 30, 2025) (holding VAWA petitioner with deferred action was likely to succeed on merits of claim that his detention violated due process); May 20 Order at 82 ("Plaintiffs are likely to establish that they have a protected liberty interest in their continued deferred action" because "a person with deferred action should neither be removed nor detained.").

In addition to the liberty interest that deferred action status confers, Plaintiffs also allege that deferred action creates protected property interests, including eligibility for work authorization and other federal benefits, integral to their day-to-day livelihood. Compl. ¶ 217. They allege they have obtained jobs with deferred action work authorization, built homes, had children, and established communities in reliance on the benefits conferred by deferred action. *See*, *e.g.*, Compl. ¶¶ 102, 110, 119, 128. Where "continued possession" of benefits has "become essential in the pursuit of a livelihood," and revocation of those benefits "involves state action that adjudicates important interests," they "are not to be taken away without [] procedural due process." *Bell v. Burson*, 402 U.S. 535, 539 (1971).

In support of their argument that Plaintiffs have "no cognizable due process interests" in protecting their deferred action status, Defendants provide a list of inapposite cases in which the plaintiffs failed to establish protected liberty interest in

an *initial* grant of a benefit or a renewal *after* its expiration, because there was no reasonable expectation that such benefits would be granted or renewed in their cases. MTD at 20 & fn. 6 (citing *Tovar-Landin v. Ashcroft*, 361 F.3d 1164 (9th Cir. 2004) (no protected interest in being permitted to voluntarily depart); *Regents of the Univ. of California v. DHS*, 908 F.3d 476, 515 (9th Cir. 2018) (discussing whether DACA recipients had a protected property interest in "renew[ing] their benefits and protection on an ongoing basis" warranting continuation of "the DACA program *itself*," not in the deferred action status they currently had) (rev'd in part by *Regents*); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) (no property interest in cancellation of removal that was never granted); *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1023 (9th Cir. 1985) (not a due process case, but affirming dismissal for lack of jurisdiction to review discretionary denial of initial request for deferred action that was never granted). These cases have no bearing on whether a due process right exists to protect a *currently* valid benefit against arbitrary deprivation. "[E]ven absent a claim of entitlement to an important benefit, once [deferred action] is conferred, recipients have a protected property interest that requires a fair process before the government may take that benefit away." *Inland Empire*, 2018 WL 4998230 at *19.

Plaintiffs therefore plausibly allege protected due process interests in their currently valid deferred action status and a violation of their due process rights through ICE's alleged De Facto Revocation policy, which provides them no process at all. Neither Defendants' cursory *Matthews* analysis, which improperly considers an individuals' initial eligibility for deferred action, nor its strawman argument that "a pending petition," rather than deferred action status, has no effect on ICE's authority to effect a removal order, counsel otherwise. MTD at 21-22. Again, on these matters, the Court has already spoken regarding the legal sufficiency of Plaintiffs' claims. May 20 Order at 82-84.

**F. Defendants (again) misread the Blind Removal Policy claims.**

Defendants again erroneously assert that "Counts 8 and 9 read a mandate" into 8 U.S.C. § 1227(d)(1) that fails to "treat[] the stay power as discretionary." MTD 23-24. As Plaintiffs and this Court have repeatedly articulated, Plaintiffs allege in Counts Eight and Nine that § 1227(d) requires that, when U or T visa petitioners request a stay, "the Secretary of Homeland Security" must first "determine[]" whether their petitions "set[] forth a prima facie case for approval" before deciding whether to grant or deny the stay request. 8 U.S.C. § 1227(d)(1); Compl. ¶¶ 240-241. They do not ask the Court to dictate the outcome of any stay request.

Defendants also object that "Count 8 is captioned as a freestanding INA violation and invokes no APA provision" and therefore fails for want of a "private right[] of action." MTD at 24. However, the Court may adjudicate this claim as an equitable cause of action because "non-statutory review of unlawful executive action existed long before the APA was enacted, and '[n]othing in the subsequent enactment of the APA altered' the understanding that, '[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority.'" *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *30 (D.D.C. July 2, 2025) (citation omitted). *Alexander v. Sandoval*, which considered only "whether there is a private cause of action to enforce [a] *regulation*," does not hold otherwise. MTD at 24; 532 U.S. 275, 279 (2001) (emphasis added). This is because, in Count Eight, Plaintiffs do not seek to "enforce federal law," MTD at 24 (quoting *Alexander*), they seek to prevent Defendants from acting outside the bounds of federal law.

Defendants then inexplicably argue that Count Nine should be dismissed because it "repleads the identical theory under § 706 and adds nothing." MTD at 24. But Count Nine adds what Defendants say Count Eight is missing – a request for review under the APA and that the case meets the necessary APA requirements.

Thus, Plaintiffs have adequately pled their Ninth Claim.[15]

**G. The *Accardi* claim clearly articulates the policies and regulations which ICE violates.**

Defendants' arguments that Plaintiffs' *Accardi* claims fail because they "never identify" "a binding norm" and because the USCIS Policy Manual cannot provide a meaningful standard for ICE's conduct both lack merit. MTD at 24-25. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

First, Plaintiffs identify a clear and binding norm: "Defendants' longstanding policies and operating procedures require that USCIS, not ICE, has exclusive authority over deferred action determinations in the U and T visa contexts." Compl. ¶ 213. This norm appears in both regulation and the USCIS Policy Manual. *Id.* (citing 8 C.F.R. §§ 214.14(d)(3), 214.205; and PM vol. 3, pt. B, ch. 6.D.3. n.18). ICE cannot usurp USCIS's exclusive power to revoke deferred action and then claim that USCIS's Policy Manual prescribing the process for revocation does not apply to it.

