CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Bardis Vakili (Cal. Bar No. 247783)
bardis@centerforhumanrights.org
Monika Langarica (Cal. Bar No. 308518)
monika@centerforhumanrights.org
Sarah E. Kahn (Cal. Bar No. 341901)
sarah@centerforhumanrights.org
1505 E 17th St. Ste. 117
Santa Ana, CA 92705
Tel: (909) 274-9057

Attorneys for Plaintiffs

Additional counsel listed on following page

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Immigration Center for Women and Children, et. al.,<br><br>Plaintiffs,<br>v.<br><br>Markwayne Mullin, et. al,<br>Defendants. | Case No.: 2:25-cv-09848-AB-AS<br><br>**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: October 9, 2026<br>Hearing Time: 10am<br>Courtroom: 7B<br><br>Hon. Andre Birotte Jr. |

*Additional Counsel for Plaintiffs:*
LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum (Cal. Bar No. 98634)
srosenbaum@law.berkeley.edu
Jordan Weiner (Cal. Bar No. 356297)
jordan@lrcl.org
474 Valencia Street, Suite 295
San Francisco, CA 94103
Tel: (415) 575-3500

PUBLIC COUNSEL
Rebecca Brown (Cal. Bar No. 345805)
rbrown@publiccounsel.org
Kathleen Rivas (Cal. Bar No. 333600)
krivas@publiccounsel.org
610 South Ardmore Ave.
Los Angeles, CA 90005
Tel: (213) 385-2977

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist (DC Bar 1720816)*
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: (310) 279-6025

Adam Reese (Cal. Bar No. 362898)
areese@chirla.org
2533 W 3rd Street, #101
Los Angeles, CA 90057
Tel: (213) 353-1333

*Admitted pro hac vice*

In their Reply in Support of Motion to Dismiss the Complaint ("Reply"), Defendants raise for the first time a recent Ninth Circuit decision relevant to organizational standing, which was issued after Defendants filed their Motion to Dismiss the Complaint. *See, e.g.,* ECF 109 at 1 (citing *Arizona All. for Retired Americans v. Mayes*, No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026) ("*Arizona Alliance*"). Having had no previous opportunity to address it, Plaintiffs file this Sur-Reply to clarify the scope of *Arizona Alliance* and make clear that it does nothing to disturb Plaintiffs' organizational standing.

Organizational Plaintiffs Immigration Center for Women and Children ("ICWC"), Coalition for Humane Immigrant Rights ("CHIRLA"), La Raza Centro Legal ("LRCL"), and California Collaborative for Immigrant Justice ("CCIJ") established standing by alleging that the challenged conduct in this case disrupted their "core business activities," including providing legal representation to noncitizen survivors of crimes. Compl., ECF 1 ¶¶ 23-26. As the Court has correctly held, this satisfies the requirements for organizational standing after *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ("*Hippocratic Medicine*"). Order Granting Plaintiffs' Motion for Class Certification [Dkt. No. 23] and Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, ECF 57 ("May 20 Order") at 28. Thus, the "allegations are sufficient as a legal matter to invoke the court's jurisdiction" because the Court must accept Plaintiffs' "allegations as true and draw[] all reasonable inferences in [their] favor," and the Court should reject Defendants' Federal Rule of Civil Procedure 12(b)(1) arguments based on the new case. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th. Cir. 2014).

Defendants continue to insist that organizational Plaintiffs "manufacture standing in the absence of an independently sufficient injury-in-fact," Reply at 7, but in support of this argument, they overstate *Arizona Alliance*'s scope by claiming that it overruled "the cases on which the May 20 Order ['s organizational standing analysis] rested," *id.* at 7. As discussed in greater detail below, organizational

Plaintiffs do not rely on the diversion of resources theory that *Arizona Alliance* held insufficient to establish standing, and the May 20 Order correctly relied on *Hippocratic Medicine* to conclude that "[u]nlike the mere expenditure of resources to *advocate* against a policy that was insufficient to establish injury-in-fact in *Hippocratic Medicine*," the organizational Plaintiffs here "made a clear showing of a concrete and demonstrable injury to their core activities sufficient to establish direct organizational standing." May 20 Order at 31-32. Moreover, *Arizona Alliance* only partially overturned *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972 (9th Cir. 2025) "[t]o the extent . . . [it] relied on *East Bay Sanctuary*" and reaches no farther than *Hippocratic Medicine*, which this Court already distinguished in its May 20 Order. *Arizona Alliance* at 7 n. 2. Indeed, the key distinction between this case and *Hippocratic Medicine* continues to be that here, organizational Plaintiffs did not "spend [their] way into standing simply by expending money to gather information and advocate *against the defendant's action*;" rather, the Guidance makes their core business activities as counsel for survivors more expensive, onerous, and ineffective. *Hippocratic Medicine* at 394 (emphasis added). That satisfied organizational standing before *Arizona Alliance* and it satisfies it now.

