UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 2:25-cv-09848-AB-AS | Date: | November 18, 2026 |

| | |
|---|---|
| Title: | *Immigration Center for Women and Children et al v. Kristi Noem, et al.* |

| | |
|---|---|
| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| | |
|---|---|
| Evelyn Chun | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Appearing | None Appearing |

**Proceedings: [In Chambers] ORDER GRANTING IN PART and DENYING IN PART MOTION TO DISMISS [Dkt. No. 98]**

Before the Court is a Motion to Dismiss ("Motion," Dkt. No. 98) filed by Defendants Markwayne Mullin, et al. ("Defendants"). Plaintiffs Immigration Center for Women and Children, et al. ("Plaintiffs") filed an opposition, Defendants filed a reply, and Plaintiffs filed a surreply. The Court heard oral argument on October 9, 2026. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009 (internal quotation marks omitted).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II. DISCUSSION

The Court previously summarized Plaintiffs' claims in its Order Granting Plaintiffs' Motion for Class Certification and Granting in Part and Denying in Part Plaintiffs' Moton for Preliminary Injunction ("PI Order," Dkt. No. 57). *See* PI Order pp. 2-22; *also at Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324 (C.D. Cal. 2026). The Court incorporates that discussion by reference.

Defendants' Motion to Dismiss raises many of the same arguments they raised to oppose Plaintiff's class certification and preliminary injunction motions, and that the Court addressed in the PI Order, including their arguments that the Court lacks subject matter jurisdiction, and that Plaintiffs fail to state any claims under Fed. R. Civ. P. ("Rule") 12(b)(6). Although the Court's PI Order was by definition preliminary and does not decide this Motion, the Court maintains its analysis and conclusions from the PI Order, with the following two exceptions: First, the Court modifies is analysis of the Organizational Plaintiffs' standing but still concludes that they have standing. Second, the Court reconsiders its interpretation of 8 U.S.C. § 1227(d)(1) and concludes that Plaintiffs' claims challenging the Blind Removal Policy (Counts VIII and IX) fail to state a claim. Other than as to these two matters, the Court adopts the same analysis regarding

the same issues and will not re-explain them here.[1]

The Court therefore limits its discussion to the two matters it has reconsidered, and to new matters raised for the first time in this Motion.

**A. The Organizational Plaintiffs Have Standing**

Defendants argue that Organizational Plaintiffs Immigration Center for Women and Children ("ICWC"), Coalition for Humane Immigrant Rights ("CHIRLA"), La Raza Centro Legal ("LRCL"), and California Collaborative for Immigrant Justice ("CCIJ") have not pled facts showing an injury-in-fact necessary to establish standing.

In the PI Order, the Court recited a legal standard for organizational standing, summarized the evidence the Organizational Plaintiffs presented, and concluded that they made a clear showing of a concrete and demonstrable injury to their core activities sufficient to establish direct organizational standing. In their Reply in support of the present Motion, Defendants argue that *Arizona Alliance for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026) ("*Arizona Alliance*"), a Ninth Circuit case decided days after they filed this Motion, establishes that the Organizational Plaintiffs lack standing because they have not alleged a cognizable injury-in-fact. Plaintiffs' surreply responds to this argument. Upon review of *Arizona Alliance*, as explained below, the Court finds it necessary to revise its analysis from the PI Order. However, the result is the same: Court concludes that the Organizational Plaintiffs have shown injury-in-fact and have standing.