Second, the Ninth Circuit has clearly held the *Accardi* doctrine extends beyond formal "regulations" to include, e.g., "internal operating procedures," "handbook[s]," "policy statements," and other materials that document an agency's "usual practice." Compl. ¶ 211 (quoting *Alcaraz*, 384 F.3d at 1162. Defendants find no comfort in *United States v. Lee*, which was grounded in the principle that "that the *Accardi* doctrine has not been applied to *criminal* law enforcement" due to the "special nature of prosecution." 274 F.3d 485, 493 (8th Cir. 2001) (emphasis added). Their reliance

[15] Defendants misinterpret Plaintiffs' factual allegations in a desperate effort to lend strength to their faulty arguments. MTD at 24. That ICE granted Carmen F. a stay under the 2021 Directive in November 2024, *before* her U visa was prepared, Compl. ¶ 145, does not implicate 1227(d) at all, which only applies to individuals with pending petitions. Nor does it call into question her claim that in 2025, when her application *was* pending, Defendants applied their Blind Removal Policy pursuant to the 2025 Guidance, unlawfully removing her with her son without a prima facie determination, after she requested another stay. Compl. ¶ 147. Similarly, that ICE denied Ms. Ruano's two stay requests without a prima facie determination only supports her claim. MTD at 24; Compl. ¶¶ 154-55. Their allegations regarding the post-filing removal of Daniel H. go beyond what is alleged in the Complaint and are inappropriate for a Rule 12(b)(6) motion.

on *Caceres* is misplaced for similar reasons. That case involved a "criminal prosecution" and was "not an APA case," which the Supreme Court stated *would* permit a claim for "agency violations of their own regulations," without naming the *Accardi* doctrine specifically. *United States v. Caceres*, 440 U.S. 741, 754 (1979). *Carranza v. I.N.S.*, also cited by Defendants, MTD at 25, did not address an *Accardi* claim at all, discussing *Accardi* for other reasons. 277 F.3d 65, 72 (1st Cir. 2002). Plaintiffs state an *Accardi* doctrine claim.

### IV. Plaintiffs' Seventh Claim states a Fourth Amendment claim upon which relief can be granted.

Count Seven is the only claim on which this Court has not already ruled, because Plaintiffs did not present a Fourth Amendment claim in their motion for preliminary relief. However, Plaintiffs asserting that claim also plausibly plead a Fourth Amendment claim.

"In the immigration context, '[t]he Fourth Amendment requires probable cause to seize or detain an individual for a civil immigration offense.'" Compl. ¶ 236 (quoting *Gonzalez*, 975 F.3d at 798. A warrantless immigration arrest requires both probable cause to believe a noncitizen is removable and an individualized assessment of the person's flight risk. *See id*; *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995); 8 U.S.C. § 1357(a)(2).

Here, Plaintiffs allege ample facts that support the claim that Defendants arrest individuals in valid deferred action status, without a warrant, probable cause, or a flight risk assessment. Compl. ¶ 15 (ICE "arrested [Lupe A.] outside her home . . . [a]lthough her attorney alerted ICE to her deferred action status"); Compl. ¶ 16 ("while Camila was working at her tamales business, unidentified agents apprehended her during DHS's indiscriminate immigration raids across Los Angeles."); Compl. ¶ 17 ("after a traffic stop, ICE took [Paulo C.] into custody without probable cause to believe he had violated the terms of his deferred action

status").[16] Indeed, DHS considers deferred action "recipients not to be unlawfully present in the United States because their deferred action is a period of stay authorized by the Attorney General." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1059 (9th Cir. 2014). Thus, these Plaintiffs' allegations of their arrests without a warrant or probable cause are sufficient to plead a Fourth Amendment claim.

Defendants quibble that the claim fails because it "never engages the statutory arrest authority," alleging these arrests occur pursuant to 8 U.S.C. § 1226, which permits arrests with an administrative (not judicial) warrant, rather than the warrantless arrest statute, 8 U.S.C. § 1357. MTD at 23. "A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) (citation omitted). In any event, should Defendants assert these arrests happened pursuant to a warrant sufficient to satisfy the Fourth Amendment, they are welcome to prove so through discovery. At this stage of the case, the Court must take Plaintiffs' allegations of warrantless arrests as true.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss. In the alternative, should the Court grant any portion of Defendants' motion, Plaintiffs respectfully request leave to amend.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Sarah Kahn*

Sarah Kahn
CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Bardis Vakili
Monika Y. Langarica
Sarah E. Kahn

[16] Defendants note that CBP arrested Ms. Merlos. MTD at 8. Ms. Merlos withdraws her claim for a Fourth Amendment violation. She maintains Claims 1 – 6 alongside all other Pending Petition and Deferred Action Class members.

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner

PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this memorandum of points and authorities contains 25 pages, which complies with the limit set by the Court. Standing Order, Dkt. 10 at 6.

Dated: August 28, 2026

*/s/ Sarah Kahn*

Sarah Kahn