*Arizona Alliance* reiterates *Hippocratic Medicine's* holding that an organization must prove more than that "'the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose.'" *Arizona Alliance* at 7 (quoting *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (overruling *E. Bay Sanctuary*). There, the Ninth Circuit held that voting rights organizations failed to establish standing to challenge a law they feared would "interfere with their voter-registration activities" because that "fear . . . 'lacks record support and is highly speculative.'" *Arizona Alliance* at 8 (quoting *Hippocratic Med.*, 602 U.S. at 390.). Far from holding standing cannot be established if a policy renders an organization's service ineffective, the Court merely found the factual record insufficient to prove interference with core business activities. Its

holding is far narrower: "mere diversion of resources to educate and train [clients] on the potential effects of the [policy] cannot independently establish an injury-in-fact." *Id*. Thus, the order hews close to *Hippocratic Medicine*, narrowly carving out injury caused by an organization's *response* to a challenged policy while preserving standing where that policy *directly affects* the organization's core activities.

Defendants confuse the holding by asserting that "the organizations must *now* plead a direct injury to their own core activities," Reply at 8 (emphasis added), but organizational Plaintiffs have made the requisite showing since the start of this litigation. First, *Arizona Alliance* made "clear" that the requirement that the organization's core activities be directly affected "does not mean . . . that an organizational plaintiff must be directly regulated by a challenged law." *Arizona Alliance* at 6. Second, as Plaintiffs alleged in the Complaint, the 2025 Guidance directly interferes with organizational Plaintiffs' representation of U visa, T visa, and VAWA petitioners. Organizational Plaintiffs described a marked drop in clients seeking counsel. Compl. ¶ 165 ("ICWC has also noticed a decline in the number of individuals seeking its services due to Defendants' policies"); *id*. ¶ 168 (LRCL noting the same). Indeed, the 2025 Guidance costs organizational Plaintiffs far more than what the "organizations chose to spend responding to a policy that regulates their clients." Reply at 7. For example, organizational Plaintiffs are not voluntarily "responding to a policy" when, pursuant to the 2025 Guidance, ICE places their *existing* clients in resource-intensive removal proceedings for the first time. *Id*.; Compl. ¶ 166. ("ICWC had to use resources . . . [to] prepare for the reopening of those cases."); *id*. ¶ 168 (LRCL noting the same); *id*. ¶ 24 (CHIRLA noting the same); *id*. ¶ 169 (CCIJ noting the same). The 2025 Guidance also directly interferes with organizational Plaintiffs' other work alongside and on behalf of immigrant survivors. For example, CCIJ represents survivors of sexual abuse at Federal Correctional Institution Dublin, at least 34 of whom were protected by the prior victim-centered policies when they came forward to report the abuse. Compl. ¶ 169. The rescission

of survivor protections jeopardizes CCIJ's core business activity of "helping to empower [survivors] to come forward and expose [systemic] abuse" by making it more dangerous for survivors to report abuse, participate in litigation, and contribute to CCIJ's advocacy efforts. *Id*. ¶ 26.

For these reasons, *Arizona Alliance*'s overturning of *East Bay Sanctuary* (and partial overruling of *Immigrant Defenders* to the extent it relied on *East Bay Sanctuary*) is immaterial here; organizational Plaintiffs have never exclusively relied on a diversion of resources and frustration of mission theory of standing. *Arizona Alliance* at 7 fn. 2. Instead, as the Court noted, organizational Plaintiffs have sufficiently alleged the challenged conduct disrupts their core business activities. *See supra*; May 20 Order at 29-32.[1]

In sum, organizational Plaintiffs sufficiently allege that the 2025 Guidance interferes with their core business activities, as required by *Hippocratic Medicine* and *Arizona Alliance,* and the Court should reject Defendants' Federal Rule of Civil Procedure 12(b)(1) arguments.[2]

Dated: September 17, 2026 Respectfully submitted,

_/s/ Sarah Kahn______

---

[1] Irrespective of the impact of *Arizona Alliance* on organizational Plaintiffs' standing, Plaintiffs have independently sufficiently alleged individual Plaintiff standing as well as CHIRLA's associational standing. Compl. ¶¶ 15-22, 24, 102-164, 167.

[2] Plaintiffs additionally briefly note that Defendants misrepresent the Court's order denying their request for a stay of the May 20 Order, claiming that "[t]his Court also held that § 1252(f)(1) 'barred classwide injunctive relief.'" Reply at 1. The cited text only explains that the Ninth Circuit has distinguished between classwide injunctive and APA relief, Dkt. 96 at 2, and in its May 20 Order, the Court merely "decline[d] to address these specific questions further without fuller briefing" because Plaintiffs presented "relatively complicated arguments that Defendants did not have an opportunity to address" and the Court had "enough doubt" not to enter classwide injunctive relief at that preliminary stage. May 20 Order at 36-37.

Sarah Kahn

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Bardis Vakili
Monika Y. Langarica
Sarah E. Kahn

LA RAZA CENTRO LEGAL
Stephen A. Rosenbaum
Jordan Weiner

PUBLIC COUNSEL
Rebecca Brown
Kathleen Rivas

COALITION FOR HUMANE IMMIGRANT RIGHTS
Carl Bergquist
Adam Reese