In the PI Order, the Court recited a standard for standing similar to that recited in *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025) ("*Imm. Defs. I*"), including that the injury-in-fact must be to the organization's core business activities, and a citation to *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) for the proposition that "[a]n organization has direct standing to sue where a defendant's conduct has 'frustrated

---

[1] At oral argument, when the Court asked counsel to direct it to new arguments, defense counsel indicated that the Motion presented mostly the same arguments as those they raised previously and stated that it was filed primarily for preservation purposes. Counsel also indicated they were prepared to submit on any tentative the Court already had. Counsel also suggested that the Court stay this action pending intervening grants of certiorari in other cases, but the Court is disinclined to grant oral motions, especially those involving relatively complex questions.

its mission and caused it to divert resources in response to that frustration of purpose.'" In *Arizona Alliance*, the en banc panel explained that, in *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ("*Hippocratic Medicine*"), the Supreme Court rejected *East Bay Sanctuary*'s statement that standing exists when an organization diverts its resources in response to a defendant's actions. *See Arizona Alliance*, 186 F.4th at 395. Rather, the court must "ask whether the challenged conduct 'directly affected and interfered with' the plaintiff organizations' core activities." *Id.* at 634. Furthermore, the Court overruled the organizational standing analyses in seven cases that apparently relied on *East Bay Sanctuary*, and overruled *Imm. Def. I*'s "organizational standing analysis [to the extent that it] relied on *East Bay Sanctuary,*" meaning on *East Bay Sanctuary*'s diversion of resources standard. *Id.* at 634, fn. 2. Like *Imm. Def. I*, this Court's organizational standing analysis discussed the diversion-of-resources theory but also concluded that the Organizational Plaintiffs established that the 2025 Guidance interfered with their core business activities. The Court must therefore adjust its analysis from the PI Motion by eliminating the diversion-of-resources theory of injury-in-fact, and instead simply ask whether the 2025 Guidance directly affects and interferes with the Organizational Plaintiffs' core activities. The Court concludes that the Organizational Plaintiffs have pled facts showing that the 2025 Guidance directly interferes with their core activities, so the PI Order's conclusion that the Organization Plaintiffs have shown injury-in-fact sufficient to establish standing remains sound.

In *Arizona Alliance*, the organizational plaintiffs argued that they had standing to seek an injunction against a voter registration statute that they argued would have caused the registrations of voters they registered to be canceled, thus interfering with the organizations' voter-registration activities. To prevent this harm, the organizations would have to spend time and resources asking voters about their past registrations. *Id.* at 634. The Circuit found this alleged injury insufficient because the organizational plaintiffs did not show that the challenged provision affected or interfered with their voter-registration and voter-education activities because the provision did not operate the way the organization feared it would, either as a matter or statutory interpretation or as a matter of the factual record. *Id.* at 634-635. The Circuit did not hold that interfering with those activities would not be injury-in-fact, just that the organizations did not establish that interference. Also, *Arizona Alliance* focused on *Hippocratic Medicine*'s rejection of frustration of purpose caused by the diversion of resources merely "to gather information and advocate against the defendant's action," which is "pure issue advocacy," as a basis for injury-in-fact. *Id.* at 632 (citing *Hippocratic Med.*, 602 U.S. at 394-395). "Conversely, an organization has suffered an injury-in-fact if the

frustration of its mission comes from an action that 'directly affect[s] and interfere[s] with [its] core business activities.'" *Id.* at 633 (citing *Hippocratic Med.*, 602 U.S. at 395).

Here, the Organizational Plaintiffs' claimed injury-in-fact does not derive from the frustration of purpose caused by the diversion of resources to pursue pure issue advocacy regarding the 2025 Guidance, such as by campaigning against it. Rather, the Organizational Plaintiffs' claimed injury-in-fact is that the 2025 Guidance directly interferes with their core business activities of representing U-visa, T-visa, and VAWA petitioners seeking affirmative immigration benefits by making it more expensive, more onerous, and more time consuming to undertake those activities. For example, ICWC and LRCL have seen a decline in the number of people seeking their services due to the 2025 Guidance. *See* Compl. ¶¶ 165, 169. And, each of the four organizations allege that as a result of the 2025 Guidance, ICE has placed existing clients in removal proceedings for the first time, causing the organizations to litigate the removal defense and/or to reopen those cases, which is resource-intensive. *See, e.g.*, Compl. ¶¶ 166 (ICWC), 168 (LRCL), 24 (CHIRLA), 169 (CCIJ). The PI Order recited evidence elaborating on how the 2025 Guidance interferes with the Organizational Plaintiff's core business activities, as distinct from simply causing the organizations to divert resources towards issue advocacy. *See, e.g.*, PI Order pp. 30-31 (listing some impacts, including, e.g., ICWC hired 2.5 new temporary employees to review its records for clients who could potentially be targeted under new policy, and has had to limit its cases which reduces its funding streams; LRCL, CHIRLA, and CCIJ cannot represent as many clients because all of their services now take more time and resources, which frustrates their mission of providing direct representation and counseling to noncitizen victims of crime, trafficking, and abuse). These facts and evidence establish direct interference with the Organizations Plaintiffs' core business activities. Neither the unanimous opinion in *Hippocratic Medicine* nor that opinion as elaborated upon by the majority opinion in *Arizona Alliance* disqualify such injury from satisfying the injury-in-fact requirement for standing.

The Motion challenging the Organizational Plaintiffs' standing is therefore **DENIED**.

### B. The Complaint Satisfies Rule 8

Defendants argue that the Complaint is an impermissible shotgun pleading that violates Rule 8 because it does not provide adequate notice of the claims. The Complaint satisfies Rule 8.

Defendants fault Plaintiffs for incorporating prior allegations by reference, but this is a common practice in complaints filed in federal court, and Plaintiffs further allege additional facts particular to each claim. Defendants also fault the Complaint for alleging some conduct by "Defendants" as opposed to specific Defendants. But, while the Complaint does refer to the Defendants collectively, it alleges coordinated conduct, and alleges specific conduct by specific Defendants – whether USCIS or ICE, which are sub-agencies of DHS. The pleading is sufficient to put Defendants on notice.

The Motion challenging the sufficiency of the Complaint under Rule 8 is therefore **DENIED**.

### C. Plaintiffs Fail to State a Claim for Violation of the Fourth Amendment (Count VII)

The Court has not previously considered Plaintiffs' claim that Defendants' detention of individuals with deferred action under the De Facto Revocation Policy constitutes an unreasonable seizure in violation of the Fourth Amendment. Plaintiffs allege that Defendants violated the Fourth Amendment rights of Plaintiffs Lupe A., Camila B., Paulo C., and Ms. Merlos—all individuals in valid deferred action status—because they were arrested without probable cause to believe they committed any acts that would justify revoking their deferred action, and without probable cause to believe that they were flight risks. *See* Compl. ¶¶ 15-18, 237.

In their opposition, Plaintiffs withdraw Ms. Merlos's Fourth Amendment claim because she was arrested by Customs and Border Patrol, which is not a defendant. *See* Opp'n p. 25, n. 16. The Court therefore **GRANTS** Defendants' Motion to Dismiss Ms. Merlos's Fourth Amendment claim (Count VII) and **DISMISSES** it without leave to amend.

Otherwise, Defendants argue that the Fourth Amendment claim fails because it "never engages the statutory arrest authority, the final removal orders the named Plaintiffs concede, or the circumstances of any actual seizure." Mot. 23:1-5. Defendants then reference 8 U.S.C. § 1226(a) and § 1357 to suggest that the arrests were pursuant to (administrative) warrants under § 1226(a), and argue that the claim fails because Plaintiffs don't plead facts going to a subsequent custody determination. This argument is not sufficiently developed for the Court to engage it. This is not to fault Defendants' briefing, as they were subject to page limits.

However, apart from Defendants' arguments, it is difficult to assess the sufficiency of Plaintiffs' claim because Plaintiffs' opposition depends on facts not alleged in the Complaint. Specifically, in their Opposition, Plaintiffs characterize this claim as alleging "that Defendants arrest individuals in valid deferred action status, without a warrant, probable cause, or a flight risk assessment." Opp'n 24:20-25:1 (citing Compl. ¶¶ 15-17); *see also* Opp'n 25:14-15 ("At this stage of the case, the Court must take Plaintiffs' allegations of warrantless arrests as true.") But none of the paragraphs of the Complaint that Plaintiffs cite actually allege that Defendants arrested Plaintiffs without warrants. For this reason, too, the Court cannot conclude that Plaintiffs have pled a viable claim, nor can it properly evaluate the substance of Defendants' argument.

Because Plaintiffs defend this claim based on allegations that are not in the Complaint—that the arrests were warrantless—the Court construes the opposition as in effect conceding that this claim, as pled, fails to state a claim. The Court therefore **GRANTS** this aspect of the Motion and dismisses this claim but with leave to amend, except as to Ms. Merlos, whose withdrawn claim is dismissed without leave to amend.

### D. Plaintiffs Fail to State a Claim Under the Blind Removal Policy (Counts VIII and IX)

The Court has re-evaluated Plaintiffs' claims challenging the Blind Removal Policy (Counts VIII and IX). These claims are described in the PI Order. They allege that Defendants' Blind Removal Policy violates 8 U.S.C. § 1227(d)(1) because it allows Defendants to deny a U visa or T visa petitioner's request for an administrative stay of a final order of removal without first prima facie adjudicating the U visa and T visa petition, whereas the statute requires Defendants to make a prima facie adjudication before deciding the request for an administrative stay. Based on this allegation, Plaintiffs allege that the Blind Removal Policy violates § 1227(d)(1) itself (Count VIII), and that it violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C), because it is not in accordance with the law and is in excess of statutory authority (Count IX). Both claims, therefore, turn on the interpretation of § 1227(d)(1).

8 U.S.C. § 1227(d)(1) states:

> If the Secretary of Homeland Security determines that an application for [a U visa or T visa] sets forth a prima facie case for approval, the Secretary may grant the alien an administrative stay of a final order of removal.

In the PI Order, the Court read this statute to mean that whether to grant an administrative stay is discretionary, but that making a bona fide determination must be a mandatory because that decision is what permits the Secretary to exercise their discretion whether to grant the stay request.

Upon further review, the Court cannot sustain this interpretation, which has a logic to it but nevertheless is a strained reading that the language of the statute alone cannot bear. Rather, a favorable prima facie determination is simply the condition precedent that permits the Secretary's exercise of discretion to grant a stay. It does not also follow that a petitioner's stay request imposes on the Secretary the obligation to make a prima facie determination before deciding the stay request. The statute itself does not require the Secretary to make a prima facie determination before deciding the stay request. The statute simply states that a stay request may be granted if the petitioner receives a favorable prima facie determination. If the petitioner does not receive a favorable prima facie determination, this section grants the Secretary no discretion to grant a stay. But that does not mean that a prima facie determination must be made—one way or another—before the Secretary decides the stay request. Congress could have drafted the statute to make a prima facie determination an express precondition of deciding the stay request, but it did not.

The Court therefore finds that Plaintiffs' claims challenging the Blind Removal Policy fail to state a claim because the statute these claims rely on does not require the Secretary to make a prima facie determination before deciding a stay request. Counts VIII and IX are therefore **DISMISSED**. Because the Court must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2), and out of an abundance of caution, the Court will grant Plaintiffs leave to amend this claim.[2]

//
//
//
//

---

[2] Plaintiffs' opposition states that Counts VIII and IX include a scrivener's error whereby they did not name their intended Plaintiffs. *See* Opp'n p. 14, n.11. If Plaintiffs attempt to replead these claims, they must also fix this error.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to Counts VII, VIII, and IX. These claims are **DISMISSED with leave to amend**, except as to Ms. Merlos's withdrawn claim under Count VII, which is dismissed without leave to amend.

The Motion is otherwise **DENIED** for the reasons stated in this Order and in the Court's PI Order.

If Plaintiffs wish to attempt to replead dismissed claims, they must file their First Amended Complaint within 28 days if this order.

**IT IS SO ORDERED**.